SHEPPARD, MULLIN, RICHTER & HAMPTON LLP
A Limited Liability Partnership
Including Professional Corporations
STEVEN B. SACKS, Cal. Bar No. 98875
ssacks@sheppardmullin.com
MICHAEL M. LAUTER, Cal. Bar No. 246048
mlauter@sheppardmullin.com
ISAIAH Z. WEEDN, Cal. Bar No. 229111
iweedn@sheppardmullin.com
Four Embarcadero Center, 17th Floor
San Francisco, CA 94111-4109
Telephone:     415-434-9100
Facsimile:      415-434-3947

Attorneys for Creditor and Plaintiff,
MUFG UNION BANK, N.A.

UNITED STATES BANKRUPTCY COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| In re<br><br>ROBERT BROWER, SR.,<br><br>        Debtor. | Case No. 15-50801 MEH<br><br>Chapter 11 |
| MUFG UNION BANK, N.A.,<br><br>        Plaintiff,<br><br>v.<br><br>ROBERT BROWER, SR., an individual, PATRICIA BROWER, an individual, COASTAL CYPRESS CORPORATION, a California corporation, AMERICAN COMMERCIAL PROPERTIES, INC., a Nevada corporation, ANTHONY NOBLES, an individual, WILFRED "BUTCH" LINDLEY, an individual, RICHARD BABCOCK, an individual, PATRICIA BROWER TRUST, and DOES 1-50,<br><br>        Defendants. | Adv. Proc. No. _____<br><br>**MUFG UNION BANK, N.A.'S COMPLAINT FOR DECLARATORY RELIEF AND PRELIMINARY INJUNCTIONS** |

Creditor MUFG Union Bank, N.A. ("Bank" or "Plaintiff"), plaintiff herein, alleges as follows:

**PARTIES**

1. Plaintiff Bank is a nationally chartered bank. Plaintiff is the successor by merger to Santa Barbara Bank & Trust, N.A. (f/k/a Pacific Capital Bank, N.A.) ("Original Lender"), and on December 1, 2012 it succeeded to the Original Lender's interest in the Loan and the Guaranty (each as defined below) that form the basis of the Bank's claim against Brower. References herein to "Bank" include Original Lender and any predecessors to Bank or Original Lender as to the Loan and the Guaranty.

2. Defendant Robert S. Brower, Sr. ("Brower" or "Debtor") is the debtor in the above-captioned bankruptcy case (the "Bankruptcy Case"). At all relevant times, Brower was the President of Chateau Julien, Inc. ("Chateau Julien"), a California corporation. Brower was also the president of American Commercial Properties, Inc. ("ACP"), of Coastal Cypress Corporation ("Coastal"), and of Great American Wineries, Inc. ("GAW") and in all respects acted as the owner of these companies as well.

3. Defendant Patricia Brower is the Debtor's wife. Debtor and Patricia Brower have been married since approximately 1980 and resided together in a residence located at 28088 Barn Court, Carmel, CA (the "Barn Court Residence") owned by Defendant ACP. Plaintiff is informed and believes and thereon alleges that Defendant Patricia Brower Trust is the present owner of some or all of the property previously owned by Patricia Brower.

4. Coastal is a California corporation formed by the Debtor in approximately 1982 to own and lease real estate in Carmel, California. Debtor has been a Director and the President of Coastal since its formation, as reflected on the Debtor's Amended Statement of Financial Affairs filed as Docket No. 17 on March 18, 2015 (the "SOFA"). The Debtor has exercised and continues to exercise complete dominion and control over Coastal to the present day, has utilized Coastal's assets for his personal benefit as well as to satisfy obligations owed by the Debtor's other entities, and has authorized payments that unrelated to Coastal's legitimate business needs in order to place the funds out of the immediate reach of his creditors. Debtor

asserts that his shares in Coastal are the main asset of his bankruptcy estate. Debtor asserts that he only owns 24% of the equity interests in Coastal, and that of the remaining interests, 13% are owned by his wife, and the rest by certain friends and business associates.

5. Defendant ACP is a Nevada corporation formed by the Debtor in approximately 1983 and its main function has been to act as the owner of his Barn Court Residence. As reflected on his SOFA, Debtor was the Director and President of ACP from 1982 to at least the date of his bankruptcy filing. Debtor claims that he was the owner of 100% of the equity interests in ACP until approximately November of 2000 when Debtor asserts that he gifted all of his equity interests in ACP to his wife. Debtor asserts that the equity interests in ACP then became and have remained his wife's sole and separate property. Debtor has and had complete dominion and control over ACP, both before and after the 2000 transfer of equity interests, and uses it merely to shield assets from his creditors. Despite ACP owing very little or no mortgage payments on the Barn Court Residence, the Debtor personally pays 100% of the rent owed to ACP, which according to the Debtor's Schedule J filed on March 26, 2015 as Docket No. 22, is $2,986.78 per month. In this way, Debtor is able to funnel approximately $35,841.36 per year out of his estate and into ACP, out of the reach of his creditors.

6. Defendant Anthony Nobles is a purported shareholder in Coastal.

7. Defendant Wilfred "Butch" Lindley is a purported shareholder of Coastal.

8. Defendant Richard Babcock ("Babcock") is an attorney who has acted on Brower's behalf and is a purported shareholder of Coastal.

## JURISDICTION AND VENUE

9. This adversary proceeding arises under title 11, or arises in or is related to the Bankruptcy Case, within the meaning of 28 U.S.C. § 1334(b). This Court therefore has jurisdiction over this adversary proceeding pursuant to 28 U.S.C. §§ 157(a), 157(b), 1334(b) and 1334(e) and Rule 5011-1 of the Bankruptcy Local Rules of the United States District Court for the Northern District of California, including jurisdiction to enter a final judgment.

10. This Court also has jurisdiction pursuant to 28 U.S.C. §§ 2201 and 2202.

11. This is an adversary proceeding to obtain declaratory relief that various property interests controlled by the Debtor are property of the estate and therefore is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A), (E), and (O). To the extent necessary, Plaintiff consents to entry of a final judgment by this Court.

12. For claims arising under state law, this Court also has jurisdiction under 28 U.S.C. § 1367.

13. Venue is proper in this district pursuant to 28 U.S.C. § 1409(a).

14. The Defendants are subject to the jurisdiction of this Court.

## GENERAL FACTUAL ALLEGATIONS

15. Brower commenced this bankruptcy case on March 11, 2015 (the "Petition Date") by filing a voluntary petition under chapter 11 of the Bankruptcy Code. Bank has filed a proof of claim as Claim No. 7 on the claims register in this case, in the amount of $5,091,299.30, based on his guaranty of obligations owed by Chateau Julien to the Bank as set forth in said proof of claim (the "Proof of Claim"). As described below, following a trial in Monterey County Superior Court, a judgment was entered against Chateau Julien on the obligation guaranteed by Brower. This Court has determined after trial that Brower's obligations to the Bank are not dischargeable in bankruptcy pursuant to Bankruptcy Code Section 523(a)(2)(B).

**A. The Bank's Loan to Chateau Julien and Its Guaranty Claim Against Brower.**

16. From approximately 1985 through mid-April 2015, Chateau Julien operated a winery in Carmel, California. The winery was located on real estate that Chateau Julien leased from Coastal.

17. The Bank loaned $4.85 million to Chateau Julien, which was guaranteed by Brower.

18. Chateau Julien and Brower failed to repay the Chateau Julien loan following the Bank's demands. The Bank initiated a lawsuit against Brower and Chateau Julien in September 2014 in Monterey County Superior Court for breach of contract, breach of guaranty, and certain other causes of action. A trial was held on the claim against Chateau Julien and

judgment was entered in favor of the Bank against Chateau Julien in an amount in excess of $5.4 million.

19. Under his guaranty, Brower is liable to the Bank for the amount owed by Chateau Julien.

20. In April 2015, after Brower had filed this bankruptcy case, Brower, as President of Coastal, caused Coastal to sell the real estate underlying the Chateau Julien winery to a third party for approximately $12,000,000.

**B.     Brower's Interest in Coastal.**

21. Upon filing this case, Brower asserted that he owned 24% of the shares of Coastal, and claims that his wife owns an additional 13% as her sole and separate property.

22. Brower claims that Lindley owns about 37% of Coastal pursuant to a share certificate issued to Chualar Canyon Ranch Supply, apparently a business entity run by Lindley. Plaintiff is informed and believes and alleges thereon that Mr. Lindley does not actually own an economic interest in Coastal but was listed as a shareholder so that the shares would not appear of record in Brower's name.

23. Brower further claims that Coastal issued new shares of stock in 2011 comprising 26 percent of the new total of outstanding shares, with a 20.8 percent interest held by defendant Nobles, and 5.2 percent held by defendant Babcock. If any shares were issued to Nobles and Babcock by Coastal at all, they did not pay consideration to Coastal for their alleged interests.

**C.     Brower Uses Coastal As His Own**

24. While nominally only a 24% shareholder, Brower has treated Coastal as fully belonging to him. Thus Brower has used Coastal's funds to pay his own personal expenses and legal fees and obligations owed by his other companies, and to loan money on an unsecured basis at a low interest rate to GAW.

25. On the closing of the sale of Coastal's real estate, Brower, as President of Coastal, authorized the payment of $1.12 million, and the listing of an additional $600,000 as an account payable, to two companies formed and controlled by Nobles, Med-Venture and Aurora,

under the guise of investment banking contracts entered into by each of them with Coastal and Chateau Julien. Each of their investment banking contracts was identical – in fact they are same the document, with a different company name (but same address) in the letterhead. Plaintiff is informed and believes that the companies did not perform any significant services for Coastal or Chateau Julien. The eventual sale of Coastal's real estate did not in any way come about as the result of efforts by Nobles, Aurora or Med-Venture and thus Coastal did not benefit from the payments to them.

**D.   Brower's Separate Property Charade**

26.   Brower has taken a number of actions attempting to keep any property he enjoys the use of out of the reach of his creditors. Among such actions is his claim that property interests held by Brower's wife are her separate property.

27.   Post-bankruptcy, Brower has produced a premarital agreement that purports to support the separate property allegations, but in practice Brower and his wife did not abide by the premarital agreement. To the contrary, Brower represented to creditors that the property he now claims to be his wife's separate property was either his property or community property of their marital estate. Most notably, in connection with obtaining, increasing, renewing and extending the loan to Chateau Julien, which was guaranteed by Brower, Brower personally created and provided to the Bank and its predecessor lenders his personal financial statements, as guarantor of the loan. The financial statements were provided in connection with each renewal, extension or refinancing of the loan, including in 2009 when the Loan and Security Agreement, Note, and Guaranty were signed. The financial statements provided by Brower to the Bank and its predecessor lenders purported to reflect the joint assets of Brower and his wife, Patricia Brower, indicating that these assets were available to support Brower's guaranty. When Brower supplied back-up information for the financial statements they appeared to reflect the value of either assets held jointly, such as a joint checking account, or assets held in Brower's name. No assets were listed as being separately held by Brower or Patricia Brower, indicating that the assets listed were jointly held.

28. Brower claims that while he was originally the owner of ACP's shares, he gave his entire interest to his wife as her separate property in 2000. As with his other entities, Brower was the president of ACP and managed its affairs and gave no indication to the Bank or anyone else that he was anything other than the owner of the company.

## FIRST CLAIM FOR RELIEF

**Declaratory Relief Pursuant to 11 U.S.C. § 541 and 28 U.S.C. §§ 2201 and 2202**

**(Against Coastal, Brower, Nobles, Babcock, Lindley, Patricia Brower, and Patricia Brower Trust)**

29. Plaintiff Bank repeats and realleges the allegations in above paragraphs 1 through 28, inclusive, as though fully set forth herein.

30. The Bank contends that Brower and Patricia Brower (or, in her stead, defendant Patricia Brower Trust) own all of the interests in Coastal as community property and that defendants Nobles, Babcock, and Lindley have no interest in Coastal. The Bank further contends that Brower's bankruptcy estate includes all of the interest held by him and by Patricia Brower (or the Patricia Brower Trust) pursuant to Bankruptcy Code section 541(a)(1) and 541(a)(2).

31. The Bank is informed and believes and alleges thereon that Brower disputes the Bank's contentions and contends that defendants Brower, Patricia Brower/Patricia Brower Trust, Nobles, Babcock and Lindley have interests in Coastal as follows: Brower- 24%, Patricia Brower/Patricia Brower Trust- 13%, Nobles- 20.8%, Babcock- 5.2%, Lindley- 37%.

32. An actual controversy has arisen and now exists with regard to the extent of the bankruptcy estate's interest in Coastal. The Bank requests that the Court declare the interest of the Brower's bankruptcy estate in Coastal.

WHEREFORE, the Bank prays for judgment as set forth below.

## SECOND CLAIM FOR RELIEF

### Declaratory Relief Pursuant to 11 U.S.C. § 541 and 28 U.S.C. §§ 2201 and 2202

### (Against Brower, ACP, and Patricia Brower)

33. Plaintiff Bank repeats and realleges the allegations in above paragraphs 1 through 28, inclusive, as though fully set forth herein.

34. The Bank contends that Brower and Patricia Brower own all of the interests in ACP as community property. The Bank further contends that Brower's bankruptcy estate includes all of the interest held by him and by Patricia Brower pursuant to Bankruptcy Code section 541(a)(1) and 541(a)(2).

35. The Bank is informed and believes and alleges thereon that Brower and Patricia Brower dispute the Bank's contentions and contends that defendant Patricia Brower owns ACP as her separate property.

36. An actual controversy has arisen and now exists with regard to the bankruptcy estate's interest in ACP. The Bank requests that the Court declare the interest of the Brower's bankruptcy estate in ACP.

WHEREFORE, the Bank prays for judgment as set forth below.

## THIRD CLAIM FOR RELIEF

### Preliminary Injunctions Pursuant to 11 U.S.C. § 105

### (Against Brower, Patricia Brower, ACP and Coastal)

37. Plaintiff Bank repeats and realleges the allegations in above paragraphs 1 through 28, inclusive, as though fully set forth herein.

38. Defendant Brower, in his role as President of Coastal, has wasted Coastal's assets through transfers without consideration to defunct companies run by Nobles, large payments to related entities such as GAW, and other similar schemes. The effect of depleting Coastal's assets is to deplete the funds available to creditors in this estate. Brower has refused to have Coastal purchase the bankruptcy estate's interest in Coastal at a price that reflects the actual value of the shares.

39. ACP has listed the Barn Court residence for sale.

40. Bank requests that pending the determination of the claims set forth in this Complaint the Court preliminarily enjoin Brower, Coastal, and any individuals or entities acting on behalf of or in concert with Brower and Coastal, from transferring, assigning, or encumbering any of Coastal's assets without advance approval of this Court.

41. Bank requests that pending the determination of the claims set forth in this Complaint the Court issue a preliminary injunction requiring that the net proceeds of any sale, transfer, or encumbrance of the assets of ACP shall be deposited into a blocked account and remain there.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff Bank prays for relief as follows:

1. For the First Claim for Relief, that the Court declare that Brower and Patricia Brower (or, in her stead, defendant Patricia Brower Trust) own 100% of the equity interests in Coastal as community property, that defendants Nobles, Babcock, and Lindley have no interest in Coastal and that Brower's bankruptcy estate includes all of the interest held by him and by Patricia Brower (or the Patricia Brower Trust) pursuant to Bankruptcy Code section 541(a)(1) and 541(a)(2).

2. For the Second Claim for Relief, that the Court declare that Brower and Patricia Brower own ACP as community property and that Brower's bankruptcy estate includes all of the interest held by him and by Patricia Brower pursuant to Bankruptcy Code section 541(a)(1) and 541(a)(2).

3. For the Third Claim for Relief, pending determination of the claims made in this Complaint, that the Court preliminarily enjoin Brower, Coastal, and any individuals or entities acting on behalf of or in concert with Brower and Coastal, from transferring, assigning, or encumbering any of Coastal's assets and that the net proceeds of ACP's assets be held in a blocked account.

4. For all Claims for Relief, such other and further relief as the Court deems just and equitable.

SMRH:478996160.6                                                                 9                                        COMPLAINT FOR DECLARATORY RELIEF, ETC.

| | | |
|---|---|---|
| Dated: May 11, 2017 | | SHEPPARD, MULLIN, RICHTER & HAMPTON LLP |
| | By: | /s/ *Steven B. Sacks* |
| | | STEVEN B. SACKS |
| | | Attorneys for Creditor and Plaintiff, |
| | | MUFG Union Bank, N.A. |