SHEPPARD, MULLIN, RICHTER & HAMPTON LLP
A Limited Liability Partnership
Including Professional Corporations
STEVEN B. SACKS, Cal. Bar No. 98875
ssacks@sheppardmullin.com
MICHAEL M. LAUTER, Cal. Bar No. 246048
mlauter@sheppardmullin.com
ISAIAH Z. WEEDN, Cal. Bar No. 229111
iweedn@sheppardmullin.com
Four Embarcadero Center, 17th Floor
San Francisco, CA 94111-4109
Telephone:   415-434-9100
Facsimile:    415-434-3947

Attorneys for Plaintiff,
MUFG UNION BANK, N.A.

UNITED STATES BANKRUPTCY COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| In re<br><br>ROBERT BROWER, SR.,<br><br>        Debtor. | Case No. 15-50801<br><br>Chapter 11 |
| MUFG UNION BANK, N.A.,<br><br>        Plaintiff,<br>v.<br><br>ROBERT BROWER, SR., an individual, PATRICIA BROWER, an individual, COASTAL CYPRESS CORPORATION, a California corporation, COASTAL CYPRESS CORPORATION, a Delaware corporation, AMERICAN COMMERCIAL PROPERTIES, INC., a Nevada corporation, ANTHONY NOBLES, an individual, WILFRED "BUTCH" LINDLEY, an individual, RICHARD BABCOCK, an individual, PATRICIA BROWER TRUST, and DOES 1-50,<br><br>        Defendants. | Adv. Proc. No. 17-05044<br><br>**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF *EX PARTE* APPLICATION FOR TEMPORARY RESTRAINING ORDER AND ORDER TO SHOW CAUSE WHY PRELIMINARY INJUNCTION SHOULD NOT BE ISSUED**<br><br>Place:  United States Bankruptcy Court<br>          280 South First Street<br>          San Jose, CA 95113-3099<br>Judge:  Hon. Elaine Hammond<br>Crtrm:  3020 |

# TABLE OF CONTENTS

I. INTRODUCTION ........................................................................................................... 1

II. STATEMENT OF FACTS ............................................................................................ 2

III. RELIEF REQUESTED ................................................................................................ 4

IV. ARGUMENT .............................................................................................................. 4

    A.     The Court Has Authority Under Section 105 and Rule 7065 To Grant Injunctive Relief. ............................................................................................... 4

    B.     Union Bank, on Behalf of the Estate, is Entitled to a Preliminary Injunction and TRO. ........................................................................................ 6

        1.     Union Bank Has a Reasonable Likelihood of Achieving a Successful Reorganization for the Estate and Therefore a Strong Likelihood of Success on the Merits. ....................................... 7

        2.     Union Bank Has a Strong Likelihood of Prevailing on the Merits of the Second Claim for Relief. ................................................. 7

        3.     Union Bank and the Estate Will Suffer Irreparable Injury if its Request for a TRO and Order to Show Cause is Not Granted. ............. 9

        4.     The Balance of Hardships Favor Granting the TRO and Order to Show Cause. .................................................................................. 9

        5.     The TRO and Order to Show Cause are in the Public Interest. ......... 10

        6.     Serious Questions Are Raised and the Balance of Hardships Tips Strongly in Favor of Granting a TRO and Preliminary Injunction. ...................................................................................... 10

V. CONCLUSION .......................................................................................................... 11

Plaintiff MUFG Union Bank, N.A. ("Union Bank") submits this Memorandum of Points and Authorities in support of the concurrently-filed *Ex Parte Application for Temporary Restraining Order and Order To Show Cause Why Preliminary Injunction Should Not Be Issued* (the "Application"). The Application and the supporting declaration of Isaiah Weedn in support of the Application ("Weedn Decl.") are incorporated herein by this reference.

## I.
## INTRODUCTION

The Application implicates the Second and Fourth Claims for Relief set forth in Union Bank's first amended complaint in this adversary proceeding (Dkt. No. 3) (the "Complaint"). These claims for relief both relate to what Union Bank understands to be the sole asset of Defendant American Commercial Properties, Inc. ("ACP") – a residence in Carmel, CA with a mailing address of 28088 Barn Court that was formerly inhabited by defendants Robert Brower, Sr. and Patricia Brower (the "Barn Court Residence"). In the Second Claim for Relief, Union Bank requests declaratory relief finding that all of the equity interests in ACP are part of the bankruptcy estate available to creditors in this bankruptcy rather than Patricia Brower's sole and separate property. The Fourth Claim for Relief alleges that the Barn Court Residence has been listed for sale and requests an injunction requiring that the net proceeds of any sale, transfer, or encumbrance of the Barn Court Residence be deposited into a blocked account and remain there pending resolution of the Second Claim for Relief.

On January 22, 2018, Union Bank learned for the first time that the listing for the Barn Court Residence had been taken down from the MLS service, with a notation that the property was under contract to be sold. Also on January 22, 2018, Union Bank learned for the first time that ACP and Coastal[1] had encumbered the Barn Court residence

---

[1] "Coastal" as used herein refers to both Defendant Coastal Cypress Corporation, a Delaware corporation, and Coastal Cypress Corporation, a California corporation.

with two deeds of trust recorded in 2017 that secure an aggregate amount of $495,000 in loans purportedly made by Coastal to ACP (collectively, the "Coastal Deeds of Trust").

Upon learning of the pending sale of the Barn Court Residence and the existence of the Coastal Deeds of Trust, Union Bank immediately demanded a stipulation to the relief requested in this Application, as well as more information about the sale. Coastal and ACP refused to provide either, necessitating the filing of this Application on an emergency basis.

The requested temporary restraining order ("TRO") and injunction are plainly warranted here. The balance of the equities tips in the favor of Union Bank as in the absence of the TRO and injunction, ACP and Coastal will be free to dissipate the value of the Barn Court Residence which Union Bank sought to preserve for the benefit of the Debtor's bankruptcy estate through the Second and Fourth Claims for Relief in the Complaint. Union Bank has also surpassed the threshold for demonstrating probable success on the merits for the Second Claim for Relief, as California Family Code section 852 expressly requires that parties intending to transmute separate or community property of one spouse into separate property of the other spouse (as the Browers claim happened when Mr. Brower allegedly gifted all of the stock of ACP to Patricia Brower in 2000) requires express written documentation of the intent to transmute the property to the other spouse's separate property. Here, there is no such writing, and as a result the stock is property of Mr. Brower's bankruptcy estate.

## II.
## STATEMENT OF FACTS

As set forth in the Complaint, Union Bank is informed and believes that Defendant ACP's main asset is the Barn Court Residence in Carmel, California. (*See*, Amended Answer of Robert Brower, Dkt. No. 49, at ¶ 3, admitting the residence is owned by ACP). In the Second Claim for Relief in the Complaint, Union Bank asserts the equity interests in ACP – allegedly held in the name of Patricia Brower – are community property of the Debtor and Patricia Brower, and thus should be part of the Debtor's bankruptcy

estate under Bankruptcy Code section 541(a)(2). Union Bank seeks declaratory relief to that effect in the Second Claim for Relief. The Debtor has maintained that the equity interests in ACP are not property of his bankruptcy estate because Patricia Brower holds them as her sole and separate property. According to the Debtor, the equity interests were formerly held by the Debtor as his separate property, and then gifted to his wife to be her separate property in approximately November 2000. (*See*, Amended Answer of Robert Brower, Dkt. No. 49, at ¶ 6; Answer of ACP, Dkt. No. 42, at ¶¶ 6, 29).

On January 22, 2018, Union Bank discovered that the Barn Court Residence, which had previously been listed for sale on the MLS service, had recently been removed from the MLS and was now shown as being under contract for a sale transaction. (Weedn Decl., at ¶ 5; Exh. A). Also on January 22, 2018, Union Bank learned for the first time that two deeds of trust had been recorded against the Barn Court Residence in favor of Coastal as beneficiary in 2017. The two Coastal Deeds of Trust collectively secure purported obligations of ACP to Coastal in the aggregate amount of $495,000, and were recorded on May 25, 2017 and November 13, 2017, not long after the original complaint in this adversary proceeding was filed on May 11, 2017 (Weedn Decl., at ¶ 6; Exh. C).

Immediately upon learning of the above, Union Bank's counsel sent an email to ACP's and Coastal's counsel requesting a stipulation for the relief sought in the Application as well as information about the pending sale of the Barn Court Residence, and requesting that ACP and Coastal respond by 5:00 p.m. on January 23, 2018 given the urgency of the situation. ACP and Coastal did not agree to a stipulation or provide additional details regarding the sale by the January 23rd deadline. (Weedn Decl., at ¶ 4; Exh. A).

Union Bank thus filed the instant Application in order to preserve the value of the Barn Court Residence for the estate in the event that Union Bank prevails on the Second Claim for Relief.

# III.

# RELIEF REQUESTED

Union Bank requests that the Court restrain and enjoin Coastal and ACP, and their officers, directors, agents, affiliates, servants, employees, and attorneys, and all persons in active concert or participation with any or all of them (including but not limited to Patricia Brower and Robert Brower, Sr.), who receive notice of this order as set forth below, from transferring, encumbering, dissipating or otherwise disposing in any manner or by any means the net proceeds of the sale of the Barn Court Residence. Coastal and ACP shall place the net proceeds of the Barn Court Residence in a blocked account where such proceeds shall remain until the resolution of the Second Claim for Relief in the Complaint. For the purposes of the Application, "net proceeds" shall include the sale price less any payments made out of escrow for ordinary closing costs, broker commissions of six percent or less, and the release of liens other than the liens of the two Coastal Deeds of Trust, or any other lien held by Robert Brower, Sr., Patricia Brower, or any of the other defendants in this lawsuit. In other words, all funds to be paid to either ACP or Coastal from the sale of the Barn Court Residence should be deposited into a blocked account and remain there pending resolution of the Second Claim for Relief.

# IV.

# ARGUMENT

**A. The Court Has Authority Under Section 105 and Rule 7065 To Grant Injunctive Relief.**

The Court has the power in this case to grant the injunctive relief under Section 105 of the Bankruptcy Code. Bankruptcy courts generally have authority to issue injunctions in adversary proceedings under the ordinary rules governing these orders and in conjunction with Section 105. *See* Fed.R.Bankr.P. 7065; *Rubin v. Pringle (In re Focus Media Inc.)*, 387 F.3d 1077, 1085 (9th Cir. 2004) (affirming injunction against transfer of assets); *Walsh v. West Virginia (In re Security Gas & Oil, Inc.)*, 70 B.R. 786, 792 (Bankr. N.D. Cal. 1987) ("It is well established that the bankruptcy court under Section 105 may

-4-

affirmatively enjoin acts against a debtor that are not prohibited by the automatic stay.");
*In re Derivium Capital, LLC*, 380 B.R. 429, 444 (Bankr. D.S.C. 2006) ("Section 105, in conjunction with Federal Rule of Civil Procedure 65(b) . . . gives this Court the power to issue a preliminary injunction if it clearly appears from specific facts that immediate and irreparable injury, loss, or damage will result to the applicant.") (citation omitted); *In re Myerson Kuhn*, 121 B.R. 145, 154 (Bankr. S.D.N.Y. 1990) ("Section 105 grants bankruptcy courts ample power to enjoin actions excepted from the automatic stay which might interfere in the rehabilitative process, whether in a liquidation or in a reorganization case.") (citations omitted); *Commc'ns Corp. v. Rigas*, 2003 WL 21297258, at *4 (S.D.N.Y. June 4, 2003) ("Section 105 of Title 11 provides the bankruptcy courts with a broad range of equitable powers over cases within its jurisdiction," including "issu[ing] a pre-judgment order preventing a party from disposing of assets.").

The bankruptcy court is empowered to issue orders to prevent further dissipation of the assets and protect the estate's ability to obtain recovery in this action. *See In re Focus Media*, 387 F.3d at 1086. Here, allowing the sale of the Barn Court Residence to close without granting the TRO and injunctions requested in the Application would permit the defendants in this action, who have proven adept at moving funds and assets out of the reach of creditors, to move the net proceeds of the sale out of ACP and defeat the purpose of the Court's determination of whether the equity interests in ACP are property of the estate. The recordation of the deeds of trust in favor of Coastal, which appear designed to soak up much of the equity in the Barn Court Residence, is the most recent evidence of the defendants' willingness and ability to conceal assets from creditors and the estate. Indeed, since the Barn Court Residence is believed to be ACP's sole significant asset, denial of this Application will render the Second Claim for Relief pointless.

Accordingly, as shown below, Union Bank satisfies the standard for issuance of an injunction and this is a proper case for application of Section 105. This court should use its equitable powers under Bankruptcy Code Section 105 to restrain and enjoin ACP

-5-

and Coastal from dissipating the proceeds of the Barn Court Residence and completely undercutting the Second Claim for Relief in the Complaint.

**B.　　Union Bank, on Behalf of the Estate, is Entitled to a Preliminary Injunction and TRO.**

The standard for the issuance of a temporary restraining order and a preliminary injunction are for all intents and purposes identical, with courts typically applying the preliminary injunction standard to the analysis of the temporary restraining order. *Lockheed Missile & Space Co. v. Hughes Aircraft Co.*, 887 F.Supp. 1320, 1323 (N.D. Cal. 1995). The general standard for a preliminary injunction in the Ninth Circuit provides for two paths to the injunction – the traditional four-pronged approach and an "alternative" test – holding that injunctive relief is appropriate when the moving party shows:

> (1) a strong likelihood of success on the merits, (2) the possibility of irreparable injury to plaintiff if preliminary relief is not granted, (3) a balance of hardships favoring the plaintiff, and (4) advancement of the public interest (in certain cases). Alternatively, a court may grant the injunction if the plaintiff demonstrates either a combination of probable success on the merits and the possibility of irreparable injury or that serious questions are raised and the balance of hardships tips sharply in his favor.

*Solidus Networks, Inc. v. Excel Innovations, Inc. (In re Excel Innovations, Inc.)*, 502 F.3d 1086, 1093 (9th Cir. 2007), *quoting, Save Our Sonoran, Inc. v. Flowers*, 408 F.3d 1113, 1120 (9th Cir. 2005). The tests are not separate, but instead "represent two points on a sliding scale in which the required degree of irreparable harm increases as the probability of success decreases." *Excel Innovations*, 502 F.3d at 1093, *quoting, Save Our Sonoran*, 408 F.3d at 1120.

The circumstances of the instant case merit the issuance of a TRO and order to show cause why a preliminary injunction should not be issued under both the traditional four-pronged test and under the alternative test.

-6-

1. **Union Bank Has a Reasonable Likelihood of Achieving a Successful Reorganization for the Estate and Therefore a Strong Likelihood of Success on the Merits.**

In *Excel Innovations*, the Ninth Circuit found that the ordinary test of "success on the merits" means a reasonable likelihood of success in reorganizing if the requested injunctive relief is granted, which "is not a high burden." *In re Excel Innovations, Inc.*, 502 F.3d at 1097. Where the debtor is a good candidate for reorganization, has a proactive history while in bankruptcy and has a potentially profitable operating business, it meets this standard. *Homestead Holdings, Inc. v. Broome & Wellington (In re PTI Holding Corp.)*, 346 B.R. 820, 830-31 (Bankr. D. Nev. 2006). Reorganization does not necessarily mean confirmation of a Chapter 11 plan of reorganization.

Here, Union Bank has already confirmed a plan of reorganization which creates a liquidating trust that will monetize the estate's assets and make distributions to creditors. (*See*, Order Confirming Plan, Main Case Docket No. 236).[2] Even without prevailing in this adversary proceeding, the Debtor admits to having assets worth over $400,000 to distribute to creditors. Prevailing on the claims in this adversary proceeding will enhance the distribution, and as set forth in the next section, Union Bank is likely to prevail on the merits of the Second Claim for Relief. Therefore, there is a reasonable likelihood of a successful reorganization in this case.

2. **Union Bank Has a Strong Likelihood of Prevailing on the Merits of the Second Claim for Relief.**

Union Bank has a strong likelihood of prevailing on the Second Claim for Relief in the Complaint. While there are alternative arguments that Union Bank reserves the right to make in order to obtain the requested declaration that the equity of ACP is community property and therefore estate property (e.g., alter ego and veil piercing type

---

[2] The Debtor subsequently filed an appeal of the plan confirmation order, which appeal remains pending. However, no stay pending appeal was timely sought, so Union Bank is free to implement the Plan in spite of the appeal once this adversary proceeding is resolved.

theories), Union Bank for this Application will focus on the simplest basis for the relief – California Family Code section 852. Simply put, in order for the purported 2000 transfer of the equity in ACP to Patricia to have effectively transmuted the property from either the Debtor's separate property or the marital estate's community property to the separate property of Patricia Brower, it would have had to comply with Section 852, which requires a contemporaneous writing that clearly manifests the parties' intent to convert the property to Patricia's separate property. There is no such writing, and as a result, no transmutation. The shares of ACP thus are community property of the marital estate (or alternatively, the Debtor's separate property), and thus are property of the estate.

California Family Code section 852(a) provides as follows:

> (a) A transmutation of real or personal property is not valid unless made in writing by an express declaration that is made, joined in, consented to, or accepted by the spouse whose interest in the property is adversely affected.

Here, the evidence will show that there is no writing containing the express declaration required by Section 852(a). While there may be notations on the stock register and related documents purporting to effectuate a transfer of the stock, a transfer is not the same as a transmutation. Courts have held that Section 852(a) is not satisfied by mere evidence of a transfer as opposed to a transmutation. *In re Marriage of Barneson*, 69 Cal. App. 4th 583 (1999); *In re Cecconi*, 366 B.R. 83 (Bankr. N.D. Cal. 2007), *aff'd*, 413 Fed. Appx. 976 (9th Cir. Feb. 15, 2011).

The Defendants in this action will likely argue that the Browers' Pre-Marital Agreement from approximately 1980 provides that all property shall remain each spouse's separate property, and thus makes the equity in ACP Patricia's separate property. However, the alleged agreement is irrelevant as it was entered into 20 years before the purported transfer of the ACP stock was made in 2000. Moreover, the evidence will show that the Browers did not abide by the alleged Pre-Marital Agreement.

### 3. Union Bank and the Estate Will Suffer Irreparable Injury if its Request for a TRO and Order to Show Cause is Not Granted.

Union Bank, which is acting on behalf of and for the benefit of the bankruptcy estate in this adversary proceeding, would suffer irreparable harm if the requested TRO and order to show cause were not granted. The purpose of the Second Claim for Relief is obviously to determine whether the main asset of ACP – the Barn Court Residence – should be property of the estate available to the estate's creditors. Union Bank is aware that the Barn Court Residence was previously listed for sale, and has just recently become aware that it is now under contract for sale. Despite requesting information from the Debtor regarding the status of that sale, the Debtor has refused to provide any. Thus, Union Bank, acting on behalf of the estate, can only assume that a sale of the Barn Court Residence is imminent. If the sale is allowed to go through, the net proceeds will be disbursed to Coastal and ACP (and potentially others) and there will be nothing to prevent the proceeds from being dissipated to nothing. Thus, in the absence of the requested relief, ACP will in effect become judgment proof and the Second Claim for Relief will be rendered pointless. A risk of dissipation of assets available to satisfy an eventual judgment establishes irreparable harm. *See, e.g., FDIC v. Garner*, 125 F.3d 1272, 1279-80 (9th Cir. 1997) (giving "substantial deference" to lower court's finding that there was "at least a possibility" of dissipation of assets absent an injunction, and consequently concluding that the possibility of irreparable injury had been adequately demonstrated).

### 4. The Balance of Hardships Favor Granting the TRO and Order to Show Cause.

As demonstrated above, Union Bank and the estate will suffer irreparable harm if the TRO is not granted, as the proceeds from the sale of the Barn Court Residence – ACP's only known asset – will be dissipated and the Second Claim for Relief in the Complaint will be rendered pointless. On the other hand, there is no apparent prejudice to ACP or Coastal by requiring the funds to be held in a blocked account. Neither company has any known operations – they both were holding companies for real estate assets (the Barn Court Residence for ACP and the former Chateau Julien wine estate for Coastal) that

have been liquidated or will be liquidated. Without any operations, there is no apparent immediate need for use of the funds, and thus, no harm in keeping the funds in a blocked account pending resolution of the Second Claim for Relief in the Complaint.

**5. The TRO and Order to Show Cause are in the Public Interest.**

The risk of total dissipation of ACP's assets will have disastrous consequences for the bankruptcy estate, potentially jeopardizing any recovery in this action. This would be detrimental to the Debtor's innocent creditors. The public interest favors enjoining ACP and Coastal from disposing of the proceeds of the sale of the Barn Court Residence, to enable the proper administration of the Debtor's bankruptcy estate and the realization of a potential recovery for the Debtor's innocent creditors.

**6. Serious Questions Are Raised and the Balance of Hardships Tips Strongly in Favor of Granting a TRO and Preliminary Injunction.**

As noted above, in addition to the traditional multi-pronged test, courts will also grant a preliminary injunction (and therefore a TRO) if the movant demonstrates "either a combination of probable success on the merits and the possibility of irreparable injury or that serious questions are raised and the balance of hardships tips sharply in his favor." *Excel Innovations, Inc.*, 502 F.3d at 1093. Union Bank has already demonstrated probable success on the merits and a possibility of irreparable injury above, satisfying the first test. Union Bank can also satisfy the alternate test as serious questions are raised by the conduct of ACP, Coastal, and their agents. Those serious questions are raised by the following:

(1) ACP and Coastal's deliberate failure to notify the Court or any party of the pending sale of the Barn Court Residence, despite knowing its ultimate ownership was in dispute in this action;

(2) The fact that shortly after the Complaint in this action was filed, ACP and Coastal conspired to record two deeds of trust against the Barn Court Residence that will likely soak up much if not all of the equity in the Barn Court Residence;

-10-

(3) The fact that ACP and Coastal never mentioned to any party or the Court that they were recording said deeds of trust against the Barn Court Residence, even though this action was pending; and

(4) The Debtor's refusal to respond to a simple request from Union Bank's counsel for basic information regarding the pending sale.

In addition to these serious questions, the balance of hardships tip in favor of Union Bank as mentioned above – the entire Second Claim for Relief would be defeated in the absence of the TRO, while ACP and Coastal have no operations and thus will suffer no apparent harm by having to keep the funds in a blocked account.

Therefore, Union Bank has also satisfied this alternate test, and the Court should accordingly grant the requested TRO and order to show cause re issuance of a preliminary injunction.

## V.

## CONCLUSION

Based on the arguments and authorities set forth above, Union Bank respectfully requests that the Court grant its *ex parte* application and issue an order, substantially in the form attached to the Application as Exhibit A, (1) providing (i) a temporary restraining order that enjoins ACP and Coastal their officers, directors, agents, affiliates, servants, employees, and attorneys, and all persons in active concert or participation with any or all of them (including but not limited to Patricia Brower and Robert Brower, Sr.), who receive notice of this order as set forth below, are hereby restrained and enjoined from transferring, encumbering, dissipating or otherwise disposing in any manner or by any means the net proceeds of the sale of the Barn Court Residence (where "net proceeds" includes the sale price less any payments made out of escrow for ordinary closing costs, broker commissions of six percent or less, and the release of liens other than the liens of the two Coastal Deeds of Trust, or any other lien held by Robert Brower, Sr., Patricia Brower, or any of the other defendants in this lawsuit), and requires Coastal and ACP to place the net proceeds of the Barn Court Residence in a blocked

-11-

account where such proceeds shall remain until the resolution of the Second Claim for Relief in the Complaint; (ii) an order to show cause why a preliminary injunction should not be issued against Coastal and ACP; and (2) granting Union Bank such other and further relief as the Court deems to be just and proper.

Dated: January 24, 2018

                        SHEPPARD, MULLIN, RICHTER & HAMPTON LLP

                        By:    */s/ Michael Lauter*
                              MICHAEL LAUTER

                              Counsel for the Plaintiff,
                              MUFG UNION BANK, N.A.