1  David W. Balch, Esq. (SBN 226519)
   L+G, LLP
2  318 Cayuga Street
   Salinas, CA 93901
3  Tel: 831.754.2444
   Fax: 831.754-2011
4
5  Attorneys for Coastal Cypress Corporation, Wilfred "Butch" Lindley
   Patricia Brower, Patricia Brower Trust, and American Commercial Properties, Inc.
6
7            UNITED STATES BANKRUPTCY COURT
8            NORTHERN DISTRICT OF CALIFORNIA
9

| 10 | *In re Robert Brower, Sr.* | Case No.: 15-50801 (MEH) |
| 11 | Debtor. | Chapter 11 |
| 12 | | |

13  MUFG UNION BANK, N.A.,                    Adv. Proc. No. 17-05044
14
15       Plaintiff,                            **MEMORANDUM OF POINTS AND**
     v.                                        **AUTHORITIES IN OPPOSITION TO**
16                                             **MOTION FOR PRELIMINARY**
     ROBERT BROWER, SR., an individual,        **INJUNCTION**
17   PATRICIA BROWER, an individual,
     COASTAL CYPRESS CORPORATION, a
18   California corporation, COASTAL CYPRESS    Place:   United States Bankruptcy Court
     CORPORATION, a Delaware corporation,               280 South First Street
19   AMERICAN COMMERCIAL PROPERTIES,                    San Jose, CA 95113
     INC., a Nevada corporation, ANTHONY       Judge:   Hon. M. Elaine Hammond
20   NOBLES, an individual, WILFRED "BUTCH"    Crtrm:   3020
21   LINDLEY, an individual, RICHARD
     BABCOCK, an individual, PATRICIA
22   BROWER TRUST, and DOES 1-50,
23       Defendants.
24

25       Defendants Patricia Brower, Patricia Brower Trust, American Commercial Properties, Inc.,

26  Coastal Cypress Corporation (Delaware and California), and Wilfred "Butch" Lindley respectfully

27  submit this Memorandum of Points and Authorities in Opposition to Plaintiff's Motion for a

28  Preliminary Injunction.

---

1

Memorandum of Points and Authorities in Opposition to Preliminary Injunction

# OVERVIEW

Plaintiff's motion is based on one critical error: Plaintiff contends that there is no express written document transmuting the ACP shares from Robert Brower's separate property to Patricia Brower's separate property. That is simply wrong. At the time of the transfer, on November 8, 2000, Robert Brower signed a letter – acknowledged and accepted by Patricia Brower – that he was giving Ms. Brower "all my interest" in ACP.

The transmutation letter was accompanied by a note saying that "ACP is now yours," and a stock transfer certificate stating that Mr. Brower was selling, assigning, and transferring the shares to Patricia Brower. This is all that is required to effectuate a transmutation under California Family Code §§ 850, *et seq*. Indeed, the Schedule G on ACP's post 2000 tax returns listed Patricia Brower as the sole shareholder.

Moreover, Union Bank has not shown that the balance of hardships tips in its favor. In fact, just the opposite is true. Union Bank is a $113 billion company. By contrast, ACP is Patricia Brower's main asset in life. Patricia Brower is still recovering from brain surgery, cannot work, and needs access to her assets to pay for out-of-pocket medical expenses, legal bills, and living expenses.

Union Bank's motion was based on a faulty premise. Union Bank cannot make any showing of likelihood of success on the merits. Moreover, the balance of hardships tips strongly in defendants' favor. For these reasons, the motion for preliminary injunction must be denied.

# STATEMENT OF FACTS

This motion concerns the ownership of American Commercial Properties, Inc. – and more specifically, whether ACP is owned as Robert Brower's separate property, Patricia Brower's (or her Trust's) separate property, or as community property. As shown below, the Patricia Brower Trust is the 100% shareholder of ACP. From 2000 through 2015, Patricia Brower owned 100% of ACP as her sole and separate property, at which time she transferred the ACP shares into her trust.

Plaintiff bears the burden of disproving the Trust's ownership of the ACP shares, insofar as Plaintiff must show "probably likelihood of success" on its claims. Plaintiff has set forth almost no evidence to support its unfounded allegations.

Memorandum of Points and Authorities in Opposition to Preliminary Injunction

A.     <u>Ownership of ACP</u>

On June 11, 1980, prior to their marriage, Robert Brower and Patricia Ann Hendrickson (later Patricia Brower) entered into a notarized pre-marital agreement concerning their pre-marital assets. (Declaration of Robert Brower, Ex. A.) That agreement reflected that, prior to marriage, Mr. Brower had separate property in excess of $1 million. That agreement provided that each party would own all of their property existing as of the date of the agreement, and property obtained afterwards, as separate property. (Agreement, par. 2.) This agreement was executed and notarized in New Jersey and is to be interpreted under New Jersey law.

Prior to 1983, Robert Brower owned a gasoline station as his separate property. In 1983, he sold that station, and with the sale proceeds he purchased the Barn Court residence in Carmel (which is the subject of this ex parte application) using his sole and separate property. He also established ACP. (*See* Declaration of Robert Brower, at ¶ 4.) On June 3, 1983, ACP issued to Mr. Brower 100 shares of stock, which represented the total amount of outstanding and issued shares of ACP. (*See* Declaration of Robert Brower, at ¶ 4.) Mr. Brower owned the ACP shares as his sole and separate property. From June 3, 1983 through November 7, 2000, Mr. Brower was the sole owner of ACP. (*Id.*)

On November 8, 2000, on occasion of their 20th wedding anniversary, Robert Brower transferred to Patricia Brower his entire ownership interest in ACP. (*See* Declaration of Robert Brower, at ¶ 5.) This transfer and change of ownership was evidenced by several documents:

- A letter, executed on and dated November 8, 2000, from Robert Brower to Patricia Brower, stating that "attached is a stock certificate for all my interest in American Commercial Properties, Inc. For your own financial health and well being a wife must feel secure that her home will always be her home. I am proud to give you all my interest in that company to do with as you choose. Happy 20th Anniversary." The letter was signed by Robert Brower and accepted by Patricia Brower. (*See* Declaration of Robert Brower, at ¶ 5 and Ex. C; *see also* Declaration of Patricia Brower, at ¶ 5.)

- On November 8, 2000, Mr. Brower gave me flowers with a note that read, "ACP is now yours." (*See* Declaration of Robert Brower, at ¶ 5 and Ex. D; *see also* Declaration of Patricia Brower, at ¶ 5.)

- On November 8, 2000, Mr. Brower endorsed his ACP stock certificate over to me as my sole

Memorandum of Points and Authorities in Opposition to Preliminary Injunction

and separate property. (*See* Declaration of Robert Brower, at ¶ 5 and Ex. E; *see also* Declaration of Patricia Brower, at ¶ 5.)

- ACP's stock certificate book contained "stubs" which were filled out when stock certificates were issued. The stub for certificate no. 1 shows that 100 shares were issued to Robert Brower on June 3, 1983. The stub for certificate #2 shows that certificate #1, and the shares represented by certificate #1, were transferred to Patricia Brower on November 8, 2000. (*See* Declaration of Robert Brower, at ¶ 5 and Ex. F; *see also* Declaration of Patricia Brower, at ¶ 5.)

- ACP maintains a register of Original and Re-Issued Stock Certificates, which reflects that 100 shares were issued to Robert Brower on June 3, 1983, and re-issued to Patricia Brower on November 8, 2000. (*See* Declaration of Robert Brower, at ¶ 5 and Ex. G; *see also* Declaration of Patricia Brower, at ¶ 5.)

- On November 8, 2000, ACP issued to Patricia Brower, in her sole name, the 100 shares of ACP stock that had previously belonged to Robert Brower. (*See* Declaration of Patricia Brower, at ¶ 5 and Ex. A; *see also* Declaration of Robert Brower, at ¶ 5.)

- On November 20, 2000, ACP held a special meeting of shareholders. At that meeting, it was noted that Patricia Brower held 100 shares of ACP and Robert Brower held zero (0) shares of ACP. (*See* Declaration of Robert Brower, at ¶ 5 and Ex. H; *see also* Declaration of Patricia Brower, at ¶ 5.)

In addition, the shareholder minutes for ACP prior to November 8, 2000 all list Robert Brower the sole shareholder, and all shareholder minutes for ACP after November 8, 2000, list Patricia Brower as the sole shareholder. (*See* Declaration of Robert Brower, at ¶ 6 and Ex. I and J; *see also* Declaration of Patricia Brower, at ¶ 6.)

From and after November 8, 2000, through June 30, 2015, Patricia Brower was the sole shareholder of ACP, and she held those shares as her separate property. (*See* Declaration of Patricia Brower, at ¶¶ 7-8.) On June 30, 2015, Patricia Brower transferred her shares of ACP into the Patricia Brower Trust. (*See* Declaration of Patricia Brower, at ¶¶ 7-8; *see also* Declaration of Robert Brower, Exs. F and G.)

Finally, the Schedule G to ACP's income tax returns post-November 8, 2000, list Patricia Brower as the 100% shareholder. (*See* excerpts from the 2011 tax return, Patricia Brower Declaration, Ex. B.) This tax return was signed by Anthony Gogliucci, the former CFO for ACP. (Patricia Brower Declaration, at ¶ 10.)

B.    Hardship to Patricia Brower If Injunction is Entered

Apart from a $900 per month disability check, Patricia Brower's ownership of ACP represents her only other source of assets and income. She can no longer work. When ACP sells the Barn Court residence and distributes the net proceeds to her, she will use that money to pay for medical bills, legal bills in this lawsuit, and for general living expenses. It would work a gross hardship on Patricia Brower to grant Union Bank's motion for preliminary injunction.

It is critical to note that, on April 1, 2015, Patricia Brower had a lengthy surgery to remove a large tumor in her brain, which covered portions of both her right and left frontal lobes. In November 2017, her current neurologist noted the following:

> Ms. Patricia Brower is my patient at Johns Hopkins. She has a history of a large brain tumor, seizures and memory problems. She has difficulty focusing and periods of confusion. (Declaration of Patricia Brower, at ¶¶ 11-12 and Ex. C.)

## ARGUMENT

### Point I:  Standard of Law for Granting a Preliminary Injunction

A preliminary injunction is an "extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief." *Winter v. Natural Resources Defense Council, Inc.*, 255 U.S. 7, 22 (2008) (emphasis added); *Earth Island Inst. v. Carlton*, 626 F.3d 462, 469 (9th Cir. 2010) (plaintiffs "face a difficult task in proving that they are entitled to this 'extraordinary remedy'"). Under the "traditional test," Plaintiff must establish (1) that he is likely to succeed on the merits; (2) that he is likely to suffer irreparable harm in the absence of preliminary relief; (3) that the balance of equities tip in his favor; and (3) that an injunction is in the public interest. *Winter v. Natural Resources Defense Council, Inc.*, 555 U.S. 7, 20 (2008).

Under the alternative test, Plaintiff must prove that "serious questions going to the merits were raised and the balance of hardships tips sharply in the plaintiff's favor." *Alliance for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1135 (9th Cir. 2011). Under this test, Plaintiff must still prove that there is a likelihood of irreparable injury and that the injunction is in the public interest. *Id.*

Plaintiff has not made a clear showing under either the traditional or alternative test.

Memorandum of Points and Authorities in Opposition to Preliminary Injunction

Case: 17-05044    Doc# 75    Filed: 02/07/18    Entered: 02/07/18 23:11:44    Page 5 of 13

**Point II:  Plaintiff Has Not Established a Likelihood of Success on the Merits**

Under the *Winters* test, likely success on merits is "most important" factor.  *Garcia v. Google, Inc.,* 786 F3d 733, 740 (9th Cir. 2015).  Here, Plaintiff has not made a clear showing of likely success on the merits for the Second Claim for Relief.

The evidence will show that Brower and Patricia Brower entered into an enforceable premarital agreement on June 11, 1980 (the "Brower Premarital Agreement").  The Brower Premarital Agreement waived community property laws and provided that each spouse's property, acquired before or during marriage, was his or her separate property.  Thus, Brower acquired his ACP shares in 1983 as his separate property.  On November 8, 2000, Brower gifted his shares in ACP to Patricia Brower, which then became her separate property.

Plaintiff contests the 2000 gift to Patricia Brower on the grounds that there was no written "express declaration," as required by Fam. C. § 852 to effect a transmutation of property.  Plaintiff is wrong.  As is discussed in detail below, the 2000 stock gift to Patricia Brower was accompanied by a note and a stock assignment, which both satisfy the "express declaration" requirement under Fam. C. § 852.

A.      The Brower Premarital Agreement Provides that the Property
        of Each Spouse Will Remain that Spouse's Separate Property

By its terms, the Brower Premarital Agreement provides that the property of each spouse will remain that party's separate property, free of any claims, community property or otherwise.  *See* Fam. C. §§ 1500, 1612(a)(1); *In re Marriage of Dawley*, 17 Cal.3d 342, 350 (1976) (premarital agreements may validly waive or alter application of community property laws).  Specifically, the Brower Premarital Agreement provides:

> 2.      Each party shall during his or her lifetime keep and retain sole ownership, enjoyment, control and power of disposal of all property of every kind and nature whatsoever now owned or hereafter acquired by such party and all increments thereto, free and clear of any interest, rights or claims of the other (including rights under community property laws)…

> 3.      Each party does hereby waive, relinquish and release any and all right, claim

Memorandum of Points and Authorities in Opposition to Preliminary Injunction

or demand of every kind, nature and description he or she might otherwise acquire or have at any time hereafter in any property whatsoever or against the estate of the other by reason of the marriage to each other (including rights under community property laws)…

(Decl. of Robert Brower, Ex. A at ¶¶ 2-3.)

Moreover, the Brower Premarital Agreement is valid and enforceable under California law. Because it was executed before January 1, 1986, the Uniform Premarital Agreement Act does not apply. Instead, the validity and effect of the Brower Premarital Agreement is governed by the law in effect prior to January 1, 1986. *See* Fam. C. § 1503; *see also* former Civ. C. §§ 5133-5137 (still applicable to pre-1986 premarital agreements). To be valid and enforceable, pre-1986 agreements must be in writing and be executed and acknowledged or proved. *See* former Civ. Code § 5134; *see also* former Civ. Code § 1624(3) (statute of frauds); *Marriage of Shaban*, 88 Cal.App.4th 398, 405 (2001). Here, the Brower Premarital Agreement was in writing, executed by both parties, and acknowledged by the parties' attorneys.

Thus, the Brower Premarital Agreement is an enforceable agreement, which effectively waives California community property laws and provides that each spouse's property shall remain that spouse's separate property. Robert Brower's separate property was used to establish ACP and purchase the Barn Court residence. When ACP originally issued 100 shares to Robert Brower on June 3, 1983, those shares became Brower's separate property. When Brower transferred those shares to Patricia Brower on November 8, 2000, those shares became Patricia Brower's separate property.

B.    Robert Brower Transmuted the ACP Shares From His Separate Property To Patricia Brower's Separate Property Through an Express Written Declaration

Plaintiff contends that the 2000 transfer did not effectively transmute the property into Patricia Brower's separate property because there was no "express declaration" as required by Fam. C. § 852. Plaintiff is wrong. Brower's gifting of the ACP shares to Patricia Brower was supported by two separate writings which both satisfy the requirements of Fam. C. § 852(a).

Spouses may by agreement or transfer, with or without consideration, transmute separate

---

7

Memorandum of Points and Authorities in Opposition to Preliminary Injunction

property of one spouse to separate property of the other spouse. Fam. C. § 850. This process is referred to as "transmutation." *See Marriage of Campbell*, 74 Cal.App.4th 1058, 1061 (1999) ("transmutation is an interspousal transaction or agreement that works a change in the character of the property"). Fam. C. § 852(a) provides that a "transmutation of … personal property is not valid unless made in writing by an express declaration that is made, joined in, or consented to, or accepted by the spouse whose interest in the property is adversely affected."

Under the test articulated by the California Supreme Court, an "express declaration" under Fam. C. § 852(a) does not require the use of the term "transmutation" or any other magic words. See *Estate of MacDonald*, 51 Cal.3d 262, 273 (1990) (interpreting transmutation requirements under Civ. C. § 5110.730, the identically worded predecessor to Fam. C. § 852(a)). However, an "express declaration" must contain "language which expressly states that the characterization or ownership of the property is being changed." *Id.* at 272. Courts may not consider extrinsic evidence to supplement the words of a transmutation agreement. Id. at 272-73 (1990) ("it is just such reliance on extrinsic evidence for the proof of transmutation which the Legislature intended to eliminate in enacting the writing requirement…").

A writing which states that one spouse is giving his or her interest in property to the other spouse satisfies the "express declaration" requirement of Fam. C. § 852(a). *Id.* at 273 (document signed by wife "would have been sufficient [to effect a transmutation] if it had included an additional sentence reading: 'I give the account holder any interest I have in the funds deposited in this account.'"); *see also In re Marriage of Barneson*, 69 Cal.App.4th 583, 593-94 ("The MacDonald test is not difficult to meet … Here, if [husband] had truly intended a transmutation, he could have added to his directions to transfer stock a sentence indicating he was giving his interest in the stocks to [wife].").

In this case, Robert Brower gifted his stock in ACP to Patricia Brower on November 8, 2000 as a 20th wedding anniversary present. Brower's stock gift was accompanied by a note (the "Gift Note"), signed by Brower, which stated:

> Attached is a stock certificate for all of my interest in American Commercial Properties, Inc. For your own financial health and well being a wife must feel secure that her home will always be her home. I am proud to give you all my interest in that company to do with as you choose. Happy 20th anniversary.

Memorandum of Points and Authorities in Opposition to Preliminary Injunction

1  (Decl. of Robert Brower, ¶ 5 and Ex. C; Decl. of Patricia Brower, ¶ 5 .)

2       Brower's stock gift was also accompanied by a written assignment (the "Stock Assignment"),

3  dated November 8, 2000 and executed by Brower, which stated:

> For value received I hereby sell, assign and transfer unto Patricia A. Brower 100
> shares represented by the within certificate and do hereby irrevocably constitute and
> appoint Patricia A. Brower attorney to transfer the said shares on the share register
> of the within named corporation, with full power of substitution in the premises.

7  (Decl. of Robert Brower, ¶ 5 and Ex. E; Decl. of Patricia Brower, ¶ 5 .)

8       Both the Gift Note and the Stock Assignment satisfy the statutory requirements for

9  transmutation under Fam. C. § 852(a). <u>First</u>, both the Gift Note and Stock Assignment are in

10  writing. <u>Second</u>, both were signed by Robert Brower, whose interest in the ACP stock was adversely

11  affected by his gift to Patricia Brower.

12       <u>Third</u>, the ACP Gift Note was an "express declaration" under the test articulated in

13  *MacDonald* and *Barneson* because it expressly states that Brower is "proud to give [Patricia Brower] all

14  [his] interest in [ACP] …" *Compare MacDonald*, 51 Cal.3d at 273 (transmutation would have been

15  effective if it stated: "I give the account holder any interest I have in the funds deposited in this

16  account."); *Barneson*, 69 Cal.App.4th at 594 (husband could have included a sentence "indicating he

17  was giving his interest in the stocks to [wife]" to effect transmutation).

18       Similarly, the Stock Assignment is an "express declaration" because it "contains a clear and

19  unambiguous expression of intent to transfer an interest in the property." *Estate of Bibb*, 87

20  Cal.App.4th 461, 468 (2001). *Estate of Bibb* is analogous to the present case. In that case, the husband

21  executed a grant deed which stated that he "granted" the property to himself and his wife as joint

22  tenants. The court analogized the word "grant" to the word "give" used in the *MacDonald* test, since

23  "grant" is the historically operative word for transferring interests in real property. Here, the Stock

24  Assignment uses the analogous terms "sell, assign and transfer" and therefore unambiguously

25  expresses Brower's intent to transfer the ACP shares to Patricia Brower, much like the grant deed in

26  Estate of Bibb.

27       Because both the ACP Gift Note and the Stock Assignment satisfy the requirements of Fam.

28  C. § 852(a), Brower effectively transmuted his separate property interest in ACP into Patricia

Memorandum of Points and Authorities in Opposition to Preliminary Injunction

1   Brower's separate property.

2       Plaintiff argues that under *In re Marriage of Barneson*, 69 Cal.App.4th 583 (1999) and *In re Cecconi*,

3   366 B.R. 83 (Bankr. N.D.Cal. 2007), a mere notation in a stock ledger, effectuating a transfer of

4   stock, is in and of itself not sufficient to effectuate a transmutation.  Both cases go on to note,

5   however, that a further statement concerning a change in "ownership" will suffice.  *Barneson*, 69

6   Cal.App.4th at 594; *Cecconi*, 366 B.R. at 132.  In the present case, Robert Brower's letter ***does***

7   reference a change in ownership, and as such, the cases cited by Plaintiff actually support Defendants'

8   position.

9

10              **Point III:  Plaintiff Has Not Made a Showing of Irreparable Harm**

11      Plaintiff alleges that it has satisfied the "irreparable injury" test by claiming that it has

12  concerns over dissipation of assets.  This argument is unfounded, for four reasons.  First, Plaintiff

13  has conceded that one-half of the sale proceeds from any sale of the Barn Court residence will be

14  paid back to Coastal Cypress Corporation – and thus will be potentially available to Plaintiff, if it is

15  successful on its claims against Coastal and its shareholders.  Plaintiff's concerns about dissipation are

16  over-stated.

17      Second, the only case cited by Plaintiff is *FDIC v. Garner*, 125 F.3d 1272. That case involved

18  the FDIC, a fact that the *Garner* court found critical, insofar as the FDIC is Congressionally-tasked

19  with preventing the dissipation of property and assets.  Plaintiff has not cited to any such legislative

20  mandate in this case.  *See id.* at 1279.  Third, Plaintiff in the *Garner* court "exhaustively detailed" its

21  concerns over dissipation of assets.  Such detail is sorely lacking in this case.

22      Fourth, despite the involvement of the FDIC and the "exhaustive detail" concerning

23  dissipation, the Ninth Circuit affirmed due to the "substantial deference" it must give the finder of

24  fact, *id.* at 1280, implying that the Ninth Circuit may have ruled differently under a *de novo* review.

25  For all the reasons state above, *Garner* offers only weak support for Plaintiff's position – and it is

26  striking that *Garner* was the only case cited.

27  / / /

28  / / /

---

10

Memorandum of Points and Authorities in Opposition to Preliminary Injunction

## Point IV: The Balance of Hardships Tips in Defendants' Favor

The balance of hardships tips in Defendants' favor, for two reasons. <u>First</u>, Plaintiff is seeking an "asset freeze" to ensure collectability of a judgment against Robert Brower. But, there has been no adjudication that Robert Brower has any interest in ACP – and Union Bank has not provided any evidence to support that allegation. Where Plaintiff is seeking a simple asset freeze to ensure collectability of a judgment, a preliminary injunction is inappropriate. *See Dateline Exps., Inc. v. Basic Constr., Inc.*, 306 F.3d 912, 914 (9th Cir. 2002); *see also Grupo Mexicano de Desarrollo, S.A. v. Alliance Bond Fund, Inc.,* 527 U.S. 308, 329-300, 333 (1999).

<u>Second</u>, in assessing the relative hardships to each party, the Court must consider the impact the injunction may have on the respective parties. *Sardi's Restaurant Corp. v. Sardie*, 755 F.2d 719, 726 (9th Cir. 1985). The relative size and strength of each party is pertinent to this inquiry. *Id.*; *see also Internat'l Jensen, Inc. v. Metrosound U.S.A., Inc.*, 4 F.3d 819, 827 (9th Cir. 1993). In both *Sardi's Restaurant* and *Metrosound*, the Court denied the request for an injunction by a much larger, more established plaintiff, reasoning that plaintiff in those cases were better able to bear the risk of loss.

In the present case, a simple internet search reveals that Union Bank's holding company has $113.7 billion in assets, and Union Bank belongs to a Japanese banking consortium that has $2.3 trillion in assets.

By contrast, Defendant Patty Brower has limited income, and ACP is her main asset. One half of ACP's property is already pledged to Coastal Cypress. Of the remaining value in ACP, (i) Ms. Brower needs to pay for out-of-pocket healthcare expenses following her brain tumor surgery, (ii) ACP, Ms. Brower, and the Brower Trust must pay for legal bills in these proceedings; and (iii) Ms. Brower needs money to pay normal life expenses. Cutting off her access to ACP will significantly jeopardize Ms. Brower.

## Point V: Plaintiff Has Cited No Support for its Claims Regarding Public Benefit

Plaintiff's arguments concerning the "public benefit" from an injunction consists solely of "barren statements made without any reference to persuasive legal citations." This is wholly insufficient, as colorfully noted by a recent decision from the Southern District of California:

11

Case: 17-05044    Doc# 75    Filed: 02/07/18    Entered: 02/07/18 23:11:44    Page 11 of 13

At most, the three to four sentences of analysis provided by Lumetta in these sections amount to nothing more than Lumetta's own conclusory speculations. Thus, it is no surprise that the Court is unable to conclude that an OSC should have been issued. Accordingly, as the Court is not willing to act as counsel for Lumetta and furnish persuasive case law to support her assertions on appeal, the Court finds these arguments regarding consent and that an OSC is required by law to be waived.

*See Lumetta v. Arborlake Homeowners Ass'n*, 2017 U.S.Dist.LEXIS 72918, at *14-15 (S.D.Cal. May 12, 2017).

Similarly, in the present case, Plaintiff has provided three sentences of "barren statements" without any citation to legal authority. This point has been waived by Plaintiff.

**Point VI: Plaintiff Cannot Meet the Alternative Test for an Injunction**

Under the alternative test, Plaintiff must prove that "serious questions going to the merits were raised and the balance of hardships tips sharply in the plaintiff's favor." *Alliance for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1135 (9th Cir. 2011). This is not a separate test, but rather is a different formulation "on a single continuum: the less certain the district court is of the likelihood of success on the merits, the more plaintiffs must convince the district court that the public interest and balance of hardships tip in their favor." *AFL v. Chertoff*, 552 F.Supp.2d 999, 1006 (N.D.Cal. 2007).

As noted above, Plaintiff has cited to no evidence supporting its claim that Robert Brower's separate property was not transmuted to become Patricia Brower's separate property. As such, it has made ***no showing*** of success on the merits. Moreover, the balance of hardships tilts strongly in Defendants' favor, for the reasons noted above (*see supra* at Point IV). Because Plaintiff cannot show either (i) serious questions going to the merits, or (ii) a balance of hardships that tips sharply in its favor, the injunction must be denied.

/ / /

/ / /

Memorandum of Points and Authorities in Opposition to Preliminary Injunction

## CONCLUSION

For the foregoing reasons, Defendants respectfully request that Plaintiff's Motion for

a Preliminary Injunction be denied.

Dated:  February 7, 2018

JRG, Attorneys at Law

*/s/ David W. Balch*

By: _____

David W. Balch

Attorneys for for Coastal Cypress

Corporation, Wilfred "Butch" Lindley

Patricia Brower, Patricia Brower Trust, and

American Commercial Properties, Inc.

Memorandum of Points and Authorities in Opposition to Preliminary Injunction