

The following constitutes
the order of the court. Signed February 8, 2018

_____
**M. Elaine Hammond**
**U.S. Bankruptcy Judge**

# UNITED STATES BANKRUPTCY COURT
# NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| In re<br>Robert S. Brower, Sr.,<br><br>              Debtor.<br><br>MUFG Union Bank, N.A.,<br>              Plaintiff.<br>v.<br>Robert S. Brower, Sr., et al,<br>              Defendant. | Case No. 15-50801 MEH<br>Chapter 11<br><br><br><br><br>Adv. No. 17-5044<br><br><br><br>Date:      January 9, 2018<br>Time:    11:00 a.m.<br>Ctrm:    3020 (San Jose) |

<u>ORDER REGARDING MOTIONS FOR JURY TRIAL</u>

      Defendants request, by three separate motions, a jury trial on the first and second claims for relief asserted in the amended complaint. For the reasons stated herein, the court finds Defendants are entitled to a jury trial but that Defendant Robert Brower ("Brower") waived his right to a jury trial through the filing of his bankruptcy case.

      Federal Rules of Civil Procedure ("FRCP") 38 (Right to a Jury Trial; Demand) and 39 (Trial by Jury or by the Court) are made applicable in adversary proceedings pursuant to

1

Federal Rule of Bankruptcy Procedure ("FRBP") 9015.  FRCP 38 preserves the right of trial by jury if the demand is timely made in accordance with FRCP 5(d).  Each of the Defendants filed a demand for a jury on the First and Second Claims for Relief on November 3, 2017, the fourteenth day following the answer filed by Defendants Patricia Brower ("Patricia"), American Commercial Properties, Inc. ("ACP"), and The Patricia Brower Trust ("Patricia Trust").  As such, the jury demand was timely made.

Having been demanded, a jury trial is required on these claims, unless the court finds that there is no federal right to a jury trial on these issues.  FRCP 39(a).  Plaintiff disputes Defendants' rights to a jury trial and Defendants did not consent to entry of a final judgment by this court.  In order to reduce cost and delay, the parties entered into a stipulation (1) setting a briefing schedule on the jury trial rights, (2) agreeing that any rulings on the First and Second Claims for Relief will be treated as proposed findings of fact and conclusions of law as described in FRBP 9033, and that the procedures set forth in Bankruptcy Local Rule 9033-1 will apply, and (3) agreeing that no jury trial right exists as to the Third and Fourth Claims for Relief and that the Bankruptcy Court has authority to issue a final ruling with respect to these claims.

Motions for jury trial were filed, briefed, and opposed in accordance with parties' stipulated schedule.  A hearing on the motions was held on January 9, 2018, at the conclusion of which the matters were taken under submission.

The parties request a ruling on whether there is a right to a jury trial on claims seeking declaratory relief as to the ownership interest of Brower's bankruptcy estate in three corporations:  Coastal Cypress Corporation (a California corporation) ("Coastal California"), Coastal Cypress Corporation (a Delaware corporation) ("Coastal Delaware"), and ACP. The Seventh Amendment preserves the right to trial by jury in "suits at common law," suits that would historically have been tried in courts of law as opposed to courts of equity.  *Branch Banking & Trust Co. v. D.M.S.I., LLC,* 871 F.3d 751, 753 (9th Cir. 2017).  The Supreme Court set forth the analysis to determine whether a suit is legal or equitable in *Granfinanciera, S.A. v. Nordberg*, 492 U.S. 33, 42 (1989).  First, the trial court must "compare the statutory

Case: 17-05044    Doc# 81    Filed: 02/08/18    Entered: 02/09/18 14:31:39    Page 2 of 12

action to 18th-century action brought in the court of England prior to the merger of the courts of law and equity." *Granfinanciera*, 492 U.S. at 42 (quoting *Tull v. United States*, 481 U.S. 412, 417 (1987). Second, courts "examine the remedy sought and determine whether it is legal or equitable in nature." *Id.* (quoting *Tull*, 481 U.S. 417-18). "The second stage of this analysis is more important that the first." *Id.*

In reaching the determination of whether an action is legal or equitable, the court must look to the substance of the claims and relief sought rather than the labels applied by the parties. *Dairy Queen v. Wood*, 369 U.S. 469, 477-78 (1962).

### 1. Comparison to Suits at Common Law

The determination of whether a claim would have been legal or equitable at common law is one of the most perplexing questions faced by courts. *See* 9 C. Wright & A. Miller Federal Practice and Procedure: Civil 3d § 2302. In 1791, at the time the Bill of Rights was ratified, the division between law and equity in English courts was vague. *Id.* "Further, the fusion of law and equity into a single civil action with the adoption of the Federal Rules of Civil Procedure in 1938, destroyed whatever jurisdictional and procedural distinctions might have existed between law and equity for the purpose of applying the Seventh Amendment." *Id.* Thus, the determination of a jury trial right is one of the last remaining areas whether the distinction between law and equity continues to exist.

The claims asserted are based on statutes that did not exist at common law. Specifically, declaratory relief is sought pursuant to the federal Declaratory Judgment Act (28 U.S.C. §§ 2201, 2202) and Bankruptcy Code provisions creating and defining the extent of the bankruptcy estate (11 U.S.C. § 541). As such, the court must review what 18th-century English actions are analogous. Not surprisingly, the parties offer different alternatives.

Defendants assert that this is an action for the recovery of specific property, and as such is an action at law. In so doing, they rely on the Supreme Court's language in *Whitehead v. Shattuck*, 138 U.S. 146, 151 (1891): "Where an action is simply for recovery and possession of specific, real or personal property, or for the recovery of a money judgment, the

3

action is one at law." *See Gelinas v. Buffum*, 52 F.2d 598, 599 (9th Cir. 1931) (quoting *Whitehead*); *Eberhard v. Marcu*, 530 F.3d 122, 136 (2d Cir. 2008) (same).

Relying on Ninth Circuit authority, Defendants further argue that the present action is similar to common law replevin, which authorizes a writ for recovery of property pending a determination of ownership. *Gelinas*, 52 F.2d at 599. *Gelinas* involved a dispute over shares of stock, but is otherwise distinguishable, primarily because the underlying factual allegations support a claim for recovery of a fraudulent transfer, recognized as an action at law. *Accord Granfinanciera*, 492 U.S. at 47-49.

In contrast, Plaintiff asserts that the declaratory relief actions seek to resolve claims to title and are analogous to quiet title actions tried at equity. As cited, *Thomson v. Thomson*, 7 Cal. 2d 671, 681 (1936), provides that "[i]n a simple action to quiet title when the possession of property is not involved, it is an equitable action." But *Thomson* continues on to address the circumstances where quiet title involves possession and the matter thereby becomes triable at law entitling the parties to a jury trial. This includes cases where the "plaintiff is out of possession and seeks by an action to quiet title to recover possession." *Id.* This finding is similar to the Supreme Court's analysis of a Nebraska statute in *Whitehead* where it stated: "There can be no controversy at law respecting the title to or right of possession of real property, when neither of the parties is in possession. An action at law, whether in the action form of ejection or in the form now commonly used, will lie only against a party in possession." 138 U.S. at 156-57.

Upon review of the common law rights, I find that the first test indicates that this action is more similar to a common law right of action because the right which Plaintiff seeks to establish is the bankruptcy estate's ownership of shares of stock in Coastal California, Coastal Delaware, and ACP that are currently held by Babcock, Lindley, Nobles, and Patricia. As such, the first test weighs in favor of an action at law.

**2. Whether the remedy sought is an action at equity or at law**.

The second *Granfinanciera* factor requires a review of the remedy sought to determine whether it is legal or equitable. This determination is more important. *Granfinanciera*, 492 U.S. at 42. There is no defined rule as to whether a remedy is legal or equitable in nature, so instead, courts have drawn general distinctions between the two forms of relief.

"Declaratory relief may be legal or equitable depending on the basic nature of the underlying issues." (*Golden v. Kelsey-Hayes Co. (In re Golden)*, 73 F.3d 648, 661 (6th Cir. 1996) (quoting *United States v. New Mexico*, 642 F.2d 397, 400 (10th Cir. 1981)). Therefore, the first step in deciding whether there is a right to a jury trial in a declaratory judgment action is to determine what kind of action would have come to the court if there were no declaratory judgment procedure. 9 Wright & Miller § 2313.

a. First Claim for Relief

In the First Claim, Plaintiff seeks a declaratory judgment that Brower and Patricia (or in her stead the Patricia Trust) own 100% of the equity interests in Coastal California and Coastal Delaware (collectively referred to herein as the "Coastal Equity") as community property, and that defendants Nobles, Babcock, and Lindley have no interest in these entities. Plaintiff further requests a determination that Brower's bankruptcy estate includes all of the interest held by him and Patricia (or the Patricia Trust) pursuant to Bankruptcy Code § 541(a)(1) and (a)(2).

Plaintiff asserts that if this were not brought as a declaratory action, it would be an equitable action to quiet title to property that Brower enjoys the use of but claims not to own. To that end, Plaintiff intends to rely upon alter ego and veil piercing theories. Generally, alter ego is a means of extending liability for a judgment where an individual uses a corporation to conduct personal business, and fraud is perpetrated on an entity dealing with the corporation. If established, the corporate veil may then be pierced to allow for recovery against the individual's assets as well as the corporations. *See* Black's Law Dictionary (10th ed. 2014). It

is well-settled that the alter ego doctrine is equitable, as to which there is no right to a jury trial. *Dow Jones Co. v. Avenel*, 151 Cal. App. 3d 144, 147-148 (Cal. Ct. App. 1984).

Defendants assert that in considering the remedy sought, the court should consider the fundamental purpose of the First Claim, rather than any state law theories that may underlie the analysis of whether the Coastal Equity is property of Debtor's bankruptcy estate. They assert that if this action had not been brought for declaratory relief, it would be an action for recovery of the Coastal Equity from the Defendant shareholders, and as such it is an action at law. Defendants rely on two cases from the Second Circuit. In *Hassett v. Bancohio Nat'l. Bank (In re CIS Corp.)*, 172 B.R. 748 (S.D.N.Y. 1994), the chapter 7 trustee contended the action related to the characterization of sales transactions as financing agreements and was therefore equitable in nature. However, the district court found that "the basic nature of the suit is one to recover property for the estate" and sounded in law. *Id*. at 762. Similarly, in *Eberhard v. Marcu*, 530 F.3d 122, 135-36 (2d Cir. 2008), the circuit court found that a party intervening in an action to claim ownership and recover stock claimed by a receiver was an action at law and entitled to a jury trial. Neither of these cases focused solely on the determination of an estate's interest in property, and therefore are not directly on point. However, when reviewing the remedy both courts focused on what the moving party ultimately sought—possession and control of specific personal property.

In response to Defendants' argument, Plaintiff alleges the First Claim case is different because the complaint does not include a specific demand for recovery of the personal property as § 542 provides the necessary tools for recovery and enforcement if the Coastal Equity is determined to belong to Brower. It is undisputed that Plaintiff's purpose in bringing the First Claim is to wrest control of the Coastal Equity from Defendants for the benefit of the estate. This intention is manifest in the plan of reorganization proposed and confirmed by Plaintiffs in Brower's chapter 11 case (the "Plan").[1] The Plan provides that "Once the Court rules on the scope of the estate in [this adversary proceeding], the Plan envisions that

---

[1] *In re Robert Brower, Sr.*, Case No. 15-50801, docket number 233 (third amended chapter 11 plan of reorganization) and 236 (order confirming plan).

marketing of the Debtor's assets will take place," resulting in liquidation by a trustee, with the proceeds disbursed in accordance with the plan terms.[2]

As such, I find that Plaintiff seeks in the First Claim a determination of the extent of the Coastal Equity stock owned by Nobles, Babcock, and Lindley, and through related Code provisions seeks to divest them of ownership, possession, or control. For this reason, I find that the second *Granfinancera* factor weighs in favor of Defendants' right to a jury trial on the First Claim.

b. Second Claim

In the Second Claim, Plaintiff seeks a declaratory judgment that Brower and Patricia own 100% of the equity interest in ACP (the "ACP Shares") as community property and that Brower's estate includes all of the interest held by Brower and Patricia pursuant to § 541(a)(1) and (a)(2). Again, "[d]eclaratory relief may be legal or equitable depending on the basic nature of the underlying issues." *In re Golden*, 73 F.3d at 661.

Plaintiff asserts there are two primary issues to be determined in connection with the Second Claim: (1) whether "Debtor effectively transmuted community property or his separate property (the ACP Shares) into property owned solely and separately by his wife;" and (2) whether the principles of alter ego would bring the ACP Shares into Debtor's bankruptcy estate.

The remedy Plaintiff seeks through declaratory relief is a determination that Brower failed to satisfy the requirements of California Family Code § 852 for a valid transmutation of community property into Patricia's separate property. The California legislature enacted § 852 in order to solve the problem of unreliable evidence in transmutation cases. *See In re Marriage of Bonvino*, 241 Cal. App. 4th 1411, 1428 (Cal. Ct. App. 2015). "The statute requires formalities to increase certainty that a transmutation occurred." *Id.* The transmutation statute applies to property transactions between spouses and supersedes the evidentiary title presumption if the express requirements of § 852 are not met. *Id.* at 1428-29.

---
[2] *In re Robert Brower, Sr.*, Case No. 15-50801, Dkt # 233, p. 2, lines 8-21.

In essence, there is a presumption that separate or community property has not altered its character unless there is a signed, written document containing an express declaration of the change in ownership. If there is no writing supporting Patricia's position, or the contents of the writing are undisputed, or the facts are not otherwise in dispute, then whether the writing satisfies the statutory requirements is appropriately made by the court.

As with the First Claim, the Second Claim seeks a determination of whether the ACP Shares are separately owned by Patricia or the Patricia Trust, and through related Code provisions seeks to divest her of exclusive ownership, possession, or control if they are community property. Matters brought under the California Family Code are usually tried without a jury but there is no indication that a jury trial is precluded where factual disputes exist as to the ownership interest of spouses in property. As such, I find that the second *Granfinancera* factor weighs in favor of Defendants' right to a jury trial on the Second Claim.

### 3. Jury Trial Right asserted by Babcock and Nobles

In addition to the communal arguments raised by Defendants and addressed below, Babcock and Nobles assert the right to a jury trial on the basis that the First Claim seeks recovery of a fraudulent transfer. This misstates the cause of action which seeks a determination of whether assets are property of the estate pursuant to § 541. In essence, Plaintiff seeks the opposite of a fraudulent transfer – a determination that Brower did not transfer certain equity interests to Babcock, Nobles, and Lindley. As this argument is without merit, and Babcock and Nobles prevail on other grounds, no further analysis is required.

**Whether Debtor waived his right to a jury trial**:

Having determined that there is a right to a jury trial on the First and Second Claim, the next issue is whether any of the Defendants waived their right. In *Granfinanciera*, the Supreme Court affirmed the right to a jury trial for an action to recover a fraudulent transfer based upon the factors set forth above. Further, it held that because the underlying defendant in the fraudulent transfer proceeding had not filed a proof of claim in the bankruptcy case, the

Case: 17-05044   Doc# 81   Filed: 02/08/18   Entered: 02/09/18 14:31:39   Page 8 of 12

creditor had not submitted to equitable proceedings in bankruptcy, and therefore, had not waived the right to a jury trial. *See Granfinanciera*, 492 U.S. at 58-59. Consistent with its prior rulings, the Supreme Court held that "under the Seventh Amendment, a creditor's right to a jury trial . . . depends upon whether the creditor has submitted a claim against the estate." *Id.* at 58. If a claim is not filed, then the adversary proceeding "does not arise 'as part of the process of allowance and disallowance of claim.' Nor is that action integral to the restructuring of debtor-creditor relations." *Id.* (quoting *Katchen v. Landy*, 382 U.S. 323, 335 (1966), where the court adopted the rationale previously articulated as "By presenting their claims respondents subjected themselves to all the consequences that attach to an appearance . . .").

None of the Defendants filed proofs of claim in Brower's underlying Chapter 11 case, thus, no defendant waived their right to a jury trial on this ground.

Yet, this adversary proceeding and the confirmed Chapter 11 plan of reorganization are a result of Brower's voluntary filing of a petition for relief under the Bankruptcy Code. As recognized by the Ninth Circuit, once a party chooses to enter a bankruptcy case, "it subjected itself to the bankruptcy court's equitable power and waived any right to a jury trial for the resolution of disputes vital to the bankruptcy process of allowance and disallowance of the claims, including the power of the bankruptcy court to inquire into the validity of the claim." *In re Conejo Enterprises, Inc.*, 96 F.3d 346, 354 n.6 (9th Cir. 1996). The Ninth Circuit Bankruptcy Appellate Panel more fully addressed waiver by a debtor in *In re Hickman*, 384 B.R. 832 (9th Cir BAP 2008). The BAP relied upon the Supreme Court's analysis in *Granfinanciera* that the bankruptcy court's equitable power extends to the resolution of counterclaims, even though they may be legal in nature and would otherwise have entitled the creditors to a jury trial had they not filed a claim against the estate, because the claims are "integral to the restructuring of the debtor-creditor relations," thereby, transforming a legal issues into an equitable issue." *Hickman*, 384 B.R. at 838-39 (quoting *Granfinanciera*, 492 U. S. at 58). The "crucial event is the act of coming into a court of equity to seek 'restructuring of the debtor-creditor relationship through the bankruptcy court's

*equity jurisdiction.'" Hickman*, 384 B.R. at 839 (quoting *Langenkamp v. Culp*, 498 U.S. 42, 44 (1990) (emphasis in *Langenkamp*)). Or more succinctly, the debtor has no jury trial right in the adversary proceeding "because he is subject to the Supreme Court's subject-themselves-to-the-court's-equitable-power analysis." *Hickman*, 384 B.R. at 839.

In filing his Chapter 11 petition, Brower caused the equitable bankruptcy case to come into existence. All property of the debtor and property of the estate is thereby subject to the exclusive jurisdiction of the court. 28 U.S.C. § 1334(e). The commencement of a case creates an estate comprised of all legal and equitable interests of the debtor in property. § 541(a)(1). The First and Second Claims seek a determination of whether certain asserts are property of the estate pursuant to this code section. Without a doubt, actions to determine the extent of estate assets are integral to the restructuring of debtor-creditor relations. There is no purpose in allowing and prioritizing claims without the intent to provide an equitable distribution of estate assets. This principle is recognized most clearly in "no asset" chapter 7 cases. When a chapter 7 case is filed, notice of the filing and the initial meeting of creditors is sent to all potential creditors of the estate. The notice also provides that proofs of claim are not required to be filed until a chapter 7 trustee determines there are non-exempt assets which may be administered for the benefit of creditors. Once the trustee determines that it is an asset case, an additional notice is sent to creditors with a deadline for filing proofs of claim. The existence of estate assets is the foundation upon which the claims allowance process is built.

The case relied upon by Brower is not to the contrary. In *Dunmore v. United States*, 358 F.3d 1107 (9th Cir. 2004), the court found that a debtor who filed a complaint seeking a tax refund almost two years after obtaining a chapter 7 discharge had not waived his right to a jury trial on the tax refund claim by requesting that the trustee abandon the claims post-discharge. Initially, Dunmore obtained a discharge in a "no asset" chapter 7. After asserting the tax refund claim in district court, Dunmore returned to bankruptcy court and sought to have the chapter 7 estate abandon its interest in the claim. The trustee did not oppose abandonment – because he considered the tax refund claims to be frivolous – and an order

granting abandonment was entered. *Dunmore*, 358 F.3d at 1111. Ultimately, the Ninth Circuit determined that Dunmore had not waived his statutory right to a jury trial because the tax refund claim was not "integral to the bankruptcy process." In not opposing abandonment, the chapter 7 trustee made exactly the same determination.

In contrast, Plaintiff's confirmed Plan in Brower's chapter 11 case provides for the distributions on allowed claims to be funded by the liquidation of any assets determined to belong to Brower through this adversary proceeding. The claims asserted here are the lynchpin to restructuring of the debtor-creditor relations between Brower and his creditors. As such, any right of Brower to a jury trial on the First and Second Claims is waived as a result of his voluntary filing of a bankruptcy petition.[3]

**Procedure for Jury Trial**

In accordance with Bankruptcy Local Rule 9015-2, this court shall retain jurisdiction over this adversary proceeding through resolution of all pre-trial motions, including dispositive motions. Unless the parties consent to a jury trial in the bankruptcy court, when the matter is ready for trial, I will provide a certification to the District Court with a report of the status of the proceeding and a recommendation on when the matter would be suitable for withdrawal from the Bankruptcy Court. Upon such certification, the parties who have demanded a jury trial shall promptly file a motion in accordance with BLR 5011-2(a) for withdrawal of the reference of the proceeding to be tried to a jury. The motion and certification shall thereafter be handled in the District Court.

**END OF ORDER**

---

[3] To be clear, this is not a "waiver" akin to failing to timely demand a jury, *see* FRCP 38(d), but a result of electing to "pursue a remedial scheme in which a jury trial is not available and agrees to be bound by the result." *Hickman*, 384 B.R. at 839 n. 4.

# COURT SERVICE LIST

**Via ECF:**

All ECF Recipients

Case: 17-05044    Doc# 81    Filed: 02/08/18    Entered: 02/09/18 14:31:39    Page 12 of 12