SHEPPARD, MULLIN, RICHTER & HAMPTON LLP
A Limited Liability Partnership
Including Professional Corporations
STEVEN B. SACKS, Cal. Bar No. 98875
ssacks@sheppardmullin.com
MICHAEL M. LAUTER, Cal. Bar No. 246048
mlauter@sheppardmullin.com
ISAIAH Z. WEEDN, Cal. Bar No. 229111
iweedn@sheppardmullin.com
Four Embarcadero Center, 17th Floor
San Francisco, CA 94111-4109
Telephone: 415-434-9100
Facsimile: 415-434-3947

Attorneys for Plaintiff,
MUFG UNION BANK, N.A.

# UNITED STATES BANKRUPTCY COURT

# NORTHERN DISTRICT OF CALIFORNIA

# SAN JOSE DIVISION

| | |
|---|---|
| In re<br><br>ROBERT BROWER, SR.,<br><br>        Debtor. | Case No. 15-50801<br><br>Chapter 11 |
| MUFG UNION BANK, N.A.,<br><br>        Plaintiff,<br>v.<br><br>ROBERT BROWER, SR., an individual, PATRICIA BROWER, an individual, COASTAL CYPRESS CORPORATION, a California corporation, COASTAL CYPRESS CORPORATION, a Delaware corporation, AMERICAN COMMERCIAL PROPERTIES, INC., a Nevada corporation, ANTHONY NOBLES, an individual, WILFRED "BUTCH" LINDLEY, an individual, RICHARD BABCOCK, an individual, PATRICIA BROWER TRUST, and DOES 1-50,<br><br>        Defendants. | Adv. Proc. No. 17-05044<br><br>**MUFG UNION BANK, N.A.'S REPLY REGARDING ORDER TO SHOW CAUSE WHY PRELIMINARY INJUNCTION SHOULD NOT BE ISSUED**<br><br>Date: February 15, 2018<br>Time: 10:30 a.m.<br>Place: United States Bankruptcy Court<br>      280 South First Street<br>      San Jose, CA 95113-3099<br>Judge: Hon. Elaine Hammond<br>Crtrm: 3020 |

## TABLE OF CONTENTS

Page(s)

I. INTRODUCTION ................................................................................................ 1

II. ARGUMENT ....................................................................................................... 4

    A. Defendants' Likelihood of Success Arguments Are Based on Materials They Failed to Produce in Discovery on Two Separate Occasions, and Thus Should Be Disregarded. ................................................. 4

    B. The Other Bases for Defendants' Likelihood of Success Argument Fail. .................................................................................................................. 7

    C. At a Minimum, the Preliminary Injunction Should Be Granted Under the Alternative Test. ............................................................................................ 9

    D. The Public Interest is Served By Preserving ACP's Assets for the Benefit of the Estate While Litigation Proceeds. .......................................... 13

III. CONCLUSION ................................................................................................. 14

# TABLE OF AUTHORITIES

**Page(s)**

## FEDERAL CASES

*Connecticut General Life Insurance Company v. New Images of Beverly Hills*
   321 F.3d 878 (9th Cir. 2003) .................................................................................... 11

*Corbin v. Corbin*
   429 F Supp 276 (M.D. Ga. 1977) ............................................................................. 11

*Dateline Exports, Inc. v. Basic Construction, Inc.*
   306 F.3d 912 (9th Cir. 2002) .................................................................................... 12

*Dexia Credit Local v. Rogan*
   602 F.3d 879 (7th Cir. 2010) .................................................................................... 12

*Elliott v. Kiesewetter*
   98 F.3d 47 (3d Cir. 1996) ......................................................................................... 11

*In re Excel Innovations, Inc.*
   502 F.3d 1086 (9th Cir. 2007) ................................................................................ 3, 9

*In re Focus Media, Inc.*
   387 F.3d 1077 (9th Cir. 2004) ............................................................................ 11, 13

*In re Gathering Restaurant, Inc.*
   79 B.R. 992 (Bankr. N.D. Ind. 1986) ........................................................................ 13

*Grupo Mexicano de Desarrollo, S.A. v. Alliance Bond Fund, Inc.*
   527 U.S. 308 (1999) .................................................................................................. 12

*In re Integrated Health Servs., Inc.*
   281 B.R. 231 (Bankr. D. Del. 2002) ......................................................................... 13

*Lumetta v. Arbolake Homeowners Ass'n*
   2017 U.S. Dist. LEXIS 72918 (S.D. Cal. May 12, 2017) ........................................ 14

*Productos Carnic, S.A. v. Central American Beef and Seafood Trading Co.*
   621 F.2d 683 (5th Cir. 1980) .................................................................................... 11

*In re SK Foods, L.P.*
   2011 WL 10723414 (Bankr. E.D. Cal. 2011) .......................................................... 11

*Teamsters Freight Local Union No. 480 v. Southern Forwarding Co.*
   424 F Supp 11 (M.D. Tenn. 1976) ........................................................................... 11

*Tex. Instruments Inc. v. Powerchip Semiconductor Corp.*
　2007 WL 1541010 (S.D.N.Y. May 24, 2007) .................................................................. 6

*Unique Industries, Inc. v. 965207 Alberta Ltd.*
　764 F. Supp. 2d 191 (D.D.C. 2011) ............................................................................... 6

*Yeti by Molly Ltd, v. Deckers Outdoor Corp.*
　259 F.3d 110 (9th Cir. 2001) ......................................................................................... 6

*Zhang v. Am. Gem Seafoods, Inc.*
　339 F.3d 1020 (9th Cir. 2003) ....................................................................................... 6

<u>STATE CASES</u>

*Estate of Bibb*
　87 Cal.App.4th 461 (2001) ............................................................................................ 8

*Estate of MacDonald*
　51 Cal.3d 262 (1990) ..................................................................................................... 3

*In re Marriage of Barneson*
　69 Cal.App.4th 583 (1999) ............................................................................................ 8

<u>FEDERAL RULES</u>

Federal Rules of Civil Procedure
　Rule 37 ....................................................................................................................... 6, 9
　Rule 37(c)(1) ............................................................................................................... 6, 7
　Rule 2004 ............................................................................................................... 4, 5, 9

<u>STATE CODES</u>

California Family Code
　§ 850 ............................................................................................................................... 8
　§ 852 ......................................................................................................................... 4, 7, 8
　§ 852(a) ................................................................................................................. *passim*

Plaintiff MUFG Union Bank, N.A. ("Union Bank") submits this reply brief in response to the Court's order to show cause why a preliminary injunction should not be issued (the "OSC") entered on January 25, 2018 as Docket No. 70. This reply supports the arguments made in favor of the issuance of a TRO and preliminary injunction in Union Bank's *Ex Parte Application for Temporary Restraining Order and Order To Show Cause Why Preliminary Injunction Should Not Be Issued* (the "Application") filed on January 24, 2018 and the supporting Memorandum of Points and Authorities (the "MPA"). The reply brief responds to the arguments made by Defendants Coastal Cypress Corporation (Delaware and California), Patricia Brower, Patricia Brower Trust, and American Commercial Properties, Inc. in their opposition brief filed on February 7, 2018 as Docket No. 75 (the "Opposition"), in which defendant Robert Brower, Sr. joined. In addition to the points and authorities set forth below, this reply is supported by the Declaration of Steven B. Sacks and attendant exhibits filed concurrently herewith.

# I.

# INTRODUCTION

Until the filing of their Opposition to this motion, the only documentation that Brower, Sr. claimed to have concerning the transfer of shares to Patricia Brower, was a completed stock certificate. Faced with a statute that requires more than a mere transfer document, Defendants offer documents that were not produced in response to previous requests, and which Mr. Brower never mentioned in his previous testimony. The newly-produced evidence ought to be treated by the Court with suspicion at least until it is subject to careful review and corroboration. In the meantime, it only makes sense to ensure that the bankruptcy estate's rights are preserved.

Defendants argue in the Opposition that they should be free instead to drain American Commercial Properties, Inc. ("ACP") of all of its assets while an action is pending to bring the shares of ACP into the Debtor's bankruptcy estate. It is no surprise that the Defendants take this position, as they have already set out to drain ACP of value in other ways after this action was filed – in particular by granting Coastal Cypress two deeds

of trust securing a total of $495,000 in May and November of 2017. The Defendants do not bother to try to explain why these alleged loans were made to ACP, much less provide any documentation suggesting that ACP actually received any value in exchange for the deeds of trust.

Instead, Defendants focus on their contention that Brower, Sr.'s alleged gratuitous transfer of all of his ACP stock to Patricia in 2000 satisfied the statutory requirement in Family Code section 852(a) for an "express declaration" of intent to transmute the ACP shares into Patricia Brower's separate property. In service of this argument, Defendants primarily rely on two notes (the "Gift Notes") from the time of the purported November 2000 ACP share transfer – a signed letter and also a handwritten note that was purportedly placed in a bouquet of flowers – to argue that Union Bank has failed to meet its burden of establishing a likelihood of success on the merits under the traditional four-part preliminary injunction test. However, as further addressed below, the authenticity of the Gift Notes and other "evidence" submitted with the Opposition is highly questionable and, given Brower, Sr.'s established track record of dishonest dealings, a preliminary injunction should not be denied under these circumstances.

Of particular concern is the fact that, Union Bank and its counsel are now seeing the Gift Notes (and other "evidence" submitted in support of the Opposition) for the first time as they were not previously produced on two separate occasions when they would have been directly responsive to Union Bank's requests for production. The first time came during Union Bank's 2004 examination of the Debtor in 2015, and the second time came recently in this litigation. Neither the Debtor in 2015, nor the Debtor, ACP, or Patricia Brower in this litigation produced the Gift Notes even though Union Bank propounded requests for production that were directly on point. The Gift Notes ought not be considered at all at this stage of the litigation, where Union Bank is merely trying to preserve an asset for the bankruptcy estate, in light of this egregious failure to produce the documents previously. In addition, the fact that the Defendants miraculously produce these documents now, after Union Bank asserted that the statute requires an express

declaration of intention, calls into question their authenticity, especially considering Mr. Brower's already established lack of honesty and forthrightness in his dealings with Union Bank.

Outside of the Gift Notes, the Defendants have no evidence that would satisfy the requirements of Section 852(a) of the Family Code. At best, they present evidence of a transfer, but not any separate evidence of a transmutation as is required under *Estate of MacDonald*, 51 Cal.3d 262, 273 (1990) and its progeny. Defendants vastly overstate the record in proclaiming their substantial likelihood of success on the merits.

Further, this is clearly a case in which the granting of an injunction would be appropriate under the alternative test, in which an injunction will be granted if "serious questions are raised and the balance of hardships tips sharply in [plaintiff's] favor." *In re Excel Innovations, Inc.*, 502 F.3d 1086, 1093 (9th Cir. 2007).

As discussed above, serious questions have been raised in this case because the only evidence of any relevance in support of Defendants' argument are the highly-dubious Gift Notes. Moreover, the balance of the hardships clearly tip sharply in favor of Union Bank. If the injunction is not granted, Defendants will be free to drain ACP of assets and defeat the Second Claim for Relief in the Amended Complaint – extra-judicially denying Union Bank and the Debtor's bankruptcy estate its day in court.

The purported hardships alleged by the Defendants are self-contradictory and hard to follow. The Defendants claim ACP is Patricia Brower's sole asset and that she needs the net proceeds from a closing of the Barn Court Residence to pay medical bills and living expenses. But Defendants do not explain what happened to the purported $495,000 already loaned to ACP by Coastal. And Defendants deliberately omit the fact that absent the injunction, most of the proceeds would be paid not to ACP or Patricia Brower, but to Coastal. The Barn Court Residence is listed for sale at $995,000, so the $495,000 in secured loans allegedly made by Coastal is roughly half of the gross purchase price. The Defendants have not even bothered to provide so much as an estimated closing statement to explain how the sale proceeds would be distributed - much less how much money, if

-3-

SMRH:485404329.5  REPLY

Case: 17-05044    Doc# 82    Filed: 02/13/18    Entered: 02/13/18 21:15:36    Page 7 of 18

any, would flow to ACP and Patricia in a sale of the Barn Court Residence at the list price.[1] Indeed, Coastal seems poised to benefit the most from denial of an injunction as there would be no restriction on its use of what will presumably be the lion's share of the sale proceeds. Notably, the Defendants have not submitted any evidence or even bothered to argue that Coastal would suffer any particular harm if the requested injunction is granted.

The TRO should be converted into a preliminary injunction on the same terms so that the Debtor's creditors can have their day in court.

## II.

## ARGUMENT

**A. Defendants' Likelihood of Success Arguments Are Based on Materials They Failed to Produce in Discovery on Two Separate Occasions, and Thus Should Be Disregarded.**

Defendants' primary argument against the likelihood of success on the merits factor is that the Gift Notes fulfill the requirement of an "express declaration" set forth in California Family Code section 852, thus defeating Union Bank's argument that the shares of ACP were not effectively transmuted to Patricia Brower's separate property. (Opposition, at pp. 7-10).

However, the two Gift Notes, attached as Exhibit C to the Declaration of Robert Brower in support of the Opposition, must be excluded as an evidentiary matter because even if they are authentic (and Union Bank does not believe they are), they were wrongfully withheld from previous document productions:

First, Union Bank requested these documents pursuant to a Court-approved Rule 2004 application in June 2015. (Sacks Decl., Exhs. 1 and 2). That 2004 application included the following document requests:

> 1. Any and all Documents Concerning your assertion that You and Patricia Brower hold no assets as community property,

---
[1] Apart from the Coastal deeds of trust, there are two other mortgages on the property securing an unknown balance, and other costs of sale such as broker commissions.

-4-
SMRH:485404329.5 REPLY
Case: 17-05044  Doc# 82  Filed: 02/13/18  Entered: 02/13/18 21:15:36  Page 8 of 18

including copies of any agreements between You and Patricia Brower delineating specific assets to be separate property.

2. Any and all Documents Concerning the ownership interests in American Commercial Properties, including without limitation records of shareholdings, transfers, assignments, and pledges.

(Sacks Decl., Exh. 1 at p. 6).

The Debtor responded to the discovery requests in the Rule 2004 application on July 15, 2015. (Sacks Decl., Exhs. 3 and 4). His responses did not include either of the two Gift Notes. (Sacks Decl., Exh. 4).

In fact, in the Rule 2004 examination done of Mr. Brower in connection with the document request, Mr. Brower confirmed that there was no documentation of the purported November 2000 transfer of the ACP stock other than the

> **Q Did the ownership interest in American Commercial Properties ever change?**
>
> A Yes.
>
> **Q When was that?**
>
> A November 8th, 2000.
>
> **Q What causes you to remember that date?**
>
> A Twenty-year anniversary.
>
> **Q And what happened in connection with the ownership of American Commercial Properties on that date?**
>
> A I transferred my ownership to Patricia Brower.
>
> **Q And why did you do that?**
>
> A Love and affection, being a great wife and twenty years of being there for me.
>
> **Q And how did you go about making that transfer?**
>
> A Signed over my certificate, and Patricia was issued ownership of the company with a new certificate.
>
> **Q Is that the only thing you did in connection with the change in ownership?**

-5-

A That I can presently recollect, yes.

(Sacks Decl., Exh. 5, at 53:13-54:7).

Second, in this adversary proceeding, Union Bank propounded discovery requests on December 8, 2017. These discovery requests included the following requests for production of documents:

**REQUEST FOR PRODUCTION NO. 35** [TO ACP]:
All DOCUMENTS concerning any transfers of ACP stock.

**REQUEST FOR PRODUCTION NO. 31** [To Robert Brower]:
All DOCUMENTS concerning any transfers of ACP stock.

**REQUEST FOR PRODUCTION NO. 31** [To Patricia Brower]:
All DOCUMENTS concerning any transfers of ACP stock.

(Sacks Decl., Exhs. 6, 7, and 8).

Union Bank received responses to the discovery requests on January 23, 2018. (Sacks Decl., Exhs. 9, 10, and 11). None of these responses included the Gift Notes. (*Id.*). The first time Union Bank saw either of the Gift Notes was upon receiving the Defendants' Opposition filed on February 7, 2018.

It is well established that when a party fails to properly disclose information in discovery that it then seeks to use to support its claims or defenses, "the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless." Fed. R. Civ. P. 37(c)(1); *Zhang v. Am. Gem Seafoods, Inc.*, 339 F.3d 1020, 1028 (9th Cir. 2003); *Yeti by Molly Ltd, v. Deckers Outdoor Corp.*, 259 F.3d 110, 1106 (9th Cir. 2001) (referring to the sanction of Rule 37 as an "automatic sanction"); *Unique Industries, Inc. v. 965207 Alberta Ltd.*, 764 F. Supp. 2d 191 (D.D.C. 2011); *Tex. Instruments Inc. v. Powerchip Semiconductor Corp.*, 2007 WL 1541010, at *12 (S.D.N.Y. May 24, 2007).

1   The Defendants have had two opportunities to produce the Gift Notes –
during the 2004 examination in 2015 and during discovery in the instant adversary
proceeding. In each case, the Gift Notes were not produced. Now,, when faced with a
preliminary injunction to block the dissipation of the sale proceeds of the Barn Court
Residence, the Defendants conveniently "find" the Gift Notes to deal with the
transmutation requirement under California Family Code section 852. It is too late; the
automatic sanction of Rule 37(c)(1) should apply, and the Gift Notes should be
disregarded.

At a minimum, the evidence should be disregarded at the preliminary
injunction stage while Union Bank conducts additional discovery to analyze the
authenticity of the Gift Notes and other documents produced for the first time in support of
the Opposition. Union Bank has reason to doubt the conveniently discovered Gift Notes
due to Mr. Brower's prior misrepresentations to the Bank, which include the
misrepresentations surrounding the pre-petition financial statements that led to the non-
dischargeability judgment entered against Mr. Brower by this Court.

**B.      The Other Bases for Defendants' Likelihood of Success Argument Fail.**

Defendants' other arguments as to their likelihood of success on the merits
also fail. First, the Defendants rely on the Premarital Agreement signed in 1980.
However, even assuming the Premarital Agreement is enforceable and the Browers abided
by it in practice (both issues Union Bank contests, particularly in light of the joint bank
account that the Browers maintained for many years), it was signed twenty years before
the purported transmutation took place. It therefore could not satisfy the requirement in
Family Code section 852 for an "express declaration" of the intent to transmute with
respect to the November 2000 transfer.

Second, the Defendants rely on a stock assignment attached as Exhibit E to
Robert Brower's declaration that states that "I [Robert Brower] hereby sell, assign and
transfer" the ACP shares to Patricia Brower. This does not satisfy the requirement of
Section 852(a) because it merely discusses transfer, not transmutation. Indeed, a similar

-7-
REPLY

stock transfer document that read "For value received, the undersigned does (do) hereby sell, assign, and transfer" was found to be insufficient for the purposes of Section 852(a) in *In re Marriage of Barneson*, 69 Cal.App.4th 583, 731 (1999). The Court explained:

> Respondent's assertion that Barneson "directed that `ownership' be changed" is incorrect: Barneson only directed "transfer" of the stocks to Kaiser, without specifying what interest was to be transferred. Respondent's description of *MacDonald* as requiring only that the words of the document purportedly effecting a transmutation "evidence that a transfer itself is intended" is inaccurate: *MacDonald* does not speak in terms of "transfers" but requires "language which expressly states that the characterization or ownership of the property is being changed." "Transfer" is clearly not synonymous with "transmutation," as is evident from the language of sections 850 and 852. Section 850 provides that spouses may "transmute" property "by agreement or transfer;" section 852 then states the requirements for a valid "transmutation." A transmutation may be effected by means of a transfer, but a transfer is not necessarily a transmutation.

*Barneson*, 69 Cal.App.4th at 731.

Notably, the Defendants cite *Estate of Bibb*, 87 Cal.App.4th 461 (2001) for the proposition that words of transfer alone are sufficient to meet the express declaration requirement of Section 852(a). But unlike this case, the parties in *Bibb* specified the transmutation in the transfer documents themselves. In *Bibb*, the husband owned real property as his sole and separate property, but could not obtain a loan to be secured by the property. In order to leverage his wife's good credit rating to obtain the loan, he "signed a grant deed on January 24, 1995, conveying the real property from himself to himself and Evelyn, 'his wife as joint tenants.'" Thus, the operative grant deed specifically called out the manner in which title was to be held, as joint tenants. *Id*. at 419-420. As a preliminary matter, the background facts of *Bibb* are indicative of an authentic transmutation to facilitate a loan. That is not the case here, where the alleged ACP stock transfer appears to be nothing more than an asset protection scheme and there is no language in the transfer documentation stating that the stock will be held as Patricia's sole and separate property.

## C. At a Minimum, the Preliminary Injunction Should Be Granted Under the Alternative Test.

Under the alternative test, this Court may convert the existing TRO into a preliminary injunction on the same terms if Union Bank demonstrates "that serious questions are raised and the balance of hardships tips sharply in [its] favor." *In re Excel Innovations, Inc.*, 502 F.3d 1086, 1093 (9th Cir. 2007).

At a minimum, serious questions have been raised on the merits. The only evidence that the Defendants have offered that could possibly satisfy the "express declaration" requirement of Family Code section 852(a) are the Gift Notes, which the Defendants failed to produce on two separate occasions – in the Rule 2004 examination in 2015 and in the discovery propounded in this adversary proceeding. These items of evidence should be excluded under Rule 37 as a sanction for the failure to produce. In addition, the fact that they were only conveniently discovered now calls into question whether they are authentic. Mr. Brower has a history of being untruthful in his dealings with Union Bank, and Union Bank thus must examine the original documents through the discovery process.

As to the balance of hardships, there is no question that they tip sharply in favor of Union Bank. If ACP is permitted to do as it pleases with the net proceeds of a sale of the Barn Court Residence, it will almost certainly transfer them out of ACP. Indeed, absent a preliminary injunction many of these transfers would occur immediately through escrow, on account of the deeds of trust to Coastal recorded after this adversary proceeding was filed. It is notable that despite having had the opportunity to furnish evidence to confirm ACP received actual value in exchange for the deeds of trust granted to Coastal, to explain why the deeds of trust were given to Coastal, and why ACP (by the Browers' account, a single-asset holding company) would need roughly $500,000 in loans, the Browers chose to remain silent.

In the absence of the preliminary injunctions, the Browers will be permitted to drain all value from ACP and render pointless Union Bank's Second Claim for Relief.

Union Bank's effort to bring ACP into the estate would be defeated not by litigation on the merits, but by the Defendants' extra-judicial acts.

With respect to the prejudice that will purportedly be suffered by the Defendants if an injunction is issued, the Defendants claim that Patricia Brower's main asset is ACP and that she needs ACP in order to pay for medical and other bills. (Opposition, at p. 11). However, Defendants do not explain this in any detail whatsoever. No evidence was submitted concerning any outstanding or anticipated medical bills (or any other bills) that will be satisfied using proceeds from the sale of the Barn Court Residence. Indeed, if Coastal did, in fact, lend ACP roughly half a million dollars during the last nine months those loan proceeds are or were presumably available for Patricia's support. Further, Patricia purports to also own 13% of Coastal, and no reason is given why she cannot utilize those funds for her expenses.

And perhaps most strikingly, the Defendants do not explain or submit any evidence as to how much Patricia stands to actually receive from a sale. The Barn Court Residence is listed for sale at $995,000. The two deeds of trust to Coastal purport to secure loans made by Coastal to ACP in the aggregate amount of $495,000, and a recently obtained report from Chicago Title shows that the Barn Court Residence is encumbered by two additional deeds of trust of unknown balance. It is thus not clear how much, if any, of the sale proceeds of the Barn Court Residence would actually be distributed to ACP if a sale occurred at the list price.

Indeed, it seems the primary goal of Defendants' Opposition is to avoid any restriction on Coastal's use of the Barn Court Residence sale proceeds it stands to receive on account of aforementioned deeds of trust. But permitting Coastal unfettered use of those proceeds would not help Patricia Brower pay her medical bills or living expenses.

The Defendants' other arguments on irreparable harm and the balance of hardships are similarly inapt. Contrary to Defendants' argument (Opposition, at p. 10), Union Bank does not need more extensive citation of authority to establish that permitting

imminent transfers to occur that will completely vitiate a cause of action is an irreparable harm. In any event, the following additional cases also stand for this proposition:

- *In re Focus Media, Inc.*, 387 F.3d 1077, 1086 (9th Cir. 2004) (upholding issuance of preliminary injunction that froze the assets of the debtor's sole shareholder during the pendency of the trustee's lawsuit to recover fraudulent conveyances from the debtor to the shareholder based on findings that the shareholder had dissipated assets of the debtor in the past and so was likely to dissipate his own assets in response to the lawsuit).

- *Connecticut General Life Insurance Company v. New Images of Beverly Hills*, 321 F.3d 878 (9th Cir. 2003) (upholding district court's issuance of preliminary injunction freezing assets of defendant due to risk of dissipation of assets based on the district court's finding "that it was not only possible, but probable that Haya [the defendant] would engage in misconduct to conceal or dissipate assets. This finding was not clearly erroneous in light of the Zilka family's history of fraudulent intra-family transfers, their refusal to disclose asset information in defiance of court order and their convenient divorce settlement.").

- *Elliott v. Kiesewetter*, 98 F.3d 47, 58 (3d Cir. 1996) (upholding issuance of preliminary injunction freezing transfers of assets by defendant family members in fraudulent conveyance and accounting action, reasoning that "irreparable harm would occur absent an asset freeze is even more apparent where the very assets subject to a potential judgment will likely be dissipated without entry of the order").

- *In re SK Foods, L.P.,* 2011 WL 10723414 at *30, 36 (Bankr. E.D. Cal. 2011) (granting a preliminary injunction in an adversary proceeding in which the trustee sought to recover certain assets due to the risk of dissipation, noting that "the harm to the estate if these assets are dissipated or further transferred is obvious. If Salyer/Fast Falcon is permitted to do so, the principal source of repayment to creditors in this case will vanish," and explaining that "the possibility of irreparable harm is established where the plaintiff can show prior instances where the defendant has dissipated or concealed assets, or they have defied court orders regarding asset location and information, because such conduct demonstrates a significant risk that the defendant will seek to conceal or move assets beyond the jurisdiction of the court.").

- *Productos Carnic, S.A. v. Central American Beef and Seafood Trading Co.*, 621 F.2d 683, 686-687 (5th Cir.1980) (upholding an injunction against the transfer of a large shipment of frozen beef in a lawsuit alleging the beef had been misappropriated and seeking to recover the beef or its proceeds, reasoning that the transfer would "frustrate any judgment on the merits" and that the "threat of ineffective remedy outweighs the damage which the injunction might cause" to the defendant).

- *Corbin v. Corbin*, 429 F Supp 276 (M.D. Ga. 1977) (where plaintiff has shown that he is faced possible loss of his property if injunction does not issue, there is ample demonstration of irreparable injury.).

- *Teamsters Freight Local Union No. 480 v. Southern Forwarding Co.,* 424 F Supp 11 (M.D. Tenn. 1976) (Insolvency of defendant is proper ground for granting injunctive relief where plaintiffs' claims involve money damages that would not be recoverable.).

- *Dexia Credit Local v. Rogan*, 602 F.3d 879 (7th Cir. 2010) (irreparable harm found to justify injunction against husband where wife controlled certain of husband's assets and transferred funds from these accounts to elude his creditors).

Defendants also argue that there is no harm to Union Bank because what Union Bank is trying to do is collect on a judgment against Robert Brower, Sr. by "seeking a simple asset freeze" of ACP, and then cites cases purporting to stand for the proposition that when a plaintiff seeks a simple asset freeze to ensure collectability of a judgment, a preliminary injunction is inappropriate. (Opposition, at p. 11). But the requested injunction is not a "simple asset freeze" at all, but rather a means of preserving an asset claimed to be part of the estate.

The Defendants rely on *Grupo Mexicano de Desarrollo, S.A. v. Alliance Bond Fund, Inc.*, 527 U.S. 308 (1999) and a case from the Ninth Circuit following it, *Dateline Exports, Inc. v. Basic Construction, Inc.*, 306 F.3d 912 (9th Cir. 2002). In *Grupo Mexicano*, the Supreme Court held that a district court does not have the authority to issue a preliminary injunction preventing a defendant from disposing of assets pending an adjudication of a claim for money damages. *Grupo Mexicano*, 527 U.S. at 333; *Dateline Exports*, 306 F.3d at 914.

First of all, the situation here is clearly distinguishable from that in *Grupo Mexicano*. Union Bank is not trying to "ensure collectability of a judgment against Robert Brower," as Defendants assert. Rather, Union Bank, acting on behalf of the bankruptcy estate, is trying to bring ACP into the Debtor's bankruptcy estate so that the assets of ACP may be used to satisfy the Debtor's creditors. Meanwhile, ACP and the other Defendants are trying to defeat this effort by transferring the assets of ACP out of ACP and further away from the Debtor's creditors. *Grupo Mexicano* and *Dateline Exports* are distinguishable for that reason.

Moreover, the Supreme Court in *Grupo Mexicano* specifically excepted equitable actions and bankruptcy from its ruling. *Grupo Mexicano*, 527 U.S. at 322 ("there is absolutely nothing new about debtors' trying to avoid paying their debts . . . [t]he law of fraudulent conveyances and bankruptcy was developed to prevent such conduct"). The

-12-
REPLY

Ninth Circuit in the *Focus Media* case cited above, interpreting *Grupo Mexicano*, held that: "*Grupo Mexicano* thus exempts from its proscription against preliminary injunctions freezing assets cases involving bankruptcy and fraudulent conveyances, and cases in which equitable relief is sought." *Focus Media*, 387 F.3d at 1084-1085. Consequently, the rule of *Grupo Mexicano* does not apply in this adversary proceeding seeking to enhance the size of the bankruptcy estate for the benefit of all creditors.

Finally, the Defendants argue that ACP's dissipation of its assets will not impact Union Bank because Union Bank is a big bank. (Opposition, at p. 11). The fact that Union Bank is a sizeable bank is completely irrelevant. A defendant is not free to divest itself of all assets in the middle of a suit just because its counterparty "can afford it." In any event, the benefit of the declaration sought in the Second Claim for Relief would redound to the Debtor's estate, not Union Bank directly. There is no question that the estate would be harmed, as it would be robbed of one of its potentially largest assets.

**D.     The Public Interest is Served By Preserving ACP's Assets for the Benefit of the Estate While Litigation Proceeds.**

Union Bank pointed out in the Memorandum in support of the Application that the public interest would be served by granting the injunction because it would enable proper administration of the Debtor's bankruptcy case and the realization of a potential recovery for innocent creditors. In the Opposition, the Defendants do not respond to this at all, but instead assert that these are "barren statements" unsupported by legal citation and so the point is "waived." First of all, there are several cases that state, as Union Bank did, that furthering a successful reorganization for a bankruptcy estate is in the public interest. *In re Gathering Restaurant, Inc.*, 79 B.R. 992 (Bankr. N.D. Ind. 1986) (In bankruptcy context, necessity of serving public interest for grant of preliminary injunction means promoting of successful reorganization); *In re Integrated Health Servs., Inc.*, 281 B.R. 231, 239 (Bankr. D. Del. 2002) ("In the context of a bankruptcy case, promoting a successful reorganization is one of the most important public interests.") (citations omitted).

Second, the case cited by the Defendants does not even support their argument. The Defendants cite an unpublished case where a debtor argued that an OSC should be set on whether a creditor had violated the discharge injunction. *Lumetta v. Arbolake Homeowners Ass'n*, 2017 U.S. Dist. LEXIS 72918 (S.D. Cal. May 12, 2017). However, the debtor could muster no legal basis for why such an OSC would be required, and so the district court on appeal upheld the bankruptcy court's refusal to grant an OSC. *Id*. at *14-15. The *Lumetta* case has nothing to do with the analysis of the "public interest" factor in the traditional four-part injunction test. Further, the Defendants not only fail to respond to the substance Union Bank's public interest argument, but they also advance no argument of their own as to why the public interest would not be served by granting the injunction. That is because there is no public interest served by allowing a defendant to render itself judgment proof mid-litigation and thereby prevent the innocent creditors of a debtor's estate from properly administering his assets.

## III.

## CONCLUSION

For the reasons set forth above and in the Application and supporting papers, the Court should issue a preliminary injunction on the same terms as the TRO.

Dated: February 13, 2018

SHEPPARD, MULLIN, RICHTER & HAMPTON LLP

By: */s/ Michael Lauter*
MICHAEL LAUTER

Counsel for the Plaintiff,
MUFG UNION BANK, N.A.