39150 Fremont Boulevard
Fremont, CA 94538
www.FremontBank.com
800-359-BANK (2265)

COASTAL CYPRESS CORP                30-2
PO BOX 22918                          2
CARMEL CA  93922-0918                 5

==================================================================
Fee Change Notice Effective with Your March 2011 statement:
Important Information Regarding Your Business Account
The following reflects changes to your Deposit Account Agreement.
All other terms and conditions will remain the same.
When any combination of deposits, deposited and presented checks per
statement period are in excess of 500 items, additional items are $0.50;
Monthly Service Charge for an average daily balance less than $12,000
is $25.00, less $6.00 with e-Statements; Currency & Coin limit is $7,500.

==================================================================
BUSINESS PROFESSIONAL CHECKING ACCOUNT 14901870
==================================================================

| DESCRIPTION | DEBITS | CREDITS | DATE | BALANCE |
|---|---|---|---|---|
| BALANCE LAST STATEMENT . . . . . . . . . . . . . . . . . . . . . . . . | | | 01/31/11 | 4,815.45 |
| CHECK # 1073 | 72.48 | | 02/02/11 | 4,742.97 |
| DEPOSIT | | 54,686.04 | 02/04/11 | 59,429.01 |
| CHECK # 1072 | 1,008.00 | | 02/04/11 | 58,421.01 |
| DEPOSIT | | 500.00 | 02/08/11 | 58,921.01 |
| CHECK # 1074 | 13,581.91 | | 02/08/11 | 45,339.10 |
| CHECK # 1075 | 23,392.75 | | 02/08/11 | 21,946.35 |
| CHECK # 1076 | 379.79 | | 02/10/11 | 21,566.56 |
| BALANCE THIS STATEMENT . . . . . . . . . . . . . . . . . . . . . . . . | | | 02/28/11 | 21,566.56 |

| | | | | |
|---|---|---|---|---|
| TOTAL CREDITS | (2) | 55,186.04 | MINIMUM BALANCE | 4,742.97 |
| TOTAL DEBITS | (5) | 38,434.93 | AVERAGE BALANCE | 25,058.67 |

==================================================================
YOUR CHECKS SEQUENCED
==================================================================

| DATE | CHECK # | AMOUNT | DATE | CHECK # | AMOUNT | DATE | CHECK # | AMOUNT |
|---|---|---|---|---|---|---|---|---|
| 02/04 | 1072 | 1,008.00 | 02/08 | 1074 | 13,581.91 | 02/10 | 1076 | 379.79 |
| 02/02 | 1073 | 72.48 | 02/08 | 1075 | 23,392.75 | | | |

39150 Fremont Boulevard
Fremont, CA 94538
www.FremontBank.com
800-359-BANK (2265)

COASTAL CYPRESS CORP                    30-2
PO BOX 22918                             4
CARMEL CA  93922-0918                    3

```
=================================================================
      Fee Change Notice Effective with Your March 2011 statement:
         Important Information Regarding Your Business Account
      The following reflects changes to your Deposit Account Agreement.
            All other terms and conditions will remain the same.
       When any combination of deposits, deposited and presented checks per
      statement period are in excess of 500 items, additional items are $0.50;
       Monthly Service Charge for an average daily balance less than $12,000
      is $25.00, less $6.00 with e-Statements; Currency & Coin limit is $7,500.
=================================================================
           BUSINESS PROFESSIONAL CHECKING ACCOUNT 14901870
=================================================================
```

| DESCRIPTION | DEBITS | CREDITS | DATE | BALANCE |
|---|---|---|---|---|
| BALANCE LAST STATEMENT ......................... | | | 02/28/11 | 21,566.56 |
| DEPOSIT | | 15,969.95 | 03/09/11 | 37,536.51 |
| DEPOSIT | | 9,686.04 | 03/11/11 | 47,222.55 |
| CHECK # 1077 | 13,581.91 | | 03/15/11 | 33,640.64 |
| CHECK # 1078 | 23,392.75 | | 03/15/11 | 10,247.89 |
| DEPOSIT | | 960.00 | 03/18/11 | 11,207.89 |
| CHECK # 1079 | 76.48 | | 03/25/11 | 11,131.41 |
| DEPOSIT | | 15,469.95 | 03/29/11 | 26,601.36 |
| BALANCE THIS STATEMENT ......................... | | | 03/31/11 | 26,601.36 |

| | | | | |
|---|---|---|---|---|
| TOTAL CREDITS | (4) | 42,085.94 | MINIMUM BALANCE | 10,247.89 |
| TOTAL DEBITS | (3) | 37,051.14 | AVERAGE BALANCE | 21,613.68 |

```
=================================================================
                    YOUR CHECKS SEQUENCED
=================================================================
```

| DATE...CHECK #......AMOUNT | DATE...CHECK #......AMOUNT | DATE...CHECK #......AMOUNT |
|---|---|---|
| 03/15    1077    13,581.91 | 03/15    1078    23,392.75 | 03/25    1079    76.48 |

```
39150 Fremont Boulevard
Fremont, CA 94538
www.FremontBank.com
800-359-BANK (2265)
```

```
        COASTAL CYPRESS CORP                    30-2
        PO BOX 22918                              3
        CARMEL CA  93922-0918                     5
```

===============================================================================
BUSINESS PROFESSIONAL CHECKING ACCOUNT 14901870
===============================================================================

| DESCRIPTION | DEBITS | CREDITS | DATE | BALANCE |
|---|---|---|---|---|
| BALANCE LAST STATEMENT .......................... | | | 03/31/11 | 26,601.36 |
| DEPOSIT | | 33,200.00 | 04/07/11 | 59,801.36 |
| DEPOSIT | | 5,500.00 | 04/08/11 | 65,301.36 |
| CHECK # 1082 | 13,581.91 | | 04/12/11 | 51,719.45 |
| CHECK # 1083 | 23,392.75 | | 04/12/11 | 28,326.70 |
| CHECK # 1080 | 12,254.20 | | 04/14/11 | 16,072.50 |
| CHECK # 1081 | 14,610.68 | | 04/14/11 | 1,461.82 |
| DEPOSIT | | 4,686.04 | 04/18/11 | 6,147.86 |
| CHECK # 1084 | 800.00 | | 04/27/11 | 5,347.86 |
| BALANCE THIS STATEMENT .......................... | | | 04/29/11 | 5,347.86 |

```
TOTAL CREDITS     (3)    43,386.04  MINIMUM BALANCE        1,461.82
TOTAL DEBITS      (5)    64,639.54  AVERAGE BALANCE       21,189.30
```

===============================================================================
YOUR CHECKS SEQUENCED
===============================================================================

| DATE...CHECK #......AMOUNT | DATE...CHECK #......AMOUNT | DATE...CHECK #......AMOUNT |
|---|---|---|
| 04/14    1080    12,254.20 | 04/12    1082    13,581.91 | 04/27    1084      800.00 |
| 04/14    1081    14,610.68 | 04/12    1083    23,392.75 | |

# EXHIBIT 24

D1396993

C1104530 OUT

FILED
Secretary of State
State of California

APR 2 1 2017

Page 1

# Delaware

## The First State

I, JEFFREY W. BULLOCK, SECRETARY OF STATE OF THE STATE OF DELAWARE, DO HEREBY CERTIFY THE ATTACHED IS A TRUE AND CORRECT COPY OF THE CERTIFICATE OF MERGER, WHICH MERGES:

"COASTAL CYPRESS CORPORATION", A CALIFORNIA CORPORATION, WITH AND INTO "COASTAL CYPRESS CORPORATION" UNDER THE NAME OF "COASTAL CYPRESS CORPORATION", A CORPORATION ORGANIZED AND EXISTING UNDER THE LAWS OF THE STATE OF DELAWARE, AS RECEIVED AND FILED IN THIS OFFICE ON THE EIGHTEENTH DAY OF APRIL, A.D. 2017, AT 2:29 O'CLOCK P.M.

A FILED COPY OF THIS CERTIFICATE HAS BEEN FORWARDED TO THE NEW CASTLE COUNTY RECORDER OF DEEDS.

6378416 8100M
SR# 20172587150

You may verify this certificate online at corp.delaware.gov/authver.shtml

Jeffrey W. Bullock, Secretary of State

Authentication: 202408576
Date: 04-20-17

CCC 000195

D1396993

# CERTIFICATE OF MERGER OF
## COASTAL CYPRESS CORPORATION, A CALIFORNIA CORPORATION,
### WITH AND INTO
## COASTAL CYPRESS CORPORATION, A DELAWARE CORPORATION

Pursuant to Title 8, Section 252(c) of the Delaware General Corporation Law ("**DGCL**"), Coastal Cypress Corporation, a Delaware corporation (the "**Corporation**"), hereby executes this certificate of merger (the "**Certificate**") and certifies as follows:

**FIRST**: The name of the surviving corporation is Coastal Cypress Corporation, a Delaware corporation, and the name of the disappearing corporation being merged into this surviving corporation is Coastal Cypress Corporation, a California corporation.

**SECOND**: The Agreement and Plan of Merger and Reincorporation (the "**Merger Agreement**") has been approved, adopted, certified, executed and acknowledged by each of the constituent corporations pursuant to Title 8, Section 252 of the DGCL.

**THIRD**: The name of the surviving corporation is Coastal Cypress Corporation, a Delaware corporation (the "**Surviving Corporation**").

**FOURTH**: The Certificate of Incorporation of the Surviving Corporation, as in effect immediately prior to the merger, shall be the Certificate of Incorporation of the Surviving Corporation.

**FIFTH**: The executed Merger Agreement is on file at 31322 Founders Avenue, Selbyville, Delaware, 19975, an office of the Surviving Corporation.

**SIXTH**: A copy of the Merger Agreement will be furnished by the Surviving Corporation on request, without cost, to any shareholder or stockholder of the constituent corporations.

**SEVENTH**: The authorized capital stock of Coastal Cypress Corporation, a California corporation, is Two Million (2,000,000) shares with no par value, One Million (1,000,000) of which are designated as common stock and One Million (1,000,000) of which are designated as preferred stock, Two Hundred Fifty Thousand (250,000) of which are designated as Series A Preferred Stock.

**EIGHTH**: Pursuant to Title 8, Section 103 of the DGCL and Section 1108 of the California Corporations Code, the merger shall become effective upon filing this Certificate with the Secretary of State of the State of Delaware (the "**Delaware Filing**"), provided that a certified copy of this Certificate is filed with the Secretary of State of the State of California within six months following the Delaware Filing.

[SIGNATURE PAGE FOLLOWS]

State of Delaware
Secretary of State
Division of Corporations
Delivered 02:29 PM 04/18/2017
FILED 02:29 PM 04/18/2017
SR 20172587150 - File Number 6378416

4831-0764-9606, v. 1

1

CCC 000196

D1396993

IN WITNESS WHEREOF, this Certificate has been executed by the undersigned, a duly authorized officer of the Surviving Corporation, on behalf of the Surviving Corporation this _18th_ day of April, 2017.

COASTAL CYPRESS CORPORATION,
a Delaware corporation

By: _[signature]_
Name: Robert Brower, Sr.
Title: President

4831-0764-9606, v. 1

2

CCC 000197



I hereby certify that the foregoing transcript of _____ page(s) is a full, true and correct copy of the original record in the custody of the California Secretary of State's office.

APR 2 1 2017

Date:_____

ALEX PADILLA, Secretary of State

CCC 000198

# EXHIBIT 25

November 8, 2000

Patricia A. Brower
28088 Barn Court
Carmel, CA  93923

### A GIFT OF MY LOVE

Dear Patty:

Attached is a stock certificate for all of my interest in American Commercial Properties, Inc.  For your own financial health and well being a wife must feel secure that her home will always be her home.  I am proud to give you all my interest in that company to do with as you choose. Happy 20th anniversary.

Sincerely,

Robert S. Brower

Accepted:

Patricia A. Brower

Enclosure

# EXHIBIT 26



Happy Anniversary
11/8/00

Dearest
Patty

Love Forever

Act is now yours

**EXHIBIT 27**

1  SHEPPARD, MULLIN, RICHTER & HAMPTON LLP
   A Limited Liability Partnership
2  Including Professional Corporations
   STEVEN B. SACKS, Cal. Bar No. 98875
3  ssacks@sheppardmullin.com
   MICHAEL M. LAUTER, Cal. Bar No. 246048
4  mlauter@sheppardmullin.com
   ISAIAH Z. WEEDN, Cal. Bar No. 229111
5  iweedn@sheppardmullin.com
   Four Embarcadero Center 17th Floor
6  San Francisco, CA 94111-4109
   Telephone:    415-434-9100
7  Facsimile:    415-434-3947

8  Attorneys for Plaintiff,
   MUFG UNION BANK, N.A.

9
                    UNITED STATES BANKRUPTCY COURT
10
                    NORTHERN DISTRICT OF CALIFORNIA
11
                           SAN JOSE DIVISION
12

13 | In re                                    | Case No. 15-50801 MEH
   |
14 | ROBERT BROWER, SR.,                       | Chapter 11
   |
15 |              Debtor.                      |

16 | MUFG UNION BANK, N.A.,                    | Adv. Proc. No. 17-05044 MEH
   |
17 |              Plaintiff,                   | **STIPULATION RE CHAIN OF
   |                                           | CUSTODY, PRESERVATION, AND
18 |      v.                                   | TESTING OF ORIGINAL
   |                                           | DOCUMENTS**
19 | ROBERT BROWER, SR., an individual,
   | PATRICIA BROWER, an individual,
20 | COASTAL CYPRESS CORPORATION,
   | a California corporation, COASTAL
21 | CYPRESS CORPORATION, a Delaware
   | corporation, AMERICAN
22 | COMMERCIAL PROPERTIES, INC., a
   | Nevada corporation, ANTHONY
23 | NOBLES, an individual, WILFRED
   | "BUTCH" LINDLEY, an individual,
24 | RICHARD BABCOCK, an individual,
   | PATRICIA BROWER TRUST, and DOES
25 | 1-50,
   |              Defendants.

26

27

28

SMRH:487519246.3

Case: 17-05044   Doc# 98   Filed: 10/24/18   Entered: 10/24/18   STIPULATION RE CHAIN OF CUSTODY, PRESERVATION, AND TESTING OF ORIGINAL DOCUMENTS

Case: 17-05044   Doc# 109-12   Filed: 07/29/19   Entered: 07/29/19 21:25:52   Page 14 of 27

Plaintiff MUFG Union Bank, N.A. ("Plaintiff") and defendants Patricia Brower, American Commercial Properties, Inc., Coastal Cypress Corporation (Delaware), and Coastal Cypress Corporation (California) (collectively, "Defendants") hereby stipulate to the production and testing of certain original documents currently in Defendants' possession pursuant to the following facts:

WHEREAS, on July 12, 2018, Plaintiff's counsel informed Defendants' counsel that Plaintiff had retained an ink chemist – later identified as Dr. Valery Aginsky – to analyze the originals of certain documents previously produced by Defendants;

WHEREAS, Plaintiff requested that Defendants state whether they had in their respective possession, custody, or control originals of the following documents (identified by bates number): (1) ACP / Patty Brower 0031-0039 and 0044-0123; and (2) CCC 001-4, 116-119, 000221-222, 000224-265, 000289-312, 000317-391, and 000419-517;

WHEREAS, Plaintiff further requested that Defendants state whether any of the specified documents were duplicates of one another;

WHEREAS, Defendants have stated that they have in their possession and will produce for analysis by Dr. Aginsky the originals of the documents bates stamped ACP / Patty Brower 0031, 0034-0036, and 0044-0123. In addition, Defendants have located what may be the original of the document bates stamped as ACP/Patty Brower 0038-0039. The documents identified in this recital are hereinafter referred to collectively as the "Original Production";

WHEREAS, Defendants have stated that they have been unable to locate the originals of the documents bates stamped as follows: (1) ACP / Patty Brower 0032-0033, and 0037; and (2) CCC 001-4, 116-119, 000221-222, 000224-265, 000289-312, 000317-391, and 000419-517;

NOW, THEREFORE, the parties, by through their counsel of record, hereby STIPULATE that the documents comprising the Original Production shall be produced to Dr. Aginsky for analysis pursuant to the following terms and protocols:

SMRH:487739226.3

Case: 17-05044   Doc# 109-12   Filed: 07/29/19   Entered: 07/29/19 21:25:52   Page 15 of 27

1.     Defendants shall prepare a list briefly describing each document included in the Original Production, including the number of pages comprising each listed document (the "Original Document List"). The documents shall be listed in the Original Document List in the same order that the documents are shipped to Dr. Aginsky. Furthermore, to the extent that any document is comprised of multiple pages, the pages shall be fastened together in their proper order for shipping.

2.     A copy of the Original Document List and the documents comprising the Original Production shall be e-mailed to Plaintiff's counsel prior to shipping.

3.     The documents comprising the Original Production shall be sealed in an envelope large enough to accommodate the documents without folding or otherwise altering them and the Original Document List shall be fastened to the exterior of the envelope (the "Production Package").

4.     No more than seven (7) business days after the filing of this Stipulation, the Production Package shall be shipped by Defendants in a rigid (*i.e.,* cardboard) shipping container via Federal Express to Dr. Valery Aginsky, AGINSKY FORENSIC DOCUMENT DATING LABORATORY, INC., 6280 Heathfield Drive, East Lansing, Michigan 48823. A copy of the corresponding shipping receipt with tracking information shall be e-mailed to Plaintiff's counsel the same day that the Production Package is shipped.

5.     Upon receipt of the Production Package, Dr. Aginsky shall review it and verify that the documents purported to be identified in the Original Document List appear to be included in the Production Package. To the extent Dr. Aginsky (a) believes documents identified in the Original Document List have been omitted from the Production Package or (b) identifies some other problem with Original Production or any of the documents included therein, he shall inform Plaintiffs' counsel and Plaintiffs' counsel will raise the issue with Defendants' counsel within four (4) business days of Dr. Aginsky's receipt of the Production Package and counsel shall confer in good faith to resolve any such issues. To the extent counsel are unable to informally resolve any issues, they may submit the matter to the Court for resolution.

-2-

Case: 17-05044   Doc# 98   Filed: 10/24/18   Entered: 10/24/18
STIPULATION RE CHAIN OF CUSTODY, PRESERVATION, AND TESTING OF ORIGINAL DOCUMENTS
SMRH:487739226.3

Case: 17-05044   Doc# 109-12   Filed: 07/29/19   Entered: 07/29/19 21:25:52   Page 16 of 27

1        6.     Dr. Aginsky shall analyze those documents/portions of documents comprising

2    the Original Production that Plaintiff may direct him to analyze.  Such analysis shall consist

3    of taking tiny plugs of ink on paper (0.5 mm in diameter) punched out, using a syringe

4    needle, from each entry (*e.g.*, handwritten notation, signature, etc.) that is to be examined.

5        7.     Upon completion of Dr. Aginsky's analysis and in any event no more than

6    sixty (60) calendar days after Dr. Aginsky's receipt of the Production Package, the Original

7    Document List and the documents comprising the Original Production (in the order specified

8    in the Original Document List) (the "Return Package") shall be shipped via Federal Express

9    to Defendants' counsel, David Balch, L+G, LLP, 318 Cayuga St., Salinas, CA 93901. A

10   copy of the corresponding shipping receipt with tracking information shall be e-mailed to

11   Defendants' counsel the same day that the package is shipped.

12       8.     Upon receipt of the Return Package, Defendants' counsel shall review it and

13   verify that the documents identified in the Original Document List are included in the Return

14   Package.  To the extent Defendants' counsel (a) believes documents identified in the

15   Original Document List have been omitted from the Return Package or (b) identifies some

16   other problem with Return Package or any of the documents included therein, he shall raise

17   the issue with Plaintiffs' counsel within four (4) business days of Defendants' counsel's

18   receipt of the Return Package.  To the extent counsel are unable to informally resolve any

19   issues, they may submit the matter to the Court for resolution.

20       9.     Defendants' counsel shall maintain the Return Package and all documents

21   included therein in its possession through trial of this matter and shall, upon request, produce

22   such documents at trial.

23       10.    Defendants' counsel shall receive a copy of any final report(s) generated by

24   Dr. Aginsky concerning the results of his analysis of any documents included in the Original

25   Production.

26       IT IS SO STIPULATED, THROUGH COUNSEL OF RECORD.

27

28

SMRH:487392216.3

STIPULATION RE CHAIN OF CUSTODY, PRESERVATION,
AND TESTING OF ORIGINAL DOCUMENTS

1   Dated: October 22, 2018

2                    SHEPPARD, MULLIN, RICHTER & HAMPTON LLP

3

4                    By: _____ /s/ Isaiah Z. Weedn _____

5                          ISAIAH Z. WEEDN

6                          STEVEN B. SACKS
                         MICHAEL M. LAUTER

7                        Counsel for the Plaintiff,
                     MUFG UNION BANK, N.A.

8   Dated: October 22, 2018

9

10                   L+G, LLP

11

12                    By: _____ /s/ David W. Balch _____
                       DAVID W. BALCH

13

14                    Attorneys for COASTAL CYPRESS
                CORPORATION, a California corporation,

15               COASTAL CYPRESS CORPORATION, a
               Delaware corporation, PATRICIA BROWER,

16              AMERICAN COMMERCIAL PROPERTIES,
             INC., WILFRED "BUTCH" LINDLEY, and the

17               PATRICIA BROWER TRUST

18

19

20

21

22

23

24

25

26

27

28

-4-

# EXHIBIT 28

# Aginsky Forensic
# Document Dating Laboratory, Inc.

6280 Heathfield Drive, East Lansing, Michigan 48823-9638
Tel.: (517) 204-4780 and (517) 339-0593
Fax: (517) 339-0593
www.documentdating.com

Valery N. Aginsky, Ph.D.
Forensic Chemist / Ink and Document Dating Specialist *

March 12, 2019

## UNITED STATES BANKRUPTCY COURT

## NORTHERN DISTRICT OF CALIFORNIA

## SAN JOSE DIVISION

### Case No. 15-50801

## REPORT ON FORENSIC EXAMINATION OF DOCUMENT

Isaiah Z. Weedn
SHEPPARD, MULLIN, RICHTER & HAMPTON LLP
Four Embarcadero Center 17th Floor
San Francisco, CA 94111-4109
Telephone:    415-434-9100

**Re:    MUFG Union Bank, N.A. *v.* Robert Brower, Sr., *et al.***

Whilst I have been retained and instructed by Sheppard, Mullin, Richter & Hampton LLP Lawyers of San Francisco in this matter, this report is addressed to the Court.

## A.    STATEMENT OF QUALIFICATIONS

1.    I am a forensic chemist and document analyst with 38 years of experience. I am currently in private practice as a forensic chemist specializing in the field of ink analysis and document dating at Aginsky Forensic Document Dating Laboratory, Inc. Previously, I was at the firm of Riley, Welch & Aginsky Forensic Document Examinations, Inc. (formerly Riley, Welch & Associates Forensic Document Examinations, Inc.) Prior to joining Riley, Welch & Associates I was a senior research chemist specializing in the field of ink analysis

* American Society of Questioned Document Examiners
International Association for Identification
Scientific Working Group for Forensic Document Examination
American Society for Testing and Materials

and document dating with the Forensic Science Center, Ministry of the Interior, Russia. I received my Ph.D. in Analytical Chemistry in 1980. I am experienced in a wide range of physical (optical) and chemical examination techniques, including the analysis and dating of ink on documents and the comparative analysis of inks, toners and paper using Microscopy, Thin-Layer Chromatography, Gas Chromatography-Mass Spectrometry, Ultraviolet/Visible and Infrared Spectroscopy. I am the author of two ink aging techniques (Sequential Solvent Extraction Technique, SET, and Solvent Loss Ratio Method, SLRM), which are used in multiple countries for determining the age of ink on documents, and of more than 25 peer-reviewed articles on ink analysis and dating, including chapters in several books and encyclopedias. I have received national and international awards for my contributions to the field of ink and document dating. A copy of my full curriculum vitae (including my professional publications) is appended to this report as Attachment "**A**." My work is being compensated at my standard hourly rate of $450 per hour. My compensation is not dependent on or related in any way to the opinions I form or the outcome of this case.

## B. INTRODUCTION

### *DOCUMENTS RECEIVED FOR EXAMINATION*

2. On November 5, 2018, the following documents,[1] identified by Bates numbers as (1) ACP / Patty Brower 0031-0039 and 0044-0123, and (2) CCC 001-4, 116-119, 000221-222, 000224-265, 000289-312, 000317-391, and 000419-517, were delivered

---

[1] In a November 2, 2018 email from David Balch to Isaiah Weedn, these documents were listed as follows:
- 7.14.15 Letter from Robert Brower to Board (1 page, ca. 6.25 x 9.25 inches)
- ACP Share certificate for Patricia Brower (No. 2, dated November 8, 2000; 1 page)
- ACP Share certificate for Robert Brower (No. 1, dated June 3, 1983; 2 pages – black and white copies of the front and back of the certificate)
- ACP Share certificate for Brower Trust (No. 3, dated June 30, 2015; 1 page)
- Register of Original and Re-Issued Stock Certificates (2 pages)
- Share Certificates 1, 2, 3 (3 pages, ca. 3.5 x 8.5 inches each)
- 11/8/00 Note from Bob to Patty (one card, 56 mm x 90 mm, affixed to a letter-size page with two pieces of wide scotch – ca. 25 mm x 90 mm and ca. 50 mm x 110 mm, respectively).
- Waiver of Notice, and Minutes, for BoD and shareholder meetings from April 15, 1994 through April 14, 2017 (79 letter-sized sheets of white paper).

to the Aginsky Forensic Document Dating Laboratory via FedEx (tracking number 7736 3964 9811) from Defendants' counsel, David Balch, L+G, LLP, 318 Cayuga St., Salinas, CA 93901.

      3.      The submitted documents were held together with a large size binder paper clip (see the photographs and pdf copies of the documents appended to this report as Attachment "**B**").

      4.      One of the submitted documents was a "Happy Anniversary" card bearing a "11/8/00 Note from Bob to Patty" (one card, 56 mm x 90 mm, affixed to a letter-size page with two pieces of wide scotch tape – ca. 25 mm x 90 mm and ca. 50 mm x 110 mm, respectively). The card contains two dark oily-like spots, one of which covers the handwritten entry of the date ("*11/8/00*") and the other covers the handwritten entries "*ACP is now yours*" and "*Love ^B^*". On the back of the page, two pieces of wide scotch tape are glued to the paper and completely cover the back of the card (see Attachment "**C**").

### INSTRUCTIONS

      5.      I have been asked to examine the submitted documents and determine whether these documents were produced on or around the dates indicated on them or on some other dates.

      6.      I have also been asked to determine whether all the entries written on the "Happy Anniversary" card, designated as the "11/8/00 Note from Bob to Patty", were written contemporaneously and with the same writing instrument.

### C.    SUMMARY OF FINDINGS

      7.      The text on the "Happy Anniversary" card, designated as the "11/8/00 Note from Bob to Patty" (see Attachment "**C**"), was written using two pens (inks): the initial text "*Dearest Patty Love forever ^B^*" was written with a blue ballpoint pen that is different (contains a different ink) from a blue ballpoint pen used to produce another two entries on the card – "*11/8/00*" and "*ACP is now yours.*" This evidence is strongly indicative that the entries "*11/8/00*" and "*ACP is now yours*" were not written contemporaneously with the

initial text, and instead these entries were added to the card some time after the initial text had been written.

8.     Except for two documents,[2] all the other "Minutes" (Minutes of the Meeting of the Shareholders and Directors of American Commercial Properties, Inc.; 44 pages) and "Waivers" (Waiver of Notice and Consent to the Holding of a Board of Directors and Shareholders Meeting of American Commercial Properties, Inc. A Nevada Corporation; 22 pages), dated from April 15, 1994 to April 22, 2015, were printed, with matching (indistinguishable between the documents) print quality, on the matching (physically and chemically indistinguishable) sheets of white copy paper, using a chemically indistinguishable color toner, and probably on the same machine (printer/copier).  It is unlikely that documents purportedly printed annually over a period of time of 21 years – from 1994 to 2015 – could have been printed using chemically indistinguishable paper and toner with the matching (indistinguishable from document to document) print quality.

9.     At least two black ballpoint ink formulations used in Bic and Zebra ballpoint pens were used to sign all signatures in the names of Robert Brower and Patricia Brower on the above "Minutes" (Minutes of the Meeting of the Shareholders and Directors of American Commercial Properties, Inc.) and "Waivers" (Waiver of Notice and Consent to the Holding of a Board of Directors and Shareholders Meeting of American Commercial Properties, Inc. A Nevada Corporation), dated from April 15, 1994 to April 22, 2015.

10.     It is probable[3] that the same Zebra ballpoint pen was used (A) by Robert Brower to sign the "Waivers" dated April 17, 1995, April 15, 1999, April 17, 2000, and April 15, 2004, and (B) by Patricia Brower to sign the "Waivers" dated April 15, 1996, April 17, 2000, April 15, 2002, April 17, 2006, April 13, 2010, and April 12, 2011.  It is unlikely that

---

[2] The "Minutes" and "Waiver" both dated November 20, 2000.

[3] If examinations result in qualified findings, forensic document analysts typically use such terms as "indications," "probable" ("likely"), or "highly probable," depending upon the weight and significance of the evidence obtained.  The term "probable" is used to describe an opinion when there is *strong evidence* to support the conclusion (a level of confidence that exceeds the "more likely than not" standard of proof).  The above three terms used in qualified opinions are considered in the *SWGDOC* (Scientific Working Group for Forensic Document Examination) *"Standard Terminology for Expressing Conclusions of Forensic Document Examiners."*

the same pen could have been used over a period of time of 16 years – from April 17, 1995 to April 12, 2011.

11.    The Zebra ink mentioned in the above paragraph is a black ballpoint ink formulation, which has been manufactured by Zebra Co. Ltd. (Japan) since 2003 and used in Zebra Z-grip ballpoint pens.[4]

12.    As the ink of the "Robert Brower" signatures on the "Waivers" dated April 17, 1995, April 15, 1999, and April 17, 2000, and ink of the "Patricia Brower" signatures on the "Waivers" dated April 15, 1996, April 17, 2000, and April 15, 2002, were not commercially available until 2003, therefore the above six (6) "Waivers" are not authentic with respect to their purported dates.

13.    Based on the results obtained in this examination, it is my opinion that it is highly probable[5] that the above "Waivers" (Waiver of Notice and Consent to the Holding of a Board of Directors and Shareholders Meeting of American Commercial Properties, Inc. A Nevada Corporation; 22 pages) and "Minutes" (Minutes of the Meeting of the Shareholders and Directors of American Commercial Properties, Inc.; 44 pages), dated from April 15, 1994 to April 22, 2015, were produced and signed contemporaneously – within a short period of time, not during the purported timeframe of up to 21 years – from April 15, 1994 to April 22, 2015.

## D.    EXAMINATION METHODS AND RESULTS

14.    The forensic science discipline for the examination of questioned documents is the application of a specific body of scientific knowledge to the problem of determining the authenticity of a document in question.  It consists of the application of scientific principles developed through testing, research, and experience.  The application of forensic document examination techniques includes scientific analysis and is dependent upon the examiner's training, experience and continuing education.

---

[4] This ink formulation is still available.

[5] According to the *SWGDOC "Standard Terminology for Expressing Conclusions of Forensic Document Examiners,"* the term "highly probable" describes an opinion when there is *very strong (clear and convincing) evidence* to support the conclusion.

---

Aginsky Forensic Document Dating Laboratory, Inc.    Tel.: (517) 339-0593    http://www.documentdating.com

15.     A series of physical, optical, and chemical examinations was conducted using widely accepted procedures, which are described in the following sections.  The procedures used were: (i) physical examination by eye and by microscope, (ii) chemical examination, and (iii) the application of various well-known ink-dating tests (ink comparison and ink availability tests).  As part of my testing, I relied, in part, on multiple pertinent publications and published standards distributed by the Scientific Working Group for Forensic Document Examination (SWGDOC).[6]

## (i)     Physical Examinations: Visual and Microscopic Examinations

16.     Physical (optical) examinations include non-destructive methods for inspecting documents visually with an appropriate magnification device and light source. This portion of the examination is necessary to determine how a questioned document was produced and whether any written entries are original (*i.e.*, created with a writing instrument) or reproductions (*e.g.*, photocopied or scanned and printed).

17.     The text and/or images on documents can be printed using various methods. These methods of production are referred to as "printing processes" and are identifiable using a magnifying device, such as a microscope, with an appropriate light source. Nowadays, the most common types of home and office machines utilize toner (*e.g.*, photocopiers, laser printers, and some types of multifunction machines capable of scanning, copying, faxing, and printing) or inkjet technology (*e.g.*, inkjet printers and multifunction machines capable of scanning, copying, faxing, and printing).

18.     Writing inks can be classified into various types (*e.g.*, conventional ballpoint inks and water-based inks, such as gel, roller ball, felt tip, or fountain pen inks) based on their specific microscopic characteristics that result from the combination of their differential chemical composition and interactions with paper.  Generally, a ballpoint ink is thick and viscous while a water-based ink is mainly an aqueous, or fluid-based, liquid suspension.  Determining the type and color of a writing ink is commonly reported following

---

[6] The SWGDOC standards can be found at the following web link: http://www.swgdoc.org/index.php/standards/published-standards

Case: 17-05044    Doc# 109-12    Filed: 07/29/19    Entered: 07/29/19 21:25:52    Page 25 of 27

a physical examination and is further described in the *Standard for Test Methods for Forensic Writing Ink Comparison,* which is published and endorsed by SWGDOC.

19.    Optical examinations are nondestructive and can provide valuable insight regarding the overall composition of ink, toner and paper.  Ink, toner, and paper are made from components that respond differently to different wavelengths of light, including regions of the electromagnetic spectrum beyond what the human eye is capable of seeing. The presence of colorants and other materials will affect the manner in which ink, toner, and paper are absorb, reflect, and transmit light, and the pertinent optical examinations of ink, toner and paper are commonly conducted using a Video Spectral Comparator (VSC).  The VSC is an instrument equipped with cameras, sources of lights, and filters that allow a forensic document examiner to conduct optical examinations of documents, while controlling both the wavelength of light being used and the wavelength or region being viewed with the aid of the camera.

20.    In this case, the pertinent optical examinations of the ink, toner and paper of the submitted documents were conducted using various magnifying glasses and a Zarbeco MiScope-2MP digital microscope (magnifications 40x and 140x).  Also, the Foster & Freeman VSC-4C video spectral comparator was used to assess ultraviolet (UV), infrared reflectance (IRR), and infrared luminescence (IRL) characteristics of the ink and paper of the documents.

21.    Some of the results of the optical examinations obtained are shown in Figures 1 and 2 below.



**Figure 1.** The "Robert Brower" signatures on the "Waiver" dated April 17, 1995



**Figure 2.** The "Robert Brower" signatures on the "Waiver" dated April 15, 2004