1. Charity. A "charity" is any organization described in Internal Revenue Code section 2055 or section 2522.

2. Education. "Education" includes primary, secondary, vocational, college, university, postgraduate study, and other specialized studies if in the trustee's discretion the study is being pursued to advantage by the Beneficiary.

E. Distribution Powers. For purposes of making distributions, the trustee's powers include the following:

1. Nonprorata Distributions. When the trustee must divide any trust property into parts or shares for the purpose of distribution or otherwise, the trustee may, in the trustee's discretion, make the division and distribution in undivided interests, in kind, or partly in kind and partly in money, prorata or nonprorata. The trustee may make sales of the trust property that the trustee considers appropriate to accommodate such distributions.

2. Power to Delay Distributions. When an event occurs on which the trustee is required to divide or distribute trust property, the trustee may delay the division or distribution of all or part of the property for the period of time necessary to ascertain and provide for the payment of any tax claim or other liability, contingent or otherwise, against the trust property. During this period, the trustee may pay the net income of the trust to the Beneficiaries entitled to it, and any income not distributed shall on resolution of any tax claim or other liability be payable to the person entitled to it immediately after the trustee receives the income. This provision shall not be deemed to postpone or defer the vesting of any interest created by the dispositive clauses of the trust. Nor does this provision authorize a delay in any distribution that might result in a transfer's losing eligibility for a federal estate tax marital deduction or charitable deduction.

3. Payments to Minors. Subject to Paragraph C. of this Article V., in any case where payment is made to a minor, the trustee may make such payment directly to such minor, or to the parent or guardian of such minor, or to any other person having the care and control of the minor or with whom he or she may reside, and the receipt by any such person for any such payment shall be a complete discharge to the trustee as to amounts so paid.

4. California Uniform Transfers to Minors Act. Subject to Paragraph C. of this Article V., any distribution to any Beneficiary who is under the age of twenty-one (21) years on the date of distribution may also be made without bond to such person as selected by the trustee, including the trustee, to act as custodian for such beneficiary until age twenty-one (21) years under the California Uniform Transfers to Minors Act.

F. Limitations on Discretionary Distributions to a Trustee. A person who is a Beneficiary of a trust that permits the person, as trustee or co trustee, to make discretionary distributions of income or principal to or for the benefit of himself or herself may exercise that power in his or her favor only for health, education, maintenance, or support within the meaning of Internal Revenue Code sections 2041, 2514. Despite the foregoing and California Probate Code section 15620, if a power to make discretionary distributions of income or principal is conferred on two or more trustees, the power may be exercised by any trustee who is not a

5

Case: 17-05044    Doc# 109-14    Filed: 07/29/19    Entered: 07/29/19 21:25:52    Page 1 of 20
UB0012555

# VI.

# DEBTS

A. <u>Debts of Settlor and Estate</u>. On the death of the Settlor, the trustee may pay from the trust property:

    1. <u>Funeral and Last Illness Expenses</u>. The Settlor's funeral and last illness expenses.

    2. <u>Other Debts</u>. Debts of the Settlor that would be properly payable by the Settlor's probate estate if the trust property were included in the probate estate and a timely creditor's claim was filed.

    3. <u>Probate Expenses</u>. Necessary and proper expenses of administration of the Settlor's probate estate.

B. <u>Limitations on Sources of Payment</u>. Despite the provisions in the above Paragraph A of this Section, the trustee shall not pay any estate or inheritance taxes (including interest or penalties), last illness and funeral expenses, attorneys' fees, administration expenses, debts, or other obligations of the Settlor or the Settlor's estate, from any retirement plan (including an Individual Retirement Account) benefits in which the trust acquires an interest as a result of the Settlor's death. Further, the trustee shall not pay any such obligation from any life insurance or other property passing to the trust on the Settlor's death in accordance with a beneficiary designation unless the property would have been liable for the obligation had the property passed to an individual beneficiary rather than the trust.

# VII.

# OFFICE OF TRUSTEE

A. <u>Definition of Trustee and Successor Trustee</u>. The term "trustee" as used in this document usually refers to such one or more persons or entities who, alone or in combination, have the power to take action on behalf of the trust, but it may instead refer to any form of limited power or special trustee or one or more individual co-trustees, depending on context.

If the trustee resigns or ceases to be trustee, ROBERT S. BROWER, SR. shall be the sole trustee, and if he declines to act, resigns or ceases to be trustee, then ROBERT S. BROWER, JR. shall be the sole trustee, and if he declines to act, resigns or ceases to be trustee, then he shall be succeeded by DAWN M. RESH. If DAWN M. RESH declines to act, resigns or ceases to be trustee, then she shall be succeeded by AMY I. SANTUCCI, and if she declines to act, resigns or ceases to be trustee, then she shall have the power to name a person or entity that shall become her successor if a successor is required and this document makes no other provision for a successor trustee.

B. <u>Scope of Trustee Provisions</u>. Except as otherwise provided, the provisions of this document concerning the identity of trustees apply to all trusts established by this document.

ACP / Patty Brower 0025

Case: 17-05044   Doc# 109-14   Filed: 07/29/19   Entered: 07/29/19 21:25:52   Page 2 of 20

UB0012556

independently as the sole trustee of any trust hereunder, notwithstanding the fact that others may also be serving concurrently as co-trustees. Subject to the foregoing, the following rules apply when a trust has more than one trustee, none of whom have the power to revoke the trust:

    1.    <u>Lack of Unanimity</u>. Co-trustees who are unable to reach a unanimous decision may act by majority decision and such majority of co-trustees may authorize any co-trustee to act independently.

    2.    <u>Vacancy</u>. If a vacancy occurs in a cotrusteeship, the remaining co-trustees may act for the trust.

    3.    <u>Disqualified Trustees</u>. If one or more trustees cannot participate in a decision concerning a discretionary distribution, the decision shall be made in accordance with the provisions of this document expressly addressing that circumstance.

    4.    <u>Temporary Disability</u>. If a co-trustee is unavailable to perform duties because of absence, illness, disqualification under other law, or other temporary incapacity, and prompt action is necessary to achieve the purposes of the trust or to avoid injury to the trust property, the remaining co-trustee or a majority of the remaining co-trustees may act for the trust.

    5.    <u>Delegation of Authority</u>. A majority of co-trustees may delegate to a co-trustee the performance of a function of the trustee. Unless a delegation was irrevocable, a trustee may revoke a delegation previously made.

I.    <u>Compensation of Trustees</u>. Trustees are entitled to reasonable compensation. If the Settlor is also the trustee, it is the intention of the Settlor that compensation be paid to the trustee sufficient to compensate the trustee for the trustee's efforts and time spent managing the assets of the trust.

## VIII.

## TRUSTEE POWERS

A.    <u>General Powers of Trustee</u>. Subject to any limitations expressly stated in this document, the trustee of each trust established under this document is authorized to exercise the following powers for purposes of discharging the trustee duties imposed by this document and by law:

    1.    <u>California Law</u>. The powers conferred on trustees by California law in the absence of a limitation in the trust instrument. These powers shall be deemed to include the power to invest in any kind of property without regard to statutory limitations, insurance, or collateralization requirements otherwise applicable, and the power to operate or participate in any business without complying with any otherwise applicable requirement for a court order.

    2.    <u>Prudent Person</u>. The power to perform any act that a prudent person would take in order to accomplish the objectives of this trust.

9

ACP / Patty Brower 0026

Case: 17-05044   Doc# 109-14   Filed: 07/29/19   Entered: 07/29/19 21:25:52   Page 3 of 20

UB0012557

# IX.

# TRUSTEE DUTIES, LIMITATIONS ON DUTIES, EXCULPATION

A. <u>Duties of Trustee</u>. Except as expressly provided in this document, the trustee has the duties imposed by law, including the duty to report and account to trust Beneficiaries, statutory duties to give notice and copies of this document to trust Beneficiaries and heirs at law on the death of the Settlor, and the duty to invest in property in accordance with the Uniform Prudent Investor Act.

B. <u>Limitations on Trustee's Duty of Loyalty</u>. As long as the trustee does not act in bad faith or in disregard of the purposes of this trust, it is not a breach of this trust for the trustee to take any of the following actions:

1. Lend the trustee's own funds to the trust for any trust purpose, with interest at current rates;

2. Receive reasonable security for such a loan;

3. Purchase trust property from the trust at fair market value, provided the purchase price is paid in full in advance;

4. Lease or sell the trustee's own property to the trust at a rent or price not in excess of its fair market value;

5. Employ the trustee, a relative of the trustee, or a business in which the trustee has an interest, to perform needed services for the trust or any business in which the trust has an interest and to pay compensation not exceeding fair market value;

6. Acquire or retain an interest in property in which the trust also has an interest;

7. Acquire or retain stock of a corporate trustee or an affiliate of a corporate trustee unless the acquisition or retention would violate the trustee's duties in the case of stock of a similar corporation other than the trustee or its affiliate;

8. Deposit funds in a bank in which the trustee has an interest;

9. Perform as trustee any action described above with a relative of the trustee or a business in which the trustee has an interest;

10. Hold property of multiple trusts without segregating or dividing the property and without separately titling the property of each trust, but instead keeping accounts sufficient to identify the property of each trust.

C. <u>Acceptance of Additions</u>. The trustee has a duty to accept additions to this trust unless an addition would significantly expand the trustee's duties, the transferred property is hazardous or otherwise creates a substantial increased risk of trustee liability, or the property is

11

ACP / Patty Brower 0027

Case: 17-05044   Doc# 109-14   Filed: 07/29/19   Entered: 07/29/19 21:25:52   Page 4 of 20
UB0012558

C. *Relevance of Common Estate Planning Practice.* This document is intended to accomplish normal and ordinary objectives of similar trusts commonly drafted by attorneys specializing in trusts and estates at the time this document is executed, and shall be construed accordingly.

## XI.

## MISCELLANEOUS

A. *Property Retains Character.* Except as expressly provided in this document, all property becoming subject to this trust shall retain its character as separate property after becoming trust property.

B. *Spendthrift Clause.* The interests of the Beneficiaries in the income and principal of the trusts created by this document are not subject to voluntary or involuntary transfer and cannot be assigned or anticipated by any Beneficiary.

C. *Rule Against Perpetuities.* Unless terminated earlier in accordance with other provisions of this document, each trust created by this document or by exercise of any power of appointment conferred by this document (unless an appointed trust is entitled to a new perpetuities period) shall terminate 21 years after the death of the last survivor of the issue of the Settlor living on the date of the death of the Settlor. In the event of termination under this paragraph, the principal and undistributed income of a terminated trust shall be distributed to the then income Beneficiaries of that trust in the same proportion that the Beneficiaries are entitled to receive income when the trust terminates. If at the time of such termination the rights to income are not fixed by the terms of the trust, distribution under this clause shall be made to the persons who are then entitled or authorized, in the trustee's discretion, to receive trust payments.

D. *No-Contest Clause.* If any Beneficiary under a trust created by this document shall, singly or in conjunction with any other person or persons, contests in any court the validity of any trust created by this document, or any Will or other document making a transfer to this trust, or shall seek to obtain an adjudication in any proceeding in any court that this trust or any of its dispositive provisions are void, or otherwise seek to void, nullify, or set aside the trust or any of its provisions, then the right of that person to take any interest given to him or her by this document shall be determined as it would have been determined had the person predeceased the execution of this trust agreement without surviving issue.

## XII.

## REVOCATION, AMENDMENT, AND EXERCISE OF APPOINTMENT POWERS

A. *Trust Irrevocable Except as Provided.* Except as provided in this section, all trusts created by this document are irrevocable and cannot be amended.

1. *Exception: Revocable While Settlor Is Living.* During the lifetime of the Settlor, the Settlor may revoke all trusts created by this document. The revocation must satisfy

13

ACP / Patty Brower 0028

Case: 17-05044   Doc# 109-14   Filed: 07/29/19   Entered: 07/29/19 21:25:52   Page 5 of 20

UB0012559

F.  <u>Limitation on Exercise of Powers by Conservator or Guardian of Estate</u>. No conservator or guardian of the Settlor's estate shall have any power to amend or revoke this trust or exercise any power of appointment. The previous sentence does not apply if the conservator or guardian is acting under a court order made in compliance with a "substituted judgment" statute. Until such an order is made, no conservator or guardian shall be deemed to hold such a power for any purpose.

G.  <u>Exercise of Powers of Appointment</u>. A power of appointment conferred by this document, other than a power held in a fiduciary capacity by a trustee, may be exercised only by an instrument that specifically refers to both this trust and the specific power being exercised. Such a power must be exercised by Will, codicil, or a "qualified lifetime document." For purposes of this paragraph, a "qualified lifetime document" is a document meeting the requirements described above for revoking a trust with respect to the Settlor's separate property, including, if applicable under those requirements, a document executed by a conservator or an attorney-in-fact. A court may give effect to an attempted exercise that fails to satisfy the requirements of this paragraph in accordance with the criteria that would apply to a defective amendment of this document. It being a purpose of this trust to avoid probate, the trustee may distribute trust property in accordance with a Will or codicil that has not been probated.

Executed on __June 30th__, 2015, at Carmel, California.

_____
PATRICIA A. BROWER, Settlor and Trustee

4824-2344-5285, v. 1

15

ACP / Patty Brower 0029

Case: 17-05044   Doc# 109-14   Filed: 07/29/19   Entered: 07/29/19 21:25:52   Page 6 of 20

UB0012560

DECLARATION OF TRUST

BY

PATRICIA A. BROWER

OF THE

BROWER TRUST (2015)
Established by Declaration of Trust dated June 30th, 2015

## SCHEDULE A

## INITIAL TRUST PROPERTY

The initial trust estate consists of all right, title and interest of the Settlor in or to any and all of the following property, and all property is hereby conveyed to the trustee of this Trust as the Settlor's sole and separate property:

1. All real property in which the Settlor has any interest.

2. All bank, stock brokerage, and other financial and securities accounts of any kind, including:

    a. JPMorgan Chase Bank Checking Account, Account No. xxxxx9539.

3. All stocks, bonds, and other securities of any kind.

4. All business interests of any kind, including:

    a. American Commercial Properties, Inc., 100 shares of common stock (100% ownership);

    b. Coastal Cypress Corporation, 125,000 shares of common stock (13% ownership).

5. All intangible property, including any indebtedness of any person or entity.

6. All vehicles.

7. All other tangible property, including jewelry.

8. Electronic assets, passwords and accounts.

Schedule A to Brower Trust (2015)
Page 1 of 2

ACP / Patty Brower 0030

Case: 17-05044   Doc# 109-14   Filed: 07/29/19   Entered: 07/29/19 21:25:52   Page 7 of 20

UB0012561

**EXHIBIT 30**

# MED-VENTURE INVESTMENTS, LLC

18101 Von Karman
Suite 230
Irvine, California 92612
Tel. (714) 243-6123
Fax (714) 209-7678

**CONFIDENTIAL**

January 15, 2011

Château Julien, Inc.
Coastal Cypress Corporation
8940 Carmel Valley Road
Carmel, California 93923, USA

Attention: Robert Brower, Chairman and CEO

Per our discussions, we understand that Chateau Julien, Inc. ("CJ") and Coastal Cypress Corporation ("CC", and CJ and CC collectively, together with their respective subsidiaries and affiliates, the "Company") is evaluating the potential sale of their respective businesses and/or assets.

Based on the satisfactory completion of our due diligence investigation, our favorable evaluation of the Company's business model, and our favorable assessment of general conditions in the markets, Med-Venture Investments, LLC ("MVI") would be pleased to provide consulting and advisory services to the Company from the date of this letter agreement through and until the two-year anniversary of the date hereof (the "Term"). Specifically MVI will assist the Company in developing a strategy for the sale of its business, identify potential acquirors, and assist in the implementation of the Company's sale strategy. For purposes of this engagement letter, the term "Sale Transaction" shall mean any transaction with a third-party that results, through one or more related transactions, in the sale or licensing of all or substantially all of the business or assets of the Company (or of CJ or CC separately), or a merger or sale of ownership interests that results in the owners of the Company (or of CJ or CC separately) prior to such transaction owning less than fifty percent (50%) of the surviving entity of such transaction.

### Engagement of Agents

MVI may separately engage agents at its own expense and without the prior approval of the Company.

### Fees and Expenses

You and the Company agree to pay MVI, or its designee, a consulting fee (the "Fee") in the amount of $1,120,000 at the time of receipt of any funds from any Sale Transaction occurring at any time during the five (5) year period extending from the date of this letter agreement with any prospective acquirors (the "Term").



CONFIDENTIAL

CCC 116

Furthermore, regardless or whether or not any Sale Transaction occurs, the Company agrees that it will reimburse MVI's reasonable out-of-pocket expenses incurred in connection with the performance of its services hereunder, including but not limited to copy, telephone and travel expense, with the understanding that amounts over $500 will be submitted for prior approval.

## Termination

MVI shall have the right to immediately terminate this Agreement if information previously provided to it regarding the Company is materially different (as reasonably determined by MVI) than the information discovered by MVI during the due diligence period. Additionally, MVI's engagement hereunder may be terminated by either the Company or MVI at any time from the date hereof upon 30 days written notice to that effect to the other party, it being understood that the provisions relating to the payment of fees and expenses, indemnification, limitations on the liability of indemnified parties, contribution, settlements, and waiver of the right to trial by jury will survive any termination.

## Right to Advertise

Upon the completion of any Sale Transaction, MVI shall have the right to place advertisements on its website and in financial and other newspapers and journals at its own expense describing its services to the Company hereunder.

## Independent Contactor

The Parties acknowledge and agree that the Parties are independent contractors, and nothing in this Agreement is intended, and nothing shall be construed, to create a partnership, joint venture, employer-employee relationship, trust, or any other form of legal organization or association between the Company and MVI. Each Party shall be solely responsible for and shall comply with all state and federal laws pertaining to employment taxes, income withholding, unemployment compensation or contributions and other employment related statutes applicable to that Party. MVI shall be responsible for filing such tax returns and paying such self-employment taxes as may be required by law or regulations.

## Indemnification

The Company agrees to indemnify and hold harmless MVI and its affiliates and directors, officers, agents and employees (the "Indemnified Parties") from any losses, claims, damages, judgments, costs or other liabilities or expense, including, without limitation, reasonable legal fees ("Losses") incurred in connection with or as a result of our engagement or any services provided pursuant to this agreement including, but not limited to, Losses caused by or arising out of any untrue statement of a material fact contained in information furnished to MVI by the Company or its advisors in connection with our engagement, or any omission to state therein any material fact required or necessary to make the information not misleading in light of circumstances under which given, or any other violation of the federal securities laws or the securities laws of any state, or otherwise arising out of our engagement hereunder, provided, however, that the Company will not be liable under the foregoing indemnification provision to the extent that any loss, claim, damage, liability or expense is found in a non-appelable final judgment by a court to have resulted from MVI's gross negligence intentional misconduct. The Company also agrees that the Indemnified Parties shall not have any liability (whether direct or indirect, in contract or tort or

2

CONFIDENTIAL

CCC 117

Case: 17-05044    Doc# 109-14    Filed: 07/29/19    Entered: 07/29/19 21:25:52    Page 10 of 20

otherwise) to the Company or its security holders or creditors related to or arising out of the engagement of the Indemnified Parties pursuant to, or the performance by the Indemnified Parties of the services contemplated by, this letter agreement except to the extent that any loss, claim, damage or liability is found in a non-appelable final judgment by a court to have resulted from MVI's intentional misconduct or gross negligence, and then such liability shall not exceed the amount of any Cash Payment made to MVI hereunder, if any.

In the event testimony from, or appearance by, any employee or consultant of MVI's is required by the Company before any tribunal or other body or agency in connection with the Agent's engagement hereunder, the Company agrees to promptly reimburse MVI for all expenses (including reasonable legal expenses of MVI) as well as compensation at the rate of $300 per hour for all time expended in preparing for and appearing and/or testifying, notwithstanding that any such appearance and/or testimony shall be required by court or other process. Upon request of MVI, the Company will pay a reasonable retainer to MVI's counsel required in connection with the preceding sentence.

## Complete Information

The Company recognizes and confirms that, in performing its engagement, MVI will be using and relying on data, material and other information furnished to it by the Company, or its auditing firm, attorneys, or others (collectively "Advisors") as well as information otherwise available, both oral and written (such data, material and other information is hereinafter referred to as the "Information"). The Company recognizes and confirms that MVI does not assume responsibility for the accuracy or completeness of the Information. The Company hereby represents and warrants that any of the Information furnished by it or its Advisors to MVI will be complete in all material respects and not contain any untrue statement of a material fact or omit to state any material fact necessary to make the statement therein not false or misleading.

## Confidentiality

MVI recognizes and confirms that the Company that some of the Information provided to it is either non-public and confidential or proprietary in nature. MVI hereby agrees that the Information will be kept confidential and will not, without the prior consent of the Company, be disclosed by them, their agents or employees, other than in connection with the services to the Company as described above or as otherwise required by law.

## Arbitration

Each party hereby agrees to submit all disputes or controversies arising out of or in conjunction with this agreement to binding arbitration in Orange County, California in accordance with the commercial arbitration rules of the American Arbitration Association then in effect. The prevailing party in any such arbitration shall be entitled to an award of its reasonable attorneys' fees, costs and disbursements incurred as a result of such arbitration, including reimbursement for the costs of witnesses' travel and subsistence. Judgment upon any arbitration award rendered may be entered in any court having jurisdiction thereof.

3

CONFIDENTIAL

### Nature of Services

We anticipate initiating discussions with institutional and private contacts for the transaction upon the receipt of an executed copy of this agreement, the completion of due diligence and the availability of the material relating to the transaction. We would endeavor to close the transaction as soon as practicable after gaining written commitments from potential acquirors.

MVI personnel will devote sufficient time to the foregoing activities as MVI deems shall be reasonably necessary to discharge its duties hereunder. However, MVI will not be required to devote any specific minimum amount of time to the Company's affairs. Accordingly, MVI may render services of the same or similar nature for or on behalf of any other persons, businesses or corporations.

The Company further expressly acknowledges and agrees that the services being provided by MVI are of a professional nature and necessarily involve issues of judgment and opinion, and that the judgment and opinions of other experts or professionals may differ substantially from those of MVI. Other professionals under the same circumstances might offer advice or perform services materially different than the advice provided or the services performed by MVI.

This agreement constitutes the entire agreement and understanding between the parties hereto, and supersedes any and all previous agreements and understandings, whether oral or written (if any), between the parties with respect to the matters set forth herein.

If the foregoing conforms with your understanding and has been appropriately approved by the Company, please so signify by signing this letter in the space provided and delivering it to me, whereupon after execution by MVI, this Agreement shall become a binding agreement among the Company, MVI and the Company's unit holders, shareholders, or partners. A telecopy of a signed original of this Agreement shall be sufficient to bind the parties whose signatures appear hereon.

We look forward to a successful and mutually beneficial relationship with the Company.

**AGREED TO AND ACCEPTED:**

CHATEAU JULIEN, INC.
COASTAL CYPRESS CORPORATION

By: _____

Robert Brower, their respective
Chairman and Chief Executive Officer

Med-Venture Investments, LLC

By: _____

Anthony Nobles, President and CEO

4

CONFIDENTIAL

CCC 119

# EXHIBIT 31

# Aurora Capital Advisors

18101 Von Karman
Suite 230
Irvine, California 92612
Tel. (714) 243-6123
Fax (714) 209-7678

CONFIDENTIAL

August 8, 2014

Château Julien, Inc.
Coastal Cypress Corporation
8940 Carmel Valley Road
Carmel, California 93923, USA

Attention: Robert Brower, Chairman and CEO

Per our discussions, we understand that Chateau Julien, Inc. ("CJ") and Coastal Cypress Corporation ("CC", and CJ and CC collectively, together with their respective subsidiaries and affiliates, the "Company") is evaluating the potential sale of their respective businesses and/or assets.

Based on the satisfactory completion of our due diligence investigation, our favorable evaluation of the Company's business model, and our favorable assessment of general conditions in the markets, Aurora Capital Advisors, LLC ("Aurora") would be pleased to provide consulting and advisory services to the Company from the date of this letter agreement through and until the two-year anniversary of the date hereof (the "Term"). Specifically Aurora will assist the Company in developing a strategy for the sale of its business, identify potential acquirors, and assist in the implementation of the Company's sale strategy. For purposes of this engagement letter, the term "Sale Transaction" shall mean any transaction with a third-party that results, through one or more related transactions, in the sale or licensing of all or substantially all of the business or assets of the Company (or of CJ or CC separately), or a merger or sale of ownership interests that results in the owners of the Company (or of CJ or CC separately) prior to such transaction owning less than fifty percent (50%) of the surviving entity of such transaction.

### Engagement of Agents

Aurora may separately engage agents at its own expense and without the prior approval of the Company.

### Fees and Expenses

You and the Company agree to pay Aurora, or its designee, a success fee (the "Success Fee") at the time of receipt of any funds from any Sale Transaction consisting of a cash payment equal to five percent (5%) of any and all funds or value received by the Company (or by CJ or CC separately) and/or its holders of ownership interests from any Sale Transaction or portion thereof occurring during the twenty-four (24) month period from the date of termination or expiration of

CONFIDENTIAL  CCC 001

this letter agreement with any prospective acquirors during the Term.

Furthermore, regardless of whether or not any Sale Transaction occurs, the Company agrees that it will reimburse Aurora's reasonable out-of-pocket expenses incurred in connection with the performance of its services hereunder, including but not limited to copy, telephone and travel expense, with the understanding that amounts over $500 will be submitted for prior approval.

### Termination

Aurora shall have the right to immediately terminate this Agreement if information previously provided to it regarding the Company is materially different (as reasonably determined by Aurora) than the information discovered by Aurora during the due diligence period. Additionally, Aurora's engagement hereunder may be terminated by either the Company or Aurora at any time from the date hereof upon 30 days written notice to that effect to the other party, it being understood that the provisions relating to the payment of fees and expenses, indemnification, limitations on the liability of indemnified parties, contribution, settlements, and waiver of the right to trial by jury will survive any termination.

### Right to Advertise

Upon the completion of any Sale Transaction, Aurora shall have the right to place advertisements on its website and in financial and other newspapers and journals at its own expense describing its services to the Company hereunder.

### Independent Contractor

The Parties acknowledge and agree that the Parties are independent contractors, and nothing in this Agreement is intended, and nothing shall be construed, to create a partnership, joint venture, employer-employee relationship, trust, or any other form of legal organization or association between the Company and Aurora. Each Party shall be solely responsible for and shall comply with all state and federal laws pertaining to employment taxes, income withholding, unemployment compensation or contributions and other employment related statutes applicable to that Party. Aurora shall be responsible for filing such tax returns and paying such self-employment taxes as may be required by law or regulations.

### Indemnification

The Company agrees to indemnify and hold harmless Aurora Capital Advisors, LLC and their affiliates and directors, officers, agents and employees (the "Indemnified Parties") from any losses, claims, damages, judgments, costs or other liabilities or expense, including, without limitation, reasonable legal fees ("Losses") incurred in connection with or as a result of our engagement or any services provided pursuant to this agreement including, but not limited to, Losses caused by or arising out of any untrue statement of a material fact contained in information furnished to Aurora by the Company or its advisors in connection with our engagement, or any omission to state therein any material fact required or necessary to make the information not misleading in light of circumstances under which given, or any other violation of the federal securities laws or the securities laws of any state, or otherwise arising out of our engagement hereunder, provided, however, that the Company will not be liable under the foregoing indemnification provision to the extent that any loss, claim, damage, liability or

2

CONFIDENTIAL

CCC 002

expense is found in a non-appelable final judgment by a court to have resulted from Aurora's gross negligence intentional misconduct. The Company also agrees that the Indemnified Parties shall not have any liability (whether direct or indirect, in contract or tort or otherwise) to the Company or its security holders or creditors related to or arising out of the engagement of the Indemnified Parties pursuant to, or the performance by the Indemnified Parties of the services contemplated by, this letter agreement except to the extent that any loss, claim, damage or liability is found in a non-appelable final judgment by a court to have resulted from Aurora's intentional misconduct or gross negligence, and then such liability shall not exceed the amount of any Cash Payment made to Aurora hereunder, if any.

In the event testimony from, or appearance by, any employee or consultant of Aurora's is required by the Company before any tribunal or other body or agency in connection with the Agent's engagement hereunder, the Company agrees to promptly reimburse Aurora for all expenses (including reasonable legal expenses of Aurora) as well as compensation at the rate of $300 per hour for all time expended in preparing for and appearing and/or testifying, notwithstanding that any such appearance and/or testimony shall be required by court or other process. Upon request of Aurora, the Company will pay a reasonable retainer to Aurora's counsel required in connection with the preceding sentence.

## Complete Information

The Company recognizes and confirms that, in performing its engagement, Aurora will be using and relying on data, material and other information furnished to it by the Company, or its auditing firm, attorneys, or others (collectively "Advisors") as well as information otherwise available, both oral and written (such data, material and other information is hereinafter referred to as the "Information"). The Company recognizes and confirms that Aurora does not assume responsibility for the accuracy or completeness of the Information. The Company hereby represents and warrants that any of the Information furnished by it or its Advisors to Aurora will be complete in all material respects and not contain any untrue statement of a material fact or omit to state any material fact necessary to make the statement therein not false or misleading.

## Confidentiality

Aurora recognizes and confirms that the Company that some of the Information provided to it is either non-public and confidential or proprietary in nature. Aurora hereby agrees that the Information will be kept confidential and will not, without the prior consent of the Company, be disclosed by them, their agents or employees, other than in connection with the services to the Company as described above or as otherwise required by law.

## Arbitration

Each party hereby agrees to submit all disputes or controversies arising out of or in conjunction with this agreement to binding arbitration in Orange County, California in accordance with the commercial arbitration rules of the American Arbitration Association then in effect. The prevailing party in any such arbitration shall be entitled to an award of its reasonable attorneys' fees, costs and disbursements incurred as a result of such arbitration, including reimbursement for the costs of witnesses' travel and subsistence. Judgment upon any arbitration award rendered may be entered in any court having jurisdiction thereof.

## Nature of Services

We anticipate initiating discussions with institutional and private contacts for the transaction upon the receipt of an executed copy of this agreement, the completion of due diligence and the availability of the material relating to the transaction. We would endeavor to close the transaction as soon as practicable after gaining written commitments from potential acquirors.

Aurora personnel will devote sufficient time to the foregoing activities as Aurora deems shall be reasonably necessary to discharge its duties hereunder. However, Aurora will not be required to devote any specific minimum amount of time to the Company's affairs. Accordingly, Aurora may render services of the same or similar nature for or on behalf of any other persons, businesses or corporations.

The Company further expressly acknowledges and agrees that the services being provided by Aurora are of a professional nature and necessarily involve issues of judgment and opinion, and that the judgment and opinions of other experts or professionals may differ substantially from those of Aurora. Other professionals under the same circumstances might offer advice or perform services materially different than the advice provided or the services performed by Aurora.

This agreement constitutes the entire agreement and understanding between the parties hereto, and supersedes any and all previous agreements and understandings, whether oral or written (if any), between the parties with respect to the matters set forth herein.

If the foregoing conforms with your understanding and has been appropriately approved by the Company, please so signify by signing this letter in the space provided and delivering it to me, whereupon after execution by Aurora, this Agreement shall become a binding agreement among the Company, Aurora and the Company's unit holders, shareholders, or partners. A telecopy of a signed original of this Agreement shall be sufficient to bind the parties whose signatures appear hereon.

We look forward to a successful and mutually beneficial relationship with the Company.

## AGREED TO AND ACCEPTED.

CHATEAU JULIEN, INC.
COASTAL CYPRESS CORPORATION

By: _____

Robert Brower, their respective
Chairman and Chief Executive Officer

AURORA CAPITAL ADVISORS, LLC

By: _____
Anthony Nobles, PhD
Managing Director

4

CONFIDENTIAL

CCC 004

Case: 17-05044   Doc# 109-14   Filed: 07/29/19   Entered: 07/29/19 21:25:52   Page 17 of 20

# EXHIBIT 32



August 5, 2011

Robert Brower
Chateau Julien
rbrower136@gmail.com

CC: Tony Nobles, Aurora Capital Advisors

Dear Bob,

This is to follow up on the discussions that I had with you and to outline the arrangements for our services to you and Chateau Julien.

## SERVICES

You wish to engage Global Wine Partners (U.S.) LLC, ("GWP") on an exclusive basis to advise and assist you as outlined in this letter for the sale of Chateau Julien, of its brands and assets.

GWP, with Aurora Capital Advisors, is Chateau Julien's exclusive advisor on the transaction. GWP agrees to act exclusively on its behalf.

### Prepare for a Transaction

We will advise and assist you in preparing for any transaction, in general as follows.

1. Continue to seek to understand your goals and other considerations and facilitate a decision process to prioritize alternatives
2. Coordinate the involvement as needed of your legal and other advisors
3. Advise you regarding the preparation of any needed due diligence and disclosure information in advance to maximize our chances of success. This will allow us to be better prepared to identify important transaction issues in advance and to be more responsive to the other party's decision process, all with the goal of building confidence and improving the potential for completing a transaction with the best outcome.
4. Advise you regarding the preparation of information for prospective parties to a transaction.

### Seek and Complete a Transaction

We will advise and assist you in seeking and completing any transaction of the type or types decided upon by you as follows.

1. Consult with you on the best process for pursuing a transaction.
2. As part of this process, assist and advise you in evaluating any offers and in formulating counter offers and advise you and your attorneys on business issues and transaction terms.
3. Lead all negotiations and conduct any transaction process in consultation with you and your attorneys all parties will be conducted by us or coordinated in advance through us, including communications with the other party's advisors. The purpose of this is to facilitate consistent communication, minimize potential miscommunication and improve understanding of the other party's issues and positions.

The Wine Business Center, 899 Adams Street, Suite F, St. Helena, CA 94574 USA, +1 (707) 967 5303, www.globalwinebank.com

Robert Brower, Chateau Julien
August 5, 2011, page 2

4. Once any letter of intent or term sheet is executed, we will work with you in completing the negotiation of a definitive transaction agreement through closing or termination. We will remain available to advise and assist you throughout this process, including assistance in resolving related transaction post-closing issues.

Throughout this process, our goal is to help you close a transaction and meet your related goals.

## GWP ARRANGEMENTS

This engagement is with Global Wine Partners (U.S.) LLC, ("GWP") the U.S. wine industry investment bank.

### Confidentiality

All non-public information about your business and this assignment will be maintained by GWP in strict confidence.

We understand the importance of privacy and confidentiality in this matter, and agree to maintain this engagement in strict confidence. You wish to keep this undertaking private and confidential.

### GWP Personnel

Don Brain will advise you and work personally with you throughout this process and will be your liaison with prospects. He will be supported by Aurora Capital Advisors. All will be held to the same strict standards of confidentiality and discretion.

### Term

We will work with you on an advisory basis in accordance with the terms of this engagement letter. The agreement is for a 12 month term. The engagement is subject to termination by either party on 90 days notice.

Once this engagement commences, we will have incurred substantial time and cost in advising you, and in exposing you to a number of important ideas and prospects. Accordingly, if a termination occurs, we retain the right to fees owed under the terms of this engagement through the effective date of termination.

This term includes a "tail" period of 12 months after termination for all prospects we work with during this engagement. In the event of a termination, the Transaction Completion Fee shall be owed if you transact with such a party within the term and "tail period" as herein provided.

### Fees

*Transaction Fees-*

GWP fees will consist of Initial Fees plus Transaction Completion Fees as further described below. Transaction Completion Fees will apply where contact with the other party to the transaction occurred during the term of this engagement. All unpaid fees are due and payable from escrow directly to GWP at the closing of any transaction.

A. The fee is 3% of the sale price up to $22MM.
B. The fee is 4% of the sale price over $22MM.

### Other Provisions

Our services and advice are intended solely for your benefit and shall not be disclosed to or relied upon by any person or organization.