1  David W. Balch, Esq.  (SBN 226519)
   L+G, LLP
2  318 Cayuga Street
   Salinas, CA 93901
3  Tel:  831.754.2444

4
   Attorneys for Coastal Cypress Corporation, Wilfred "Butch" Lindley
5  Patricia Brower, Patricia Brower Trust, and American Commercial Properties, Inc.

6
                    **UNITED STATES BANKRUPTCY COURT**
7
                    **NORTHERN DISTRICT OF CALIFORNIA**
8

9
   *In re Robert Brower, Sr.*                    Case No.:  15-50801 (MEH)
10
          Debtor.                                Chapter 11
11

12

13 MUFG UNION BANK, N.A.,                        Adv. Proc. No. 17-05044

14        Plaintiff,                             **DECLARATION OF ROBERT
                                                 BROWER, SR.**
15 v.
                                                 **VOLUME 1**
16 ROBERT BROWER, SR., an individual,
   PATRICIA BROWER, an individual,
17 COASTAL CYPRESS CORPORATION, a
   California corporation, COASTAL CYPRESS       Place:   United States Bankruptcy Court
18 CORPORATION, a Delaware corporation,                   280 South First Street
   AMERICAN COMMERCIAL                                    San Jose, CA 95113
19 PROPERTIES, INC., a Nevada corporation,       Judge:   Hon. M. Elaine Hammond
   ANTHONY NOBLES, an individual,                Crtrm:   3020
20 WILFRED "BUTCH" LINDLEY, an
   individual, RICHARD BABCOCK, an
21 individual, PATRICIA BROWER TRUST,            Date:  August 26, 2019
   and DOES 1-50,                                Time:  11:00 am
22                                               Courtrooom:  3020
          Defendants.
23

24

25

26

27                       **VOLUME I**
28            **DECLARATION AND EXHIBITS A-D**

   Declaration of Robert Brower, Sr.                                    1

1  David W. Balch, Esq.  (SBN 226519)
   L+G, LLP
2  318 Cayuga Street
   Salinas, CA 93901
3  Tel:  831.754.2444

4
   Attorneys for Coastal Cypress Corporation, Wilfred "Butch" Lindley
5  Patricia Brower, Patricia Brower Trust, and American Commercial Properties, Inc.

6                  UNITED STATES BANKRUPTCY COURT

7                  NORTHERN DISTRICT OF CALIFORNIA

8

9  *In re Robert Brower, Sr.*                    Case No.:  15-50801 (MEH)

10          Debtor.                              Chapter 11

11

12

13  MUFG UNION BANK, N.A.,                       Adv. Proc. No. 17-05044

14          Plaintiff,                           **DECLARATION OF ROBERT
                                                 BROWER, SR.**
15  v.

16  ROBERT BROWER, SR., an individual,
    PATRICIA BROWER, an individual,             Place:   United States Bankruptcy Court
17  COASTAL CYPRESS CORPORATION, a                       280 South First Street
    California corporation, COASTAL CYPRESS              San Jose, CA 95113
18  CORPORATION, a Delaware corporation,        Judge:   Hon. M. Elaine Hammond
    AMERICAN COMMERCIAL                         Crtrm:   3020
19  PROPERTIES, INC., a Nevada corporation,
    ANTHONY NOBLES, an individual,
20  WILFRED "BUTCH" LINDLEY, an
    individual, RICHARD BABCOCK, an
21  individual, PATRICIA BROWER TRUST,
    and DOES 1-50,
22
23
            Defendants.
24

25       I, Robert Brower, Sr. declare as follows:

26       1.      I am a defendant in this action.  I make this declaration upon personal knowledge,
27  and if called upon to testify, I could and would do so.
28

                                          1

Declaration of Robert Brower, Sr.

A.     Butch Lindley, Richard Babcock, and Anthony Nobles

    2.     I formed Coastal Cypress Corporation, a California corporation, in 1982. At all times, I have been the President of Coastal Cypress. In 1987, Coastal Cypress issued 355,000 shares to Chualar Canyon Ranch Supply, a company owned by Wilfred "Butch" Lindley. Those shares are memorialized in Coastal's stock register, a true and correct copy of which is attached hereto as Exhibit A. A true and correct copy of Chualar Canyon's stock certificate is attached hereto as Exhibit B. Mr. Lindley did not pay cash for his shares. Rather, he provided certain goods and services—such as certain portions of the grape crops from his grape-growing operation, and the provision of his services to assist Coastal and Chateau Julien in CJ's efforts to lease land, grow grapes, and produce wine.

    3.     In 2011, Anthony Nobles and Richard Babcock were issued a combined 250,000 shares of stock from Coastal Cypress Corporation, a California Corporation. Attached as Exhibit C is a true and correct copy of their share purchase agreement. Mr. Babcock was issued 50,000 shares and Mr. Nobles was issued 200,000 shares. Mr. Babcock was required to pay $50,000 for his shares. Of that amount, he paid $10,000, and Mr. Nobles paid $40,000 on behalf of Mr. Babcock. Mr. Nobles also paid $200,000 for his own shares. Attached as Exhibit D is a true and correct copy of wiring instructions memorializing the payments of $250,000.

    4.     Under the share purchase agreement, the shares were originally going to be preferred shares. At some point in time, those shares were converted into common shares.

    5.     I understand that Union Bank now contends that the bank account into which the funds were wired was not the bank account for Coastal Cypress Corporation, but rather the bank account for Robert Brower and Patty Brower individually. Because I had previously done other transactions with Mr. Nobles and Mr. Babcock, this was the account for which they had wiring instructions. Nonetheless, these monies were used for the business purposes of Coastal Cypress. Specifically, these moneys were loaned by Coastal to Chateau Julien, and booked by Coastal on its general ledger as paid-in capital. The Coastal-to-Chateau Julien loans were added to Chateau Julien's accounts payable to Coastal, and Chateau Julien made periodic payments on that loan. When Chateau Julien ceased operations in 2015, Coastal took an income tax "bad debt" deduction

2

Case: 17-05044    Doc# 113-5    Filed: 07/29/19    Entered: 07/29/19 23:27:46    Page 3 of 43

1   for the balance of the Chateau Julien AR's.

2       6.      Attached as Exhibit E is a true and correct copy of Coastal Cypress Corporation's

3   2011 tax return, showing the issuance of 250,000 shares during that calendar year.  Attached as

4   Exhibit F is a true and correct copy of Coastal Cypress Corporation's 2011 General Ledger,

5   showing paid-in capital.  Attached as Exhibit G is a true and correct copy of Coastal Cypress

6   Corporation's General Ledger, showing the account receivables due from Chateau Julien.

7   Attached as Exhibit H is a true and correct copy of Coastal Cypress Corporation's 2015 income tax

8   return, showing the "bad debt" deduction.

9       7.      Coastal Cypress' income tax returns and other financial documents were provided

10  annually to Union Bank.  As such, Union Bank knew as far back as 2012 that 250,000 additional

11  shares of stock had been issued.  Moreover, in an email to Union Bank in 2012, I specifically noted

12  that there were additional shareholders in Coastal.  A true and correct copy of financial

13  documentation provided to Union Bank is attached hereto as Exhibit I.  A true and correct copy of

14  my 2012 email to Union Bank is attached hereto as Exhibit J.

15      8.      In 2017, when Coastal Cypress California was merged into Coastal Cypress

16  Delaware, all shareholders surrendered their shares in Coastal Cypress California and were re-

17  issued shares in Coastal Cypress Delaware.   A true and correct copy of the Coastal Delaware

18  share certificates are attached hereto as Exhibit K.

19  B.      Patricia Brower

20      9.      In 1982, Patricia Brower was issued 25,000 shares of Coastal stock.  In 1984, she

21  was issued an additional 125,000 shares of Coastal stock.  In 2015, Ms. Brower formed the Patricia

22  Brower Trust and placed those shares in the trust.  Attached hereto as Exhibit L is a true and

23  correct copy of Ms. Brower's (and the Trust's) share certificates in Coastal California.  In 2017,

24  when Coastal Cypress California was merged into Coastal Cypress Delaware, the Trust

25  surrendered its shares in Coastal Cypress California and were re-issued shares in Coastal Cypress

26  Delaware.  *See* Exhibit K.

27      10.     Ms. Brower and I have been married since the inception of Coastal Cypress

28

---

3

Declaration of Robert Brower, Sr.

California. We hold our shares as separate property, pursuant to a Marital Asset Agreement executed in 1982. A true and correct copy of that agreement is attached hereto as Exhibit M.

11. I formed American Commercial Properties in 1983, using money that I had saved prior to my marriage with Patty Brower. Under California law and pursuant to my property agreement with Patty Brower, ACP was my sole and separate property. On November 8, 2000, I transferred my entire interest in ACP to Patty Brower as her sole and separate property, on the occasion of our anniversary. I retained zero ownership interest. The transfer was memorialized by (i) a transfer of stock certificate, a true and correct copy of which is attached hereto as Exhibit N, (ii) a notation in the ACP stock register, a true and correct copy of which is attached hereto as Exhibit O, and (iii) a personal note and card from me to Mrs. Brower on November 8, 2000, a true and correct copy of which is attached hereto as Exhibit P.

12. In 2015, when my wife created the Patricia Brower Trust, she transferred ownership of ACP into the Trust. *See* Exhibit L.

I declare under penalty of perjury under the laws of the State of California and the laws of the United States that the foregoing is true and correct. Dated this 29th day of July 2019, in West Virginia.


Robert Brower

4

Declaration of Robert Brower, Sr.

# EXHIBIT A

O-HARN CO. FORM J-1

| No. of Certificate | | DATE | | | STOCKHOLDER'S NAME | SHARES IN EACH CERTIFICATE | FRAC- TION | LEDGER PAGE | |
|---|---|---|---|---|---|---|---|---|---|
| ORIGINAL | RE-ISSUE | MONTH | DAY | YEAR | | | | | |
| 1 | | 3 | 30 | 82 | Robert S. Brower | 30,000 | | 1 | |
| 2 | | 3 | 30 | 82 | Patricia Brower | 25,000 | | | |
| 3 | | 5 | 13 | 82 | Charlotte M. Hurley | 25,000 | | 1 | |
| 4 | | 5 | 13 | 82 | Vincent J. Hurley Jr. | 25,000 | | | |
| 5 | | 1 | 10 | 83 | Robert S. Brower | 100,000 | | 1 | |
| 6 | | 1 | 10 | 83 | Robert S. Brower | 100,000 | | | |
| 7 | | 8 | 30 | 83 | Robert S. Brower | 25,000 | | 1 | |
| 8 | | 8 | 30 | 83 | Robert S. Brower | 25,000 | | | |
| 9 | | 11 | 08 | 83 | Robert S. Brower | 50,000 | | 1 | |
| 10 | | 05 | 01 | 84 | Robert S. Brower | 30,000 | | 1 | |
| 11 | | 06 | 22 | 84 | Robert S. Brower | 15,000 | | 1 | |
| 12 | | 06 | 22 | 84 | Patricia A. Brower | 100,000 | | 1 | |
| 13 | | 01 | 19 | 85 | Anthony Gogliucci | 205,260 | | 1 | |
| 14 | | 3 | 14 | 86 | Marshall M. Pearlman | 5,000 | | 1 | |
| 15 | | 12 | 3 | 86 | Marshall M. Pearlman | 5,000 | | 1 | |
| 16 | | 6 | 26 | 87 | Marshall M. Pearlman | 10,000 | | 1 | |
| 17 | | 6 | 26 | 87 | Marshall M. Pearlman | 10,000 | | 1 | |
| 18 | | 12 | 16 | 87 | Chualar Canyon Ranch Supply | 355,000 | | 1 | |
| 19 | | 1 | 22 | 11 | Anthony A. Nobles | 500,000 | | 1 | |
| 20 | | 1 | 22 | 11 | Richard J. Babcock | 50,000 | | 1 | |
| 21 | | 7 | 1 | 15 | Patricia/Brower Trust | 125,000 | | 1 | |

CONFIDENTIAL

CCC 010

# RE-ISSUED STOCK CERTIFICATES

O'HARN CO. FORM J-1

| DATE | | TRANSFERRED TO | CERTIFICATE RE-ISSUED | | | SURRENDERED CERTIFICATE | | | LEDGER PAGE | MEMORANDUM |
|---|---|---|---|---|---|---|---|---|---|---|
| | | | NO. | NO. OF SHARES | FRAC-TION | NO. | NO. OF SHARES | FRAC-TION | | |
| 7/01 | 15 | Treasury | | | | 2 | 25,000 | | 1 | Re-issue |
| 8/30 | 83 | Treasury | | | | 3 | 25,000 | | 1 | |
| 8/30 | 83 | Treasury | | | | 4 | 25,000 | | 1 | |
| 12/20 | 83 | Treasury | | | | 5 | 100,000 | | 1 | |
| | | | | | | | | | | |
| | | | | | | | | | | |
| 11/01 | 84 | Treasury | | | | 9 | 50,000 | | 1 | |
| 11/01 | 84 | Treasury | | | | 10 | 30,000 | | 1 | |
| 11/01 | 84 | Treasury | | | | 11 | 15,000 | | 1 | |
| 7/01 | 15 | Treasury | | | | 12 | 100,000 | | 1 | Re-issue |
| | | Treasury | | | | 13 | 205,260 | | 1 | no cert. |
| 3/15 | 90 | Treasury | | | | 14 | 5,000 | | 1 | |
| 3/15 | 90 | Treasury | | | | 15 | 5,000 | | 1 | |
| 3/15 | 90 | Treasury | | | | 16 | 10,000 | | 1 | |
| 3/15 | 90 | Treasury | | | | 17 | 10,000 | | 1 | |

CONFIDENTIAL

CCC 011

# EXHIBIT B



For Value Received, I hereby sell, assign, and transfer
unto  Capitol Grass Corporation Treasury
_____ 355,000 _____ Shares
of the Capital Stock represented by the within
Certificate, and do hereby irrevocably constitute and appoint
Robert Brewer Sr.
to transfer the said Stock, on the books of the within named
Corporation, with full power of substitution, in the premises.
Dated   June 20  19 2017

In presence of

NOTICE. THE SIGNATURE OF THIS ASSIGNMENT MUST CORRESPOND WITH THE NAME AS WRITTEN UPON THE FACE OF THE CERTIFICATE, IN EVERY PARTICULAR, WITHOUT ALTERATION OR ENLARGEMENT, OR ANY CHANGE WHATEVER

# EXHIBIT C

# COASTAL CYPRESS CORPORATION

## SERIES A PREFERRED

## STOCK PURCHASE AGREEMENT

### February 21, 2011

BABC00032


Δ π EXHIBIT 27
Deponent Babcock
Date _____ Rptr. MG

# TABLE OF CONTENTS

| | | | Page |
|---|---|---|---|
| 1. | | Purchase and Sale of Stock | 1 |
| | 1.1 | Authorization and Sale of Series A Preferred Stock | 1 |
| | 1.2 | Closing | 1 |
| 2. | | Representations and Warranties of the Company | 1 |
| | 2.1 | Organization, Good Standing and Qualification | 2 |
| | 2.2 | Corporate Power | 2 |
| | 2.3 | Capital Stock | 2 |
| | 2.4 | Subsidiaries | 3 |
| | 2.5 | Authorization | 3 |
| | 2.6 | Valid Issuance of Preferred and Common Stock | 3 |
| | 2.7 | Governmental Consents | 3 |
| | 2.8 | Litigation | 4 |
| | 2.9 | Compliance with Other Instruments | 4 |
| | 2.10 | Tax Returns | 4 |
| | 2.11 | Permits | 5 |
| 3. | | Representations and Warranties of the Investors | 5 |
| | 3.1 | Authorization | 5 |
| | 3.2 | Purchase Entirely for Own Account | 5 |
| | 3.3 | Disclosure of Information | 5 |
| | 3.4 | Investment Experience | 6 |
| | 3.5 | Accredited Investor | 6 |
| | 3.6 | Restricted Securities | 6 |
| | 3.7 | Legends | 6 |
| 4. | | California Commissioner of Corporations | 6 |
| | 4.1 | Corporate Securities Law | 6 |
| 5. | | Conditions of Investor's Obligations at Closing | 7 |
| | 5.1 | Representations and Warranties | 7 |
| | 5.2 | Performance | 7 |
| | 5.3 | Qualifications | 7 |
| | 5.4 | Proceedings and Documents | 7 |
| | 5.5 | Sale of Preferred Stock to Each Investor | 7 |
| | 5.6 | Restated Articles Effective | 7 |
| | 6.1 | Representations and Warranties | 8 |
| | 6.2 | Payment of Purchase Price | 8 |
| | 6.3 | Qualifications | 8 |
| 7. | | Miscellaneous | 8 |
| | 7.1 | Survival | 8 |
| | 7.2 | Successors and Assigns | 8 |
| | 7.11 | Governing Law | 8 |
| | 7.4 | Titles and Subtitles | 8 |
| | 7.5 | Notices | 9 |
| | 7.6 | Finder's Fee | 9 |
| | 7.7 | Expenses | 9 |
| | 7.8 | Amendments and Waivers | 9 |
| | 7.9 | Severability | 910 |

Case: 17-05044    Doc# 113-5    Filed: 07/29/19    Entered: 07/29/19 23:27:46    Page 14 of 43

BABC000033

7.10    Entire Agreement ................................................................ 10
7.11    Counterparts ..................................................................... 10
7.12    Counsel to Aurora ............................................................ 10
7.13    Delays or Ommissions ...................................................... 10
7.14    Facsimile Transmissions .................................................. 10

SCHEDULE A        Schedule of Investors
SCHEDULE B        Schedule of Exceptions
EXHIBIT A         Restated Articles of Incorporation

BABC00034

## SERIES A PREFERRED STOCK PURCHASE AGREEMENT

THIS SERIES A PREFERRED STOCK PURCHASE AGREEMENT (this "*Agreement*") is made on the 21st day of February, 2011 by and among Coastal Cypress Corporation, a California corporation (the "*Company*"), and the investors listed on Schedule A hereto (each, an "*Investor*" and collectively, the "*Investors*").

THE PARTIES HEREBY AGREE AS FOLLOWS:

1.  Purchase and Sale of Stock.

    1.1  Authorization and Sale of Series A Preferred Stock.

    (a)  The Company has duly authorized the issuance and sale to the Investors of up to an aggregate of 250,000 shares of the Company's Series A Preferred Stock, no par value per share (the "*Series A Preferred Stock*"), having the rights, restrictions, privileges and preferences set forth in the Amended and Restated Articles of Incorporation in the form attached hereto as Exhibit A (the "*Restated Articles*. The Company has duly adopted and filed the Restated Articles with the Secretary of State of California.

    (b)  Subject to the terms and conditions of this Agreement, each Investor agrees, severally and not jointly, to purchase at the Closing, and the Company agrees to sell and issue to each Investor at the Closing, that number of shares of the Series A Preferred Stock set forth opposite each Investor's name on Schedule A hereto for the aggregate purchase price set forth thereon. The sale of the Series A Preferred Stock to each Investor shall constitute a separate sale hereunder and the Company's agreement with each of the Investors shall be a separate agreement. Payment of the purchase price for the Series A Preferred Stock will be made by each Investor by (a) check, (b) wire transfer, or (c) cancellation of indebtedness of the Company to the Investor representing the aggregate purchase price of the Series A Preferred Stock that the Investor is acquiring.

    1.2  Closing.  The closing of the separate purchases and sales of the Series A Preferred Stock shall take place at the offices of Babcock & Associates, 1101 Von Karman Avenue, Irvine, CA 92612, at 10:00 A.M., on February 4, 2011, or at such other time and place as the Company and Investors mutually agree upon orally or in writing (which time and place are designated as the "*Closing*"). At the Closing, the Company shall deliver to each Investor a certificate representing the Series A Preferred Stock that such Investor is purchasing against payment of the purchase price therefor by check, wire transfer, cancellation of indebtedness, or any combination thereof. In the event that payment by an Investor is made, in whole or in part, by cancellation of indebtedness, then such Investor shall surrender to the Company for cancellation at the Closing any evidence of such indebtedness or shall execute an instrument of cancellation in form and substance acceptable to the Company.

    2.  Representations and Warranties of the Company.  Attached hereto as Schedule B is a Schedule of Exceptions (the "*Schedule of Exceptions*") to the representations and warranties made by the Company to the Investors herein, which Schedule of Exceptions sets forth exceptions to and modifies, amends and supplements such representations and warranties. Each exception or disclosure therein, is made for the sake of convenience as to all sections of this

1.

Case: 17-05044   Doc# 113-5   Filed: 07/29/19   Entered: 07/29/19 23:27:46   Page 16 of 43

BABC000035

Agreement, even if such disclosure is specified for a single section of this Agreement, without the need for identification of specific additional sections or repetition, but only to the extent that the disclosure is reasonably apparent on its face as being applicable to such other section. Any reference to the "knowledge" of the Company or the Company is or is not "aware" in this Section 2 shall mean the actual knowledge of any of Robert Brower, Patricia Brower or Anthony Gogliucci, as well as such knowledge that any such individuals could reasonably be expected to have of a fact or other matter after reasonable investigation. For purposes of this Section 2, any reference to the term "*Company*" shall mean and include each of Coastal Cypress Corporation, a California corporation, and Chateau Julien, Inc., a California Corporation as if each representation and warranty is being separately made regarding each such entity. Subject to the exceptions, modifications and supplements contained in the Schedule of Exceptions furnished to each Investor prior to execution hereof, the Company hereby represents and warrants to each Investor as follows:

2.1 <u>Organization, Good Standing and Qualification</u>. The Company is a corporation duly organized, validly existing and in good standing under the laws of the State of California. Each Company is duly qualified to transact business and is in good standing in each jurisdiction in which such qualification is required, except where the failure to be so qualified would not have a material adverse effect on the assets, condition (financial or otherwise), prospects or business of the Company (a "*Material Adverse Effect*"). The Company has all required power and authority necessary to own and operate its property, to carry on its business as now conducted and presently proposed to be conducted and to carry out the transactions contemplated by this Agreement.

2.2 <u>Corporate Power</u>. The Company has all requisite corporate power and authority to enter into this Agreement, to sell the Series A Preferred Stock as contemplated herein and to carry out and perform its other obligations under the terms of this Agreement. Transaction.

2.3 <u>Capital Stock</u>. The authorized capital of Coastal Cypress Corporation consists, or will consist immediately prior to the Closing, of:

(a) <u>Preferred Stock</u>. One Million (1,000,000) shares of Preferred Stock, no par value per share (the "*Preferred Stock*"), 500,000 shares of which are designated Series A Preferred Stock, , none of which are issued and outstanding. The rights, restrictions, privileges and preferences of the Series A Preferred will be as stated in the Restated Articles.

(b) <u>Common Stock.</u> One Million (1,000,000) shares of common stock, no par value per share ("*Common Stock*"), of which Seven Hundred Seventy-Five Thousand (775,000) shares are issued and outstanding.

(c) The outstanding shares of Common Stock are all duly and validly authorized and issued, fully paid and nonassessable and were issued in compliance with all applicable state and federal laws concerning the issuance of securities.

(d) Except as set forth above and as may be granted pursuant to this Agreement, there are not outstanding any options, warrants, rights (including conversion or

2.

BABC00036

preemptive rights or rights of first refusal or agreements for the purchase or acquisition from the Company of any shares of its capital stock. Except as may be granted by this Agreement, the Company is not a party or subject to any agreement or understanding, and, to the Company's knowledge, there is no agreement or understanding between any persons and/or entities, which affects or relates to the voting of or giving of written consents with respect to any security or by a director of the Company. Except as contemplated by this Agreement, the Company has no obligation (contingent or otherwise) to (i) issue any subscription, warrant, option, convertible security or other such right or to issue or distribute to holders of any shares of its capital stock any evidences of indebtedness of the Company or (ii) purchase, redeem or otherwise acquire any shares of its capital stock of any interest therein or to pay any dividend or make any other distribution in respect thereof.

      2.4    Subsidiaries. The Company does not presently own or control, directly or indirectly, or hold any rights to acquire, any interest in any other corporation, association or other business entity nor has the Company ever held such interest. The Company is not a participant in any joint venture, partnership or similar arrangement nor has the Company ever been a participant in any such arrangement.

      2.5    Authorization. All corporate action on the part of the Company, its officers, directors and shareholders necessary for the authorization, execution and delivery of this Agreement, the Restated Articles and all other agreements contemplated hereby to which the Company is a party, the performance of all obligations of the Company hereunder and thereunder, the amendment and restatement of the Articles of Incorporation, and the authorization, sale and issuance (or reservation for issuance) of the Series A Preferred Stock being sold hereunder has been taken prior to the Closing. This Agreement, the Restated Articles and all other agreements contemplated hereby to which the Company is a party constitute valid and legally binding obligations of the Company, enforceable in accordance with their respective terms, except (i) as limited by applicable bankruptcy, insolvency, reorganization, moratorium and other laws of general application affecting enforcement of creditors' rights generally, and (ii) as limited by laws relating to the availability of specific performance, injunctive relief or other equitable remedies.

      2.6    Valid Issuance of Preferred and Common Stock. The Series A Preferred Stock that is being purchased by the Investors hereunder, when issued, sold and delivered in accordance with the terms of this Agreement for the consideration expressed herein, will be duly and validly issued, fully paid and nonassessable and will be free of restrictions on transfer, other than restrictions on transfer under this Agreement and under applicable state and federal securities laws. No shareholder of the Company has any right of first refusal or any preemptive rights in connection with the issuance and sale of the Series A Preferred Stock which will not have been waived prior to the Closing.

      2.7    Governmental Consents. No consent, approval, order or authorization of, or registration, qualification, designation, declaration or filing with, any federal, state or local governmental authority on the part of the Company is required in connection with the consummation of the transactions contemplated by this Agreement, except for filings required pursuant to applicable federal and state securities laws and blue sky laws, which filings will be effected within the required statutory period.

3.

BABC00037

2.8   <u>Litigation</u>. There is no action, suit, arbitration, complaint, proceeding, investigation or governmental inquiry (*"Action"*) pending or, to the Company's knowledge, currently threatened or reasonably likely to be asserted against the Company. There is no Action pending, or to the Company's knowledge, threatened that questions the validity of this Agreement or the right of the Company to enter into such agreement or to consummate the transactions contemplated hereby, or that could reasonably be expected to have, either individually or in the aggregate, a Material Adverse Effect, or any change in the current equity ownership of the Company, nor is the Company aware that there is any basis for the foregoing. The foregoing includes, without limitation, actions, suits, proceedings or investigations pending or threatened (or any basis therefore known to the Company) involving the prior employment of any of the Company's employees, their use in connection with the Company's business of any information or techniques allegedly proprietary to any of their former employers or their obligations under any agreements with prior employers. The Company is not a party or subject to the provisions of any order, writ, injunction, judgment or decree of any court or government agency or instrumentality. The Company has not received any opinion or memorandum or legal advice from legal counsel to the effect that it is exposed, from a legal standpoint, to any liability or disadvantage which may be material to its business. There is no action, suit, proceeding or investigation by the Company currently pending or that the Company intends to initiate.

2.9   <u>Compliance with Other Instruments</u>. The Company is not in violation of or default under any provision of its Restated Articles or bylaws or of any instrument, judgment, order, writ, decree or contract to which it is a party or by which it or its properties is subject to or bound, or of any provision of any federal or state statute, rule or regulation applicable to the Company, except where such violation or default has not had, and could not reasonably be expected to have, a Material Adverse Effect. The execution, delivery and performance of this Agreement and all other agreements contemplated hereby and thereby to which the Company is a party and the consummation of the transactions contemplated hereby and thereby will not result in any such violation, or be in conflict with or constitute, with or without the passage of time and giving of notice, either a default under any such provision, instrument, judgment, order, writ, decree or contract or an event that results in the creation of any lien, charge or encumbrance upon any properties or assets of the Company or the suspension, revocation, impairment, forfeiture or nonrenewal of any permit, license, authorization or approval applicable to the Company, its business or operations or any of its assets or properties.

2.10   <u>Tax Returns</u>. Except as set forth on the Schedule of Exceptions, (a) the Company has timely filed all tax returns (federal, state and local) required to be filed by it and all Taxes (as defined below), assessments and other government charges imposed upon the Company, or upon any of the assets, income or franchises of the Company, have been timely paid or, if not yet payable, are adequately accrued on the Company's books and records; (b) there are no actual or proposed Tax deficiencies, assessments or adjustments with respect to the Company or any assets or operations of the Company; (c) no consent has been given with respect to the Company to extend the time in which any Tax may be assessed or collected by any taxing authority; and (d) there are no ongoing or pending Tax audits by any taxing authority against the Company. All filed returns are true and correct in all material respects and all Taxes shown thereon to be due have been timely paid with exceptions not material to the Company. No controversy with respect to Taxes of any type paid or payable by the Company is pending or, to the best of the Company's knowledge, threatened. The Company has not made any elections

4.

**BABC00038**

pursuant to the Code (other than elections that relate solely to methods of accounting, depreciation or amortization) that would have a Material Adverse Effect. The Company has made adequate provisions on its books of account for all Taxes, assessments and governmental charges with respect to its business, properties and operations for such period. The Company has withheld or collected from each payment made to each of its employees the amount of all Taxes required to be withheld or collected therefrom, and has paid the same to the proper tax receiving officers or authorized depositaries. "*Tax*" or "*Taxes*" means any federal, state, local or foreign income, gross receipts, license, payroll, employment, excise, severance, stamp, occupation, premium, property, windfall, profits, environmental, customs, capital stock, franchise, employees' income withholding, foreign or domestic withholding, social security, unemployment, disability, real property, personal property, sales, use, transfer, value added, alternative or add-on minimum or other similar tax, governmental fee, governmental assessment or governmental charge of any kind whatsoever, including any interest, penalties or additions to Tax or additional amounts with respect to the foregoing.

2.11    Permits.    The Company has all franchises, permits, licenses and any similar authority necessary for the conduct of its business (except where the failure to obtain such franchise, permit, or license would not have a Material Adverse Effect), and the Company believes it can obtain, without undue burden or expense, any similar authority for the conduct of business as planned to be conducted. The Company is not in default in any material respect under any of such franchises, permits, licenses or other similar authority.

3.    Representations and Warranties of the Investors.    Each Investor hereby represents, warrants and covenants, severally and not jointly, that:

3.1    Authorization.    Such Investor has full power and authority to enter into this Agreement and all other agreements contemplated hereby to which such Investor is a party, and each such agreement constitutes its valid and legally binding obligation, enforceable in accordance with its terms, except (i) as limited by applicable bankruptcy, insolvency, reorganization, moratorium and other laws of general application affecting enforcement of creditors' rights generally, (ii) as limited by laws relating to the availability of specific performance, injunctive relief or other equitable remedies.

3.2    Purchase Entirely for Own Account.    This Agreement is made with such Investor in reliance upon such Investor's representation to the Company, which by such Investor's execution of this Agreement such Investor hereby confirms, that the Series A Preferred Stock to be received by such Investor (the "*Securities*") will be acquired for investment for such Investor's own account, not as a nominee or agent, and not with a view to the resale or distribution of any part thereof, and that such Investor has no present intention of selling, granting any participation in or otherwise distributing the same. By executing this Agreement, such Investor further represents that such Investor does not have any contract, undertaking, agreement or arrangement with any person to sell, transfer or grant participations to such person or to any third person, with respect to any of the Securities.

3.3    Disclosure of Information.    Such Investor represents that it has had an opportunity to ask questions and receive answers from the Company regarding the terms and conditions of the offering of the Series A Preferred Stock and the business, properties, prospects

5.

BABC00039

and financial condition of the Company. The foregoing, however, does not limit or modify the representations and warranties of the Company in Section 2 of this Agreement or the right of the Investors to rely thereon.

3.4     Investment Experience.  Such Investor is able to fend for itself, can bear the economic risk of its investment, and has such knowledge and experience in financial or business matters that it is capable of evaluating the merits and risks of the investment in the Series A Preferred Stock.  If other than an individual, such Investor also represents it has not been organized for the purpose of acquiring the Series A Preferred Stock.

3.5     Accredited Investor.  Such Investor is an "accredited investor" within the meaning of Securities and Exchange Commission ("*SEC*") Rule 501 of Regulation D, as presently in effect.

3.6     Restricted Securities.  Such Investor understands that the Securities it is purchasing are characterized as "restricted securities" under the federal securities laws inasmuch as they are being acquired from the Company in a transaction not involving a public offering and that under such laws and applicable regulations such Securities may be resold without registration under the Act only in certain limited circumstances.  In the absence of an effective registration statement covering the Securities or an available exemption from registration under the Act, the Series A Preferred Stock must be held indefinitely.

3.7     Legends.  It is understood that the certificates evidencing the Securities may bear one or all of the following legends:

"THESE SECURITIES HAVE NOT BEEN REGISTERED OR QUALIFIED UNDER THE SECURITIES ACT OF 1933, AS AMENDED, OR THE SECURITIES LAWS OF ANY STATE.  THEY MAY NOT BE SOLD, OFFERED FOR SALE, PLEDGED OR HYPOTHECATED UNLESS (A) THERE IS AN EFFECTIVE REGISTRATION STATEMENT UNDER SUCH ACT AND APPLICABLE STATE SECURITIES LAWS, COVERING ANY SUCH TRANSACTION INVOLVING SAID SECURITIES, (B) THE COMPANY RECEIVES AN OPINION OF COUNSEL SATISFACTORY TO THE COMPANY STATING THAT SUCH TRANSACTION IS EXEMPT FROM REGISTRATION, OR (C) THE COMPANY OTHERWISE SATISFIES ITSELF THAT SUCH TRANSACTION IS EXEMPT FROM REGISTRATION."

Any legend required by the laws of the State of California, including any legend required by the California Department of Corporations and Sections 417 and 418 of the California Corporations Code.

4.     California Commissioner of Corporations Corporate Securities Law.  THE SALE OF THE SECURITIES THAT ARE THE SUBJECT OF THIS AGREEMENT HAS NOT BEEN QUALIFIED WITH THE COMMISSIONER OF CORPORATIONS OF THE STATE OF CALIFORNIA AND THE ISSUANCE OF SUCH SECURITIES OR THE PAYMENT OR RECEIPT OF ANY PART OF THE CONSIDERATION FOR SUCH SECURITIES PRIOR TO SUCH QUALIFICATION IS UNLAWFUL, UNLESS THE SALE OF SECURITIES IS

6.

BABS00040

EXEMPT FROM QUALIFICATION BY SECTION 25100, 25102 OR 25105 OF THE CALIFORNIA CORPORATIONS CODE. THE RIGHTS OF ALL PARTIES TO THIS AGREEMENT ARE EXPRESSLY CONDITIONED UPON SUCH QUALIFICATION BEING OBTAINED, UNLESS THE SALE IS SO EXEMPT.

5. **Conditions of Investor's Obligations at Closing.** The obligations of each Investor under Section 1.1 of this Agreement are subject to the fulfillment on or before the applicable Closing of each of the following conditions, the waiver of which shall not be effective against any Investor who does not consent in writing thereto:

5.1 **Representations and Warranties.** The representations and warranties of the Company contained in Section 2 shall be true on and as of the Closing with the same effect as though such representations and warranties had been made on and as of the date of such Closing.

5.2 **Performance.** The Company shall have performed and complied with all agreements, obligations and conditions contained in this Agreement that are required to be performed or complied with by it on or before the Closing.

5.3 **Qualifications.** All authorizations, approvals or permits, if any, of any governmental authority or regulatory body of the United States or of any state that are required in connection with the lawful issuance and sale of the Securities pursuant to this Agreement shall be duly obtained and effective as of the Closing (except for any filings required under federal or state securities laws that are not required to be filed at the Closing, and which filings shall be made within the required statutory period).

5.4 **Proceedings and Documents.** All corporate and other proceedings in connection with the transactions contemplated at the Closing and all documents incident thereto shall be reasonably satisfactory in form and substance to the Investors, and they shall have received all such counterpart original and certified or other copies of such documents as they may reasonably request.

5.5 **Sale of Preferred Stock to Each Investor.** The Company shall have simultaneously sold to each Investor the Series A Preferred Stock to be purchased by such Investor hereunder at the Closing and shall have received payment therefor in full.

5.6 **Restated Articles Effective.** The Restated Articles shall have been duly adopted by the Company by all necessary corporate action of its board of directors and shareholders, and shall have been duly filed with and accepted by the Secretary of State of the State of California.

5.22 **Approval of Transactions.** All necessary approvals and actions required by the Investors in order to consummate the transaction contemplated by this Agreement shall be have been obtained.

6. **Conditions of the Company's Obligations at Each Closing.** The obligations of the Company to each Investor under this Agreement are subject to the fulfillment on or before the applicable Closing of each of the following conditions by that Investor:

7.

6.1     Representations and Warranties. The representations and warranties of the Investors contained in Section 3 shall be true on and as of the Closing with the same effect as though such representations and warranties had been made on and as of the Closing.

6.2     Payment of Purchase Price.   The Investors shall have delivered the purchase price specified in Section 1.1.

6.3     Qualifications.  All authorizations, approvals or permits, if any, of any governmental authority or regulatory body of the United States or of any state that are required in connection with the lawful issuance and sale of the Securities pursuant to this Agreement shall be duly obtained and effective as of the Closing (except for any filings required under federal or state securities laws that are not required to be filed at the Closing, and which filings shall be made within the required time period).

7.     Miscellaneous.

7.1     Survival.

The warranties, representations and covenants of the Company and Investors contained in or made pursuant to this Agreement shall survive the execution and delivery of this Agreement and the Closing and shall in no way be affected by any investigation of the subject matter thereof made by or on behalf of the Investors or the Company.

7.2     Successors and Assigns.

Except as otherwise provided herein, the terms and conditions of this Agreement shall inure to the benefit of and be binding upon the respective successors and assigns of the parties.  Nothing in this Agreement, express or implied, is intended to confer upon any party, other than the parties hereto or their respective successors and assigns, any rights, remedies, obligations or liabilities under or by reason of this Agreement, except as expressly provided in this Agreement.

7.3     Governing Law.

This Agreement shall be governed by and construed under the laws of the State of California as applied to agreements among California residents entered into and to be performed entirely within California.

7.4     Titles and Subtitles.

The titles and subtitles used in this Agreement are used for convenience only and are not to be considered in construing or interpreting this Agreement.

7.5     Notices.

All notices required or permitted hereunder shall be in writing and shall be deemed effectively given: (i) upon personal delivery to the party to be notified, (ii) when sent by confirmed electronic mail or facsimile if sent during normal business hours of the recipient, if

8.

BABC00042

not, then on the next business day; (iii) five days after having been sent by registered or certified mail, return receipt requested, postage prepaid; or (iv) one day after deposit with a nationally recognized overnight courier, specifying next day delivery, with written verification of receipt. All communications shall be sent to the address as set forth on the signature page hereof or at such other address as such party may designate by ten days advance written notice to the other parties hereto.

### 7.6 Finder's Fee.

Each party represents that it neither is nor will be obligated for any finders' fee or commission in connection with this transaction. Each Investor agrees to indemnify and to hold harmless the Company from any liability for any commission or compensation in the nature of a finders' fee (and the costs and expenses of defending against such liability or asserted liability) for which such Investor or any of its officers, partners, employees or representatives is responsible. The Company agrees to indemnify and hold harmless each Investor from any liability for any commission or compensation in the nature of a finders' fee (and the costs and expenses of defending against such liability or asserted liability) for which the Company or any of its officers, employees or representatives is responsible.

### 7.7 Expenses.

Irrespective of whether the Closing is effected, the Company shall pay all costs and expenses that it incurs with respect to the negotiation, execution, delivery and performance of this Agreement. If the Closing is effected, the Company shall, at the Closing, reimburse the reasonable fees and out-of-pocket costs of special counsel to the Investors, not to exceed $15,000 in connection with the Closing. If any action at law or in equity is necessary to enforce or interpret the terms of the Transaction Agreements or the Restated Articles, the prevailing party shall be entitled to reasonable attorney's fees, costs and necessary disbursements in addition to any other relief to which such party may be entitled.

### 7.8 Amendments and Waivers.

Any term of this Agreement may be amended and the observance of any term of this Agreement may be waived (either generally or in a particular instance and either retroactively or prospectively), only with the written consent of the Company and each of the Investors hereto. Any amendment or waiver effected in accordance with this paragraph shall be binding upon each holder of any securities purchased under this Agreement at the time outstanding (including securities into which such securities are convertible), each future holder of all such securities and the Company. .

### 7.9 Severability.

If one or more provisions of this Agreement are held to be unenforceable under applicable law, such provision shall be excluded from this Agreement and the balance of the Agreement shall be interpreted as if such provision were so excluded and shall be enforceable in accordance with its terms.

9.

BABC00043

7.10    Entire Agreement. This Agreement and the documents referred to herein constitute the entire agreement among the parties and no party shall be liable or bound to any other party in any manner by any warranties, representations or covenants except as specifically set forth herein or therein.

7.11    Counterparts. This Agreement may be executed in two or more counterparts, each of which shall be deemed an original, but all of which together shall constitute one and the same instrument.

7.12    Counsel to Aurora.

The Company acknowledges and agrees that this Agreement has been prepared by Babcock & Associates, counsel to Aurora Capital Advisors, LLC and its affiliates, which counsel has represented the interests of such Investors and not those of the Company with respect to the transaction or transactions contemplated by this Agreement. The Company acknowledges that it has consulted with its own counsel, accountant and/or business advisor as to the legal, tax, investment and related matters with respect to the transaction or transactions contemplated by this Agreement as it deemed necessary.

7.13    Delays or Omissions.

No delay or omission to exercise any right, power or remedy accruing to any Investor, upon any breach or default of the Company under this Agreement, shall impair any such right, power, or remedy, nor shall it be construed to be a waiver of any such breach or default, or any acquiescence therein, or of or in any similar breach or default thereafter occurring; nor shall any waiver of any single breach or default be deemed a waiver of any other breach or default theretofore or thereafter occurring. It is further agreed that any waiver, permit, consent or approval of any kind of character on an Investor's part of any breach or default under this Agreement, or any waiver on an Investor's part of any provisions or conditions of this Agreement must be in writing and shall be effective only to the extent specifically set forth in such writing and that all remedies, either under this Agreement, or by law or otherwise afforded to a Purchaser, shall be cumulative and not alternative.

7.14    Facsimile Transmission.

The facsimile transmission by one party hereto of a signed copy of the signature page of this Agreement to the other party hereto or such party's agent, followed by an acknowledgement of receipt thereof, shall constitute the delivery of this Agreement.

10.

BABC00044

IN WITNESS WHEREOF, the parties have executed this Agreement as of the date first above written.

COASTAL CYPRESS CORPORATION, a
California corporation

By: _____
Robert Brower
President

Address:   8940 Carmel Valley Road
           Carmel, CA 93923
Fax No:    (831) 624-6138
email:     rbrower136@gmail.com


_____
Anthony A. Nobles, PhD.

Address:   17080 Newhope Street
           Fountain Valley, CA 92708

Fax No:    (714) 427-0399
email:     anobles@noblesmedical.com


_____
Richard J. Babcock

Address:   18101 Von Karman Avenue
           Suite 230
           Irvine, CA 92612

Fax No:    (714) 209-7678
email:     rich@babcockassociates.com


[SIGNATURE PAGE TO SERIES A PREFERRED
STOCK PURCHASE AGREEMENT]

11.

Case: 17-05044   Doc# 113-5   Filed: 07/29/19   Entered: 07/29/19 23:27:46   Page 26 of 43

BABC00045

IN WITNESS WHEREOF, the parties have executed this Agreement as of the date first above written.

COASTAL CYPRESS CORPORATION, a California corporation

By: _____

    Robert Brower
    President

Address:  8940 Carmel Valley Road
            Carmel, CA 93923
Fax No:  (831) 624-6138
email:    rbrower136@gmail.com


_____

Anthony A. Nobles, PhD.

Address:  17080 Newhope Street
            Fountain Valley, CA 92708

Fax No:  (714) 427-0399
email:    anobles@noblesmedical.com


_____

Richard J. Babcock

Address:  18101 Von Karman Avenue
            Suite 230
            Irvine, CA 92612

Fax No:  (714) 209-7678
email:    rich@babcockassociates.com


[SIGNATURE PAGE TO SERIES A PREFERRED
STOCK PURCHASE AGREEMENT]

11.

BABCO00046

## SCHEDULE A

### List of Investors

| Name | Number of Shares | Purchase Price |
|------|------------------|----------------|
| Anthony A. Nobles | 240,000 | $240,000 |
| Richard J. Babcock | 10,000 | $10,000 |

12.

BABC00047

## SCHEDULE B

### Schedule of Exceptions

This Schedule B, or Schedule of Exceptions, modifies, amends, supplements and discloses, and states exceptions to, the representations and warranties of SiliconSystems, Inc., a California corporation (the "Company"), set forth in Section 2 of the Series A Preferred Stock Purchase Agreement (the "Agreement") between the Company and the investors listed on Schedule B thereto. Each exception or disclosure therein, is made for the sake of convenience as to all sections of this Agreement, even if such disclosure is specified for a single section of this Agreement, without the need for identification of specific additional sections or repetition, but only to the extent that the disclosure is reasonably apparent on its face as being applicable to such other section. Any terms not defined herein which are defined in the Agreement shall have the meaning set forth in the Agreement. Where any representation or warranty contained in the Agreement is limited or qualified by the materiality of the matters to which the representation or warranty is given, the inclusion of any matter in this Schedule of Exceptions does not constitute a determination by the Company that such matters are material.

**NONE**

13.

BABC00048

# EXHIBIT A

[See attached form of Restated Articles]

14.

BABC000049

IN WITNESS WHEREOF, the undersigned Shareholders and directors have duly executed this Joint Consent as of the date set forth below.

SHAREHOLDERS:

Name: Robert Brower, Sr.
Date: 4/12/2017

The Brower Trust,
Patricia Brower, Trustee

By: _____
Name: Patricia Brower
Title: Trustee
Date: 4/12/17

Name: Anthony Nobles
Date: 4/13/17

Name: Richard Babcock
Date: _____

Chualar Canyon Ranch Supply

By: _____
Title: _____
Date: _____

DIRECTORS:

Name: Robert Brower, Sr.
Date: 4/12/2017

Name: Patricia Brower
Date: 4/12/17

*Signature Page to Unanimous Joint Written Consent*
*of the Shareholders and the Directors of Coastal Cypress Corporation*

2

4819-3029-3574. v. 1

NOB0003

Case: 17-05044    Doc# 113-5    Filed: 07/29/19    Entered: 07/29/19 23:27:46    Page 31 of 43

# EXHIBIT D

From: F & M BANK Wire Transfer Dept.

In accordance with your instructions, we have DEBITED your account:
*********3978
for $200,000.00. If you have any questions, please contact the wire department
at (562) 499-4812.

Date: 2011-01-31 00:00:00

Fed Reference #: 20110131L2LFFM1C000037

Sender Bank Information:
ABA #: 122201198
Bank Name: F & M BANK

Receiving Bank Information:
ABA #: 121107882
Bank Name: FRE BK FRE

* * *

Originator Information:
Name: Technos Development LLC

Beneficiary Information:
Name: Robert S. Brower
Acct #: *********0423

* * *

Beneficiary Bank:

Originator to Beneficiary Info:

Bank to Bank information:

~ ~ ~ ~ ~ END Incoming Wire Transfer Information ~ ~ ~ ~ ~

DO NOT RESPOND TO THIS EMAIL. If you have any questions regarding this email, please contact your branch. This communication is privileged and confidential. If you are not the intended recipient, please destroy the message.

The information in this email (and any attachments) is confidential. If you are not the intended recipient, you must not read, use or disseminate the information. Although this email (and any attachment) is believed to be free of any virus or other defect that might affect any computer system into which it is received and opened, it is the responsibility of the recipient to ensure that it is virus free and no responsibility is accepted by Farmers & Merchants Bank of Long Beach for any loss or damage arising in any way from its use. No contracts may be concluded on behalf of the sender by means of electronic communications unless expressly stated to the contrary.

Before printing this e-mail think if it is necessary. Think Green!

# Outgoing FED Message

## MESSAGE INFORMATION

| | | | | | | |
|---|---|---|---|---|---|---|
| Amount: | $40,000.00 | Message ID: | 110315122314MS20 | PDM: | | |
| Currency: | USD | Latest Version: | 0 | Priority: | M | |
| Value Date: | 03/15/2011 | Time: | 12:43:06 | URC: | | |
| Bank ID: | 001 | Department: | WIR | Status: | COMPLETE | |
| Message Type: | 10 | Branch: | 020 | Template: | 20 | |
| Message Subtype: | 00 | Charge: | | Purpose of wire: | | |
| Fee: | 0.00 | Source: | 020 | | | |
| Ref. No.: | 110315122314MS20 | External Ref.: | | Country Code : | US | |

## MESSAGE TEXT

| | | | | |
|---|---|---|---|---|
| Sender ABA: | 122201198 | Sender Name: | F & M BANK | Ref. No.: 110315122314MS20 |
| Receiver ABA: | 121107882 | Receiver Name: | FRB BK FRE | Prod. Code: CTR |
| Ref. IMAD: | | | | Local Instrument Code: |
| IMAD: | 20110315L2LFFM1C000067 | | Prop. Code: | |
| OMAD: | 20110315L1LFB85C00007003151543FT03 | | | Ref. for Bal.: 20-12469 |
| As of Reason: | | As of Date: | Disposition: | |
| Acc Off: 001 | Account: 12195871 | | Acc. Type: DOA | Initiator ID: |
| Cr Acc Off: | Cr Acc No: | | Cr Acc Type: | |
| Db Advice: | Db Fee: | | Cr Advice: | Cr Fee: |
| Drawdown Credit Account: | | | | |
| Originator: | Originator Option F: | | Beneficiary: | |
| | | | 14000423 | |
| Anthony A Nobles | | | Robert S Brower | |
| 8686 Tern Ave | | | Chateau Julien Wine Estate | |
| Fountain Valley 92708-6233 | | | 8940 Carmel Valley Road | |
| | | | Carmel CA 93923 | |
| Originator Bank: | | | Beneficiary Bank: | |

Page 1 of 9

NOB0004

## CHECKING ACTIVITY

### Regular Checking

| | | Beginning Balance: | | |
| | | Ending Balance: | | |

| Date | Description | Amount Subtracted | Amount Added | Balance |
|------|-------------|-------------------|--------------|---------|
| 3/15 | Outgoing Domestic Wire Transfer | 10,000.00 | | |
| 3/16 | Fee for Domestic Funds Transfer | 25.00 | | |

BABC002079

Δ π EXHIBIT ___
Deponent BABCOCK
Date ___ Rptr: ___
WWW.DEPOBOOK.COM

```
**********AUTO**MIXED AADC 945
2766 1.3730 MB 0.507    11 20 8
ROBERT S BROWER SR
PATRICIA A BROWER
PO BOX 222422                                    12-0
CARMEL CA  93922-2422                               2
                                                  30
```

========================================================

Fee Change Notice Effective May 01, 2011:
Important Information Regarding Your Checking Account
The following reflects changes to your Deposit Account Agreement.
All other terms and conditions will remain the same.
Monthly Service Charge for a minimum daily balance less than
$10,000 or combined balance with Flex Option less than $25,000
is $24.00, less $4.00 with e-Statements.

========================================================

CALIFORNIA LIFESTYLE CHECKING ACCOUNT 14000423
========================================================

| DESCRIPTION | DEBITS | CREDITS | DATE | BALANCE |
|---|---|---|---|---|
| BALANCE LAST STATEMENT ............................ | | | 03/11/11 | 75,583.28 |
| CHECK # 8963 - AMERICAN EXPRESS ARC PMT 8963 | | | | |
| | 5,633.80 | | 03/14/11 | 69,949.48 |
| CHECK # 9225 - CHASE CHECK PYMT 9225 | | | | |
| | 176.00 | | 03/14/11 | 69,773.48 |
| CHECK # 9220 | 25.00 | | 03/14/11 | 69,748.48 |
| CHECK # 9227 | 20.86 | | 03/14/11 | 69,727.62 |
| WIRE:IN-201107400172;ORG ANTHONY A NOBLES;REF 20-12469 | | | | |
| | | 40,000.00 | 03/15/11 | 109,727.62 |
| WIRE:IN-201107400172;Incoming Wire Fee | | | | |
| | 15.00 | | 03/15/11 | 109,712.62 |
| CHECK # 8916 | 40,000.00 | | 03/17/11 | 69,712.62 |
| CHECK # 9230 | 662.00 | | 03/17/11 | 69,050.62 |
| CHECK # 9226 | 200.00 | | 03/18/11 | 68,850.62 |
| CHECK # 9228 | 20.00 | | 03/18/11 | 68,830.62 |
| CHECK # 9229 | 20.00 | | 03/18/11 | 68,810.62 |
| DEPOSIT | | 4,607.74 | 03/21/11 | 73,418.36 |
| CHECK # 9234 - MACYS PAYMENT CHECK PYMT 9234 | | | | |
| | 300.00 | | 03/21/11 | 73,118.36 |
| CHECK # 9231 | 35.00 | | 03/21/11 | 73,083.36 |
| CHECK # 9232 | 100.00 | | 03/21/11 | 72,983.36 |
| CHECK # 9233 - RETAIL SERVICES1 CHECKPAYMT 9233 | | | | |
| | 113.83 | | 03/22/11 | 72,869.53 |
| CHECK # 8970 - AT&T SERVICES LA CHECK PYMT 8970 | | | | |
| | 121.36 | | 03/24/11 | 72,748.17 |

* * * C O N T I N U E D * * *



Case: 17-05044    Doc# 113-5    Filed: 07/29/19    Entered: 07/29/19 23:27:46    Page 36
of 43

```
********AUTO**ALL FOR AADC 950
3587 1.1790 AB 0.485    15 1 8
ROBERT S BROWER SR
PATRICIA A BROWER
PO BOX 222422                        12-0
CARMEL CA  93922-2422                   3
                                       29
```

```
========================================================================
            CALIFORNIA LIFESTYLE CHECKING ACCOUNT 14000423
========================================================================
          DESCRIPTION         DEBITS      CREDITS    DATE      BALANCE

BALANCE LAST STATEMENT ................................ 01/12/11    80,142.95
CHECK # 8930                  201.43                    01/13/11    79,941.52
CHECK # 8931                  358.60                    01/14/11    79,582.92
CHECK # 8937               1,215.22                     01/14/11    78,367.70
DEPOSIT                                     719.72      01/18/11    79,087.42
CHECK # 8936                   23.91                    01/18/11    79,063.51
CHECK # 9152                  250.00                    01/18/11    78,813.51
CHECK # 9186                  100.00                    01/18/11    78,713.51
CHECK # 9189 - MACYS PAYMENT CHECK PYMT 9189
                               50.00                    01/19/11    78,663.51
CHECK # 9190 - RETAIL SERVICES1 CHECKPAYMT 9190
                              100.00                    01/19/11    78,563.51
CHECK # 8939 - CHASE CHECK PYMT 8939
                              190.40                    01/20/11    78,373.11
CHECK # 8940 - AT&T SERVICES LA CHECK PYMT 8940
                              121.36                    01/20/11    78,251.75
CHECK # 8942                  443.34                    01/20/11    77,808.41
CHECK # 8941                  142.60                    01/21/11    77,665.81
CHECK # 9167                   25.00                    01/21/11    77,640.81
CHECK # 9184                   10.00                    01/21/11    77,630.81
CHECK # 9185                   10.00                    01/21/11    77,620.81
CHECK # 9187                   15.00                    01/21/11    77,605.81
CHECK # 9191                   20.00                    01/21/11    77,585.81
CHECK # 9194 - FIA CardServices CHECK PYMT 9194
                              200.00                    01/24/11    77,385.81
CHECK # 8938                   42.85                    01/24/11    77,342.96
CHECK # 9188                   42.00                    01/24/11    77,300.96
CHECK # 9192                  100.00                    01/24/11    77,200.96
CHECK # 9193                   37.00                    01/26/11    77,163.96
WIRE:IN-201103100118;ORG TECHNOS DEVELOPMENT LLC;REF
   20-12450                             200,000.00 01/31/11   277,163.96
CHECK # 9195 - Nordstrom Visa CHECK PYMT 9195
                              422.00                    01/31/11   276,741.96
                  * * * C O N T I N U E D * * *
```



Δ π EXHIBIT 51
Deponent Nobles
Date 1·25·19 Rptr AA
WWW.DEPOBOOK.COM

ROBERT S BROWER SR
PATRICIA A BROWER

================================================================
            CALIFORNIA LIFESTYLE CHECKING ACCOUNT 14000423
================================================================

| DESCRIPTION | DEBITS | CREDITS | DATE | BALANCE |
|---|---|---|---|---|
| CHECK # 9196 - BLOOMINGDALESPAY CHECK PYMT 9196 | | | | |
|  | 22.00 | | 01/31/11 | 276,719.96 |
| CHECK # 9199 | 215.00 | | 01/31/11 | 276,504.96 |
| WIRE:IN-201103100118;Incoming Wire Fee | | | | |
|  | 15.00 | | 01/31/11 | 276,489.96 |
| CHECK # 8945 - AT&T TELCO WEST 000PAYMENT 8945 | | | | |
|  | 280.04 | | 02/01/11 | 276,209.92 |
| CHECK # 8947 - AMERICAN EXPRESS ARC PMT 8947 | | | | |
|  | 272.00 | | 02/01/11 | 275,937.92 |
| CHECK # 9200 - CHASE CHECK PYMT 9200 | | | | |
|  | 280.00 | | 02/01/11 | 275,657.92 |
| WIRE:OUT-201103300002;BNF CHATEAU JULIEN INC | | | | |
|  | 150,000.00 | | 02/02/11 | 125,657.92 |
| CHECK # 8943 | 286.01 | | 02/02/11 | 125,371.91 |
| CHECK # 9175 | 500.00 | | 02/02/11 | 124,871.91 |
| WIRE:OUT-201103300002;14-Outgoing Wire Fee-Domestic | | | | |
|  | 30.00 | | 02/02/11 | 124,841.91 |
| CHECK # 8944 | 201.43 | | 02/03/11 | 124,640.48 |
| DEPOSIT | | 1,617.60 | 02/04/11 | 126,258.08 |
| CHECK # 8948 | 50,000.00 | | 02/04/11 | 76,258.08 |
| CHECK # 9202 | 120.00 | | 02/04/11 | 76,138.08 |
| CHECK # 8946 - CHASE CHECK PYMT 8946 | | | | |
|  | 930.38 | | 02/07/11 | 75,207.70 |
| DEPOSIT | | 1,276.23 | 02/08/11 | 76,483.93 |
| CHECK # 8955 - AMERICAN EXPRESS ARC PMT 8955 | | | | |
|  | 3,922.74 | | 02/08/11 | 72,561.19 |
| CHECK # 9203 | 80.00 | | 02/09/11 | 72,481.19 |
| CHECK # 8952 | 203.83 | | 02/10/11 | 72,277.36 |
| CHECK # 8954 | 500.00 | | 02/10/11 | 71,777.36 |
| CHECK # 8949 | 175.00 | | 02/11/11 | 71,602.36 |
| CHECK # 9204 | 20.00 | | 02/11/11 | 71,582.36 |
| CHECK # 9205 | 53.04 | | 02/11/11 | 71,529.32 |
| INTEREST | | 8.74 | 02/11/11 | 71,538.06 |
| BALANCE THIS STATEMENT ............................. | | | 02/11/11 | 71,538.06 |

```
TOTAL CREDITS     (5)    203,622.29  MINIMUM BALANCE            71,529.32
TOTAL DEBITS     (44)    212,227.18  AVG AVAILABLE BALANCE      92,948.72
                                     AVERAGE BALANCE            93,169.27
                   * * * C O N T I N U E D * * *
```

ROBERT S BROWER SR
PATRICIA A BROWER

==================================================================
                     YOUR CHECKS SEQUENCED
==================================================================
DATE...CHECK #......AMOUNT DATE...CHECK #......AMOUNT DATE...CHECK #......AMOUNT

| DATE | CHECK # | AMOUNT | DATE | CHECK # | AMOUNT | DATE | CHECK # | AMOUNT |
|---|---|---|---|---|---|---|---|---|
| 01/13 | 8930 | 201.43 | 02/11 | 8949* | 175.00 | 01/24 | 9188* | 42.00 |
| 01/14 | 8931* | 358.60 | 02/10 | 8952* | 203.83 | 01/21 | 9191 | 20.00 |
| 01/18 | 8936 | 23.91 | 02/10 | 8954* | 500.00 | 01/24 | 9192 | 100.00 |
| 01/14 | 8937 | 1,215.22 | 01/18 | 9152* | 250.00 | 01/26 | 9193* | 37.00 |
| 01/24 | 8938* | 42.85 | 01/21 | 9167* | 25.00 | 01/31 | 9199* | 215.00 |
| 01/21 | 8941 | 142.60 | 02/02 | 9175* | 500.00 | 02/04 | 9202 | 120.00 |
| 01/20 | 8942 | 443.34 | 01/21 | 9184 | 10.00 | 02/09 | 9203 | 80.00 |
| 02/02 | 8943 | 286.01 | 01/21 | 9185 | 10.00 | 02/11 | 9204 | 20.00 |
| 02/03 | 8944* | 201.43 | 01/18 | 9186 | 100.00 | 02/11 | 9205 | 53.04 |
| 02/04 | 8948 | 50,000.00 | 01/21 | 9187 | 15.00 | | | |

(*) INDICATES A GAP IN CHECK NUMBER SEQUENCE

- - - - - - - - I N T E R E S T - - - - - - - - - -

AVERAGE LEDGER BALANCE:         93,169.27  INTEREST EARNED:                     8.74
AVERAGE AVAILABLE BALANCE:      92,948.72  DAYS IN PERIOD:                        30
INTEREST PAID THIS PERIOD:          8.74   ANNUAL PERCENTAGE YIELD EARNED:     .11%
INTEREST PAID 2011:                26.79
INTEREST PAID 2010:                22.19

- - - ITEMIZATION OF OVERDRAFT AND RETURNED ITEM FEES - - -

| | TOTAL FOR THIS PERIOD | TOTAL YEAR TO DATE |
|---|---|---|
| TOTAL OVERDRAFT FEES: | .00 | .00 |
| TOTAL RETURNED ITEM FEES: | .00 | .00 |

```
**********AUTO**MIXED AADC 945
2766 1.3730 MB 0.507    11 20 8
ROBERT S BROWER SR
PATRICIA A BROWER
PO BOX 222422                                    12-0
CARMEL CA  93922-2422                               2
                                                  30
```

Fee Change Notice Effective May 01, 2011:
Important Information Regarding Your Checking Account
The following reflects changes to your Deposit Account Agreement.
All other terms and conditions will remain the same.
Monthly Service Charge for a minimum daily balance less than
$10,000 or combined balance with Flex Option less than $25,000
is $24.00, less $4.00 with e-Statements.

### CALIFORNIA LIFESTYLE CHECKING ACCOUNT 14000423

| DESCRIPTION | DEBITS | CREDITS | DATE | BALANCE |
|---|---|---|---|---|
| BALANCE LAST STATEMENT ............................ | | | 03/11/11 | 75,583.28 |
| CHECK # 8963 - AMERICAN EXPRESS ARC PMT 8963 | | | | |
| | 5,633.80 | | 03/14/11 | 69,949.48 |
| CHECK # 9225 - CHASE CHECK PYMT 9225 | | | | |
| | 176.00 | | 03/14/11 | 69,773.48 |
| CHECK # 9220 | 25.00 | | 03/14/11 | 69,748.48 |
| CHECK # 9227 | 20.86 | | 03/14/11 | 69,727.62 |
| WIRE:IN-201107400172;ORG ANTHONY A NOBLES;REF 20-12469 | | | | |
| | | 40,000.00 | 03/15/11 | 109,727.62 |
| WIRE:IN-201107400172;Incoming Wire Fee | | | | |
| | 15.00 | | 03/15/11 | 109,712.62 |
| CHECK # 8916 | 40,000.00 | | 03/17/11 | 69,712.62 |
| CHECK # 9230 | 662.00 | | 03/17/11 | 69,050.62 |
| CHECK # 9226 | 200.00 | | 03/18/11 | 68,850.62 |
| CHECK # 9228 | 20.00 | | 03/18/11 | 68,830.62 |
| CHECK # 9229 | 20.00 | | 03/18/11 | 68,810.62 |
| DEPOSIT | | 4,607.74 | 03/21/11 | 73,418.36 |
| CHECK # 9234 - MACYS PAYMENT CHECK PYMT 9234 | | | | |
| | 300.00 | | 03/21/11 | 73,118.36 |
| CHECK # 9231 | 35.00 | | 03/21/11 | 73,083.36 |
| CHECK # 9232 | 100.00 | | 03/21/11 | 72,983.36 |
| CHECK # 9233 - RETAIL SERVICES1 CHECKPAYMT 9233 | | | | |
| | 113.83 | | 03/22/11 | 72,869.53 |
| CHECK # 8970 - AT&T SERVICES LA CHECK PYMT 8970 | | | | |
| | 121.36 | | 03/24/11 | 72,748.17 |

* * * C O N T I N U E D * * *

Δ π EXHIBIT 26
Deponent
Date
WWW.DEPOBOOK.COM

ROBERT S BROWER SR
PATRICIA A BROWER

=========================================================================
CALIFORNIA LIFESTYLE CHECKING ACCOUNT 14000423
=========================================================================

| DESCRIPTION | DEBITS | CREDITS | DATE | BALANCE |
|---|---|---|---|---|
| CHECK # 8971 - AMERICAN EXPRESS ARC PMT 8971 | | | | |
| | 250.00 | | 03/24/11 | 72,498.17 |
| CHECK # 8964 | 33.43 | | 03/24/11 | 72,464.74 |
| CHECK # 8969 | 323.31 | | 03/24/11 | 72,141.43 |
| CHECK # 8973 - CHASE CHECK PYMT 8973 | | | | |
| | 1,472.19 | | 03/25/11 | 70,669.24 |
| CHECK # 8975 - CHASE CHECK PYMT 8975 | | | | |
| | 798.74 | | 03/25/11 | 69,870.50 |
| CHECK # 8966 | 843.51 | | 03/25/11 | 69,026.99 |
| CHECK # 8968 | 206.72 | | 03/25/11 | 68,820.27 |
| CHECK # 8972 | 146.58 | | 03/25/11 | 68,673.69 |
| CHECK # 9235 | 270.00 | | 03/25/11 | 68,403.69 |
| CHECK # 8965 | 50.84 | | 03/28/11 | 68,352.85 |
| CHECK # 8967 | 58.72 | | 03/28/11 | 68,294.13 |
| CHECK # 8974 | 19.41 | | 03/28/11 | 68,274.72 |
| CHECK # 9236 | 34.00 | | 03/30/11 | 68,240.72 |
| CHECK # 9237 | 85.00 | | 03/30/11 | 68,155.72 |
| CHECK # 9240 - FIA CardServices CHECK PYMT 9240 | | | | |
| | 300.00 | | 03/31/11 | 67,855.72 |
| CHECK # 9242 - Nordstrom Visa CHECK PYMT 9242 | | | | |
| | 325.00 | | 03/31/11 | 67,530.72 |
| CHECK # 9219 | 24.00 | | 04/01/11 | 67,506.72 |
| CHECK # 9238 | 20.00 | | 04/01/11 | 67,486.72 |
| CHECK # 9239 | 10.00 | | 04/01/11 | 67,476.72 |
| CHECK # 9241 - BLOOMINGDALESPAY CHECK PYMT 9241 | | | | |
| | 459.51 | | 04/04/11 | 67,017.21 |
| CHECK # 9217 | 500.00 | | 04/04/11 | 66,517.21 |
| CHECK # 9243 | 120.00 | | 04/04/11 | 66,397.21 |
| DEPOSIT | | 4,420.42 | 04/07/11 | 70,817.63 |
| CHECK # 8977 | 5,000.00 | | 04/08/11 | 65,817.63 |
| CHECK # 8978 - AMERICAN EXPRESS ARC PMT 8978 | | | | |
| | 7,038.55 | | 04/11/11 | 58,779.08 |
| CHECK # 8980 - DIRECTV CHECK PYMT 8980 | | | | |
| | 156.78 | | 04/11/11 | 58,622.30 |
| CHECK # 8984 - AMERICAN EXPRESS ARC PMT 8984 | | | | |
| | 235.00 | | 04/11/11 | 58,387.30 |
| CHECK # 8976 | 6,783.00 | | 04/11/11 | 51,604.30 |
| CHECK # 8987 | 2,000.00 | | 04/11/11 | 49,604.30 |
| CHECK # 8979 - AT&T TELCO WEST 000PAYMENT 8979 | | | | |
| | 241.79 | | 04/12/11 | 49,362.51 |

* * * C O N T I N U E D * * *

ROBERT S BROWER SR
PATRICIA A BROWER

=================================================================
CALIFORNIA LIFESTYLE CHECKING ACCOUNT 14000423
=================================================================

| DESCRIPTION | DEBITS | CREDITS | DATE | BALANCE |
|---|---|---|---|---|
| CHECK # 8981 - CHASE CHECK PYMT 8981 | | | | |
| CHECK # 9247 | 984.19 | | 04/12/11 | 48,378.32 |
| CHECK # 9248 | 358.00 | | 04/12/11 | 48,020.32 |
| INTEREST | 125.00 | | 04/12/11 | 47,895.32 |
| BALANCE THIS STATEMENT ............................ | | 6.31 | 04/12/11 | 47,901.63 |
| | | | 04/12/11 | 47,901.63 |

| | | | | |
|---|---|---|---|---|
| TOTAL CREDITS | (4) | 49,034.47 | MINIMUM BALANCE | 47,895.32 |
| TOTAL DEBITS | (47) | 76,716.12 | AVG AVAILABLE BALANCE | 70,116.26 |
| | | | AVERAGE BALANCE | 70,359.51 |

=================================================================
YOUR CHECKS SEQUENCED
=================================================================

| DATE | CHECK # | AMOUNT | DATE | CHECK # | AMOUNT | DATE | CHECK # | AMOUNT |
|---|---|---|---|---|---|---|---|---|
| 03/17 | 8916* | 40,000.00 | 04/08 | 8977* | 5,000.00 | 03/21 | 9231 | 35.00 |
| 03/24 | 8964 | 33.43 | 04/11 | 8987* | 2,000.00 | 03/21 | 9232* | 100.00 |
| 03/28 | 8965 | 50.84 | 04/04 | 9217* | 500.00 | 03/25 | 9235 | 270.00 |
| 03/25 | 8966 | 843.51 | 04/01 | 9219 | 24.00 | 03/30 | 9236 | 34.00 |
| 03/28 | 8967 | 58.72 | 03/14 | 9220* | 25.00 | 03/30 | 9237 | 85.00 |
| 03/25 | 8968 | 206.72 | 03/18 | 9226 | 200.00 | 04/01 | 9238 | 20.00 |
| 03/24 | 8969* | 323.31 | 03/14 | 9227 | 20.86 | 04/01 | 9239* | 10.00 |
| 03/25 | 8972* | 146.58 | 03/18 | 9228 | 20.00 | 04/04 | 9243* | 120.00 |
| 03/28 | 8974* | 19.41 | 03/18 | 9229 | 20.00 | 04/12 | 9247 | 358.00 |
| 04/11 | 8976 | 6,783.00 | 03/17 | 9230 | 662.00 | 04/12 | 9248 | 125.00 |

(*) INDICATES A GAP IN CHECK NUMBER SEQUENCE

- - - - - - - - - - - I N T E R E S T - - - - - - - - -

| | | | |
|---|---|---|---|
| AVERAGE LEDGER BALANCE: | 70,359.51 | INTEREST EARNED: | 6.31 |
| AVERAGE AVAILABLE BALANCE: | 70,116.26 | DAYS IN PERIOD: | 32 |
| INTEREST PAID THIS PERIOD: | 6.31 | ANNUAL PERCENTAGE YIELD EARNED: | .10% |
| INTEREST PAID 2011: | 38.54 | | |

* * * C O N T I N U E D * * *

ROBERT S BROWER SR
PATRICIA A BROWER

==================================================================
CALIFORNIA LIFESTYLE CHECKING ACCOUNT 14000423
==================================================================

- - - ITEMIZATION OF OVERDRAFT AND RETURNED ITEM FEES - - -

```
***********************************************************
*          |  TOTAL FOR   |     TOTAL              *
*          |  THIS PERIOD |   YEAR TO DATE          *
*---------------------------------------------------------*
* TOTAL OVERDRAFT FEES:    |     .00      |      .00     *
*---------------------------------------------------------*
* TOTAL RETURNED ITEM FEES: |    .00      |      .00     *
***********************************************************
```