David W. Balch, Esq. (SBN 226519)
L+G, LLP
318 Cayuga Street
Salinas, CA 93901
Tel: 831.754.2444

Attorneys for Coastal Cypress Corporation, Wilford "Butch" Lindley
Patricia Brower, Patricia Brower Trust, and American Commercial Properties, Inc.

Specially appearing as counsel for, and filing on behalf of, Robert Brower, Sr.

Michael A. Vacchio (SBN 110057
SAMINI COHEN SPANOS LLP
333 S. Hope St., 35th Floor
Los Angeles, CA 900
Tel: 213.863.0080

Attorneys for Anthony Nobles and Richard Babcock

# UNITED STATES BANKRUPTCY COURT
# NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| *In re Robert Brower, Sr.*<br><br>Debtor. | Case No.: 15-50801 (MEH)<br><br>Chapter 11 |
| MUFG UNION BANK, N.A.,<br><br>Plaintiff,<br>v.<br><br>ROBERT BROWER, SR., an individual, PATRICIA BROWER, an individual, COASTAL CYPRESS CORPORATION, a California corporation, COASTAL CYPRESS CORPORATION, a Delaware corporation, AMERICAN COMMERCIAL PROPERTIES, INC., a Nevada corporation, ANTHONY NOBLES, an individual, WILFORD "BUTCH" LINDLEY, an | Adv. Proc. No. 17-05044<br><br>**OPPOSITION TO PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT**<br><br>**MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT**<br><br>Place: United States Bankruptcy Court<br>280 South First Street<br>San Jose, CA 95113<br>Judge: Hon. M. Elaine Hammond<br>Crtrm: 3020 |

| | |
|---|---|
| individual, RICHARD BABCOCK, an individual, PATRICIA BROWER TRUST, and DOES 1-50,<br><br>　　Defendants. | Date: August 26, 2019<br>Time: 11 am<br>Court: 3020 |

Defendants Robert Brower, Sr., Coastal Cypress Corporation (California and Delaware), Wilford "Butch" Lindley, Patricia Brower, Patricia Brower Trust, American Commercial Properties, Inc., Anthony Nobles, and Richard Babcock, hereby oppose the Motion for Summary Judgment brought by Plaintiff Union Bank.

This Opposition is based on the attached Memorandum of Points and Authorities, the Declaration of David W. Balch, the Supplemental Declaration of Robert Brower, and the Declaration of Wilford "Butch" Lindley, filed contemporaneously with this Opposition, with the Declarations from David Balch, Robert Brower, Richard Babcock, and Anthony Nobles, and the exhibits thereto, filed in this matter on July 29, 2019, all other pleadings and papers on file or deemed to be on file in this action, those matters of which this Court may take judicial notice, and upon the oral arguments of counsel made at the hearing on this Motion.

Dated: August 12, 2019

　　　　　　　　　　　　　　　　　　　　　　　JRG Attorneys at Law

　　　　　　　　　　　　　　　　　　　　　　　　　　　//s//
　　　　　　　　　　　　　　　　　　　　　　By: _____
　　　　　　　　　　　　　　　　　　　　　　　　　David W. Balch

　　　　　　　　　　　　　　　　　　　　　　Attorneys for CCC California, CCC Delaware, Butch Lindley, ACP, Patty Brower, and Patty Brower Trust

　　　　　　　　　　　　　　　　　　　　　　Specially appearing as counsel for, and filing on behalf of, Robert Brower, Sr.

Dated: August 12, 2019

SAMINI COHEN SPANOS LLP

By: _____
    Michael Vacchio

Attorneys for Anthony Nobles and Richard Babcock

# TABLE OF CONTENTS

Table of Authorities ................................................................................................................ ii

INTRODUCTION ..................................................................................................................... 1

STATEMENT OF FACTS ......................................................................................................... 3

    A. Butch Lindley ............................................................................................................. 3

    B. Nobles / Babcock ....................................................................................................... 4

    C. Patricia Brower ........................................................................................................... 6

LEGAL ARGUMENT ............................................................................................................... 7

Point I:     Statement of Law Regarding Summary Judgment ................................................ 7

Point II:    Chualar Canyon Ranch Supply, Richard Babcock, Anthony Nobles and Patty Brower Trust Own Shares of Coastal Cypress Corporation ....................... 8

    A. The Share Certificates are Valid Under Delaware and California Law ............... 8

    B. The Share Certificates Are Valid Under California Law Because Money or Services Were Rendered ................................................................... 8

    C. Brower, Nobles, Babcock, and Chualar Canyon Ranch Supply are Bona Fide Purchasers of Stock ................................................................. 9

    D. The Statute of Limitations Has Long Since Expired ......................................... 10

Point III:   Patty Brower's Shares of Coastal, and Her ACP Property, are Her Separate Property ........................................................................................ 11

Point IV:   The Motion Must Be Denied as to the Third Cause of Action ........................... 13

CONCLUSION ....................................................................................................................... 13

# Table of Authorities

Cases

*Burge v. Midway Pacific Oil Co.* (1929) 99 Cal.App. 714 .................................................................9

*Cortelyou v. Imperial Land Co.* (1909) 156 Cal. 373, 376 ..............................................................9

*Ellsworth v. National Home & Town Builders* (1917) 33 Cal. App. 1 ............................................9

*Estate of Bibb* (2001) 87 Cal.App.4th 461 ....................................................................................13

*Estate of Petersen* (1994) 28 Cal.App.4th 1742 ...........................................................................12

*Haft v. Dart Group Corp.*, 841 F. Supp. 549 (D. Del. 1993) ...........................................................8

*High Tech Gays v. Defense Indus. Sec. Clearance Office*, 895 F.2d 563 (9th Cir.1990) .............7

*Hironymous v. Hiatt* (1921) 52 Cal.App. 727, 736 ......................................................................10

*In re Estate of Clark* (1928), 94 Cal. App. 453 ............................................................................12

*In re Marriage of Bonds* (2000) 24 Cal.4th 1 ..............................................................................11

*In re Marriage of Hill & Dittmer* (2011) 202 Cal.App.4th 1046 .................................................11

*In re Marriage of Valli* (2014) 58 Cal.4th 1396 ..........................................................................12

*Leslie v. Grupo ICA*, 198 F.3d 1152 (9th Cir.1999) .......................................................................7

*Michaels v. Pacific Soft Water Laundry* (1930) 104 Cal.App. 349................................................9

*Nissan Fire & Marine Ins. Co., Ltd. v. Fritz Companies, Inc.*, 210 F.3d 1099 (2000) ..................7

*Norgart v. Upjohn Co.* (1999) 21 Cal.4th 383 .............................................................................11

*Ogden v. Bumble Bee Foods, LLC*, 2014 U.S.Dist.LEXIS (N.D.Cal. Jan. 2, 2014) .......................7

*Robertson v. Superior Court* (2001) 90 Cal.App.4th 1319 ..........................................................10

*Rosas v. BASF Corp.* (2015) 236 Cal.App.4th 1378 ....................................................................11

*Shanik v. White Sewing Machine Corp.*, 25 Del. Ch. 371 (Del. 1941) ..........................................8

*Somps v. Somps* (1967) 250 Cal. App. 2d 328 .............................................................................12

*Stegall v. Citadel Broad. Co.*, 350 F.3d 1061 (9th Cir. 2003) ........................................................7

*Walters v. Boosinger* (2016) 2 Cal.App.5th 421 ..........................................................................20

Statutes

| | |
|---|---|
| 8 Del. C. § 152 | 8 |
| California Code of Civil Procedure, § 338a | 10 |
| California Corporations Code, § 409 | 8 |
| California Family Code section 1615 | 11 |
| California Family Code section 852 | 12 |
| Fed. Bank. Proc. Rule 7056 | 7 |
| Fed. Civ.Proc. Rule 56(a) | 7 |
Correction:

Statutes

8 Del. C. § 152 .......... 8
California Code of Civil Procedure, § 338a .......... 10
California Corporations Code, § 409 .......... 8
California Family Code section 1615 .......... 11
California Family Code section 852 .......... 12
Fed. Bank. Proc. Rule 7056 .......... 7
Fed. Civ.Proc. Rule 56(a) .......... 7

# MEMORANDUM OF POINTS AND AUTHORITIES

Defendants Robert Brower, Sr., Coastal Cypress Corporation (California and Delaware), Wilford "Butch" Lindley, Patricia Brower, Patricia Brower Trust, American Commercial Properties, Inc., Anthony Nobles, and Richard Babcock, respectfully submit their Memorandum of Points and Authorities in Opposition to Plaintiff's Motion for Summary Judgment.

## INTRODUCTION

### A.  Shares in Coastal Cypress

Plaintiff contends – without any evidence – that Coastal Cypress Corporation never issued stock to Patty Brower, Wilford "Butch" Lindley, Richard Babcock, and Anthony Nobles, or in the alternative, that if it did issue stock, the issuance was void. Those arguments fail.

#### 1.  Babcock and Nobles

Plaintiff has acknowledged that Babcock and Nobles collectively paid $250,000 for their shares in Coastal Cypress Corporation. Nonetheless, Plaintiff contends that because this money was deposited into Mr. Brower's personal bank account, it cannot form consideration for issuance of stock by Coastal. That reasoning is flawed.

Anthony Nobles. Anthony Nobles paid $200,000 for his shares of stock. (Nobles Declaration, at ¶ 2.) Plaintiff concedes that he paid for his stock. The bank records and Coastal's general ledger reflect that (i) $50,000 of this money was re-deposited directly into Coastal's bank account – so Union Bank's argument that none of the Nobles payment went directly to Coastal is flat wrong, and (ii) the remaining $150,000 was loaned from Coastal to Chateau Julien and booked on Coastal's general ledger as an account receivable. Coastal received a tax break when this account receivable was written off in 2015 as "bad debt." As such, Coastal received a benefit from the Nobles payment. Further, this money was listed on Coastal's general ledger as "paid-in capital."

Richard Babcock. Richard Babcock paid $50,000 for his shares -- $10,000 directly from him, and $40,000 from Anthony Nobles. Bank records reflect that $40,000 of this money went

1

Memorandum of Points and Authorities

into Coastal. Specifically, in advance of payment for these shares, Bob Brower loaned $40,000 to Coastal. The $40,000 payment for the Nobles shares was provided to Brower, as repayment of that loan. The net effect was that Coastal had direct use of the $40,000. The accounting for the remaining $10,000 is less clear – though all parties agree that the $10,000 was paid, albeit directly to Chateau Julien.

Moreover, even if the stock transfer did not meet all the technicalities of California law, the Defendants are "innocent" parties are entitled to retain their shares. *See Cortelyou v. Imperial Land Co.* (1909) 156 Cal. 373, 376. Finally, Union Bank's lawsuit is barred by the three year statute of limitations.

2. Lindley / Chualar Canyon Ranch Supply

Butch Lindley and Chualar Canyon Ranch Supply ("CCRS") performed services for Coastal and Chateau Julien in the 1980's, which is sufficient consideration for the granting of stock. For example, Mr. Lindley had extensive relationships in the wine industry in the local region and he know of other wineries that were selling excess equipment that was needed by Chateau Julien, Great American Wineries, and Coastal Cypress Corporation. Mr. Lindley also had the required connections to have this equipment installed. Coastal Cypress owned much of this equipment, and Mr. Lindley's services were of significant benefit to Coastal. Moreover, Mr. Lindley, as a well known figure in the wine industry, lent instant credibility to Coastal and Chateau Julien.

Further, CCRS is also an "innocent" party and entitled to retain its shares, and Union Bank's lawsuit is time barred.

3. Patty Brower

Mr. and Mrs. Brower entered into a valid prenuptial agreement in 1980. Pursuant to that agreement, each retained their property as separate property. Mrs. Brower was issued her shares in Coastal in the 1980's, in exchange for payment by her of separate-property funds. Union Bank contends that Ms. Brower could not have purchased those shares, because her prenuptial agreement reflects that she only owned $15,000. Union Bank is incorrect. The prenuptial

agreement reflects that Ms. Brower owned $515,000 worth of separate property. (Brower Supplemental Declaration, at ¶ 4.)[1]

Moreover, any lawsuit challenging the validity of those shares is time-barred.

B.  ACP

Further, Mr. Brower transferred his entire interest in ACP to Mrs. Brower in 2000. The transaction was a proper transmutation under California Family Code section 850 *et seq.* There is no basis to unwind the transaction from 2000.

## STATEMENT OF FACTS

A.  Butch Lindley

Robert Brower, Sr. formed Coastal Cypress Corporation, a California corporation, in 1982. At all times, he has been the President of Coastal Cypress. In 1987, Coastal Cypress issued 355,000 shares to Chualar Canyon Ranch Supply, a company owned by Wilford "Butch" Lindley. Those shares are memorialized in Coastal's stock register. Mr. Lindley did not pay cash for his shares. Rather, he provided certain goods and services—such as certain portions of the grape crops from his grape-growing operation, and the provision of his services to assist Coastal and Chateau Julien in CJ's efforts to lease land, grow grapes, and produce wine. (Brower July Declaration, at ¶ 2.)

For example, Mr. Lindley had extensive relationships in the wine industry in the local region and he know of other wineries that were selling excess equipment that was needed by Chateau Julien, Great American Wineries, and Coastal Cypress Corporation. Mr. Lindley also had the required connections to have this equipment installed. This equipment included processing tanks and other processing equipment. Coastal Cypress owned much of this equipment. Because of Coastal's capacity increase, Coastal could charge higher rents to its two tenants (Chateau Julien (the licensing entity) and Great American Wineries (the winery)). Coastal's ability to charge higher rents, in turn, was due to Mr. Lindley's services on behalf of Coastal, prior to receiving his

---

[1] Robert Brower has submitted two declarations. His declaration dated July 29, 2019 will be cited as the "Brower July Declaration," and his declaration dated August 12, 2019, will be cited as the "Brower Supplemental Declaration."

3

Memorandum of Points and Authorities

shares of stock. (Brower Supplemental Declaration, at ¶¶ 9-10; *see generally* Lindley Declaration, at ¶¶ 3-4.)

Finally, it is critical to note that the Browers moved out to the Central Coast in 1982 from New Jersey. They were newcomers to the area and the wine industry. At that time, Butch Lindley was well known in the agricultural and wine industry in the Central Coast (and beyond), and his affiliation with the global entity, including Coastal Cypress, brought instant credibility to the operations. This all was a significant benefit to Coastal Cypress. (Brower Supplemental Declaration, at ¶ 11.)

B.  Nobles / Babcock

In 2011, Anthony Nobles and Richard Babcock were issued a combined 250,000 shares of stock from Coastal Cypress Corporation. Mr. Babcock was issued 50,000 shares and Mr. Nobles was issued 200,000 shares. Mr. Babcock was required to pay $50,000 for his shares. Of that amount, he paid $10,000, and Mr. Nobles paid $40,000 on behalf of Mr. Babcock. Mr. Nobles also paid $200,000 for his own shares. Under the share purchase agreement, the shares were originally going to be preferred shares. At some point in time, those shares were converted into common shares. (Brower July Declaration, at ¶¶ 3-4; Nobles Declaration, at ¶ 2; Babcock Declaration ¶ 2.)

Union Bank now contends that the bank account into which the funds were wired was not the bank account for Coastal Cypress Corporation, but rather the bank account for Robert Brower and Patty Brower individually. That is not correct.

Anthony Nobles. Anthony Nobles paid $200,000 for his shares of stock. Plaintiff concedes that he paid for his stock. The bank records and Coastal's general ledger reflect that (i) $50,000 of this money was re-deposited directly into Coastal's bank account – so Union Bank's argument that none of the Nobles payment went directly to Coastal is flat wrong, and (ii) the remaining $150,000 was loaned from Coastal to Chateau Julien and booked on Coastal's general ledger as an account receivable. Coastal received a tax break when this account

4

Memorandum of Points and Authorities

receivable was written off in 2015 as "bad debt." (Brower July Declaration, at ¶¶ 5-7.) As such, Coastal received a benefit from the Nobles payment. Further, this money was listed on Coastal's general ledger as "paid-in capital." *See generally* (Brower Supplemental Declaration, at ¶ 12-13, 16-17.)

The money loaned by Coastal to Chateau Julien was booked by Coastal on its general ledger as paid-in capital. The Coastal-to-Chateau Julien loans were added to Chateau Julien's accounts payable to Coastal, and Chateau Julien made periodic payments on that loan. When Chateau Julien ceased operations in 2015, Coastal took an income tax "bad debt" deduction for the balance of the Chateau Julien AR's. (Brower July Declaration, at ¶¶ 5-7; *see generally* (Brower Supplemental Declaration, at ¶ 12-13, 16-17.)

Richard Babcock. Richard Babcock paid $50,000 for his shares -- $10,000 directly from him, and $40,000 from Anthony Nobles. Bank records reflect that $40,000 of this money went into Coastal. Specifically, in advance of payment for these shares, Bob Brower loaned $40,000 to Coastal. The $40,000 payment for the Nobles shares was provided to Brower, as repayment of that loan. The net effect was that Coastal had direct use of the $40,000. The accounting for the remaining $10,000 is less clear – though all parties agree that the $10,000 was paid, albeit directly to Chateau Julien.

Coastal Cypress' income tax returns and other financial documents were provided annually to Union Bank. As such, Union Bank knew as far back as 2012 that 250,000 additional shares of stock had been issued. Moreover, in an email to Union Bank in 2012, Mr. Brower specifically noted that there were additional shareholders in Coastal. (Brower July Declaration, at ¶¶ 5-7.) *See generally* (Brower Supplemental Declaration, at ¶ 12-13, 14-15.)

Finally, there is no evidence whatsoever that Mr. Nobles or Mr. Babcock understood that a portion of their funds were used outside of Coastal Cypress. They are the quintessential "innocent" investors. (Nobles Declaration, at ¶ 4; Babcock Declaration ¶ 4.)

5

C.  Patricia Brower

In 1982, Patricia Brower was issued 25,000 shares of Coastal stock. In 1984, she was issued an additional 100,000 shares of Coastal stock. The register indicates that this was "paid in capital," and Mr. Brower has testified that these shares were issued in exchange for payment by Ms. Brower of separate-property funds. (Brower July Declaration, at ¶ 9; Brower Supplemental Declaration, at ¶ 8.)

In 2015, Ms. Brower formed the Patricia Brower Trust and placed those shares in the trust. In 2017, when Coastal Cypress California was merged into Coastal Cypress Delaware, the Trust surrendered its shares in Coastal Cypress California and were re-issued shares in Coastal Cypress Delaware. (Brower July Declaration, at ¶ 9.)

Mr. and Mrs. Brower were married since the inception of Coastal Cypress California. They held their shares as separate property, pursuant to a Marital Asset Agreement executed in 1980. (Brower July Declaration, at ¶ 10.)

Mr. Brower formed American Commercial Properties in 1983, using money that he had saved prior to his marriage with Patty Brower. (Brower July Declaration, at ¶ 11; Brower Supplemental Declaration, at ¶ 5.) Under California law and pursuant to the property agreement with Patty Brower, ACP was Mr. Brower's sole and separate property. On November 8, 2000, Mr. Brower transferred my entire interest in ACP to Patty Brower as her sole and separate property, on the occasion of their anniversary. (Brower July Declaration, at ¶ 11.) After the transfer, Mr. Brower retained zero ownership interest. The transfer was memorialized by (i) a transfer of stock certificate, (ii) a notation in the ACP stock register, and (iii) a personal note and card from Mr. Brower to Mrs. Brower on November 8, 2000. (Brower July Declaration, at ¶ 11.)

Finally, Union Bank has known since at least 2012 that Patty Brower was the owner of 100% of ACP stock. (Supplemental Brower Declaration, at ¶ 3.)

In 2015, when Mrs. Brower created the Patricia Brower Trust, she transferred ownership of ACP into the Trust.

# LEGAL ARGUMENT

## Point I: Statement of Law Regarding Summary Judgment

The party moving for summary judgment must persuade the court that there is "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. Civ.Proc. Rule 56(a); Fed. Bank. Proc. Rule 7056. "A moving party without the ultimate burden of persuasion at trial-usually, but not always, a defendant-has both the initial burden of production and the ultimate burden of persuasion on a motion for summary judgment." *Nissan Fire & Marine Ins. Co., Ltd. v. Fritz Companies, Inc.*, 210 F.3d 1099, 1102 (2000).

"In order to carry its burden of production, the moving party must either produce evidence negating an essential element of the nonmoving party's claim or defense or show that the nonmoving party does not have enough evidence of an essential element to carry its ultimate burden of persuasion at trial." *Nissan Fire*, 210 F.3d at 1102, *citing High Tech Gays v. Defense Indus. Sec. Clearance Office*, 895 F.2d 563, 574 (9th Cir.1990). "In order to carry its ultimate burden of persuasion on the motion, the moving party must persuade the court that there is no genuine issue of material fact." *Nissan Fire*, 210 F.3d at 1102.

At the summary judgment stage, the Court must view the evidence in the light most favorable to the nonmoving party and "all reasonable inferences that may be drawn from the facts placed before the court must be drawn" in favor of the opposing party. *Stegall v. Citadel Broad. Co.*, 350 F.3d 1061, 1065 (9th Cir. 2003). If evidence produced by the moving party conflicts with evidence produced by the nonmoving party, a court must assume the truth of the evidence set forth by the nonmoving party with respect to that fact. *See Leslie v. Grupo ICA*, 198 F.3d 1152, 1158 (9th Cir.1999); *see also Ogden v. Bumble Bee Foods, LLC*, 2014 U.S.Dist.LEXIS 565, at *18-19.) (N.D.Cal. Jan. 2, 2014). The Ninth Circuit "specifically rejected the notion that a court could disregard direct evidence on the ground that no reasonable jury would believe it," because such a rule would contradict the clear instruction that a court may not weigh the evidence or assess its credibility.") *See Leslie v. Grupo ICA*, 198 F.3d 1152, 1158

**Point II: Chualar Canyon Ranch Supply, Richard Babcock,
Anthony Nobles, and Patty Brower Trust Own Shares of Coastal Cypress Corporation**

Union Bank's motion for summary judgment, insofar as it seeks to have the Coastal shares of Chualar Canyon Ranch Supply, Richard Babcock, Anthony Nobles, and the Patty Brower Trust declared void, must be denied.

A. <u>The Share Certificates are Valid Under Delaware and California Law</u>

Under Delaware law, "the board of directors may authorize capital stock to be issued for consideration consisting of cash, any tangible or intangible property or any benefit to the corporation, or any combination thereof." 8 Del. C. § 152. "In the absence of actual fraud in the transaction, the judgment of the directors as to the value of such consideration shall be conclusive." *Id.* One asserting the defense of lack of consideration bears the burden of proving that defense. *Haft v. Dart Group Corp.*, 841 F. Supp. 549, 1993 U.S. Dist. LEXIS 18846 (D. Del. 1993).

In this case, each defendant surrendered their old shares of Coastal California stock for the new shares of Coastal Delaware stock. This is sufficient consideration. *Shanik v. White Sewing Machine Corp.*, 25 Del. Ch. 371, 19 A.2d 831 (Del. 1941). Further, the services rendered by Butch Lindley, and the money contributed by Anthony Nobles, Richard Babcock, and Patty Brower, ultimately accrued to the benefit of Coastal California (and thus Coastal Delaware by merger). This is all that is required, since consideration can be "any benefit to the corporation." 8 Del. C. § 152.

B. <u>The Share Certificates Are Valid Under California Law Because Money or Services Were Rendered</u>

Under California law, a corporation may issue shares for "money paid; labor done; services actually rendered to the corporation or for its benefit or in its formation or reorganization; debts or securities canceled; and tangible or intangible property actually received either by the issuing corporation or by a wholly owned subsidiary." California Corporations Code, § 409.

8

Memorandum of Points and Authorities

In this case, Butch Lindley provided services of benefit to Coastal Cypress California back in the 1980s. This is sufficient to justify issuance of shares. *See Ellsworth v. National Home & Town Builders* (1917) 33 Cal. App. 1, 2 (corporate stock issued in consideration of valuable services rendered and labor performed for corporation is not issued without consideration).

In the 1980's, Patty Brower paid cash consideration for her shares. This is clearly sufficient consideration.

In 2011, Anthony Nobles and Richard Babcock paid $250,000 for their shares. The money were paid into the personal bank account of Robert Brower, but he has testified that (i) $50,000 of the Nobles money went to Coastal, (ii) $150,000 of the Nobles money was loaned to Chateau Julien at the direction of Coastal Cypress, and Coastal ultimately received a tax advantage when it deducted the entirety of the AR's as "bad debt," (iii) $40,000 of the Babcock money went into Coastal, and (iv) $10,000 of the Babcock money was provided directly to Chateau Julien. This is sufficient consideration. *See Burge v. Midway Pacific Oil Co.* (1929) 99 Cal.App. 714, 717 ("if there is some consideration emanating from a legitimate transaction, one not tainted with fraud, and intended to redound to the benefit of the corporation, the constitutional and statutory requirements for the issue of corporate bonds, in so far as the corporation or its stockholders are concerned, are satisfied).

C. <u>Brower, Nobles, Babcock, and Chualar Canyon Ranch Supply are Bona Fide Purchasers of Stock</u>

Even if the Court were to find insufficient consideration – because the money did not initially flow into Coastal – the defendants are still the rightful stockholders. Under longstanding California law, even if stock is issued in a manner inconsistent with Corporations Code section 409, a bona fide (or "innocent") purchaser is still considered a rightful stockholder. *See Cortelyou v. Imperial Land Co.* (1909) 156 Cal. 373, 376; *Michaels v. Pacific Soft Water Laundry* (1930) 104 Cal.App. 349, 358-359. In the present case, it is undisputed that Nobles and Babcock paid $250,000 for their shares in Coastal stock, and Lindley performed services for the benefit of

9

Coastal. Regardless of whether Coastal complied with Corporations code section 409, that is no reason to deprive innocent purchasers of their shares.

### D. The Statute of Limitations Has Long Since Expired

Under California law, the statute of limitations for an action upon a liability created by statute is 3 years. California Code of Civil Procedure, § 338a. One very early case held that, where a property or contractual right was "wholly void," a lawsuit could be brought at any time, regardless of the statute of limitations. *See Hironymous v. Hiatt* (1921) 52 Cal.App. 727, 736. That decision was later declared "flatly wrong" by the court in *Robertson v. Superior Court* (2001) 90 Cal.App.4th 1319, 1326, and subsequent courts have held that the applicable statute of limitations must be imposed in lawsuits seeking to invalidate allegedly void contracts or property interests. *See, e.g., Robertson*, 90 Cal.App.4th at 1326 (quitclaim deed that was allegedly void due to mental incompetence); *see also Walters v. Boosinger* (2016) 2 Cal.App.5th 421, 429-30 (collecting and citing cases).

It is undisputed that the shares were issued by Coastal to Patty Brower in the early 1980s, to Chualar Canyon Ranch Supply in 1987 and to Nobles and Babcock in 2011. Any action to have those shares declared void would have to have been filed by 1990 for Chualar Canyon's shares and 2014 for Nobles and Babcock's shares – well before this lawsuit was filed. As such, this lawsuit is time barred.

Moreover, even if Union Bank was entitled to some form of "delayed discovery," they were certainly on inquiry notice in 2012 that Coastal Cypress had issued new shares and on notice in 2012 that Patty Brower claimed ownership of 100% of ACP. This is sufficient to trigger the running of the statute of limitations:

> Statutes of limitation do not begin to run until a cause of action accrues. . . . An important exception to the general rule of accrual is the "discovery rule," which postpones accrual of a cause of action until the plaintiff discovers, or has reason to discover, the cause of action. A plaintiff has reason to discover a cause of action when he or she "has reason at least to suspect a factual basis for its elements." A potential plaintiff' discovers the cause of action when he at least suspects a factual basis, as opposed to a legal theory, for its

10

Memorandum of Points and Authorities

elements, even if he lacks knowledge thereof—when, simply put, he at least "suspects ... that someone has done something wrong" to him, "wrong" being used, not in any technical sense, but rather in accordance with its "lay understanding."

The discovery rule only delays accrual until the plaintiff has, or should have, inquiry notice of the cause of action. The discovery rule does not encourage dilatory tactics because plaintiffs are charged with presumptive knowledge of an injury if they have "information of circumstances to put them on inquiry."

*Rosas v. BASF Corp.* (2015) 236 Cal.App.4th 1378, 1389-1390; *Norgart v. Upjohn Co.* (1999) 21 Cal.4th 383, 397–398. Because Union Bank was on inquiry notice in 2012 that shares were being issued, and Mr. Brower informed him that he was not the sole shareholder, the 3 year statute began running no later than 2012, and this lawsuit must have been filed no later than end of 2015. As such, it is time-barred.

### Point III: Patty Brower's Shares of Coastal, and Her ACP Property, are Her Separate Property

For the reasons set forth above, any lawsuit against Patty Brower is likewise time-barred, insofar as she received her shares in the 1980s, and her interest in ACP in 2000.

Moreover, the Brower's 1980 premarital agreement, stipulating that all property would be separate property, must be enforced. Courts have routinely noted that "parties contemplating marriage may validly contract as to their property rights, both as to property then owned and as to property and earnings that may be acquired during the marriage. *In re Marriage of Hill & Dittmer* (2011) 202 Cal.App.4th 1046, 1053. As the *Hill & Dittmer* case noted, "it is evident that the Uniform Premarital Agreement Act was intended to enhance the enforceability of premarital agreements." *Id.* In California, a party challenging the voluntariness of a premarital agreement under Family Code section 1615 bears the burden of proof. *In re Marriage of Bonds* (2000) 24 Cal.4th 1, 24. Because there is no evidence showing that the marital agreement was not entered into voluntarily, it must be applied in this case.

As to ownership of Coastal stock, there is the following evidence: (i) Patty Brower's shares in Coastal are in her name; (ii) the Coastal shares reflect paid-in capital from Ms. Brower;

11

Memorandum of Points and Authorities

(iii) Mr. Brower, the President of Coastal, has testified that Ms. Brower paid for her shares using separate property, and (iv) under the prenuptial agreement, the shares are separate property.

Union Bank contends that Ms. Brower *could not* have paid for the shares with her separate property, because (i) there is no evidence she had a separate bank account, and (ii) at the start of her marriage, she only had $15,000 of separate property. Both claims are false. First, Ms. Brower provided evidence that she had a personal bank account at Chase Bank. *See* Balch Declaration, dated August 12, 2010 and exhibits thereto; Supplemental Brower Declaration at ¶ 8.) Second, Ms. Brower had $515,000 worth of separate property at the start of the marriage. (Supplemental Brower Declaration at ¶ 4.)

Under California law, if a spouse uses separate property to later purchase additional property, this new property remains separate property. *See, e.g., In re Marriage of Valli* (2014) 58 Cal.4th 1396, 1399-1400; *Somps v. Somps* (1967) 250 Cal. App. 2d 328; *In re Estate of Clark* (1928), 94 Cal. App. 453.

As to the ownership of ACP, the Browers fulfilled all statutory requirements to transfer the ACP ownership from Mr. Brower to Mrs. Brower. Pursuant to Family Code section 850, "married persons may by agreement or transfer, with or without consideration," transmute community property to separate property of one spouse, or transmute separate property of one spouse to separate property of the other spouse. Family Code section 852 further provides that "a transmutation of real or personal property is not valid unless made in writing by an express declaration that is made, joined in, consented to, or accepted by the spouse whose interest in the property is adversely affected."

In this case, the transmutation of ACP shares from Mr. Brower to Mrs. Brower, as her separate property, was evidenced by (i) a gift card that reads "ACP is now yours", (ii) a signed note that includes the statement "I am proud to give you all my interest" in ACP, and (iii) a stock transfer that reflects that Robert Brower was gifting his entire interest to Patty Brower. This is all that is required for an effective transmutation. *See, e.g., Estate of Petersen* (1994) 28 Cal.App.4th 1742 (a transmutation requires language that expressly states the character or ownership of the

12

Memorandum of Points and Authorities

spouse's interest is being changed); *Estate of Bibb* (2001) 87 Cal.App.4th 461 (a clear and unambiguous expression of intent to transfer the real property is sufficient).

### Point IV

### The Motion Must Be Denied as to the Third Cause of Action

The third cause of action is derivative of the first two causes of action and likewise fails for the reasons set forth above. Moreover, Plaintiff has cited no authority stating that a corporation cannot refinance it shares simply because one of its minority shareholders is in bankruptcy.

### CONCLUSION

For the reasons set forth above, Defendants respectfully request that Plaintiff's motion be denied in its entirety.

Dated: August 12, 2019

JRG Attorneys at Law

By: //s//
David W. Balch

Attorneys for CCC California, CCC Delaware, Butch Lindley, ACP, Patty Brower, and Patty Brower Trust

Specially appearing as counsel for, and filing on behalf of, Robert Brower, Sr.

Dated: August 12, 2019

SAMINI COHEN SPANOS LLP

By: *[signature]*
Michael Vacchio

Attorneys for Anthony Nobles and Richard Babcock