SHEPPARD, MULLIN, RICHTER & HAMPTON LLP
A Limited Liability Partnership
Including Professional Corporations
MICHAEL M. LAUTER, Cal. Bar No. 246048
mlauter@sheppardmullin.com
Four Embarcadero Center 17th Floor
San Francisco, CA 94111-4109
Telephone:    415-434-9100
Facsimile:    415-434-3947

SHEPPARD, MULLIN, RICHTER & HAMPTON LLP
A Limited Liability Partnership
Including Professional Corporations
ISAIAH Z. WEEDN, Cal. Bar No. 229111
iweedn@sheppardmullin.com
650 Town Center Drive, 10th Floor
Costa Mesa, CA 92626-1993
Telephone:    714-513-5100
Facsimile:    714-513-5130

Attorneys for Plaintiff,
MUFG UNION BANK, N.A.

# UNITED STATES BANKRUPTCY COURT
## NORTHERN DISTRICT OF CALIFORNIA
### SAN JOSE DIVISION

| | |
|---|---|
| In re<br><br>ROBERT BROWER, SR.,<br><br>                Debtor.<br>_____<br>MUFG UNION BANK, N.A.,<br><br>                Plaintiff,<br><br>     v.<br><br>ROBERT BROWER, SR., an individual,<br>PATRICIA BROWER, an individual,<br>COASTAL CYPRESS CORPORATION,<br>a California corporation, COASTAL<br>CYPRESS CORPORATION, a Delaware<br>corporation, AMERICAN<br>COMMERCIAL PROPERTIES, INC., a<br>Nevada corporation, ANTHONY<br>NOBLES, an individual, WILFRED<br>"BUTCH" LINDLEY, an individual,<br>RICHARD BABCOCK, an individual,<br>PATRICIA BROWER TRUST, and DOES<br>1-50,<br><br>                Defendants. | Case No. 15-50801 MEH<br>Chapter 11<br>Adv. Proc. No. 17-05044 MEH<br><br>**PLAINTIFF MUFG UNION BANK, N.A.'S REPLY IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT OR, IN THE ALTERNATIVE, PARTIAL SUMMARY JUDGMENT**<br><br>[*Evidentiary Objections to Declarations and Other Evidence submitted with Defendants' Opposition filed concurrently herewith*]<br><br><u>Hearing Information:</u><br>Date:  August 26, 2019<br>Time:  11:00 a.m.<br>Judge: Hon. M. Elaine Hammond<br>Place:  United States Bankruptcy Court<br>        280 South First Street<br>        Courtroom: 3020<br>        San Jose, CA 95113-3099 |

-1-

Case: 17-05044    Doc# 117    Filed: 08/21/19    Entered: 08/21/19 15:40:46    Page 1 of
24

# **TABLE OF CONTENTS**

Page

I.      INTRODUCTION ................................................................................. 5

II.     THE BANK'S MSJ SHOULD BE GRANTED AS TO THE FIRST CLAIM CONCERNING THE COASTAL SHARES. ........................................... 6

    A.    Messrs. Lindley, Babcock, And Nobles Did Not Provide Consideration In Exchange For Their Coastal Shares. ..................... 6

        1.    Mr. Lindley. ................................................................ 7

        2.    Messrs. Babcock and Nobles. ................................... 10

    B.    No "Bona Fide" or "Innocent" Purchaser Defense Applies to This Case. ........................................................................................ 12

    C.    Defendants' Statute of Limitations Defense Has Already Been Rejected. .................................................................................... 15

    D.    Messrs. Babcock, Nobles, and Lindley's Coastal Delaware Shares are Void Because Their Coastal California Shares Were Void. ........................ 16

    E.    There is No Admissible Evidence that Mrs. Brower's Coastal Shares are Traceable to Her Alleged Separate Property. ........................... 17

III.    THE BANK'S MSJ SHOULD BE GRANTED AS TO THE SECOND CLAIM CONCERNING THE ACP SHARES. ......................................... 18

    A.    The Bank Disputes the Admissibility of the Documents Proffered as Evidence of the Supposed Transmutation of ACP Stock. ............................ 21

IV.     THE BANK'S MSJ SHOULD BE GRANTED AS TO THE THIRD CLAIM. ...................................................................................... 24

V.      CONCLUSION ................................................................................. 24

Case: 17-05044    Doc# 117    Filed: 08/21/19    Entered: 08/21/19 19:30:46    Page 2 of 24

# TABLE OF AUTHORITIES

Page(s)

Federal Cases

*In re Blasingame*
598 B.R. 864 (BAP 6th Cir. 2019) ................................................................. 16

*Latis Laser, Inc. v. Ice Cold Stocks, LLC*
No. CV 08-03587-RGK, 2008 WL 11338191 (C.D. Cal. Sept. 23, 2008) ..................... 7

*Sana v. Hawaiian Cruises, Ltd.*
181 F.3d 1041 (9th Cir. 1999) ....................................................................... 22

*In re SK Foods, LP*
499 B.R. 809 (Bankr. E.D. Cal. 2013) ............................................................. 12

State Cases

*Estate of Bibb*
87 Cal.App.4th 461 (2001) .................................................................... 20, 21

*Burge v. Midway Pacific Oil Co.*
99 Cal.App. 714 (1929) ............................................................................. 11

*Marriage of Ciprari*
32 Cal.App.5th 83, 91 (2019) ...................................................................... 17

*Clark v. Millsap*
197 Cal. 765 (1926) .................................................................................. 7

*Cortelyou v. Imperial Land Co.*
156 Cal. 373 (1909) ......................................................................... 7, 12, 13

*Ellsworth v. National Home & Town Builders*
33 Cal. App. 1 (1917) ................................................................................ 9

*Kahle v. Stephens*
214 Cal. 89 (1931) .................................................................................... 7

*In re Marriage of Holtemann*
166 Cal.App.4th 1166 ............................................................................... 20

*In re Marriage of Lund*
174 Cal.App.4th 40 (2009) ......................................................................... 20

Case: 17-05044   Doc# 117   Filed: 08/21/19   Entered: 08/21/19 19:30:46   Page 3 of
24

*In re Marriage of Starkman*
    129 Cal. App. 4th 659 (2005) ................................................................. 19

*In re Marriage of Valli*
    58 Cal. 4th 1396 (2014) ................................................................. 19, 20

*Mary Pickford Co. v. Bayly Bros, Inc.*
    12 Cal.2d 501 (1939) ................................................................. 15

*Michaels v. Pacific Soft Water Laundry*
    104 Cal.App. 349 (1930) ................................................................. 12, 14, 15

*Estate of Petersen*
    28 Cal.App4th 1742 (1994) ................................................................. 20, 21

*Shanik v. White Sewing Machine Corp.*
    25 Del. Ch. 371 (Del. 1941) ................................................................. 17

*Stonehouse Homes LLC v. City of Sierra Madre*
    167 Cal.App.4th 531 (2008) ................................................................. 13

Federal: Statutes, Rules, Regulations, Constitutional Provisions

11 U.S.C. § 541(a) ................................................................. 15

11 U.S.C. § 541(a)(1) ................................................................. 15

Fed. R. Evid. 803(6) ................................................................. 22

Fed. Rule of Evid. 100 ................................................................. 22

State: Statutes, Rules, Regulations, Constitutional Provisions

Cal. Family Code § 852(a) ................................................................. 19

Rule of Evidence 1002 ................................................................. 22

SMRH:4852-0072-7456.1

PLAINTIFF'S REPLY I/S/O MOTION FOR SUMMARY JUDGMENT/PARTIAL SUMMARY JUDGMENT

# I.
# INTRODUCTION

The legal arguments advanced in Defendants' Opposition ("Opposition") to the Bank's Motion for Summary Judgment or, in the alternative, Partial Summary Judgment ("Bank's MSJ") are substantively identical to those advanced in the Defendants' own, affirmative Motion for Summary Judgment ("Defendants' MSJ"). Defendants have made virtually no attempt to refute or distinguish the legal authority cited in the Bank's MSJ. Based on that legal authority and the undisputed facts set forth in the Bank's MSJ the following remains true:

(a)      Mr. Lindley's 355,000 Coastal shares should be deemed void for lack of consideration pursuant to the Bank's first claim because the services Mr. Lindley purportedly provided in exchange for the shares were provided to a different corporation controlled by Debtor, Great American Wineries, Inc. ("GAW");

(b)      Mr. Nobles' 200,000 Coastal shares and Mr. Babcock's 50,000 Coastal shares should be deemed void for lack of consideration pursuant to the Bank's first claim because the consideration they allegedly paid in exchange for these shares was paid to Debtor and Mrs. Brower's personal account and subsequently transferred to a different corporation controlled by them, Chateau Julien, Inc. ("CJ"), or simply paid directly to CJ. In other words, none of the money paid by Mr. Nobles or Mr. Babcock was paid to Coastal or even subsequently found its way to Coastal;

(c)      The Patricia Brower Trust's 125,000 Coastal shares should, pursuant to the Bank's first claim, either (1) be deemed void for lack of consideration because there is no evidence Coastal received consideration in exchange for the shares or (2) be deemed community property and therefore property of Debtor's bankruptcy estate because there is no evidence that any consideration traceable to Mrs. Brower's separate property was actually received by Coastal in exchange for the shares;

SMRH:4852-0072-7456.1

Case: 17-05044   Doc# 117   Filed: 08/21/19   Entered: 08/21/19 19:30:46   Page 5 of 24

(d)     Pursuant to the Bank's second claim, 100% of ACP's shares should be deemed property of Debtor's bankruptcy estate (either as Debtor and Mrs. Brower's community property or as Debtor's sole and separate property) because the alleged November 2000 transfer of the ACP stock from Debtor to Mrs. Brower did not change the character of the stock or eliminate Debtor's ownership interest therein; and

(e)     Pursuant to the Bank's third claim and provided that sufficient Coastal shares are voided or reclassified as Debtor and Mrs. Brower's community property to bring Debtor's ownership interest in Coastal to more than 50%, the post-petition merger transaction whereby Coastal became a Delaware corporation should be avoided pursuant to 11 U.S.C. § 549.

As already detailed in the Bank's Opposition to Defendants' MSJ (and as the Bank shall reiterate again below), none of the legal authority cited in Defendants' Opposition suggests that the Court should reach a different conclusion on any of these items. Instead, Defendants have offered up freshly minted "evidence" consisting of sham declarations and newly-fashioned documents that they attempt to pass off as pseudo-business records in an effort to manufacture purported disputed issues of material fact. This "evidence" is largely inadmissible and, even if it were not, is insufficient to create a disputed issue of fact sufficient to defeat any portion of the Bank's MSJ.

The Court should not countenance Defendants' cynical attempt to drag this case out and further delay the reckoning they have earned. The undisputed facts firmly establish that the Bank is entitled to summary judgment on each and every one of its claims. Accordingly, the Bank's MSJ should be granted in its entirety.

## II.
## THE BANK'S MSJ SHOULD BE GRANTED AS TO THE FIRST CLAIM CONCERNING THE COASTAL SHARES.

### A.     Messrs. Lindley, Babcock, And Nobles Did Not Provide Consideration In Exchange For Their Coastal Shares.

There is no admissible evidence that Messrs. Lindley, Babcock, or Nobles ever gave **Coastal** consideration in exchange for their shares. As set forth in the Bank's MSJ, shares

PLAINTIFF'S REPLY I/S/O MOTION FOR SUMMARY JUDGMENT/PARTIAL SUMMARY JUDGMENT

issued by a corporation without having received consideration "**are void**, and the parties receiving them do not thereby become shareholders." *Cortelyou v. Imperial Land Co.*, 156 Cal. 373, 376 (1909) (emphasis added) (citation omitted); *Latis Laser, Inc. v. Ice Cold Stocks, LLC*, No. CV 08-03587-RGK (Cwx), 2008 WL 11338191, at *2 (C.D. Cal. Sept. 23, 2008) (quoting *Cortelyou*); *see also Kahle v. Stephens*, 214 Cal. 89, 92 (1931) ("[T]the stock originally issued to them as above described was void because…it was issued without consideration."); *Clark v. Millsap*, 197 Cal. 765, 779 (1926) ("[S]hares of stock issued in violation of [the prohibition on issuing stock without consideration] are void and the parties receiving them do not thereby become shareholders."). Defendants do not offer any contra authority but instead argue that Messrs. Lindley, Babcock, and Nobles *did* provide consideration for their shares. But the evidence offered in support of their contentions either does not support their argument or is entirely inadmissible.

### 1. Mr. Lindley.

Defendants contend that Mr. Lindley's stock was validly issued because he "provided services of benefit to Coastal Cypress California back in the 1980s." (Opposition, 9:1-2 and 3:15-18 ("Mr. Lindley did not pay cash for his shares. Rather, he provided certain goods and services – such as certain portions of the grape crops from his grape-growing operation, and the provision of his services to assist Coastal and Chateau Julien *in CJ's efforts* to lease land, grow grapes, and produce wine." emphasis added).) As previously determined by the Court, the three companies Debtor ran that comprised the "Chateau Julien Wine Estate" enterprise, were Coastal, CJ, and GAW. Coastal merely owned the land on which the Chateau Julien Wine Estate was located; it did not make or sell wine. (*See* Weedn Decl., ¶ 10; Exh. 9, Court's March 22, 2017 Memorandum Decision, p. 2:7-19 (Doc No. 47 in *MUFG Union Bank, N.A. v. Brower* (Adv. No. 15-05119).) Accordingly, none of the goods and services Mr. Lindley supposedly provided in exchange for his Coastal shares were actually provided to Coastal.

Defendants submit Supplemental Declarations from Debtor and Mr. Lindley in conjunction with their Opposition. Therein they claim, for the first time, that Mr. Lindley

SMRH:4852-0072-7456.1

also helped (in some unspecified way) Coastal to purchase certain equipment and that his credibility in the local wine industry helped legitimize Debtor's global, wine estate enterprise. (*See* Supp. Brower Decl., ¶¶ 9-11 and Exh. C thereto; Supp. Lindley Decl., ¶ 3.) As a preliminary matter, Debtor and Mr. Lindley's statements in these supplemental declarations should be barred as "sham affidavits" that "flatly contradict" prior discovery testimony and "provided for the sole purpose of creating a genuine issue of material fact." *Slojewski v. Polam Fed. Credit Union*, 473 F. App'x 534, 535 (9th Cir. 2012) (holding district court did not abuse its discretion in finding a declaration submitted by a borrower in response to a credit union's motion for summary judgment was a sham affidavit as it contradicted earlier deposition testimony and declarant "made no attempt to explain his prior deposition testimony, nor did he claim he was confused during his deposition"); *Kennedy v. Allied Mut. Ins. Co*., 952 F.2d 262, 266 (9th Cir. 1991) ("The general rule in the Ninth Circuit is that a party cannot create an issue of fact by an affidavit"); *Cleveland v. Groceryworks.com, LLC*, 200 F. Supp. 3d 924, 942 (N.D. Cal. 2016) ("the sham affidavit rule permits a trial court to disregard declarations by a party which contradict his or her own discovery responses (absent a reasonable explanation for the discrepancy)"); *Hubbard v. 7-Eleven, Inc*., 433 F. Supp. 2d 1134, 1144 (S.D. Cal. 2006) (disregarding plaintiffs' submitted declarations in opposition to motion for summary judgment which contradicted prior deposition testimony and discovery responses as "A party cannot create a genuine issue of material fact to survive summary judgment by contradicting his earlier version of the facts.")

As detailed above (and as Defendants' MSJ confirms – *see* Defendants' MSJ, 3:5-12 and 7:4-5), the Defendants never previously suggested that Mr. Lindley's unspecified assistance in acquiring equipment or his professional credibility served as consideration for his Coastal shares. Moreover, the only evidence beyond Debtor and Mr. Lindley's sham declarations to support these contentions is a marked-up document of unspecified origin that includes Debtor's (apparently recent) handwritten notes about which equipment supposedly belonged to which of his cadre of companies. (Exh. C to Supp. Brower Decl.) Among other things, the document is inadmissible hearsay not subject to any applicable exception. *Pos–*

SMRH:4852-0072-7456.1

*A–Traction, Inc. v. Kelly–Springfield Tire Co.*, 112 F. Supp. 2d 1178, 1182 (C.D. Cal. 2000) ("all documentary evidence, including contracts [] must be presented in admissible form, generally requiring proper identification and authentication, and admissibility as nonhearsay evidence or under one or more of the exceptions to the hearsay rule.")  To his credit, Mr. Lindley admits in his supplemental declaration that "I am without sufficient information to verify Mr. Brower's representation [that the equipment identified in Exhibit C was actually owned by Coastal]."  (Supp. Lindley Decl., p. 2:11-14.)  Debtor, despite his established penchant for false representations (*see* Bank's Exh. 9, Court's March 22, 2017 Memorandum Decision, 4:24 – "Brower's financial statements establish a pattern of misrepresentations."), seems to believe his freshly minted representations regarding equipment supposedly owned by Coastal should be taken on faith.  That is not how the rules of evidence work.

Even if there were admissible evidence to support Defendants' new assertions that Mr. Lindley referred Debtor to businesses with equipment available for purchase and lent his credibility to Debtor's operation, Defendants have not cited any legal authority that actually supports their assertion that these vaguely-described, amorphous activities constituted sufficient consideration for Coastal shares. Defendants cite *Ellsworth v. National Home & Town Builders,* 33 Cal. App. 1 (1917) for the proposition that "corporate stock issued in consideration of valuable services rendered and labor performed for corporation is not issued without consideration."  (Opposition, 9:2-4.)  But that is not the scenario under which Mr. Lindley's alleged Coastal shares were purportedly issued.  Rather, Mr. Lindley purportedly received shares for providing goods and services **to CJ and/or GAW**, not Coastal.  Indeed, Mr. Lindley admitted in deposition (and reaffirms in his supplemental declaration) that he could not distinguish between Debtor's various entities and he had no idea what particular entity to which he was providing services.  (*See* Exh. 10, Lindley Depo., pp. 30:24-32:4 ("In my mind [Coastal, CJ, and GAW] were -- were all one entity, if you will…"[t]he whole operation [i.e., Coastal, CJ, and GAW] to most people, including me, was thought of because of the name of the building was Chateau Julien."); Supp. Lindley Decl., 2:16-18 ("when I came across equipment that I thought Mr. Brower could use at one of the combined entities, I

PLAINTIFF'S REPLY I/S/O MOTION FOR SUMMARY JUDGMENT/PARTIAL SUMMARY JUDGMENT

passed along the referral.")  Here again (as with the purported consideration Messrs. Babcock and Nobles paid **to Debtor and/or CJ** for their **Coastal** stock), Defendants are seeking to benefit from their complete and total disregard for Coastal's separate entity status. The Court must not allow that to pass.  *See In re SK Foods, LP*, 499 B.R. 809, 840 (Bankr. E.D. Cal. 2013) (*quoting Mesler v. Bragg Management Co.*, 39 Cal.3d 290, 300 (1985)) ("[T]he separate personality of the corporation is a statutory privilege, it must be used for legitimate business purposes and must not be perverted.") and 841 (*quoting Palmas Assocs. v. Las Palmas Center Assocs.*, 235 Cal.App.3d 1220, 1249 (1991)) ("[I]t would be unjust to permit those who control companies to treat them as a single or unitary enterprise and then assert their corporate separateness in order to commit frauds and other misdeeds with impunity.")

### 2.     Messrs. Babcock and Nobles.

Like Mr. Lindley, Messrs. Babcock and Nobles never provided any consideration to Coastal for their shares.  Defendants once again contradict themselves from their own affirmative MSJ – where they represented that "[t]he [funds[1]] were paid into the personal bank account of Robert Brower"[2] and then transferred to CJ as a purported "loan" from Coastal that was never paid back – to their Opposition – where they change their story and, without citing **any** evidence and contrary to authenticated bank records, state that "$40,000 of the Babcock money went into Coastal."  (Opposition, 9:7-12.)  This reversal is nothing short of bewildering and, as noted, unsupported by any admissible evidence.  The fact remains that Coastal never received **any** of the money Messrs. Babcock and Nobles purportedly paid in exchange for Coastal stock.  Accordingly, the Coastal shares purportedly issued to Messrs. Babcock and Nobles are void.

---

[1] Defendants appear to have mistakenly used the term "shares" instead of "funds" in their brief.

[2] In point of fact, $240,000 was paid into the joint, personal bank account of Debtor and Mrs. Brower and $10,000 was paid directly into CJ's bank account.  (*See* Bank Exh. 19-22.)

SMRH:4852-0072-7456.1

Case: 17-05044   Doc# 117   Filed: 08/21/19   Entered: 08/21/19 19:30:46   Page 10 of 24

Defendants cite *Burge v. Midway Pacific Oil Co.*, 99 Cal.App. 714 (1929) in support of their argument that Messrs. Babcock and Nobles' Coastal shares are valid because "Coastal ultimately received a tax advantage when it deducted the entirety of the AR's as 'bad debt.'" (*See* Opposition, 9:12-13.) But *Burge* is inapposite.

In *Burge*, the plaintiff, purporting to be the owner of an oil property, entered into an agreement to sell the property to an individual who subsequently assigned all of his rights under the agreement to the defendant corporation. *Burge*, 99 Cal.App. at 714-15. The corporation subsequently issued to the plaintiff a total of 20,000 shares of stock in exchange for (a) an extension "of the time for [the corporation's] payment of moneys which had then become due under the [purchase/sale] agreement"; and (b) conversion of the unpaid balance due into a mortgage on the subject property, "to become due at a date several years later." *Id.* at 715. The corporation subsequently issued to plaintiff an additional 20,000 shares in exchange for "a further extension of the due date upon said mortgage." *Id.* Nearly ten years after the original agreement and after the corporation had taken possession of the oil property, the court in a separate action in U.S. District Court determined that plaintiff never actually had an interest in the subject oil property. *Id.* Accordingly, the corporation argued that the shares it had issued to the plaintiff were void for lack of consideration. *Id.* However, as the court noted, "[b]y means of plaintiff's conveyance defendant [corporation] ***obtained actual possession of the land***, and thus was enabled to take from the land large quantities of oil." *Id.* at 716. Accordingly, the appellate court determined that there was sufficient evidence for the trial court to find that the corporation had, in fact, received consideration for the shares issued to the plaintiff. *Id.*

Unlike the corporate defendant in *Burge* who "obtained actual possession of the land [it was able to purchase in consideration of the shares issued to the plaintiff], and thus was enabled to take from the land large quantities of oil," here Coastal never – not for a second – received the $250,000 purportedly paid by Messrs. Babcock and Nobles for Coastal shares. Instead, the funds were transferred from Messrs. Babcock and Nobles directly to Debtor and Mrs. Brower's joint, personal account and then funneled to CJ or, in Mr. Babcock's case,

transferred directly into CJ's account. Though Defendants now characterize Debtor's financial machinations as a loan from Coastal to CJ, there is no admissible evidence of a loan, much less a formal loan agreement, corresponding corporate resolutions/authorizations, or other indicia that there was a genuine, arm's-length transaction between Coastal and CJ. Debtor simply did what he has always done – moved money between himself and his various entities with impunity.

Throughout Debtor's bankruptcy proceedings – the main action and the adversary proceedings – Debtor (and, in this adversary proceeding, the other Defendants) have asserted the alleged separate corporate status of Coastal, CJ, and GAW to shield assets that are, in fact, owned and controlled by Debtor. Now that separate corporate status is inconvenient because the undisputed facts show that Messrs. Lindley, Babcock, and Nobles provided the purported consideration for their alleged Coastal shares to Debtor himself, CJ, and/or GAW. Accordingly, Defendants now attempt ignore the entities' separate corporate status and seek a ruling that consideration provided to Debtor, CJ, and/or GAW is the same as consideration provided to Coastal for purposes of evaluating the validity of the Coastal share issuances to Messrs. Lindley, Babcock, and Nobles. This is a cynical ploy that should not be countenanced by the Court. *See In re SK Foods, LP*, *supra* 499 B.R. at 840-84. The Coastal shares issued to Messrs. Lindley, Babcock, and Nobles are void for lack of consideration given to Coastal.

**B.     No "Bona Fide" or "Innocent" Purchaser Defense Applies to This Case.**

Messrs. Lindley, Babcock, and Nobles argue that, in spite of the fact that they did not actually provide any consideration to Coastal, their shares should not be deemed void because they were "bona fide" or "innocent" purchasers. (Opposition, 9:19-10:2.) However, neither of the cases cited by the Defendants – *Cortelyou v. Imperial Land Co.*, 156 Cal. 373 (1909) and *Michaels v. Pacific Soft Water Laundry*, 104 Cal.App. 349 (1930) – actually support this argument. Unlike this case, in both *Cortelyou* and *Michaels* the stockholders actually paid (or, as *Cortelyou* was an appeal from a demurrer, allegedly paid) consideration for their stock to the entity/person from whom they were purchasing it.

SMRH:4852-0072-7456.1

As noted above, *Cortelyou* is of limited significance to Defendants' "bona fide/innocent" purchasers defense due in part to its procedural posture; the case was on appeal from a demurrer ruling where, in all but limited circumstances, all material allegations made in the complaint are assumed to be true. 156 Cal. at 374; *and see Stonehouse Homes LLC v. City of Sierra Madre*, 167 Cal.App.4th 531, 538 (2008) ("We treat the demurrer as admitting all material facts properly pleaded and matters subject to judicial notice, but not deductions, contentions, or conclusions of law or fact.") Accordingly, there had not been scrutiny of any evidence concerning the *Cortelyou* plaintiff's assertion that he paid consideration in exchange for his corporate shares; the allegation was simply deemed true for purposes of the demurrer analysis.

Moreover, *Cortelyou*'s facts are readily distinguishable from this case. In *Cortelyou*, the plaintiff alleged he purchased from the defendant corporation, through its general manger, certain stock for which he paid an agreed price. *Id*. at 374-75. Unlike this case, to whom payment for the stock was made was apparently not an issue in *Cortelyou*. However, at the time of the transaction, the defendant corporation had already issued all of its shares to its general manager and, in light of this fact, there was a dispute concerning the plaintiff's rights to the stock. *Id*. at 375. Noting that the complaint was "not happily worded," the *Cortelyou* court discussed how to interpret the complaint – whether to "[t]reat[] the complaint as averring that certain of the stock…was issued by the corporation to [its general manager] without consideration" or to "construe the complaint as alleging that the issue to [the general manager] was valid." *Cortelyou*, 156 Cal. at 376. Ultimately, the court determined that "the facts set out are sufficient to show Cortelyou's acquisition of the personal property by the purchase, and whether [the general manager] sold the same as his own, or as part of the treasury stock of the corporation, by the sale his interest in the shares, the subject of the sale, vested in Cortelyou. *Id*. at 377.

Unlike *Cortelyou*, in this case there are no alternative narratives that lead to the same result. Defendants do not allege that Messrs. Lindley, Babcock, or Nobles were purchasing Coastal stock that belonged to Debtor and therefore delivered their consideration directly to

SMRH:4852-0072-7456.1

Debtor or, at his direction, one of Debtor's other companies. Rather, Defendants allege Coastal issued them stock directly. But the undisputed facts show that the Defendants never gave consideration *to Coastal* for that stock. *Cortelyou* simply does not apply to this case.

*Michaels* is similarly unavailing. *Michaels* was "an action to cancel a contract for the sale of corporate stock upon the ground that the sale violated the conditions contained in the permit [issued by] the commissioner of corporations. 104 Cal.App. at 361-62. Pursuant to a petition by three directors of the defendant corporation, the commissioner of corporations issued a permit for the corporation to "issue 30,000 additional shares from the treasury in order to liquidate outstanding indebtedness of the corporation… upon the condition that the stock should first be offered to existing stockholders in proportion to the stock then held by them." *Id*. at 353. Certain of the authorized shares were subsequently sold to two individuals (21,500 shares were purchased by defendant Thompson) and the funds paid to the corporation were used to pay off an outstanding corporate debt. *Id*. at 354. After the fact, one of the pre-existing shareholders filed suit, alleging that he had not been given an opportunity to purchase "his proportion of the stock from the corporation in accordance with the terms of the permit." *Id*. at 355.

"Basing its judgment upon the finding that the three defendant directors were guilty of fraud in making the sale to Thompson, the trial court declared that all the shares of stock held by Thompson should be void, ordered the certificate to be canceled, and thus returned to the treasury of the corporation all these shares without affording Thompson any relief against the corporation." *Id*. at 357. The Court of Appeal reversed, noting, among other things, that "the undisputed evidence is that the president of the corporation, acting under what he deemed to be the authorization of the directors of the corporation, negotiated the sale of the stock to Thompson; that he reported the transaction to the full board of directors; *that the money was thereafter received and placed in the treasury of the corporation* without objection or remonstrance on the part of any member of the board; *that it was thereafter used for the liquidation of an outstanding indebtedness of the corporation* with the

SMRH:4852-0072-7456.1

knowledge and consent of the full board of directors; that the money so received was still retained by the corporation at the time of the trial." *Id.* (emphasis added).

The fundamental difference between *Michaels* and this case is fairly obvious – the corporation in *Michaels* actually received the funds paid for the shares in question (and used them to pay off a corporate debt) whereas Coastal did not. Nothing in *Michaels* stands for the proposition that a "bona fide/innocent" purchaser defense can be asserted in the face of a total lack of consideration; where the purported stockholders' consideration for their shares was never delivered to the issuing corporation. To the extent Messrs. Lindley, Babcock, and/or Nobles believe they were misled by Debtor in connection with the issuance of Coastal shares, they might have a claim against Debtor and/or Coastal. *See id.* at 358 ("When a corporation issues to the public certificates of stock, regular on their face, it amounts substantially to a representation that the certificates are regular and valid. Certificates of stock so issued by a corporation, but which were irregular or void for reasons not participated in by the stockholder, have been held to amount to a misrepresentation and fraud upon the part of the corporation officials for which the corporation is answerable.") (overruled in part by *Mary Pickford Co. v. Bayly Bros, Inc.*, 12 Cal.2d 501 (1939)). But that does not change the fact that Coastal never received any consideration from Messrs. Lindley, Babcock, and/or Nobles in exchange for Coastal stock. Messrs. Lindley, Babcock, and Nobles' Coastal stock is void.

## C. Defendants' Statute of Limitations Defense Has Already Been Rejected.

The Court rejected Defendants' statute of limitations defense at the pleading stage. (*See* October 3, 2017 Order Denying Motions to Dismiss (Doc. 36), 7:1-17.) The same result should follow here.

11 U.S.C. § 541(a) states that "[t]he commencement of a case ... creates an estate," the bankruptcy estate. That bankruptcy "estate is comprised of all ... property, wherever located and by whomever held," including "all legal or equitable interests of the debtor in property as of the commencement of the case." 11 U.S.C. § 541(a)(1). **There is no limitation** upon

SMRH:4852-0072-7456.1

the time within which a bankruptcy court may make a determination that certain property belongs to the bankruptcy estate. *In re Blasingame*, 598 B.R. 864, 875 (BAP 6th Cir. 2019).

*Blasingame* is instructive. In that case, the plaintiff in an adversary action "sought a declaratory judgment that personal property located at, in, and around the home where the Debtors reside is property of the bankruptcy estate" whereas "[t]he Debtors assert, as they have throughout the entire bankruptcy proceeding, that the personal property is held in trust or belongs to other people, such as their children, and is not property of the bankruptcy estate." *Id*. at 869. Citing state law creating "a rebuttable presumption of ownership which becomes conclusive after five years," the debtors argued that the plaintiff's adversary action was time-barred. *Id*. 875. The bankruptcy court rejected this argument and the Court of Appeal affirmed, stating as follows: "The [adversary action] sought a determination that the personal property in, at, and around the Debtors' residence belonged to the bankruptcy estate. There is no limitation upon the time within which the Court may do this." *Id*.

As in *Blasingame*, here the Bank seeks a declaratory judgment that certain property (specifically, Coastal and ACP stock) is property of Debtor's bankruptcy estate while the Defendants contend the stock is owned by Mrs. Brower (as her separate property) and Messrs. Lindley, Babcock, and Nobles. Defendants' statute of limitations defense amounts to a contention that property belonging to the Debtor held in the name of these individuals is exempt from inclusion in Debtor's bankruptcy estate if the individuals have held the subject property in their own name for more than three years. As detailed above, that is not the law. Under *Blasingame*, it does not matter how long a third party has supposedly held property of the bankruptcy estate in its own name; the date on which the third party supposedly acquired the property has no bearing on the Court's ability to determine whether that property belongs to the estate. Defendants' statute of limitations defense should be roundly rejected.

**D.** **Messrs. Babcock, Nobles, and Lindley's Coastal Delaware Shares are Void Because Their Coastal California Shares Were Void.**

Defendants allege that they "surrendered their old shares of Coastal California stock for their new shares of Coastal Delaware stock" and that "[t]his is sufficient consideration

SMRH:4852-0072-7456.1

1   [for the Coastal Delaware stock]."  (Opposition, 8:14-15.)  However, as detailed in the

2   preceding sections, the defendants' Coastal California shares are void and were likewise void

3   at the time of the Coastal California/Coastal Delaware stock exchange.  Accordingly,

4   Messrs. Lindley, Babcock, and Nobles' Coastal Delaware stock is likewise void for lack of

5   consideration.

6   　　　　Defendants have not cited any legal authority for the proposition that void stock is

7   sufficient consideration for new stock.  The single case cited for Defendants' apparent

8   contention that void Coastal California stock was sufficient consideration for Coastal

9   Delaware stock, *Shanik v. White Sewing Machine Corp*., 25 Del. Ch. 371 (Del. 1941),

10  contains no such holding as the stock exchanged in that case was not alleged to be void.  *See*

11  *id*. at 383-84.  Messrs. Lindley, Babcock, and Nobles' Coastal Delaware stock is void

12  because the Coastal California stock they gave in consideration for the Coastal Delaware

13  stock was void.

14  **E.** **There is No Admissible Evidence that Mrs. Brower's Coastal Shares are**
    **Traceable to Her Alleged Separate Property.**

15

16  　　　　Except as otherwise provided by statute, community property is all property acquired

17  by a married person during marriage while domiciled in California.  Cal. Fam. C. § 760.

18  Though not expressly codified as such, this principle has always been treated as a "general"

19  community property "presumption."  *See* Cal. Fam. C. § 802 (referring to the "presumption

20  that property acquired during marriage is community property …").  Cal. Fam. C. § 760 is

21  applied as a rebuttable presumption affecting the burden of proof.  *See Marriage of Ciprari*,

22  32 Cal.App.5th 83, 91 (2019).  Hence, once an asset is shown to have been acquired by

23  either spouse during marriage (other than by gift or inheritance), it will be treated as

24  community property unless proved otherwise.  **The party contesting community property**

25  **status bears the rebuttal burden**.  *Id*.

26  　　　　In this case, the Coastal shares Mrs. Brower supposedly owned as her separate

27  property were indisputably acquired during her marriage to Debtor, but Defendants have not

28  proffered (and cannot proffer) admissible evidence sufficient to overcome their burden of

proving that Mrs. Brower's Coastal shares are traceable to a separate property source. The shares were purportedly issued to Mrs. Brower in exchange for payment of $25,000, but there are no records showing the source of that alleged payment (or even confirming that the payment was made). That is not surprising since there is no evidence that Mrs. Brower ever maintained any assets separate from Debtor until after Debtor filed for bankruptcy. Accordingly, Mrs. Brower's Coastal shares are property of Debtor's bankruptcy estate.

Defendants attempt to manufacture a disputed issue of material fact concerning the source of funds purportedly used by Mrs. Brower to acquire her Coastal shares by blatantly violating the Court's February 6, 2019 Order which states that Mrs. Brower is "precluded from offering any testimony at trial, directly or indirectly through discovery responses or by an expert's reliance upon her testimony; and any declaration filed by her in this adversary proceeding shall be stricken from the record." (Docket No. 104.) Defendants' improperly attempt to circumvent this order by introducing Mrs. Brower's discovery responses through the declarations of Debtor and Mr. Balch. (*See e.g.*, Supp. Brower Decl., ¶ 4 ("Ms. Brower used these monies, which were her separate funds, to purchase her shares in Coastal Cypress"); Balch Decl., ¶ 2 ("In response to the first set of interrogatories, Ms. Brower testified that she had a separate account at Chase Bank until 2015.) That is not acceptable and there is no admissible evidence to support Defendants' contention that Mrs. Brower used her separate property to acquire her Coastal shares (or that she paid anything at all for those shares).

## III.
## THE BANK'S MSJ SHOULD BE GRANTED AS TO THE SECOND CLAIM CONCERNING THE ACP SHARES.

Defendants contend that Debtor owned 100% of ACP until November 8, 2000, when he supposedly gifted all of his ACP stock to Mrs. Brower and purportedly transmuted it into her sole and separate property. (Defendants' MSJ, 4:17-24.) "A transmutation of property, however, is not valid unless made in writing by an express declaration that is made, joined in, consented to, or accepted by the spouse whose interest in the property is adversely affected.

SMRH:4852-0072-7456.1

To satisfy the requirement of an 'express declaration,' a writing signed by the adversely affected spouse must expressly state that the character or ownership of the property at issue is being changed." *In re Marriage of Valli*, 58 Cal. 4th 1396, 1400 (2014) (internal citations omitted); *see also* Cal. Family Code § 852(a). "[I]n adopting the statutory transmutation requirements the Legislature intended 'to remedy problems which arose when courts found transmutations on the basis of evidence the Legislature considered unreliable.'" *Id.* at 1401 (*quoting Estate of MacDonald*, 51 Cal. 3d 262, 269 (1990); *citing In re Marriage of Benson*, 36 Cal. 4th 1096, 1106 (2005) (the transmutation statute "blocks efforts to transmute marital property based on evidence – oral, behavioral, or documentary – that is easily manipulated and unreliable.")).[3]

As detailed in the Bank's MSJ, the undisputed facts auger in favor of a finding that all of the ACP shares are the property of Debtor's bankruptcy estate because the key documents supposedly evidencing the transmutation are inadmissible and/or not sufficient to evidence the supposed transmutation. And even if the documents were admissible, they do not contain a sufficient "express declaration" to support the existence of a transmutation. Accordingly, the Bank's MSJ should be granted as to the second claim.

Defendants contend that "the transmutation of ACP shares from Mr. Brower to Mrs. Brower, as her separate property, was evidenced by (i) a gift card that reads 'ACP is now yours', (ii) a signed note that includes the statement 'I am proud to give you all my interest' in ACP, and (iii) a stock transfer that reflects that Robert Brower was gifting his entire interest to Patty Brower." (Opposition, 12:22-25.) Momentarily setting aside the issues of authenticity and admissibility concerning these documents, none of the proffered documents contain an "express declaration" sufficient to support the existence of a transmutation of the ACP shares from Debtor's separate property into Mrs. Brower's separate property.

---

[3] Written instruments purporting to transmute property must be analyzed independently and without resort to extrinsic evidence. *In re Marriage of Starkman*, 129 Cal. App. 4th 659, 664 (2005). Accordingly, the Court should disregard Debtor's assertions concerning the documents proffered as evidence of the transmutation. (*See e.g.,* Brower Decl., ¶ 11.)

Case: 17-05044   Doc# 117   Filed: 08/21/19   Entered: 08/21/19 19:30:46   Page 19 of 24

1    "To satisfy the requirement of an 'express declaration,' a writing signed by the

2    adversely affected spouse must expressly state that the character or ownership of the property

3    at issue is being changed." *In re Marriage of Valli*, 58 Cal. 4th at 1400.  The only language

4    cited by the Defendants as a purported "express declaration" are "ACP is now yours"  and "I

5    am proud to give you all my interest in that company to do with as you choose" on the first and

6    second pages, respectively, of their Exhibit P.  But this language is insufficient to satisfy the

7    "express declaration" requirement as it does not acknowledge the purported status of the

8    shares as Debtor's separate property nor does it expressly state that status is being changed

9    such that the shares will now constitute Mrs. Brower's separate property.  *See e.g.*, *In re*

10   *Marriage of Holtemann*, 166 Cal.App.4th 1166, 1172 ("express declaration" of property

11   transmutation found to exist where transmutation agreement and trust stated that separate

12   property was "hereby transmuted from his separate property to the community property of

13   both parties"); *In re Marriage of Lund*, 174 Cal.App.4th 40, 51-52 (2009) ("express

14   declaration" of property transmutation found to exist where agreement stated, among other

15   things, "[a]ll of the property, real and personal, held in the name of Husband having its origin

16   in his separate property no matter how received and/or earned, is hereby converted to

17   community property of Husband and Wife, and shall thereafter be the community property of

18   the parties for estate planning hereto, each having a present, existing, and equal interest

19   therein.")

20        Defendants have cited two cases in support of their contention that the aforementioned

21   phrases constitute sufficient "express declarations" to support a transmutation – *Estate of*

22   *Petersen*, 28 Cal.App4th 1742 (1994) and *Estate of Bibb*, 87 Cal.App.4th 461 (2001).

23   (Defendants' MSJ, 10:8-10.)[4]  But neither case actually supports Defendants' argument.

24        In fact, *Estate of Bibb* actually supports the Bank's argument that the documentation

25   proferred by the Defendants is insufficient to support a transmutation as a matter of law.  In

---

[4] It is relevant to note that Defendants have not provided pin cites, much less any
meaningful analysis, from which the Bank and the Court might ascertain the specific
aspects these cases that the Defendants are relying on to support their argument.

SMRH:4852-0072-7456.1

that case, a grant deed signed by a husband transferring his separate property interest in real property to himself and wife as joint tenants satisfied "express declaration" requirement for valid transmutation of property because the deed was drafted in statutory form required for expressing intent to transfer real property interest and the husband used the term "grant" to convey property into joint tenancy, which is the historically operative term for transferring a real property interest. *Estate of Bibb*, 87 Cal.App.4th at 468-69. No such formalities or legally operative language are present in this case, where the Defendants are relying on a hodge-podge of documents of dubious origin in an attempt to patch together a valid transmutation.

As to *Estate of Petersen*, that case turned on the court's analysis of the following: (a) "whether certain real property had been transmuted by a grant deed reflecting transfer of real estate to a husband and wife as "joint tenants" (*id.* at 1746-47); (b) whether certain annuity contracts "were sufficient to establish a nonprobate transfer by right of survivorship (at 1749); and (c) whether "the reference to joint tenancy on the [money market] account statement" satisfied the requirement of an express written declaration to alter the character or ownership of community funds (at 1754-55). The documentation and attendant language in *Estate of Petersen* is simply not comparable to this case and does not auger in favor of a ruling that the spare, questioned documentation in this case is sufficient to support a transmutation.

Contrary to Defendants' contentions, Debtor's 100% ownership of ACP was never validly transmuted into Mrs. Brower's separate property. Accordingly, as a matter of law, it is the property of Debtor's bankruptcy estate.

## A. The Bank Disputes the Admissibility of the Documents Proffered as Evidence of the Supposed Transmutation of ACP Stock.

The two key documents cited in support of Defendants' transmutation argument are attached as Exhibit P to Debtor's declaration. As the Court may recall, the circumstances surrounding the production of these documents was quite suspicious as it came only after this adversary action was filed and approximately 2 ½ years after Debtor represented he had produced all such documents. (*See* Exh. 2, ¶¶ 3-9 and exhibits 1-5 attached thereto.) The Bank demanded that Defendants produce originals of the various "newly discovered"

SMRH:4852-0072-7456.1

documents, which included both of the documents Defendants now proffer as their Exhibit P. The Defendants were purportedly unable to locate the original of the second page of Exhibit P (Exh. 27, 1:22, noting Defendants' inability to locate the document bates stamped ACP/Patty Brower 0033), but produced the original of the first page – the "ACP is now yours" note – along with various alleged corporate meeting minutes and the like for ACP (*id*. at 1:15-20).

The originals produced by the Defendants were subsequently analyzed by Dr. Valery Aginsky, a forensic chemist specializing in the field of ink analysis and document dating, who found strong indications that the documents were illegitimate.  (*See* Exh. 28, pp. 3-5 – "SUMMARY OF FINDINGS".)  Of particular relevance to the parties' respective MSJs is Dr. Aginsky's determination that the the date and the phrase "ACP is now yours" on the first page of Defendants' Exhibit P were written in a different blue ballpoint pen ink than the rest of the card, which read "Dearest Patty Love forever ^B^".  (*Id*. at p. 3-4, ¶ 7.)  Dr. Aginsky noted "[t]his evidence is strongly indicative that the entries "11/8/00" and "ACP is now yours" were not written contemporaneously with the initial text, and instead these entries were added to the card some time after the initial text had been written."  (*Id*.)

Courts are rightfully wary when parties create self-serving documents and seek to offer them as business records."  *Sana v. Hawaiian Cruises, Ltd.*, 181 F.3d 1041, 1046 (9th Cir. 1999); *and see* Advisory Committee Note to the 2014 Amendment of Fed. R. Evid. 803(6) (The Committee emphasizes that the opponent is "not necessarily required to introduce affirmative evidence of untrustworthiness," instead the opponent can simply highlight the "circumstances" that suggest untrustworthiness.)  The Court simply cannot grant summary judgment in Defendants favor on the Bank's second claim based on the documents comprising Exhibit P.

First, the second page of Exhibit P is inadmissible due to Defendants' inability to produce the original.   Rule of Evidence 1002 provides that "[a]n original writing…is required in order to prove its content unless these rules or a federal statute provide otherwise."  A duplicate cannot be admitted in lieu of an original when "a genuine question is raised about the original's authenticity or the circumstances make it unfair to admit the duplicate."  Fed. Rule

SMRH:4852-0072-7456.1

of Evid. 100; *and see* Notes of Committee on the Judiciary, House Report No. 93–650 *(*"The Committee approved this Rule in the form submitted by the Court, with the expectation that the courts would be liberal in deciding that a 'genuine question is raised as to the authenticity of the original.'")

And as to the first page of Exhibit P – the "ACP is now yours" note – it is inadmissible as well because it is hearsay not subject to any applicable exception. *Pos–A– Traction, Inc.,* 112 F. Supp. 2d at 1182. Defendants appear to contend that this note is a pseudo-business record, but they have not provided any evidence to support that contention. To authenticate copies of business records an affidavit from the custodian of records must identify that "the record was made at or near the time by—or from information transmitted by—someone with knowledge; [] the record was kept in the course of a regularly conducted activity of a business, organization, occupation, or calling … making the record was a regular practice of that activity … all these conditions are shown by the testimony of the custodian or another qualified witness." Fed. R. Evid. 803(6). As Mr. Brower admits in his declaration, he was not the custodian of records for ACP and the disputed documents were not maintained in ACP's files. (Supp. Brower Decl., ¶ 6 ("these later-produced documents were in the possession of [Debtor's wife] Patty Brower…These documents did not show up when I searched my files, but only when Ms. Brower searched her personal files.") Accordingly, the "ACP is now yours" not has not and cannot be authenticated for purposes of satisfying the business records exception and is therefore inadmissible.

The documents proffered by the Defendants to prove the transmutation of the ACP shares are not sufficient to support a finding that Debtor transmuted his ACP stock into Mrs. Brower's separate property. But even if they were potentially sufficient to support such a finding, they are inadmissible. The Bank's MSJ should be granted as to the second claim.

SMRH:4852-0072-7456.1

# IV.
## THE BANK'S MSJ SHOULD BE GRANTED AS TO THE THIRD CLAIM.

The Defendants argue that the third claim should be dismissed because it is "derivative of the first two causes of action." (Opposition, 13:5-6.) However, for the reasons detailed above, the Bank's MSJ should be granted as to the first and second claims. To the extent the Court rules in the Bank's favor on the first claim, 100% of Coastal would be the property of the bankruptcy estate.[5] Accordingly, Debtor's post-petition conversion of Coastal from a California to a Delaware corporation (among other Coastal transactions) would be subject to avoidance pursuant to 11 U.S.C. § 549. *See In re First Protection, Inc.*, 440 B.R. 821, 830 (BAP 9th Cir. 2010) (when debtor is the sole owner of interest in a business entity, all of the debtor's rights in the entity become property of the estate, including both economic and management rights). To the extent the Bank's MSJ is granted as to the first claim, the Bank's MSJ as to the third claim must also be granted.

# V.
## CONCLUSION

For the foregoing reasons and those detailed in its moving papers, the Bank's MSJ should be granted in its entirety.

Dated: August 21, 2019

SHEPPARD, MULLIN, RICHTER & HAMPTON LLP

By: _____ /s/ *Isaiah Z. Weedn* _____
ISAIAH Z. WEEDN
MICHAEL M. LAUTER
Counsel for the Plaintiff,
MUFG UNION BANK. N.A.

---

[5] Alternatively, the Court could grant the Bank's MSJ as to a portion of first claim (i.e., as to the shares purportedly owned by Mr. Lindley, Mr. Nobles, Mr. Babcock, and/or Mrs. Brower) such that more than 50% of Coastal would be deemed property of the banruptcy.