1  SHEPPARD, MULLIN, RICHTER & HAMPTON LLP
   A Limited Liability Partnership
2  Including Professional Corporations
   ISAIAH Z. WEEDN, Cal. Bar No. 229111
3  iweedn@sheppardmullin.com
   650 Town Center Drive, 10th Floor
4  Costa Mesa, CA 92626-1993
   Telephone:    714-513-5100
5  Facsimile:    714-513-5130

6  Attorneys for Creditor and Plaintiff,
   MUFG UNION BANK, N.A.

7

8              UNITED STATES BANKRUPTCY COURT

9              NORTHERN DISTRICT OF CALIFORNIA

10                    SAN JOSE DIVISION

11

12

13  In re                                Case No. 15-50801  MEH

14  ROBERT BROWER, SR.,                  Chapter 11

15              Debtor.

16

17  MUFG UNION BANK, N.A.,

             Plaintiff,                  Adv. Proc. No. 17-05044-MEH
18
        v.                               **PLAINTIFF MUFG UNION BANK,
19                                        N.A. TRIAL BRIEF**
    ROBERT BROWER, SR., an individual,
20  PATRICIA BROWER, an individual,      **Date:       September 2, 2020**
    COASTAL CYPRESS CORPORATION, a       **Time:       9:00 a.m.**
21  California corporation, COASTAL      **Court:      Hon. M. Elaine Hammond**
    CYPRESS CORPORATION, a Delaware                   **Video Hearing**
22  corporation, AMERICAN COMMERCIAL
    PROPERTIES, INC., a Nevada
23  corporation, ANTHONY NOBLES, an
    individual, WILFRED "BUTCH"
24  LINDLEY, an individual, RICHARD
    BABCOCK, an individual, PATRICIA
25  BROWER TRUST, and DOES 1-50,

26              Defendants.

27

28

SMRH:481011878.4                                            PLAINTIFFS TRIAL BRIEF

# I.

## INTRODUCTION

This trial is to determine ownership of the remaining 43% of defendant Coastal Cypress Corporation's ("Coastal") stock. The Court will make that determination based on the evidence submitted concerning three discrete, factual issues:

1.     Whether defendant Dr. Anthony Nobles paid $50,000 and Coastal received $50,000 in exchange for 50,000 shares of Coastal stock purportedly issued to Dr. Nobles.

2.     Whether defendant Patricia Brower paid and Coastal received $125,000 in exchange for 125,000 shares of Coastal stock.

3.     To the extent Mrs. Brower paid and Coastal received $125,000 in exchange for 125,000 shares of Coastal stock, whether the $125,000 paid by Mrs. Brower is traceable to her sole and separate property.

As further detailed below and as plaintiff MUFG Union Bank, N.A. (the "Bank") will prove at trial, the answer to all three questions is a resounding "no." Accordingly, under the law of the case established by this Court's November 20, 2019 Memorandum Decision on Motions for Summary Judgment (the "MSJ Ruling")[1], the result of the trial should be a determination that Coastal is 100% owned by debtor Robert Brower, Sr.'s ("Debtor") bankruptcy estate.

# II.

## FACTUAL AND PROCEDURAL BACKGROUND CONCERNING COASTAL

As determined in the previous adversary proceeding, Debtor and Mrs. Brower established a wine estate in Monterey County, California in 1982.[2] The assets and operations of their business venture were split between multiple privately-held

---

[1] A true and correct copy of the MSJ Ruling (Dkt. #123) is attached hereto and identified on the Bank's Exhibit List as Exhibit 1.

[2] See March 22, 2017 Memorandum Decision (p. 2:7-14), a true and correct copy of which is attached hereto and identified on the Bank's Exhibit List as Exhibit 2.

corporations with Coastal owning the most valuable asset – the real property on which the wine estate was situated. Coastal sold that property (along with certain personal property and equipment) for $12 million on April 17, 2015[3], little more than a month after Debtor filed for bankruptcy.

At the outset of this case, the Defendants collectively contended that Coastal's stock ownership was as follows: (1) Debtor (as his sole and separate property) – 230,000 shares (approx. 24%); (2) Mrs. Brower's Trust (via transfer from Mrs. Brower) – 125,000 shares (approx. 13%); (3) Wilfred "Butch" Lindley – 355,000 shares (approx. 37%); (4) Dr. Nobles – 200,000 shares (approx. 21%); and (5) Richard Babcock – 50,000 shares (approx. 5%). Pursuant to the MSJ Ruling, all of the shares purportedly belonging to Messrs. Lindley and Babcock were deemed void for lack of consideration. (Exh. 1, 5:4-22 and 7:9-27.) Likewise, 150,000 of Dr. Nobles' shares were deemed void for lack of consideration. (*Id.* at 5-6:23-12.)

However, the Court determined that there were disputed issues of fact to be resolved at trial as to the following: (1) "the question of whether Nobles paid $50,000 for [50,000] Coastal shares" (Exh. 1, 7:6-7); (2) the question of whether Mrs. Brower paid for her 125,000 Coastal shares (10:12-18); and (3) the question of whether Mrs. Brower "provided consideration from separate property for the Coastal stock." (10:25-27.) These are the only issues to be resolved at trial and they should all be resolved in the Bank's favor.

## III.

## COASTAL NEVER RECEIVED THE $50,000 NOBLES PAID DEBTOR

Under Cal. Corp. Code § 409(a), corporate stock cannot be validly issued without consideration. At the dispositive motion phase of this case Dr. Nobles created a purported disputed issue of fact as to whether he paid $50,000 to Coastal in exchange for 50,000

---

[3] A true and correct copy of the Final Settlement Statement is attached hereto and identified on the Bank's Exhibit List as Exhibit 3.

Coastal shares by "asserting for the first time in Opposition to [the Bank's] motion for summary judgment that $50,000 of the $200,000 wired [into Debtor and Mrs. Brower's personal bank account[4]] on January 31, 2011 was subsequently transferred to Coastal." (Exh. 1, 6:13-15; *and see* Exh. 4[5], p. 21.)  The Court cited the following paragraph from the sworn Supplemental Declaration of Robert Brower ("Brower Supp. MSJ Dec.")[6] as evidence of this assertion:

> Additionally,  $50,000 of the money paid by Nobles was transferred from my bank account directly into Coastal Cypress via check number 8948. Attached as Exhibit J is a true and correct copy of the February 12, 2011 bank statement and copy of check 8948; see also Ex. E at pp. 27-28[[7]]; Exhibit I (Brower bank statement for February 11, 2011; and Declaration of Robert Brower, dated July 29, 2019, at ¶¶ 3-8.)

However, Debtor neglected to disclose to the Court that he had characterized his $50,000 payment to Coastal as a loan pursuant to a $50,000 Promissory Note Debtor signed, as Coastal's President, in favor of himself (the "Promissory Note").[8]  Indeed, both the Promissory Note and the check are dated February 4, 2011.  (*See* Exh. 7 and 8.) Debtor confirmed this loan in his deposition testimony and also confirmed that Coastal repaid it:

> Q. The second page of this document appears reflect a promissory note dated February 4, 2011, again from Coastal Cypress to you for $50,000, correct?
>
> A. Yes.

_____

[4] A true and correct copy of the statement dated 2/11/2011 for Debtor and Mrs. Brower's joint bank account at Fremont Bank reflecting their receipt of $200,000 at Dr. Nobles' direction is attached hereto and identified on the Bank's Exhibit List as Exhibit 4.

[5] A true and correct copy of Dr. Nobles' Declaration (Dkt. #113-4) is attached hereto and identified on the Bank's Exhibit List as Exhibit 5.

[6] A true and correct copy of the Brower Supp. MSJ Dec. (Dkt. #116-1), without exhibits, is attached hereto and identified on the Bank's Exhibit List as Exhibit 6.

[7] A true and correct copy of check number 8948 from Debtor and Mrs. Brower's joint account to Coastal in the amount of $50,000 and included as p. 2 of Exhibit J to the Brower Supp. MSJ Dec. (Dkt. #116-2, p. 27) is attached hereto and identified on the Bank's Exhibit List as Exhibit 7.

[8] A true and correct copy of the Promissory Note is attached hereto and identified on the Bank's Exhibit List as Exhibit 8.

Q. Is that your signature there on the note?

A. Yes, it is.

Q. So this is reflecting you loaning Coastal Cypress $50,000, correct?

A. Yes.

Q. Was this note repaid?

A. I believe so.[9]

The net result is that Coastal never received $50,000 as consideration for the remaining, disputed 50,000 Coastal shares issued to Dr. Nobles. Debtor simply took the money for his own use – "loaning" it to Coastal and later repaying himself. Accordingly, the remaining 50,000 shares issued to Dr. Nobles are void for lack of consideration.

## IV.

## THERE IS NO CREDIBLE EVIDENCE THAT MRS. BROWER PAID FOR COASTAL SHARES AT ALL, MUCH LESS WITH HER SOLE AND SEPARATE PROPERTY FUNDS

"Bankruptcy courts are required to look to state law—in this case, California law—to determine whether property is community property and therefore included in the bankruptcy estate." *In re Brace*, 908 F.3d 531, 536 (9th Cir. 2018). "Except as otherwise provided by statute, all real and personal property, wherever it is located, acquired by a married person during the marriage while the person is domiciled in California is community property." Cal. Fam. Code § 760. "Under California law, there is a general presumption that, absent a statute to the contrary, all property acquired during marriage is community property." *In re Brace*, 908 F.3d at 537. "Property that a spouse acquired during the marriage is community property unless it is (1) traceable to a separate property source, (2) acquired by gift or bequest, or (3) earned or accumulated while the spouses are

_____

[9] A true and correct copy of the relevant excerpt from Debtor's deposition testimony (with the quoted text highlighted) is attached hereto and identified on the Bank's Exhibit List as Exhibit 9.

living separate and apart." *In re Marriage of Valli,* 58 Cal. 4th 1396, 1400 (2014) (internal citations omitted). "A spouse's claim that property acquired during marriage is separate property must be proven by a preponderance of the evidence." *Id.*; *and see In re Brace*, 908 F.3d at 537. The mere fact that certificates of title are in the name of a non-filing spouse as registered owner is insufficient, without more, to overcome the presumption that property acquired during the marriage is separate property of the non-filing spouse not included in "property of the estate." *See In re Victor,* 341 B.R. 775, 779-80 (Bkrtcy. D.N.M. 2006).

Coastal was incorporated in 1982, approximately two years after Debtor and Mrs. Brower married. Accordingly, even assuming that the shares are not void for lack of consideration (which they are), Mrs. Brower's 125,000 Coastal shares[10] are presumed to be her and Debtor's community property. Evidence sufficient to overcome this presumption simply does not exist.

The only purported evidence that could be presented at trial concerning Mrs. Brower's supposed payment for the shares from her sole and separate property is essentially the same evidence admitted for that purpose at the dispositive motion phase of these proceedings – (a) Debtor and Mrs. Brower's 1980 premarital agreement, in which the typed text reflects that Mrs. Brower had only $15,000 of separate property at the time of the marriage but that Debtor contends was altered by hand to reflect the supposed "true" amount of Mrs. Brower's separate property – $515,000; (b) the Coastal stock certificate bearing Mrs. Brower's name and reflecting the number of shares issued; and (c) Debtor's testimony that Mrs. Brower paid Coastal $125,000 from her sole and separate property in exchange for 125,000 shares. (*See* Exh. 1, 9-10:25-11.) But as the Court noted in its MSJ Ruling, "neither the stock certificate nor the premarital agreement evidence that money was paid for [Mrs. Brower's Coastal] shares." (Exh. 1, 10:15-16.)

---

[10] Shares she subsequently transferred into her trust (*See* Exh. 10, p. 11.) A true and correct copy of the Declaration of Trust by Patricia A. Brower of the Brower Trust (2015) date June 30, 2015 is attached hereto and identified on the Bank's Exhibit List as Exhibit 10.

1    Accordingly, Mrs. Brower's ability to prove that she not only paid for her Coastal

2 shares but that she did so with her funds derived from her sole and separate property rests

3 on the credibility of Debtor's testimony.  And time and again, Debtor has demonstrated

4 that he is not credible.  Debtor was denied a discharge of his debt to the Bank in the

5 previous adversary proceeding because of his fraudulent conduct.  (*See generally* Exh. 2.)

6 And as detailed in the preceding section, Debtor misled the Court at the dispositive motion

7 phase of this case when he submitted a declaration under penalty of perjury stating that a

8 $50,000 check he had actually characterized as a "loan" to Coastal in February 2011 was a

9 payment in consideration for 50,000 Coastal shares issued to Dr. Nobles.  (*See* Exh. 6, ¶

10 17; *and see* Exh. 1, 6:13-15.)

11    Mrs. Brower cannot prove that she actually paid for her Coastal shares.  And even if

12 she could, she does not have evidence sufficient to overcome the presumption that the

13 Coastal shares are her and Debtor's community property.  Accordingly, any Coastal shares

14 purportedly owned by Mrs. Brower (to the extent they are not void) are, in fact, the

15 property of Debtor's bankruptcy estate.

16

17 **V.**

18 **CONCLUSION**

19    For the foregoing reasons, judgment after trial should be entered in the Bank's favor

20 as follows:

21    (a)    Dr. Nobles' remaining 50,000 Coastal shares should be deemed void for lack

22 of consideration pursuant to the Bank's first claim because the consideration Dr. Nobles

23 allegedly paid in exchange for these shares was paid to Debtor and Mrs. Brower's personal

24 account and was never received by Coastal; and

25    (b)    The Patricia Brower Trust's 125,000 Coastal shares should, pursuant to the

26 Bank's first claim, either (1) be deemed void for lack of consideration because there is no

27 evidence Coastal received consideration in exchange for the shares or (2) be deemed

28 community property and therefore property of Debtor's bankruptcy estate because there is

1  no evidence any consideration actually received by Coastal in exchange for the shares is
2  traceable to Mrs. Brower's separate property.

3      Judgement on these terms coupled with the MSJ Ruling and the Court's order
4  thereon will render Debtor's Bankruptcy Estate the 100% owner of Coastal's shares and
5  therefore the rightful recipient of all net proceeds from the $12 million sale of Coastal's
6  wine estate property.

7  Dated: August 13, 2020          SHEPPARD, MULLIN, RICHTER & HAMPTON LLP

9                                 By:      /s/ Isaiah Z. Weedn
                                          ISAIAH Z. WEEDN

11                                 Attorneys for Creditor and Plaintiff
                                   MUFG Union Bank, N.A.