# EXHIBIT 1

**Entered on Docket**
**November 20, 2019**
EDWARD J. EMMONS, CLERK
U.S. BANKRUPTCY COURT
NORTHERN DISTRICT OF CALIFORNIA



The following constitutes the order of the Court.
Signed: November 20, 2019

_____
**M. Elaine Hammond
U.S. Bankruptcy Judge**

# UNITED STATES BANKRUPTCY COURT

# NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| In re<br><br>Robert S. Brower, Sr.,<br><br>                     Debtor. | Case No. 15-50801 MEH<br><br>Chapter 11 |
| MUFG Union Bank, N.A.,<br>                     Plaintiff.<br>v.<br>Robert Brower, Sr., Coastal Cypress Corporation, *a California corporation*, Wilfred "Butch" Lindley, Patricia Brower, American Commercial Properties, Inc., Anthony Nobles, Richard Babcock, Patricia Brower Trust, and Coastal Cypress Corporation, *a Delaware corporation*,<br>                     Defendants. | Adv. No. 17-5044<br><br>**MEMORANDUM DECISION ON MOTIONS FOR SUMMARY JUDGMENT**<br><br>Date:  09/09/19<br>Time:  2:00 p.m.<br>Ctrm:  11 |

MUFG Union Bank, N.A. ("Plaintiff") and Robert Brower, Sr., Patricia Brower, Coastal Cypress Corporation, a California corporation, Coastal Cypress Corporation, a Delaware corporation, American Commercial Properties, Inc., Anthony Nobles, Wilfred "Butch" Lindley, Richard Babcock, and Patricia Brower Trust (collectively, "Defendants") brought cross-motions for summary judgment (Dkt. #108, #113). The matters were heard September 9, 2019. Ori Katz and Isaiah Weedn appeared on behalf of Plaintiff. Cathleen Giovannini and Michael Vacchio appeared on behalf of Defendants. Following the hearing, the matter was taken under submission. As explained below, the parties' motions for summary judgment are denied in part and granted in part.

This court has jurisdiction pursuant to 28 U.S.C. § 1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A) and (O). Venue is proper pursuant to 28 U.S.C. § 1408. This decision constitutes the court's findings of fact and conclusions of law in accordance with Federal Rule of Bankruptcy Procedure 7052.

**Background**

Robert Brower ("Brower") and Patricia Brower ("Patty") married in 1980. Brower founded Coastal Cypress Corporation ("Coastal") as a California corporation in 1982. Coastal initially issued 105,000 shares of stock that year: 80,000 shares to Brower and 25,000 shares to Patty. In 1984, Patty received an additional 125,000 shares of Coastal stock. The 125,000 shares were subsequently placed in Patty's trust ("Patty Trust") after its creation in 2015.

Until 2015, Coastal owned the real property at 8890 and 8940 Carmel Valley Road in Carmel, California (the "Wine Estate"), a roughly 16-acre estate that included a wine tasting room, wine production facility, barrel aging room, offices, outdoor event venues, and vineyards. Brower oversaw the Wine Estate for decades as President of Chateau Julien, Inc. ("CJ"), Great American Wineries, Inc., and Coastal.

In 1987, Coastal issued 335,000 shares to Chualar Canyon Ranch Supply, a company owned by Wilfred "Butch" Lindley. Lindley provided goods and services in exchange for the

shares. In 2011, Coastal further issued 50,000 shares to Richard Babcock and 200,000 shares to Anthony Nobles, who paid a combined $250,000 for the shares.

Brower formed American Commercial Properties, Inc. ("ACP") in 1983. Brower asserts that on November 8, 2000, he gifted all of the ACP stock to Patty. Patty later transferred ownership of the ACP shares into the Patty Trust.

In 2017, two years after Brower filed for bankruptcy, Coastal executed a merger ("Coastal Merger") and transformed from a California corporation to a Delaware corporation. Defendants exchanged their shares in the California corporation for new shares in the Delaware corporation.

**Legal Standard**

Through the motions for summary judgment, Plaintiff seeks to establish that Coastal and ACP are solely the property of Brower's bankruptcy estate. Defendants seek to establish that Lindley, Babcock, and Nobles own collectively 63% of Coastal, and that Patty and the Patty Trust own 13% of Coastal and 100% of ACP.

Federal Rule of Civil Procedure 56, made applicable through Federal Rule of Bankruptcy Procedure 7056, states that summary judgment shall be granted if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. A fact is material if it might affect the outcome of a proceeding under the governing substantive law. In a motion for summary judgment, the moving party bears the initial burden of persuasion in demonstrating that no issues of material fact exist. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 254 (1986). A genuine issue of material fact exists when the trier of fact could reasonably find for the non-moving party. *Id*. at 248. The court may consider pleadings, depositions, answers to interrogatories and any affidavits. *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986). In determining whether the movant has met its burden, the court should consider all reasonable inferences in a light most favorable to the non-movant. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

Case: 17-05044 Doc# 146-1 Filed: 02/13/20 Entered: 02/13/20 10:47:37 Page 4 of 18
Case: 17-05044 Doc# 123-1 Filed: 11/20/19 Entered: 11/20/19 15:40:35 Page 3 of 17

P_Ex._1 - 003

**Analysis**

    **A. Lindley, Babcock, and Nobles' Coastal Shares**

Plaintiff argues that Lindley, Babcock, and Nobles did not provide consideration for their Coastal shares, and as a result, their interests in Coastal should be deemed void. Defendants assert Coastal received consideration in exchange for issuance of the stock. Specifically, Defendants assert they provided consideration for their shares in Coastal, the California corporation and these interests were subsequent consideration for Coastal, the Delaware corporation. Here, the court analyzes the issuance of Coastal stock prior to the Coastal Merger.

Pursuant to California Corporations Code § 409(a), a corporation may issue shares for consideration in the form of:

- money paid,
- labor done,
- services actually rendered to the corporation or for its benefit or in its formation or reorganization,
- debts or securities canceled, and
- tangible or intangible property actually received either by the issuing corporation or by a wholly owned subsidiary.

Neither promissory notes of the purchaser (unless otherwise permitted) nor future services may be consideration for shares. Cal. Corp. Code § 409(a). The consideration is determined by the board of directors, or by the shareholders if the articles so provide. Cal. Corp. Code § 409(e). If the consideration is anything other than money for which the shares are issued, the board of directors must state by resolution its determination of the consideration's fair value to the corporation in monetary terms. Cal. Corp. Code § 409(e). Shares issued by a corporation without having received consideration in return are void. *See Cortelyou v. Imperial Land Co.*, 156 Cal. 373, 376 (1909).

The undisputed facts are that (1) Lindley provided services for his shares, and (2) Babcock and Nobles paid a combined $250,000 for their shares, of which $240,000 was paid

directly into Robert and Patty Brower's joint bank account and $10,000 was paid directly to CJ. The parties dispute the flow of funds after these initial payments. The issue for the court is whether these transactions satisfy the statutory requirement for issuance of stock.

Lindley Shares

Lindley asserts that he provided goods and services for the benefit of Coastal in the 1980's as consideration for his shares. Specifically, Lindley contends that: (1) he provided grape crops to be used in the production of wine; (2) he assisted Coastal and CJ in CJ's efforts to lease land, grow grapes and produce wine; (3) through his network in the wine industry he helped obtain and install necessary equipment; and (4) due to his reputation in the wine industry, he lent credibility to Coastal and CJ.

As an initial matter, the issuance of shares to Lindley did not satisfy the requirements of Cal. Corp. Code § 409(e). Coastal's board was required to determine the fair value of Lindley's non-monetary consideration and state its determination by board resolution. Lindley provided no evidence that this occurred.

Additionally, Lindley's position is inconsistent with the business operations. It is undisputed that Coastal owned the land upon which the Wine Estate was located. Great American Wineries, Inc. made the wine and CJ sold the wine on Coastal's property. Coastal neither sold nor produced wine. As such, it had no need for wine-making equipment. Even supposing that Coastal owned wine-making equipment, the benefit derived from mere ownership of such equipment was tangential at best.

On the evidence presented, the court finds that the services provided by Lindley did not provide consideration to or for the benefit of Coastal.

Nobles Shares

In January 2011, Nobles paid $200,000 into the Browers' joint account. Nobles maintains that his $200,000 payment to Brower was consideration for the Coastal shares because $50,000 was promptly deposited into Coastal's bank account, and the remaining $150,000 was loaned from Coastal to CJ. The loan was booked on Coastal's general ledger as an account receivable, and in 2015, Coastal received a tax break when this account receivable

was written off as "bad debt."  Plaintiff opposes the designation of the $150,000 payment as a Coastal loan, because the money flowed to CJ from the Browers' account.

There is no support for the argument that the $200,000 paid to Brower was "money paid" to Coastal.  Nobles asserts that the $150,000 loan is on Coastal's books as "paid in capital," but this is not evidence of "money paid" where the facts establish that the funds never reached Coastal.  Cal. Corp. Code § 409(a) recognizes money paid to the issuing corporation or a wholly owned subsidiary.  CJ is not a subsidiary.  Further, a tax write-off does not fit within any category of consideration authorized by § 409(a).  The tax write-off did not occur until four years after the stock was issued.  It is therefore equivalent to a promissory note or future service—both of which are expressly prohibited as consideration. The undisputed facts establish that the funds supposedly "loaned" to CJ and later applied as a tax write-off do not satisfy § 409(a)'s requirements.

Nobles asserts for the first time in the Opposition to Plaintiff's motion for summary judgment that $50,000 of the $200,000 wired on January 31, 2011 was subsequently transferred to Coastal.  Support for this assertion is provided in the Supplemental Declaration of Robert Brower (#116-1, ¶17).  Brower states therein that $50,000 of the funds received from Nobles was transferred by check from Brower's joint account to Coastal.  Attached to the declaration is a February 11, 2011 transaction report for the joint account.  This report evidences receipt of $200,000 from "ORG TECHNOS DEVELOPMENT LLC" on January 31, 2011.  Fourteen transactions later, on February 4, 2011, check number 4898, in the amount of $50,000, is posted.  A copy of this check, made payable to Coastal Cypress Corporation, is provided with the February 28, 2011 statement.

Plaintiff objected to the Brower Supplemental Declaration ¶17 on numerous grounds. The bank statements provided in support of this paragraph, Exhibits I and J, lack foundation as Brower has not properly authenticated them, and as such they offer improper hearsay.  As a result, this testimony and bank statements are not sufficient to establish on summary judgment that funds received from Nobles were subsequently transferred to Coastal as money paid for stock.

Further, the bank statements raise additional questions not addressed by the parties. In order to determine whether money was paid by Nobles for the Coastal shares the transferor of the $200,000 needs to be identified. Assuming the funds were provided by Nobles, what is the effect of the funds having been commingled with Brower's personal funds? Is tracing appropriate, and if so, what methodology should be applied?

As a result, no consideration was provided for 150,000 of Nobles' shares and the question of whether Nobles paid $50,000 for Coastal shares is not appropriate for resolution on summary judgment.

<u>Babcock Shares</u>

Babcock and Nobles paid a total of $50,000 for Babcock's shares, $10,000 by Babcock and $40,000 by Nobles. Babcock's $10,000 payment went directly into CJ's account; Nobles' $40,000 payment went into the Browers' joint account. Babcock and Nobles assert that the $40,000 paid to Brower satisfied a loan Brower previously made to Coastal.

No portion of the $50,000 was received by Coastal, thus, no money was paid to Coastal. Cancellation of debts or securities is recognized as consideration, but the debt or claim against the corporation must be relinquished by the purchaser as consideration for the shares. *See* 15 Cal. Jur. 3d Corporations § 140 ("'Debts or securities canceled,' as acceptable consideration for the issuance of shares, clearly means a debt or claim against the corporation that the subscriber or purchaser relinquishes as consideration for the shares."); *see also Reed v. Norman*, 41 Cal. 2d 17 (1953). As Nobles' payment was made to satisfy a claim held by Robert Brower, rather than a claim held by Nobles, the alleged $40,000 loan payment is not recognized as a cancellation of debts or securities for purposes of § 409(a). Further, as with Lindley, Coastal's board failed to determine and state the fair value of the cancellation of indebtedness as required by § 409(e).

As such, the funds provided by Babcock do not satisfy § 409's requirements for consideration provided to Coastal.

<u>"Bona Fide Purchaser" Defense</u>

Lindley, Babcock, and Nobles argue that, even in the absence of sufficient consideration, the "bona fide purchaser" defense applies to preserve their shareholder status. Defendants rely on *Cortelyou v. Imperial Land Co.*, 156 Cal. 373 (1909) and *Michaels v. Pac. Soft Water Laundry*, 104 Cal. App. 349 (Ct. App. 1930).

*Cortelyou* concerned a corporate stock purchase from a general manager, a third-party purchaser whose rights in the shares were at issue. The court upheld Cortelyou's stock purchase on the basis that a subsequent bona fide purchaser should not have his shareholder's rights hindered if a prior transaction was invalid for lack of consideration. The court found Cortelyou "a shareholder to the extent of his purchase." *Cortelyou*, 156 Cal. at 376. The presupposition that Cortelyou paid consideration for the shares was never questioned. *Cortelyou* is distinguishable on the basis the shareholder was a purchaser for value from a prior shareholder. Here, Lindley, Babcock, and Nobles received initial stock issuances from the corporation. Accordingly, *Cortelyou* does not support Defendants' position.

In *Michaels*, two director-stockholders sought to cancel the fraudulent sale of corporate treasury stock after the stock was transferred to a good faith purchaser. The court denied this attempt, because the equities of the case did not favor a corporation benefitting from its own misrepresentation and fraud. Further, this case did not address whether consideration was provided as it was undisputed that it was. Here, Defendants do not allege fraud or misrepresentation on Coastal's part which would justify upholding an otherwise invalid transaction. *Michaels* is therefore inapplicable.

As such, the "bona fide purchaser" defense does not apply. There being no genuine dispute as to the material facts, Plaintiff's request for summary judgment that Lindley and Babcock do no hold valid interests in Coastal is granted and Defendants' request is denied. There being a genuine dispute as to $50,000 of Nobles' payment to Brower, both parties' requests for summary judgment as to Nobles' interest in Coastal is denied.

### B. Patty's Coastal Shares

Plaintiff argues that Patty's Coastal shares are either void for lack of consideration or are community property, and either way are an asset of Brower's bankruptcy estate. Patty asserts that she purchased the Coastal shares using separate assets and the shares are her separate property.

"Except as otherwise provided by statute, all real and personal property, wherever it is located, acquired by a married person during the marriage while the person is domiciled in California is community property." Cal. Fam. Code § 760. The interests of each spouse in community property during the marriage are present, existing, and equal interests. Cal. Fam. Code § 751. Neither spouse has any interest in the separate property of the other spouse. Cal. Fam. Code § 752. But the general presumption of community property is rebuttable. *See Marriage of Ciprari*, 32 Cal. App. 5th 83, 91 (Ct. App. 2019). The party contesting community property bears the burden of proof in rebutting the presumption by a preponderance of the evidence. *In re Marriage of Foley*, 189 Cal. App. 4th 521, 527 (Ct. App. 2010). Virtually any credible evidence may be used to overcome the presumption. For example, tracing the assets to a separate property source, showing an agreement or clear understanding between the spouses regarding ownership status, and presenting evidence that the item was acquired as a gift can be sufficient to rebut the presumption. *In re Marriage of Haines*, 33 Cal. App. 4th 277, 291 (Ct. App. 1995).

Separate property may be acquired during the marriage by gift, devise, bequest, or descent; as rents, issues, and profits of separate property; or as property acquired with separate property funds or proceeds. *See* Cal. Fam. Code § 770(a). Property may also transmute from community to separate, by written agreement of the spouses, either before or after marriage and while living together. Cal. Fam. Code § 850.

In support of her position that the Coastal stock was purchased with her separate assets, Patty relies on (i) the Coastal stock certificate bearing Patty's name and showing the number of shares issued, (ii) Brower's declaration that Patty had $515,000 worth of separate property when they married, and that she paid for the shares using her separate property, (iii)

Case: 17-05044    Doc# 146-1    Filed: 08/13/20    Entered: 08/13/20 10:47:37    Page 10 of 18
Case: 17-05044    Doc# 123    Filed: 11/20/19    Entered: 11/20/19 15:40:35    Page 9 of 17

P_Ex._1 - 009

the declaration of her attorney David Balch that Patty disclosed a personal bank account in her discovery responses, and (v) the 1980 premarital agreement between Brower and Patty ("Premarital Agreement").

In exchange for Patty's being excused from deposition, an order was entered precluding Patty from "offering any testimony at trial, directly or indirectly through discovery responses or by an expert's reliance upon her testimony . . ." (Dkt# 104). Balch's declaration is a direct violation of this order and disregarded. Plaintiff also asserted an evidentiary objection to Brower's declaration on the basis that it is inadmissible on multiple grounds. In response, Brower asserted his testimony was based on his personal knowledge as Coastal's chief executive officer. Upon review of Plaintiff's objection, the court overrules it and finds Brower's declaration admissible.

Under § 409(a), corporate stock cannot be validly issued without consideration. Money paid directly to the issuing corporation is an accepted form of consideration pursuant to § 409(a). Patty asserts the Coastal stock was purchased with her separate property. However, neither the stock certificate nor the premarital agreement evidence that money was paid for the shares. Further, while Brower's declaration is admissible, the credibility of his testimony requires evaluation at an evidentiary hearing. As such, the validity of Patty's receipt of stock in Coastal cannot be resolved on summary judgment.

In the interest of judicial efficiency, the court also addresses Patty's argument regarding the Premarital Agreement. Patty asserts that the Premarital Agreement mandates that all property acquired during marriage is separate property; hence, the Coastal shares she acquired are her separate property. Under California law, premarital agreements or marital property agreements may alter the statutory property rights of spouses. Cal. Fam. Code § 1500. The Premarital Agreement stipulates that all property owned or acquired by the spouses is separate property notwithstanding community property laws. Hence, if Patty establishes that she provided consideration from separate property for the Coastal stock, then the stock will also be her separate property.

Case: 17-05044  Doc# 146-1  Filed: 02/13/20  Entered: 02/13/20 10:47:37  Page 11 of 18
Case: 17-05044  Doc# 125  Filed: 11/20/19  Entered: 11/20/19 15:40:35  Page 10 of 17

P_Ex._1 - 010

As the consideration provided by Patty for Coastal stock is subject to a genuine issue of material fact, summary judgment is denied as to both parties' motions.

**C. Patty's ACP Shares**

The Browers argue that the ACP shares were validly transmuted from Brower's separate property to Patty's separate property.

Plaintiff disputes that the ACP shares were Brower's separate property because they were acquired during the Browers' marriage. Regardless of whether the shares are community property, Plaintiff argues that the November 2000 transfer did not change the character of the stock or eliminate Brower's ownership interest therein.

Married persons may by agreement or transfer, with or without consideration, transmute community property to separate property, or transmute the separate property of one spouse to separate property of the other spouse. Cal. Fam. Code § 850. A transmutation of real or personal property is not valid unless made in writing by an express declaration that is made, joined in, consented to, or accepted by the spouse whose interest in the property is adversely affected. Cal. Fam. Code § 852.

To qualify as an "express declaration," the writing must contain language which expressly states that the characterization or ownership of the property is being changed. *In re Marriage of Valli*, 58 Cal. 4th 1396, 1400 (2014) (citing *Estate of MacDonald*, 51 Cal. 3d 262, 272 (1990))[1]. The declaration must also include "a clear and unambiguous expression of intent to transfer an interest in the property." *Estate of Bibb*, 87 Cal. App. 4th 461, 468 (Ct. App. 2001).

While the statute does not require any particular words of transmutation, *Estate of MacDonald*, 51 Cal. 3d at 273, courts more frequently find that an "express declaration" is present when the writing at issue is within a formally drafted document such as a deed or contract. *See Estate of Bibb*, 87 Cal. App. 4th at 462 (grant deed conveying real property

---

[1] *Estate of MacDonald* referred to Civil Code § 5110.730 which became Family Code § 852 in 1992. An analysis of § 5110.730 is for all intents and purposes identical to an analysis of § 852.

from one spouse to both spouses as joint tenants was an "express declaration"); *In re Marriage of Lund*, 174 Cal. App. 4th 40, 51 (Ct. App. 2009) ("Agreement to Establish Interest in Property" unambiguously effected a transmutation of a spouse's separate property into community property); *In re Marriage of Holtemann*, 166 Cal. App. 4th 1166, 1172 (Ct. App. 2008) (transmutation agreement and trust which stated that the spouse's property was "hereby transmuted from his separate property to the community property" was sufficient for valid transmutation).

Conversely, when such formality is lacking, courts find that an "express declaration" is not established. *See In re Marriage of Barneson*, 69 Cal. App. 4th 583, 591 (Ct. App. 1999) (husband's written instructions to "transfer" stock into his spouse's name was not an expression that ownership of the property was being changed); *In re Marriage of Leni*, 144 Cal. App. 4th 1087, 1096 (Ct. App. 2006) (escrow instructions that community proceeds of a house sale were to be split "50/50" did not expressly declare that the character of the property was being changed); *Estate of Petersen*, 28 Cal. App. 4th 1742, 1744 (Ct. App. 1994) (mere reference of a joint tenancy on an account statement was insufficient for transmutation).

The Browers rely on the following writings: (i) a gift card that reads "ACP is now yours," (ii) a signed note that includes the statement "I am proud to give you all my interest in that company to do as you choose," and (iii) a stock transfer.

Plaintiff objected to the signed note as inadmissible based on Defendants' inability to produce the original, and suspicious circumstances surrounding the production of the document.[2] Patty's counsel conceded at the hearing that the signed note is inadmissible.

Brower also submitted declarations of his intent to transfer property to supplement the writings provided. In enacting the writing requirement of § 852, the Legislature intended to enable courts to validate transmutations without resort to extrinsic evidence. *See Estate of*

---

[2] Federal Rule of Evidence 1002 provides that "[a]n original writing, recording, or photograph is required in order to prove its content unless these rules or a federal statute provides otherwise." A duplicate is inadmissible if a genuine question is raised about the original's authenticity or the circumstances make it unfair to admit the duplicate. Federal Rule of Evidence 1003.

*MacDonald*, 51 Cal. 3d at 272. Accordingly, Brower's declarations are not considered in the analysis.

In reviewing the remaining writings, the court finds that the gift card "ACP is now yours" may be interpreted in several ways. On that basis, it is analogous to the informal written instructions found in *Barneson* and *Leni*. While the card could indicate Brower's intent to transfer the property, it does not expressly provide that the characterization or ownership of the property is changed. The mere intent to transfer property is not enough for valid transmutation without a clear expression that the spouse's interest in the property is being changed. *See In re Marriage of Barneson*, 69 Cal. App. 4th at 590 ("Transfer is clearly not synonymous with transmutation.").

Nor does the stock transfer provide an "express declaration" sufficient for transmutation. The share certificates were endorsed to Patty by Brower, but the mere act of transferring shares does not express an intent to change the character or ownership of the property. *See In re Marriage of Barneson*, 69 Cal. App. 4th at 590 (placement of stock belonging to one spouse in the stock brokerage account of the other spouse was not sufficient to establish a transmutation); *Estate of Bibb*, 87 Cal. App. 4th at 469 (DMV printout reflecting the re-registration of an automobile in the name of one spouse to the name of either spouse did not show intent to transmute).

In sum, neither the gift card nor share certificate establish transmutation of property of Brower's separate property to Patty's separate property, or transmutation of community property to Patty's separate property. There is no material fact in dispute as to the writings considered or the existence of other writings. As such, the court finds Plaintiff is entitled to summary judgment that the ACP shares are property of Brower's bankruptcy estate (either as his separate or community property), and the request of Patty and Patty Trust for summary judgment is denied.

**D. Whether Plaintiff's claims are time-barred.**

California Civil Procedure Code § 338(a) provides a three-year statute of limitations for bringing "[a]n action upon a liability created by statute, other than a penalty or forfeiture."

Case: 17-05044 Doc# 146-1 Filed: 08/13/20 Entered: 08/13/20 10:47:37 Page 14 of 18
Case: 17-05044 Doc# 123-1 Filed: 11/20/19 Entered: 11/20/19 15:40:35 Page 13 of 17

P_Ex._1 - 013

Defendants assert this statute bars Plaintiff's claims. Plaintiff, in response, maintains that the transfers did not occur for failure to satisfy the requirements set by Corp. § 409, and therefore Civ. Proc. § 338(a) does not apply.

In reviewing these issues, other bankruptcy courts have held that the court may determine that certain property belongs to the bankruptcy estate notwithstanding time limitations under state law. *In re Blasingame*, 598 B.R. 864, 875 (6th Cir. BAP 2019). Defendants assert that *Blasingame* does not apply to this case, because Plaintiff seeks affirmative relief to void the shares, contrary to mere declaratory relief. Defendants are incorrect. Plaintiff does not seek to void the alleged stock transfers. Rather, Plaintiff seeks a finding that no transfers occurred at all. This is a determination the court may make at any time. Further, this court ruled as such in denying Defendants' motion to dismiss the adversary proceeding on October 3, 2017 (Dkt. #36). In that motion, Defendants asserted that Plaintiff's request for declaratory relief was a disguised avoidance action pursuant to 11 U.S.C. § 548 (Dkt. #13). This argument was rejected on the basis that Plaintiff's claims only sought declaratory relief (Dkt. #36). As such, the law of the case doctrine requires the same result here unless: "(1) the decision is clearly erroneous and its enforcement would work a manifest injustice, (2) intervening controlling authority makes reconsideration appropriate, or (3) substantially different evidence was adduced at a subsequent trial." *In re Rainbow Magazine*, Inc., 77 F.3d 278, 281 (9th Cir. 1996). Defendants presented no evidence of an exception that would prevent application of the law of the case.

As a result, Plaintiff's claims are not time-barred.

**E. Whether the Coastal Merger should be avoided.**

Bankruptcy Code § 549 provides that a trustee may avoid a transfer of property of the estate that (1) occurs after the commencement of the case and (2) is not authorized by the court. Plaintiff asserts that the 2017 Coastal Merger transaction should be avoided, because it is an unauthorized post-petition transfer to the extent Coastal is part of Brower's bankruptcy estate. Defendants assert the merger cannot be unwound because their Coastal shares are valid.

After application of the issues decided herein, the shares are allocated as follows:

- Brower: 230,000 Coastal shares
- Patty (through Patty Trust): 125,000 Coastal shares (subject to further proceedings)
- Nobles: 50,000 Coastal shares (subject to further proceedings)

Brower owned at least 57% of Coastal at the time of the Coastal Merger. This percentage may increase upon determination of Patty and Nobles' shares. But it is undisputed that the Coastal Merger was executed after the filing of Brower's bankruptcy petition. Brower owned more than 50% of Coastal at the time of the merger. As such, § 549 was violated by merger of Brower's interest in Coastal a new entity post-petition, without court authorization and in a manner not otherwise allowed by the Bankruptcy Code.

Plaintiff's request for summary judgment is granted.

### F. Whether Plaintiff's third and fourth claims for relief should be dismissed.

Defendants assert that Plaintiff's third and fourth claims for relief should be dismissed because they are derivative claims of Plaintiff's first and second claims for relief. And should fail for the same reasons.

This court grants partial judgment in Plaintiff's favor on the first claim and denied Defendant's related claim. On the second and third claims, the court grants judgment in Plaintiff's favor. Plaintiff did not seek summary judgment on its fourth claim. Defendant's claim that it should be dismissed based on denial of the prior claims is without merit.

As such, Defendants' request for summary judgment as to these claims is denied.

## Conclusion

For the reasons stated herein, the court hereby

(i) grants Plaintiff's request for summary judgment as to Lindley and Babcock's interests in Coastal as consideration was not received by Coastal for the shares, and denies Lindley and Babcock's request for summary judgment;

Case: 17-05044   Doc# 146-1   Filed: 08/13/20   Entered: 08/13/20 10:47:37   Page 16 of 178
Case: 17-05044   Doc# 123   Filed: 11/20/19   Entered: 11/20/19 15:40:35   Page 15 of 17

P_Ex._1 - 015

(ii) denies in part and grants in part Plaintiff's and Defendants' requests for summary judgment as to whether consideration was received by Coastal for 150,000 of the shares allocated to Nobles;

(iii) denies Plaintiff's and Defendants' requests for summary judgment as to Patty's Coastal shares;

(iv) grants Plaintiff's request for summary judgment as ACP is Brower's separate or community property, and denies Patty and Patty Trust's request for summary judgment;

(v) grants Plaintiff's request for summary judgment avoiding the Coastal Merger; and

(vi) denies Defendants' request for summary judgment as to Plaintiff's third and fourth claims.

**END OF MEMORANDUM DECISION**

COURT SERVICE LIST

All ECF Recipients

Case: 17-05044    Doc# 146-1    Filed: 02/13/20    Entered: 02/13/20 10:47:37    Page 18 of 18
Case: 17-05044    Doc# 123-1    Filed: 11/20/19    Entered: 11/20/19 15:40:35    Page 17 of 17

P_Ex._1 - 017