

In the Matter Of:

MUFG UNION BANK

vs

ROBERT BROWER, Sr., et al.

RICHARD BABCOCK

January 24, 2019

Case No: 15-50801 MEH

CERTIFIED COPY

1   A   Correct.
2   Q   Chualar Canyon Ranch Supply, do you see the entry
3   for them?
4   It's right above Mr. Nobles.
5   A   I see it.
6   Q   Are you familiar with that company?
7   A   No, I'm not.
8   Q   Have you ever heard the name Wilfred or Butch
9   Lindley?
10  A   I have heard of Butch.
11  Q   Do you know Mr. Lindley is in relation to either
12  this lawsuit or Coastal Cypress Corporation?
13  A   Through the complaint, my understanding is that
14  he's a shareholder.
15  Q   Do you recall knowing if he was a shareholder
16  prior to reading the complaint?
17  A   I can't recall.
18  Q   Do you recall whether prior to -- well, should I
19  say are you aware that Mrs. Brower, Patricia Brower is a
20  shareholder of Coastal Cypress Corporation?
21  A   Yes.
22  Q   Do you recall when you acquired that
23  understanding?
24  A   At the time we were considering the investment.
25  Q   By "the investment," you mean the investment

43

1  reflected in the Series A Preferred Stock Purchase

2  Agreement that is Exhibit 27?

3      A   Yes.

4      Q   At the time of the drafting and negotiation of

5  Exhibit 27, do you know whether there were any substantive

6  discussions with either Mr. Lindley or Mrs. Brower

7  concerning the agreement?

8      A   I'm not aware.

9      Q   When you were engaged in the negotiation and

10 drafting of the Exhibit 27, were you at all concerned with

11 any conflict of interest issues?

12     MR. SAMINI:  Objection.  Relevance.  And, actually, to

13 the extent that it would disclose any attorney-client

14 privilege, I would object on that grounds as well.

15     THE WITNESS:  No.

16 BY MR. WEEDN:

17     Q   At the time of the drafting and negotiation of the

18 agreement Exhibit 27, were you at all concerned with any

19 ethical issues as a legal professional?

20     MR. SAMINI:  Again, same objection.

21     THE WITNESS:  No.

22 BY MR. WEEDN:

23     Q   At the time of the negotiation and drafting of

24 Exhibit 27, were you concerned by any self-dealing issues?

25     MR. SAMINI:  Objection.  Vague and ambiguous.

1   A   I don't recall if there's an actual document that
2   reflects that.
3   Q   Do you recall the terms under which you acquired
4   these additional 40,000 shares?
5       In other words, you said that they were acquired
6   commensurate with this agreement, Exhibit 27; correct?
7   A   Yes.
8   Q   So, again, what were the terms of that
9   acquisition?  Did you give any consideration for those
10  additional 40,000 shares?
11  A   I did.
12  Q   What was that?
13  A   That was a promissory note.
14  Q   Okay.  Was this promissory note -- did it reflect
15  a promise to pay by you to Coastal Cypress Corporation?
16  A   No.
17  Q   Okay.  Tell me what the promissory note reflected.
18  A   The terms of the promissory note?
19  Q   Please.
20  A   That I would repay $40,000 to Anthony Nobles.
21  Q   So when was the due date on the promissory note?
22  A   It was a demand note.
23  Q   Was the note reflected in writing?
24  A   That, I don't recall.
25  Q   Do you have a copy of the note in your possession,

47

1  custody, or control?

2  A  I do not.

3  Q  Do you know if anyone else has a copy of the

4  promissory note in their possession, custody, or control?

5  A  I don't believe so.

6  Q  Was it your understanding that Anthony Nobles was

7  going to pay $40,000 to Coastal Cypress Corporation on

8  your behalf to acquire those additional 40,000 shares not

9  reflected in Exhibit 27?

10  A  Yes, that was my understanding.

11  MR. SAMINI:  Hold on.  Objection.  Exhibit 27, meaning

12  the agreement -- the stock purchase agreement?

13  MR. WEEDN:  Correct.

14  MR. SAMINI:  Could you repeat the question for me,

15  please.  I want to make sure I understand it.

16  MR. WEEDN:  Could you read it back, please.

17  (Record read.)

18  MR. SAMINI:  I want to object as to vague and

19  ambiguous.  I think that the shares are all reflected in

20  Exhibit A or Schedule A of Exhibit 27.

21  BY MR. WEEDN:

22  Q  Okay.  Let's see if we can clarify this then --

23  actually, let me have you answer the question first.

24  A  Can you repeat the question.

25  (Record read.)

48

1  BY MR. WEEDN:

2   Q   Did you understand the question?

3   A   Yes.

4   Q   What was the response?

5   A   Yes, that was my understanding.

6   Q   Do you have any knowledge as to whether Mr. Nobles

7  in fact did pay $40,000 to Coastal Cypress Corporation on

8  your behalf in consideration for the additional 40,000

9  shares of stock?

10   A   That was my understanding.

11   Q   Are you aware of any documents reflecting that

12  payment?

13   A   I can't recall seeing any documents reflecting his

14  payment -- actually, I take it back.

15   I believe one of the statements reflected a payment by

16  Mr. Nobles.  I don't recall which one, but I believe one

17  did.

18   Q   Can I have you turn back to Exhibit 26,

19  Mr. Babcock.

20   Do you have that in front of you?

21   A   I do.

22   Q   Halfway down the page on this is reflected --

23  well, a little over halfway, is reflected a wire.  In the

24  description it mentions Anthony Nobles and a reference

25  number and a $40,000 credit on March 15th, 2011.

49

1      Do you see that?

2      A   I do.

3      Q   Is it your belief that that is a reflection of the

4   $40,000 Mr. Nobles paid on your behalf for the 40,000

5   additional shares in Coastal Cypress Corporation?

6      A   I don't know.

7      MR. WEEDN:  I'll have the court reporter mark as

8   Exhibit 28 a document entitled "Outgoing FED Message."  It

9   is Bates Number NOB0004.

10      (Exhibit 28 marked for identification

11      and attached hereto.)

12   BY MR. WEEDN:

13      Q   Have you ever seen this document before,

14   Mr. Babcock?

15      A   I don't recall.

16      Q   If I can direct your attention to under the first

17   box on the top half of the page, it says "message

18   information."

19      Do you see that?

20      A   Yes.

21      Q   The first line item on that is "amount $40,000."

22      Do you see that?

23      A   Yes.

24      Q   The value date, just two lines below that, is

25   reflected 3/15/2011.

50

www.regalcourtreporting.com
866-228-2685
Case: 17-05044   Doc# 155-4   Filed: 08/28/20   Entered: 08/28/20 16:56:23   Page 7 of 11

1     MR. WEEDN:  Well, I object to your speaking

2  objections.  Okay.

3     MR. SAMINI:  You can object all you want --

4  BY MR. WEEDN:

5     Q  I asked for your understanding.  Mr. Babcock, did

6  you understand my question?

7     A  Can you repeat the question.

8     MR. WEEDN:  Can you please read it back.

9     (Record read.)

10    THE WITNESS:  I don't know.

11  BY MR. WEEDN:

12    Q  If I could direct your attention back to

13  Exhibit 27, again, Schedule A -- BABC00047.  Again, if you

14  compare that to Exhibit 1, Schedule A of Exhibit 27 shows

15  Mr. Nobles acquiring 240,000 shares and you acquiring

16  10,000 shares.  Would you agree with that?

17    A  Yes.

18    Q  Then Exhibit 1 reflects Mr. Nobles owning 200,000

19  shares and you owning 50,000 shares.  Do you see that?

20    A  Yes.

21    Q  Is it accurate to say that 40,000 of the shares

22  reflected in Schedule A of Exhibit 27 -- excuse me.

23  Withdraw the question.

24    Is it accurate to say that 40,000 of the shares

25  earmarked for Mr. Nobles in Schedule A of Exhibit 27 were

52

www.regalcourtreporting.com
866-228-2685
Case: 17-05044   Doc# 155-4   Filed: 08/28/20   Entered: 08/28/20 16:56:23   Page 8 of 11

1   actually intended to be owned by you?

2       MR. BALCH:  Calls for speculation of this witness.

3       MR. WEEDN:  He drafted the agreement so. . .

4       MR. BALCH:  Please keep your speaking objections to

5   yourself.

6       THE WITNESS:  Can you repeat the question, please.

7       (Record read.)

8       MR. BALCH:  Same objection.

9       THE WITNESS:  Which time frame are we talking about?

10  BY MR. WEEDN:

11      Q   At the time of the execution of the agreement.

12      A   No.

13      Q   Was that the intention after the agreement was

14  executed?

15      A   Yes.

16      Q   At what time did that become the intention?

17      A   Shortly after the execution of the agreement.

18      Q   By "shortly after," do you have a best estimate?

19      A   Would have been -- best estimate would have been

20  within a few days.

21      Q   Why did the intention change?

22      A   Because I wanted to acquire additional shares.

23      Q   Is there any other agreement -- I should say

24  written agreement that reflects that understanding between

25  any of the parties to Exhibit 27?

53

1   A   Reflects that understanding to Exhibit 27?

2   Q   And I want to clarify. Schedule A of Exhibit 27

3   obviously reflects a certain number of shares to be

4   acquired by you, 10,000, and a certain number of shares to

5   be acquired by Mr. Nobles, 240,000. My understanding is

6   that that didn't actually end up being the case, that

7   ultimately Mr. Nobles acquired 200,000 shares and you

8   acquired 50,000 shares. Is that accurate?

9   A   Yes.

10   Q   Is there any document, writing that reflects that

11   change in terms or change in the ultimate result of the

12   transaction?

13   A   I don't recall.

14   Q   You said the intention changed because you wanted

15   to acquire more shares of Coastal Cypress Corporation, why

16   was that?

17   A   Because I was interested in owning a greater

18   percentage.

19   Q   Okay. You mentioned a promissory note from you to

20   Mr. Nobles in the amount of $40,000. Did you ever repay

21   that note?

22   A   I did.

23   Q   When was that?

24   A   I don't know the exact time, but I paid it back.

25   Q   Do you have a best estimate as to when you repaid

1             CERTIFICATE

2                 OF

3      CERTIFIED SHORTHAND REPORTER

4              * * * *

5

6

7   The undersigned Certified Shorthand Reporter of the

8 State of California does hereby certify:

9   That the foregoing deposition was taken before me at

10 the place and time therein set forth, at which time the

11 witness was duly sworn by me.

12    That the testimony of the witness and all objections

13 made at the time of the deposition were recorded

14 stenographically by me and were thereafter transcribed,

15 said transcript being a true and correct copy of the

16 proceedings thereof.

17    In witness whereof, I have subscribed my name this

18 date: February 5, 2019.

19

20                    */s/ Miranda Gentry*

21      _____

22       Miranda J. Gentry
         CSR No. 14165

23

24

25