**Entered on Docket
October 06, 2021
EDWARD J. EMMONS, CLERK
U.S. BANKRUPTCY COURT
NORTHERN DISTRICT OF CALIFORNIA**

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

### SAN JOSE DIVISION

| | |
|---|---|
| IN RE:<br><br>ROBERT BROWER, SR.,<br><br>Debtor.<br><br>―――――――――――――<br><br>ROBERT BROWER, SR. et al.,<br><br>Appellants,<br><br>v.<br><br>MUFG UNION BANK, N.A.,<br><br>Appellee. | Case No.  5:19-cv-08135-EJD<br><br>**ORDER AFFIRMING UNITED STATES BANKRUPTCY COURT'S ORDER GRANTING IN PART AND DENYING IN PART APPELLEE MUFG UNION BANK, N.A.'S MOTION FOR SUMMARY JUDGMENT** |

In November 2019, the Bankruptcy Court granted in part Appellee MUFG Union Bank, N.A.'s motion for summary judgment.  Appellants Robert Brower Sr. ("Brower"), Coastal Cypress Corporation, a California corporation, Coastal Cypress Corporation, a Delaware corporation, Wilfred "Butch" Lindley, Patricia Brower ("Patty"), the Patricia Brower Trust ("the Patty Trust"), American Commercial Properties, Inc., Richard Babcock, and Anthony Nobles appeal the Bankruptcy Court's decision.  Having considered the Parties' briefing, and for the below reasons, the Court **AFFIRMS** the Bankruptcy Court's grant of summary judgment.

## I.      BACKGROUND

### A.  Factual Background

Brower and Patty married in 1980.  They purportedly entered into a pre-nuptial agreement

1    on June 11, 1980 (the "Pre-Nup"), which states that, at the time of the agreement, Patty had

2    "property and investments in an amount in excess of $15,000." *See* Appellee MUFG Union Bank,

3    N.A.'s Appendix Volume 1 ("AA1") at 39, Dkt. 12; Appellee MUFG Union Bank, N.A.'s

4    Appendix Volume 2 ("AA2") at 91, Dkt. 13 (copy of the Pre-Nup).  The Pre-Nup also states that

5    property acquired during the marriage is the separate property of the acquirer.  *See* AA2 at 95, 96.

6        In 1982, Brower founded Coastal Cypress Corporation ("Coastal") as a California

7    corporation.  Coastal initially issued 105,000 shares of stock in 1982—it issued 80,000 shares to

8    Brower and 25,000 to Patty.  In 1984, Patty received an additional 125,000 shares of Coastal

9    stock, which were subsequently placed in the Patty Trust after its creation in 2015.

10       Until 2015, Coastal owned the real property at 8890 and 8940 Carmel Valley Road in

11   Carmel, California.  This property was a wine estate; it consisted of roughly 16-acres that included

12   a wine tasting room, wine production facility, barrel aging room, offices, outdoor event venues,

13   and vineyards.  The Wine Estate Property was the former site of the Chateau Julien Wine Estate,

14   which Brower oversaw for decades as President of Chateau Julien, Inc. ("CJ"), Great American

15   Wineries, Inc., and Coastal.

16       In 1983, Brower formed American Commercial Properties, Inc. ("ACP") using money that

17   he saved prior to his marriage with Patty.  According to the property agreement with Patty, ACP

18   was the sole and separate property of Brower.  On November 8, 2000, however, Brower gifted all

19   of the ACP stock to Patty as an anniversary gift.  This was memorialized by: (i) a transfer of stock

20   certificate, (ii) a notation in the ACP stock register, and (iii) a personal note and card from Brower

21   to Patty.  Patty later transferred ownership of the ACP shares into the Patty Trust.

22       In 1987, Coastal issued 335,000 shares to Chualar Canyon Ranch Supply, a company

23   owned by Wilfred "Butch" Lindley.  Lindley provided goods and services in exchange for the

24   shares.  In 2011, Coastal further issued 50,000 shares to Richard Babcock and 200,000 shares to

25   Anthony Nobles, who paid a combined $250,000 for the shares.

26

27   Case No.: 5:19-cv-08135-EJD

28   ORDER AFFIRMING UNITED STATES BANKRUPTCY COURT'S ORDER GRANTING IN
     PART AND DENYING IN PART APPELLEE MUFG UNION BANK, N.A.'S MOTION FOR
     SUMMARY JUDGMENT

United States District Court
Northern District of California

1  In 2017, two years after Brower filed for bankruptcy, Coastal executed a merger ("Coastal

2  Merger") and transformed from a California corporation to a Delaware corporation.  Defendants

3  exchanged their shares in the California corporation for new shares in the Delaware corporation.

4  Appellants contend that Coastal's stock ownership is as follows: (1) Brower (as his sole and

5  separate property) owns 230,000 shares (approximately 24%); (2) the Patty Trust owns 125,000

6  shares (approximately 13%); (3) Mr. Lindley owns 355,000 shares (approximately 37%); (4) Mr.

7  Nobles owns 200,000 shares (approximately 21%); and (5) Mr. Babcock owns 50,000 shares

8  (approximately 5%).  However, the Bankruptcy Court determined that some of these stock

9  transfers lacked consideration and, as a result, at least 57% of Coastal is the property of Brower's

10  bankruptcy estate.

11  **B.  Procedural History**

12  On November 20, 2019, the Bankruptcy Court granted Appellee's request for summary

13  judgment and held, among other things, that:

14  • Lindley did not provide consideration to or for the benefit of Coastal in exchange for his

15  purported 335,000 shares, which rendered them void.  *See* Appellee MUFG Union Bank,

16  N.A.'s Appendix Volume 3 ("AA3") at 535, Dkt. 14.[1]

17  • Because Brower did not sufficiently transmute the ACP shares into Patty's sole and

18  separate property, 100% of the ACP shares are the property of Brower's bankruptcy estate.

19  *Id.* at 541–43.

20  • Brower owned at least 57% of Coastal's shares at the time of the post-bankruptcy-merger

21  of Coastal California into Coastal Delaware.  Brower merged the companies without

22  authorization.  Thus, as a result, the merger must be set aside as a violation of Bankruptcy

23  Code § 549.  *Id.* at 544–45.

24

25  [1] The Bankruptcy Court also determined that the 50,000 Coastal shares purportedly owned by
Richard Babcock and the 150,000 Coastal shares purportedly owned by Nobles were void for lack

26  of consideration.  AA3 at 535–37.  Those rulings, however, are not identified as issues on appeal
in Appellant's Opening Brief.

27  Case No.: 5:19-cv-08135-EJD
ORDER AFFIRMING UNITED STATES BANKRUPTCY COURT'S ORDER GRANTING IN

28  PART AND DENYING IN PART APPELLEE MUFG UNION BANK, N.A.'S MOTION FOR
SUMMARY JUDGMENT

3

On March 27, 2020, Appellant filed their opening brief.  Appellant's Opening Brief ("Brief"), Dkt. 8.  In this brief, Appellant presented five issues on appeal:

1. Whether the Bankruptcy Court erred in finding that Lindley's shares are void for lack of consideration.

2. Whether the Bankruptcy Court erred in finding that Brower owns 100% of ACP's shares as his separate or community property.

3. Whether the Bankruptcy Court erred in finding that the merger of Coastal California into Coastal Delaware is void pursuant to 11 U.S.C. § 549.

4. Whether the Bankruptcy Court erred in finding that Appellee's claims were not time-barred.

5. Whether the Bankruptcy Court erred in resolving disputed issues of fact and disputed issues of credibility at the summary judgment phase.

On April 24, 2020, Appellee filed their opening brief, which argues that the Bankruptcy Court properly resolved the above issues.  *See* Appellee MUFG Union Bank, N.A.'s Opening Brief ("Opp. Brief"), Dkt 11.  Subsequently, on May 14, 2020, Appellants filed their reply brief. Appellants' Reply Brief ("Reply"), Dkt. 15.

**II.    LEGAL STANDARD**

"[A] bankruptcy court's grant of summary judgment [is reviewed] de novo."  *In re Christoff*, 527 B.R. 624, 628 (9th Cir. BAP 2015).

A court must grant summary judgment if the movant shows "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  In order to satisfy this burden, "the moving party must either produce evidence negating an essential element of the nonmoving party's claim or defense or show that the nonmoving party does not have enough evidence of an essential element to carry its ultimate burden of persuasion at trial."  *Nissan Fire & Marine Ins. Co., Ltd. v. Fritz Cos., Inc.*, 210 F.3d 1099, 1102 (9th Cir. 2000).  "In order to carry its ultimate burden of persuasion on the motion, the

Case No.: 5:19-cv-08135-EJD
ORDER AFFIRMING UNITED STATES BANKRUPTCY COURT'S ORDER GRANTING IN PART AND DENYING IN PART APPELLEE MUFG UNION BANK, N.A.'S MOTION FOR SUMMARY JUDGMENT

United States District Court
Northern District of California

1    moving party must persuade the court that there is no genuine issue of material fact." *Id.*  If the

2    moving party meets its burden of production, the nonmoving party must produce evidence to

3    support its claim or defense.  *Id.* at 1103.  If the nonmoving party fails to produce enough evidence

4    to create a genuine issue of material fact, Rule 56(c) mandates the moving party win the motion

5    for summary judgment.  *See id.*

6    **III.    DISCUSSION**

7         As noted, Appellants present five issues on appeal.  The Court addresses each in turn.

8         **A.  Lindley's Coastal Shares**

9         The Bankruptcy Court held that Lindley did not provide valid consideration for his Coastal

10   shares and, as a result, his interest in Coastal is void.  *See AA3* at 534.  Appellants argue that

11   Lindley's Coastal shares are not void because (1) he traded his old Coastal California stock for

12   new shares of Coastal Delaware shares, which is sufficient consideration, and (2) the services

13   rendered by Lindley were sufficient consideration for the Coastal California shares.  Brief at 15.

14   This, however, flips the relevant analysis—if Lindley's shares were void *ab initio* for lack of

15   consideration, they were likewise void at the time of the Coastal California/Coastal Delaware

16   stock exchange and Lindley would not have had a valid property interest in the Coastal California

17   shares and thus would lack consideration for the Coastal Delaware shares.  Accordingly, the Court

18   must first determine whether Lindley gave valid consideration for his Coastal California shares.

19        Under California law, a corporation may issue shares for consideration "consisting of any

20   or all of the following: money paid; labor done; services actually rendered to the corporation or for

21   its benefit or in its formation or reorganization; debts or securities canceled; and tangible or

22   intangible property actually received by the issuing corporation or by a wholly owned subsidiary;

23   but neither promissory notes of the purchaser (unless adequately secured by collateral other than

24   the shares acquired or unless permitted by Section 408) nor future services shall constitute

25   payment or part payment for shares of the corporation."  Cal. Corp. Code § 409(a).  The

26   consideration is determined by the board of directors, or by the shareholders if the articles so

27   Case No.: 5:19-cv-08135-EJD
     ORDER AFFIRMING UNITED STATES BANKRUPTCY COURT'S ORDER GRANTING IN
28   PART AND DENYING IN PART APPELLEE MUFG UNION BANK, N.A.'S MOTION FOR
     SUMMARY JUDGMENT

                                                    5

provide.  *Id.* § 409(e).  If the consideration is anything other than money for which the shares are issued, the board of directors must state by resolution its determination of the consideration's fair value to the corporation in monetary terms.  *Id.* § 409(e).  Shares issued in violation of these parameters are "void" and "the parties receiving them do not . . . become shareholders." *Cortelyou v. Imperial Land Co.*, 156 Cal. 373, 376 (1909).

As the Bankruptcy Court noted, the undisputed facts are that Lindley provided services for his shares.  AA3 at 534.  Specifically, Lindley contends that: (1) he provided grape crops to be used in the production of wine; (2) he assisted Coastal and CJ in CJ's efforts to lease land, grow grapes and produce wine; (3) through his network in the wine industry he helped obtain and install necessary equipment; and (4) due to his reputation in the wine industry, he lent credibility to Coastal and CJ.  This, Lindley argues, constitute services of benefit and sufficient consideration to justify the issuance of shares.  As support, he cites cases that allow consideration to be valuable services and labor.  *See* Brief at 16; *see also* AA2 at 169 (Lindley admitting during a deposition that he did not pay money for Coastal California shares).  Appellant Lindley misunderstands the issue; the Bankruptcy Court held only *in this case* the valuable services and labor Lindley performed were insufficient consideration.  The Bankruptcy Court noted two problems with Lindley's claimed consideration.  First, the issuance of shares to Lindley did not meet the requirements of Cal. Corp. Code § 409(e) because Coastal's board did not determine the fair value of Lindley's non-monetary consideration and state its determination by board resolution.  AA3 at 535.  Second, even assuming Cal. Corp. Code § 409(e) was followed, the services and labor performed by Lindley did not benefit Coastal.  *Id.*

The Bankruptcy Court's first finding remains true—Lindley again provides no evidence that the Coastal California's board determined the monetary value of his services.  Likewise, the Bankruptcy Court's second finding remains true.  The services allegedly provided by Lindley were provided to Great American Wineries, Inc.  *See id.*  It was Great American Wineries, Inc., not Coastal, who made the wine.  AA2 at 151.  Coastal only owned the Wine Estate Property.  Hence,

Case No.: 5:19-cv-08135-EJD
ORDER AFFIRMING UNITED STATES BANKRUPTCY COURT'S ORDER GRANTING IN PART AND DENYING IN PART APPELLEE MUFG UNION BANK, N.A.'S MOTION FOR SUMMARY JUDGMENT

1    providing Coastal with grapes, assistance in acquiring grapes, and helping the winery and

2    winemaker with the process of making wine did not benefit Coastal.  As the Bankruptcy Court

3    noted, even assuming Coastal owned the winemaking equipment, the benefit it derived from

4    "mere ownership was tangential at best." AA3 at 535.  Indeed, Appellants provide no evidence

5    that Lindley rendered his services to Coastal or for Coastal's benefit.  Accordingly, Lindley's

6    services did not constitute valid consideration.  It is of no consequence that Lindley did not

7    understand the various corporate structures.  *See* AA2 at 169–71 ("In my mind [Coastal, CJ, and

8    GAW] were -- were all one entity, if you will . . . ."); *see also Las Palmas Assocs. v. Las Palmas*

9    *Ctr. Assocs.*, 235 Cal. App. 3d 1220, 1249 (1991) ("[I]t would be unjust to permit those who

10   control companies to treat them as a single or unitary enterprise and then assert their corporate

11   separateness in order to commit frauds and other misdeeds with impunity.").

12           For these reasons, Lindley's Coastal California Shares were void *before* he attempted to

13   surrender the shares in for new shares of Coastal Delaware stock.  Hence, Lindley did not give

14   consideration for the Coastal Delaware stock as he had no interest to exchange.  *Cf.* 8 Del. Code

15   § 152 ("[T]he board of directors may authorize capital stock to be issued *for consideration*

16   consisting of cash, any tangible or intangible property or any benefit to the corporation, or any

17   combination thereof." (emphasis added)); *Shanik v. White Sewing Mach. Corp.*, 19 A.2d 831, 837

18   (Del. 1941) (finding that old stock is "personal property" within the meaning of Section 152).

19   Lindley's Coastal shares are thus void for lack of consideration.

20           In the alternative, Lindley argues that even in the absence of sufficient consideration, the

21   "bona fide purchaser" defense applies to preserve his shareholder status.  Lindley again relies on

22   *Cortelyou*, 156 Cal. 373 and *Michaels v. Pacific Soft Water Laundry*, 104 Cal. App. 349 (Ct. App.

23   1930).  Neither case supports Lindley's bona fide purchaser defense.

24           In *Cortelyou*, Cortelyou, a third-party, purchased invalid stock.  156 Cal. at 376.  The court

25   upheld Cortelyou's stock purchase on the basis that a subsequent bona fide purchaser should not

26   have his shareholder's rights hindered if a prior transaction was invalid for lack of consideration.

27   Case No.: 5:19-cv-08135-EJD
     ORDER AFFIRMING UNITED STATES BANKRUPTCY COURT'S ORDER GRANTING IN
28   PART AND DENYING IN PART APPELLEE MUFG UNION BANK, N.A.'S MOTION FOR
     SUMMARY JUDGMENT

7

*Id.* There was no dispute that Cortelyou paid valid consideration for the stock.  There are two

distinctions in this case.  First, Lindley received the stock directly from Coastal and was thus not a

third-party purchaser.  Second, as determined above, Lindley did not provide valid consideration

for the stock.

 *Michaels* is similarly unpersuasive.  There, the corporation initiated an action to cancel a

contract for the sale of corporate stock on the ground that the sale violated the conditions

contained in the permit issued by the commissioner of corporations.  *Michaels*, 104 Cal. App. at

361–62.  The court denied this attempt, because the equities of the case did not favor a corporation

benefitting from its own misrepresentation and fraud.  *Id.* at 357.  Importantly, the corporation

received and retained the shareholder's money and used the money to pay outstanding debts with

the knowledge and consent of the full board of directors.  *Id.*  Here, in contrast, Coastal neither

received funds (or some other type of consideration) for the shares in question nor engaged in

fraud.  *Michaels* is thus inapplicable.  For these reasons, the "bona fide purchaser" defense does

not apply, and the Bankruptcy Court correctly determined that Lindley's interest in Coastal was

void.  The Court thus **AFFIRMS** the Bankruptcy Court's finding as to Lindley.

### B. ACP Shares

 The Bankruptcy Court next found that Brower owns 100% of the ACP shares as his

separate or community property.  Appellants argue that Brower validly transmuted the ACP shares

from his separate property into Patty's separate property.  Brief at 17.  Appellee disagrees.  Opp.

Brief at 31–32.

 Married persons may by agreement or transfer, with or without consideration, transmute

community property to separate property, or transmute the separate property of one spouse to

separate property of the other spouse.  Cal. Fam. Code § 850.  A transmutation of real or personal

property is not valid unless made in writing by an express declaration that is made, joined in,

consented to, or accepted by the spouse whose interest in the property is adversely affected.  Cal.

Fam. Code § 852.

Case No.: 5:19-cv-08135-EJD
ORDER AFFIRMING UNITED STATES BANKRUPTCY COURT'S ORDER GRANTING IN
PART AND DENYING IN PART APPELLEE MUFG UNION BANK, N.A.'S MOTION FOR
SUMMARY JUDGMENT

8

United States District Court
Northern District of California

1    To qualify as an "express declaration," the writing must contain language which expressly

2    states that the characterization or ownership of the property is being changed.  *In re Marriage of*

3    *Valli*, 58 Cal. 4th 1396, 1400 (2014) (citing *Estate of MacDonald*, 51 Cal. 3d 262, 272 (1990)).

4    The declaration must also include "a clear and unambiguous expression of intent to transfer an

5    interest in the property."  *Estate of Bibb*, 87 Cal. App. 4th 461, 468 (Ct. App. 2001).

6    While the statute does not require any particular words of transmutation, *Estate of*

7    *MacDonald*, 51 Cal. 3d at 273, courts more frequently find that an "express declaration" is present

8    when the writing at issue is within a formally drafted document such as a deed or contract.  *See*

9    *Estate of Bib*b, 87 Cal. App. 4th at 462 (holding that grant deed conveying real property from one

10   spouse to both spouses as joint tenants was an "express declaration"); *In re Marriage of Lund*, 174

11   Cal. App. 4th 40, 51 (Ct. App. 2009) (holding that "Agreement to Establish Interest in Property"

12   unambiguously effected a transmutation of a spouse's separate property into community property);

13   *In re Marriage of Holtemann*, 166 Cal. App. 4th 1166, 1172 (Ct. App. 2008) (finding a

14   transmutation agreement where trust stated that spouse's property was "hereby transmuted from

15   his separate property to the community property").

16   When such formality is lacking, courts generally find that an "express declaration" is not

17   established.  *See In re Marriage of Barneson*, 69 Cal. App. 4th 583, 591 (Ct. App. 1999) (holding

18   that husband's written instructions to "transfer" stock into his spouse's name was not an

19   expression that ownership of the property was being changed); *In re Marriage of Leni*, 144 Cal.

20   App. 4th 1087, 1096 (Ct. App. 2006) (holding that escrow instructions that community proceeds

21   of a house sale were to be split "50/50" did not expressly declare that the character of the property

22   was being changed); *Estate of Petersen*, 28 Cal. App. 4th 1742, 1744 (Ct. App. 1994) (holding

23   that mere reference of a joint tenancy on an account statement was insufficient for transmutation).

24   Brower contends that he originally owned 100% of ACP as his separate property but

25   transferred his interest to Patty on November 8, 2000.  The Browers rely on the following

26   writings: (i) a gift card that reads "ACP is now yours," (ii) a signed note that includes the

27   Case No.: 5:19-cv-08135-EJD

28   ORDER AFFIRMING UNITED STATES BANKRUPTCY COURT'S ORDER GRANTING IN
     PART AND DENYING IN PART APPELLEE MUFG UNION BANK, N.A.'S MOTION FOR
     SUMMARY JUDGMENT

9

statement "I am proud to give you all my interest in that company to do as you choose," and (iii) a stock transfer. *See* Brief at 18–19. Before the Bankruptcy Court, Patty's counsel conceded that the signed note is inadmissible (yet, before this Court, Patty curiously attempts to use the signed note as evidence of a transmutation). AA3 at 542.

The Court agrees with the Bankruptcy Court's analysis that the gift card "ACP is now yours" may be interpreted in several ways and is thus like the informal written instructions discussed in *Barneson* and *Leni*. This card may indicate Brower's intent to transfer ACP to Patty, but it does not expressly state that the characterization or ownership of the property is changed. A valid transmutation requires a clear expression that the giving spouse's interest in the property is being changed; merely expressing an intent to transfer property is insufficient. *See In re Marriage of Barneson*, 69 Cal. App. 4th at 590 ("Transfer is clearly not synonymous with transmutation.").

Likewise, the stock transfer alone does not provide an "express declaration" sufficient for transmutation. As the Bankruptcy Court noted, the share certificates were endorsed to Patty by Brower, but the mere act of transferring shares does not express an intent to change the character or ownership of the property. *See In re Marriage of Barneson*, 69 Cal. App. 4th at 590 (finding that placement of stock belonging to one spouse in the stock brokerage account of the other spouse was not sufficient to establish a transmutation); *Estate of Bibb*, 87 Cal. App. 4th at 469 (finding that DMV printout reflecting the re-registration of an automobile in the name of one spouse to the name of either spouse did not show intent to transmute).

Accordingly, the Bankruptcy Court properly determined that Brower did not transmute his separate (or community) property into Patty's separate property. Both the gift card and stock transfer do not evince a clear expression by Brower to change the characterization or ownership of the ACP shares and thus do not support Brower and Patty's transmutation theory. *Cf.* Reply at 12. The Court thus **AFFIRMS** the Bankruptcy Court's holding that ACP was not Patty's separate property.

Case: 17-05044   Doc# 180   Filed: 10/06/21   Entered: 10/06/21 16:25:51   Page 10 of 12

United States District Court
Northern District of California

United States District Court
Northern District of California

1    **C.  Merger of Coastal California into Coastal Delaware**

2    Bankruptcy Code § 549 provides that a trustee may avoid a transfer of property of the

3    estate that (1) occurs after the commencement of the case and (2) is not authorized by the court.

4    Pursuant to the above findings, Brower owned at least 57% of Coastal at the time of the Coastal

5    Merger.  AA3 at 545.  Hence, at the time of the merger, Brower owned more than 50% of Coastal

6    and, as such, violated § 549 by executing a merger without the Bankruptcy Court's authorization

7    and in a manner not otherwise allowed by the Bankruptcy Code.  Accordingly, the Court

8    **AFFIRMS** the Bankruptcy Court's decision to set aside the Coastal merger.

9    **D.  California Civil Procedure Code § 338(a) Time-Bar**

10   Appellants last argue that the applicable statute of limitations has expired and thus

11   Appellee's lawsuit is barred.  Brief at 19–20.  The Bankruptcy Court determined that Appellee's

12   claims are not time-barred.  AA3 at 544.

13   California Civil Procedure Code § 338(a) provides a three-year statute of limitations for

14   bringing "[a]n action upon a liability created by statute, other than a penalty or forfeiture."

15   Appellants maintain that this statute bars Appellee's claims.  Brief at 22.  The Court disagrees.

16   Other bankruptcy courts have held that the court may determine that certain property belongs to

17   the bankruptcy estate notwithstanding time limitations under state law.  *In re Blasingame*, 598

18   B.R. 864, 875 (BAP 6th Cir. 2019).  As in *Blasingame*, Appellee seeks a declaratory judgment

19   that certain property (specifically Coastal and ACP stock) is the property of Brower's bankruptcy

20   estate.  Pursuant to *Blasingame*, it is irrelevant how long a third-party has supposedly held

21   property of the bankruptcy estate in its own name.  The date on which the third-party acquired the

22   property does not affect the bankruptcy court's ability to determine whether that property belongs

23   to the bankruptcy estate.  *See id.* at 869.

24   In an attempt to evade *Blasingame*, Appellants rely on *In re Reuter*, 499 B.R. 655 (W.D.

25   Mo. 2013) to show that there is a "general rule that 'if a claim for declaratory relief could have

26   been resolved through another form of action which has a specific limitations period, that specific

27   Case No.: 5:19-cv-08135-EJD

28   ORDER AFFIRMING UNITED STATES BANKRUPTCY COURT'S ORDER GRANTING IN
     PART AND DENYING IN PART APPELLEE MUFG UNION BANK, N.A.'S MOTION FOR
     SUMMARY JUDGMENT

11

period of time will govern.'" Brief at 20. This misreads *Reuter*. The cited text reflects the court acknowledging, but not adopting, the debtor's argument. *Reuter*, 499 B.R. at 667. In fact, like the Bankruptcy Court in this case, the *Reuter* court determined that so long as the case does not involve "a fraudulent transfer claim disguised as a declaratory action claim," the relevant statute of limitations is irrelevant. *Id.* As in *Reuter*, Appellee "does not seek to void the alleged stock transfers. Rather, Plaintiff seeks a finding that no transfers occurred at all." AA3 at 544. This is a determination the court may make at any time. *Id.*; *see also In re Blasingame*, 598 B.R. at 875. Accordingly, the Court **AFFIRMS** the Bankruptcy Court's finding that Appellee's claims are not time-barred.

## IV.     CONCLUSION

For the foregoing reasons, this Court **AFFIRMS** the Bankruptcy Court's findings that: (1) Lindley's interest in Coastal is void; (2) the ACP shares are the property of Brower's bankruptcy estate; (3) the Coastal California and Coastal Delaware merger is void; and (4) Appellee's claims are not time-barred. The Court thus rejects Appellants' argument that the Bankruptcy Court improperly resolved disputed issues of fact and disputed issues of credibility at the summary judgment phase. The Clerk shall close the file.

**IT IS SO ORDERED.**

Dated: June 15, 2020

EDWARD J. DAVILA
United States District Judge

United States District Court
Northern District of California

Case No.: 5:19-cv-08135-EJD
ORDER AFFIRMING UNITED STATES BANKRUPTCY COURT'S ORDER GRANTING IN PART AND DENYING IN PART APPELLEE MUFG UNION BANK, N.A.'S MOTION FOR SUMMARY JUDGMENT