UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| IN RE:<br>　ROBERT BROWER, SR.,<br>　　　　Debtor. | Case No. 5:20-cv-06889-EJD<br><br>**ORDER AFFIRMING BANKRUPTCY COURT'S ORDER AND JUDGMENT** |
| ANTHONY NOBLES,<br>　　　　Appellant,<br>　　v.<br>MUFG UNION BANK, N.A.,<br>　　　　Appellee. | |

Appellant Anthony Nobles ("Nobles") appeals the Bankruptcy Court's order and judgment holding that 50,000 shares of Coastal Cypress Corporation ("Coastal") stock issued to Nobles were void for lack of consideration. Having considered the parties' briefing and the record in this matter, the Court AFFIRMS the Bankruptcy Court's order and judgment.

## I. BACKGROUND

### A. Statement of Facts

In 1982, Debtor Robert Brower, Sr. ("Brower") founded Coastal as a California corporation. Nobles Appx., ECF Nos. 16-1 & 16-2, at 167. As relevant here, on January 31, 2011, Nobles executed an agreement to purchase 200,000 shares of Coastal stock for $200,000, and he paid that amount into an account held jointly by Brower and his wife. *Id.* at 167, 197. On February 4, 2011, Brower deposited $50,000 of that money into a Coastal account. *Id.* at 418-19. On the same day, Coastal also issued a promissory note to Brower for a $50,000 loan, a note

Case No.: 5:20-cv-06889-EJD
ORDER AFFIRMING BANKRUPTCY COURT'S ORDER AND JUDGMENT
1

which Coastal later repaid. *Id.* at 426, 430-31. However, bank records show that between January 12, 2011 and February 11, 2011, there was only one $50,000 transfer between Brower and Coastal. *Id.* at 385-87. The Bankruptcy Court determined that, because the $50,000 were repaid to Brower, Coastal never received consideration for 50,000 of the shares that it issued to Nobles, and therefore those shares were void. Order After Trial, ECF No. 1-2.

### B. Procedural History

On May 11, 2017, Appellee MUFG Union Bank, N.A. ("MUFG") filed its adversary complaint against Nobles and other defendants, seeking a declaration that Brower and his wife owned 100% of the equity interests in Coastal. Nobles Appx. at 1-10. Shortly thereafter, the Bankruptcy Court granted MUFG's motion to proceed derivatively on behalf of Brower's bankruptcy estate in the adversary proceedings. MUFG Appx., ECF No. 19-1, at 3-4. On November 20, 2019, the Bankruptcy Court granted in part MUFG's motion for summary judgment, finding, *inter alia*, that 150,000 of Nobles' 200,000 Coastal shares were void for lack of consideration, but determining that the disposition of the remaining 50,000 shares could not be resolved on summary judgment. Nobles Appx. at 279-82. Nobles and other defendants appealed the summary judgment order, and this Court affirmed. *Brower v. MUFG Union Bank, N.A. (In re Brower)*, No. 5:19-cv-08135-EJD, 2020 WL 3184860 (N.D. Cal. June 15, 2020). Subsequently, the Bankruptcy Court held trial on all issues unresolved at summary judgment, including on the remaining 50,000 Coastal shares held by Nobles. The Bankruptcy Court issued its order and judgment on September 9, 2020, holding that the those remaining 50,000 shares were void for lack of consideration. Order After Trial; Judgment, ECF No. 1-2. This appeal followed. Nobles presents three issues on appeal:

1. Whether MUFG has standing to seek declaratory judgment.
2. Whether the Bankruptcy Court erred in finding that the 50,000 shares of Coastal stock issued to Nobles are void for lack of consideration under California Corporations Code § 409.
3. Whether the Bankruptcy Court erred by failing to articulate findings of fact and

Case: 17-05044  Doc# 184  Filed: 05/17/23  Entered: 05/17/23 09:43:46  Page 2 of 12

conclusions of law as required by Federal Rule of Civil Procedure 52(a).

## II. STANDARD OF REVIEW

In deciding appeals from a bankruptcy court, district courts review conclusions of law de novo and review factual findings for clear error. *Greene v. Savage (In re Greene)*, 583 F.3d 614, 618 (9th Cir. 2009). When reviewing a decision de novo, a court reviews the decision below independently and without deference. *First Ave. W. Bldg., LLC v. James (In re Onecast Media, Inc.)*, 439 F.3d 558, 561 (9th Cir. 2006). When applying clear error review, a court does not disturb factual findings unless it is "left with the definite and firm conviction that a mistake has been committed." *In re Greene*, 583 F.3d at 618.

Generally, "if an issue is not raised before the trial court, it will not be considered on appeal and will be deemed waived." *Starky v. Birdsell (In re Starky)*, 522 B.R. 220, 230 (B.A.P. 9th Cir. 2014) (citation omitted); *see also Mano-Y & M, Ltd. v. Field (In re Mortg. Store, Inc.)*, 773 F.3d 990, 998 (9th Cir. 2014) ("A litigant may waive an issue by failing to raise it in a bankruptcy court."). But "it is within the district court's discretion whether to consider issues not presented to the bankruptcy court." *Pizza of Haw., Inc. v. Shakey's, Inc. (In re Pizza of Haw., Inc.)*, 761 F.2d 1374, 1377 (9th Cir. 1985). Only if there are "exceptional circumstances" should a district court address a waived issue. *In re Mortg. Store*, 773 F.3d at 998 (quoting *El Paso City of Tex. v. Am. W. Airlines, Inc. (In re Am. W. Airlines)*, 217 F.3d 1161, 1165 (9th Cir. 2000)). Such exceptional circumstances include: "(1) when review is required to prevent a miscarriage of justice or to preserve the integrity of the judicial process, (2) when a new issue arises while appeal is pending because of a change in the law, and (3) when the issue presented is purely one of law and either does not depend on the factual record developed below, or the pertinent record has been fully developed." *Id.* (citation and internal quotations omitted).

## III. DISCUSSION

### A. Standing

As a threshold issue, Nobles argues that MUFG is without standing to bring its claims against him. This creates some difficulty, though, because the term "standing" is susceptible to

Case No.: 5:20-cv-06889-EJD
ORDER AFFIRMING BANKRUPTCY COURT'S ORDER AND JUDGMENT
3

ambiguity and is used to describe both arguments that are not waivable and those that are. Such distinction matters here because Nobles raises his standing arguments for the first time on appeal, meaning that parts of his argument may be waived.

In general, standing refers to both constitutional and prudential limitations on a federal court's power. The constitutional limitation derives from the case-or-controversy requirement of Article III and is an "irreducible constitutional minimum." *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992). "Article III standing is jurisdictional and can neither be waived by the parties nor ignored by the court." *Yakima Valley Mem'l Hosp. v. Wash. State Dep't of Health*, 654 F.3d 919, 932 n.17 (9th Cir. 2011). Prudential standing is a set of "judicially self-imposed limits on the exercise of federal jurisdiction" that are non-constitutional in nature. *City of L.A. v. Cnty. of Kern*, 581 F.3d 841, 845 (9th Cir. 2009) (quoting *Allen v. Wright*, 468 U.S. 737, 751 (1984)). Unlike Article III standing, issues of prudential standing can be waived. *Id.*; *see also Pershing Park Villas Homeowners Ass'n v. United Pac. Ins. Co.*, 219 F.3d 895, 899 (9th Cir. 2000) (waiver of prudential standing permitted). Prudential standing encompasses several doctrines, including statutory standing. *Potter v. Hughes*, 546 F.3d 1051, 1055 (9th Cir. 2008).

Nobles does not clearly distinguish between Article III and prudential standing in his briefing, but the Court endeavors to separate the two in its analysis below so that it may properly address the issue of waiver.

### 1. Article III Standing

To comply with Article III's standing requirements, a plaintiff must establish that "(1) it has suffered an 'injury in fact' that is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical; (2) the injury is fairly traceable to the challenged action of the defendant; and (3) it is likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision." *Palmdale Hills Prop., LLC v. Lehman Com. Paper, Inc. (In re Palmdale Hills Prop., LLC)*, 654 F.3d 868, 873 (9th Cir. 2011) (footnote omitted) (quoting *Friends of the Earth, Inc. v. Laidlaw Env't Servs. (TOC), Inc.*, 528 U.S. 167, 180-81 (2000)). In the context of Chapter 11 bankruptcy, as here, "Article III standing exists where the participant holds a financial

stake in the outcome of the proceeding such that the participant has an appropriate incentive to participate in an adversarial form to protect his or her interests." *Motor Vehicle Cas. Co. v. Thorpe Insulation Co. (In re Thorpe Insulation Co.)*, 677 F.3d 869, 887 (9th Cir. 2012) (citation and internal quotations omitted). When evaluating standing, a court's "proper focus . . . [is] the facts existing at the time the complaint *under consideration* was filed." *C.R. Educ. & Enf't Ctr. v. Hosp. Props. Tr.*, 867 F.3d 1093, 1102 (9th Cir. 2017).

The Court concludes that MUFG has Article III standing to pursue its claims. MUFG suffered an injury in fact because the transfer of 50,000 Coastal shares to Nobles diluted Brower's ownership interest in Coastal and therefore reduced the value of Brower's bankruptcy estate. This, in turn, created a risk that MUFG would not be repaid or would be repaid less on the unsecured debt owed to it by Brower. Such risk to repayment is a "classic" injury in fact. *Artesanias Hacienda Real S.A. v. North Mill Cap., LLC (In re Wilton Armetale, Inc.)*, 968 F.3d 273, 281 (3d Cir. 2020). The injury is also fairly traceable to the challenged stock transfer as there is a straight line from the transfer to the bankruptcy estate's diminution in value, and then from that diminution to MUFG's risk. Lastly, the relief sought by MUFG is likely to redress its injury. Granting relief in favor of MUFG would increase the value of the bankruptcy estate by increasing Brower's ownership interest in Coastal. It is highly probable that the increased value will flow to MUFG because it is by far the largest of Brower's creditors, being owed approximately $5.09 million out of a total of $5.25 million in claimed debts. Third Am. Combined Plan of Reorganization ("Plan"), Case No. 15-50801 (Bankr. N.D. Cal.), ECF No. 233, at 11.[1] Even if every other

---

[1] The Court may sua sponte take judicial notice of proceedings in other courts if those proceedings are related to the matters at issue. *Where Do We Go Berkeley v. Cal. Dep't of Transp.*, 32 F.4th 852, 858 n.2 (9th Cir. 2022). As such, the Court takes notice of the Plan and the other documents cited in this footnote that were filed in the underlying bankruptcy proceedings.

The Court also notes that while the Plan was filed after the operative complaint in these adversary proceedings, the Plan's summary of claimed debts is based on information filed well before the operative complaint, namely creditors' claims and Schedule F. Nobles Appx. at 11-21 (operative complaint); Case No. 15-50801 (Bankr. N.D. Cal.), Claims Register; Am. Schedule F, Case No. 15-50801 (Bankr. N.D. Cal.), ECF No. 30. Therefore, facts about the claimed debts were in existence when the operative complaint was filed and may be properly considered when assessing standing.

Case No.: 5:20-cv-06889-EJD
ORDER AFFIRMING BANKRUPTCY COURT'S ORDER AND JUDGMENT
5

creditor were paid first, it is likely that MUFG will still benefit from relief simply because the debt that it is owed dwarfs the debts held by others. That is especially so when Coastal was able to sell the real estate it owns for approximately $12 million (Nobles Appx. at 15, 382-83) compared to the roughly $150,000 in Brower's debts to non-MUFG creditors. In short, MUFG has a "financial stake in the outcome of the proceeding" sufficient to confer standing. *In re Thorpe*, 677 F.3d at 887.

Nobles' arguments to the contrary are not persuasive. First, he contends that neither MUFG nor Brower's bankruptcy estate had any plausible interest in Nobles' shares of Coastal. Nobles Br. at 11-12. He argues that in *In re Wardle*, the court concluded that a bankruptcy trustee lacked standing to avoid transfers when the bankruptcy estate had no interest in the property transferred. *Grimmett v. McCloskey (In re Wardle)*, No. NV-05-1000-KMoB, 2006 WL 6811026, at *4-5 (B.A.P. 9th Cir. Jan. 31, 2006). According to Nobles, this means that MUFG could not have been injured for Article III purposes. *In re Wardle* is inapposite. Unlike the claims in this matter, the claims of *In re Wardle* were premised on 11 U.S.C. §§ 547 and 548, which refer to the "transfer of an interest of the debtor in property." *Id.* at *4 (quoting 11 U.S.C. §§ 547-48). The *Wardle* court specifically concluded that "the trustee has no standing to prosecute the *§ 547 and § 548* causes of action," indicating that it relied on the specific statutory language at issue and that its conclusion was based on statutory standing, not Article III standing. *Id.* at *5 (emphasis added). Indeed, the analysis of standing in *In re Wardle* did not contain any reference to the elements of Article III standing. *Id.* at *4-5. As neither § 547 nor § 548 claims are before the Court here, Nobles' *In re Wardle* argument is immaterial.

Second, Nobles asserts that MUFG could not have been injured because it was not a third-party beneficiary of the stock purchase agreement between Nobles and Coastal. Nobles Reply Br. at 5. Once again, Nobles confuses Article III standing with prudential standing. Citing to an unpublished Ninth Circuit decision, he argues that someone who "is not a third-party beneficiary to [a] contract . . . lacks standing to challenge the sufficiency of the consideration." *March v. Mortg. Elec. Registration Sys., Inc.*, 659 F. App'x 383, 385 (9th Cir. 2016) (citing *Ass'n of*

Case No.: 5:20-cv-06889-EJD
ORDER AFFIRMING BANKRUPTCY COURT'S ORDER AND JUDGMENT
6

*Apartment Owners of Newtown Meadows v. Venture 15, Inc.*, 167 P.3d 225, 262-63 (Haw. 2007)). That decision, though, relied on an opinion by the Supreme Court of Hawaii regarding who may sue for breach of contract as a matter of Hawaiian contract law. There was no discussion of Article III standing requirements in either *March* or the underlying Hawaiian state court opinion, demonstrating that the third-party beneficiary rule is not a constitutional one. The Court therefore finds that Nobles has waived any third-party beneficiary argument because he did not raise it below. While the Court may, in its discretion, excuse waiver in exceptional circumstances, "[a] party's unexplained failure to raise an argument that was indisputably available below is perhaps the least 'exceptional' circumstance warranting [an] exercise of . . . discretion." *Sanger v. Ahn (In re Ahn)*, 804 F. App'x 541, 543 (9th Cir. 2020) (quoting *G & G Prods. LLC v. Rusic*, 902 F.3d 940, 950 (9th Cir. 2018)). Nobles has provided no explanation for why he failed to raise the argument below, so the Court will not consider it for the first time now. Nobles also did not raise the third-party beneficiary argument until his reply brief in this appeal, another reason the Court declines to consider the argument. *Ganis Credit Corp. v. Anderson (In re Jan Weilert RV, Inc.)*, 315 F.3d 1192, 1199 n.3 (9th Cir. 2003).

Third, Nobles claims that the traceability and redressability of MUFG's injury are too speculative to support standing. Nobles Br. at 12-13. This argument fails because, as the Court found above, there is a clear line from the Coastal share transfer to MUFG's injury, and relief would redress that injury.

Finally, Nobles argues that the declaratory relief sought by MUFG will not redress its injuries because MUFG did not demonstrate "a sufficient likelihood that [it] will again be wronged in a similar way." *Am. Fed'n of Teachers v. DeVos*, 484 F. Supp. 3d 731, 742 (N.D. Cal. Sept. 3, 2020) (quoting *City of L.A. v. Lyons*, 461 U.S. 95, 111 (1983)). From his perspective, a declaration would not prevent future defaults on debt owed to MUFG, so it would not redress MUFG's harm. Nobles Br. at 13-15. Nobles focuses on the wrong harm. The relevant injury for purposes of this case is not Brower's bankruptcy itself but rather the risk that MUFG will not be repaid due to the dilution of Brower's ownership interest in Coastal. This injury is one that *would*

extend into the future because the dilution of Brower's ownership interest continues as long as Nobles holds an ownership interest in Coastal. Thus, absent a declaration that Nobles has no interest in Coastal, MUFG will continue to be wronged by the dilution of Brower's interest.

Accordingly, the Court finds that MUFG has Article III standing.

### 2. Shareholder Derivative Standing

Nobles also argues that MUFG lacks standing to bring a direct action and was required to bring this action derivatively on behalf of Coastal. Nobles Reply Br. at 7-11.[2] Often, the question of whether an action is direct or derivative is couched in terms of standing. *See, e.g.*, *Quinn v. Anvil Corp.*, 620 F.3d 1005, 1012 (9th Cir. 2010) (discussing whether a shareholder "has derivative standing to assert claims on behalf of [a corporation]"). Courts also discuss the question in terms of whether it is the shareholder or corporation who suffered an injury. *See, e.g.*, *Meland v. Weber*, 2 F.4th 838, 848 (9th Cir. 2021) ("[W]hether an action is direct or derivative depends on whether the stockholder has demonstrated that he or she has suffered an injury that is not dependent on an injury to the corporation.") (citation and internal quotations omitted). From this, Nobles suggests that lack of standing to bring a direct action compels the conclusion that MUFG lacked an Article III injury. Nobles Reply Br. at 8-9[3] (citing *Blue Cross of Cal. v. Sonoma W. Med. Ctr., Inc.*, No. CV 2:18-4912-SJO (GJSx), 2019 WL 926329, at *6 (C.D. Cal. Feb. 7, 2019)).

This argument is understandable but ultimately misconstrues the law. As an initial matter, the Court notes its disagreement with the reasoning of *Blue Cross*, Nobles' primary authority for this argument. The *Blue Cross* court depended on *Proskauer Rose, LLP v. Blix Street Records, Inc.*, 384 F. App'x 622 (9th Cir. 2010), as support for its conclusion that lack of direct standing is an Article III issue. *Blue Cross*, 2019 WL 926329, at *6. However, *Proskauer* never analyzed the

---

[2] The Court could decline to consider the argument on the basis that it was raised for the first time in reply, but it undertakes the analysis below to assure itself that derivative standing is not jurisdictional.

[3] In supplemental briefing, though, Nobles argued that the issue of shareholder derivative standing was prudential. Nobles Suppl. Br. at 5.

Case No.: 5:20-cv-06889-EJD
ORDER AFFIRMING BANKRUPTCY COURT'S ORDER AND JUDGMENT
8

Case: 17-05044  Doc# 184  Filed: 05/17/23  Entered: 05/17/23 09:43:46  Page 8 of 12

requirements of Article III and did not specify whether it was addressing the constitutional or prudential dimensions of standing. 384 F. App'x at 624.

In any case, *Proskauer* is not binding, and precedential decisions make clear that shareholder derivative standing is a matter of prudential standing. As the U.S. Supreme Court explained, one requirement of prudential standing is that "the plaintiff generally must assert his own legal rights and interests, and cannot rest his claim to relief on the legal rights or interests of third parties." *Franchise Tax Bd. of Cal. v. Alcan Aluminum Ltd.*, 493 U.S. 331, 336 (1990) (quoting *Warth v. Seldin*, 422 U.S. 490, 499 (1975)). It then further explained that "[r]elated to this principle . . . is the so-called shareholder standing rule," which distinguishes between direct and derivative claims. *Id.* at 336-37. The Ninth Circuit picked up on this point in *Meland v. Weber*, where it unambiguously held that shareholder derivative standing is a matter of prudential standing. 2 F.4th at 847-48. Other circuits have likewise come to the same conclusion. *E.g.*, *Potter v. Cozen & O'Connor*, 46 F.4th 148, 157 (3d Cir. 2022); *Korte v. Sebelius*, 735 F.3d 654, 668 (7th Cir. 2013); *Gianfrancesco v. Town of Wrentham*, 712 F.3d 634, 638 (1st Cir. 2013); *Grubbs v. Bailes*, 445 F.3d 1275, 1280 (10th Cir. 2006); *First Hartford Corp. Pension Plan & Tr. v. United States*, 194 F.3d 1279, 1290 (Fed. Cir. 1999); *Ensley v. Cody Res., Inc.*, 171 F.3d 315, 320 (5th Cir. 1999); *see also, e.g.*, *In re Facebook, Inc., Initial Pub. Offering Derivative Litig.*, 797 F.3d 148, 156 (2d Cir. 2015) (finding derivative standing to not raise a jurisdictional issue under Article III because it is analogous to prudential standing).

Since shareholder derivative standing is prudential, it can be waived by Nobles' failure to raise the issue below. Nobles offers no explanation for why the Court should excuse his waiver, and none of the exceptional circumstances identified by *In re Mortgage Store* apply. Declining review of his shareholder derivative standing arguments would not result in a miscarriage of justice. Nobles has not identified any intervening change in law. And even if determination of the direct or derivative nature of MUFG's claims is purely a question of law, Nobles waited far too long to raise the issue. He has had multiple opportunities to do so below—on a motion to dismiss, at summary judgment, and at trial—and he even could have brought up the issue in his prior

Case No.: 5:20-cv-06889-EJD
ORDER AFFIRMING BANKRUPTCY COURT'S ORDER AND JUDGMENT
9

appeal to this Court. He did not, and he has provided no explanation satisfying the Court that there exist exceptional circumstances warranting consideration of his derivative standing arguments for the first time on appeal. *See In re Ahn*, 804 F. App'x at 543. The Court finds in its discretion that Nobles' derivative standing arguments are waived.

### B. The Bankruptcy Court's Order

Following trial, the Bankruptcy Court found that Nobles' 50,000 shares of Coastal stock were void because the money he paid for those shares was never transferred to Coastal. Order After Trial at 4. The Court reviews this factual conclusion—that the money was never transferred to Coastal—for clear error.

The Court's review does not leave it with "the definite and firm conviction that a mistake has been committed." *In re Greene*, 583 F.3d at 618. The relevant facts are simple, and the parties agreed to them prior to trial[4]:

> 3. Dr. Nobles caused $200,000 to be transferred to debtor Robert Brower, Sr. and Mrs. Brower's joint personal bank account at Fremont Bank on January 31, 2011.
>
> 4. Mr. Brower caused $50,000 to be transferred from he and Mrs. Brower's joint personal account to Coastal Cypress Corporation's ("Coastal") bank account on February 4, 2011.
>
> 5. On February 4, 2011, in his capacity as President of and on behalf of Coastal, Mr. Brower executed a promissory note in favor of himself (in his individual capacity) in the amount of $50,000 (the "Promissory Note").
>
> 6. Coastal repaid Mr. Brower all princip[al] and interest due under the Promissory Note.

Nobles Appx. at 300-01.[5] In light of these facts, it was reasonable for the Bankruptcy Court to conclude that Coastal never received Nobles' $50,000 in consideration. Nobles transferred his funds to one of Brower's personal accounts, not Coastal's account. Despite Brower transferring

---

[4] Although it does not appear that the parties ever formally stipulated to facts for trial, their dueling pre-trial statements identify the same set of agreed-upon facts. *Compare* Nobles Appx. at 299-301 (MUFG stipulated facts), *with id.* at 469-71 (Nobles' admitted facts).

[5] Only $50,000 of the $200,000 were at issue at trial because the Bankruptcy Court already found on summary judgment that $150,000 was not transferred to Coastal. Nobles Appx. at 279-82.

Case: 17-05044    Doc# 184    Filed: 05/17/23    Entered: 05/17/23 09:49:46    Page 10 of 12

$50,000 from his personal account to Coastal shortly after receiving Nobles' payment, the fact that Coastal executed a promissory note for the same amount on the same day suggests that the transfer did not represent the consideration paid by Nobles. Rather it suggests that the transfer was a loan from Brower to Coastal. That conclusion is reinforced by Coastal's repayment of principal and interest to Brower as well as by evidence showing that, between January 31, 2011 and February 11, 2011, there were no other transfers in the amount of $50,000 from Brower's account. Nobles Appx. at 385-86. Thus, it was not clear error for the Bankruptcy Court to conclude that Coastal never received Nobles' $50,000.

Nobles largely does not contest this point. Instead, he urges that the transfer of his payment to Brower's personal account is equivalent to him paying Coastal directly because Brower was acting as the agent of Coastal. Nobles Br. at 15-18. But, in what has become a theme of his appeal, Nobles did not raise his agency argument below, advancing it for the first time here. Nobles Reply Br. at 12 (conceding that "the legal issue of the agency relationship between Coastal and its President Brower [was] not specifically raised at trial"). Once again, the Court finds that Nobles has waived this argument and that none of the exceptional circumstances identified by *In re Mortgage Store* applies. The Court discerns no miscarriage of justice that would result from waiver, and Nobles does not identify any intervening change in law excusing waiver. Nobles appears to suggest that the third *Mortgage Store* scenario applies because "the facts and evidence upon which [the purported agency] relationship rests *were* presented to the Bankruptcy Court." *Id.* Yet, the necessary factual record has not been fully developed as *In re Mortgage Store* requires. As Nobles acknowledges, he can only prevail on his agency argument if Coastal "authorize[d] [Brower] to receive payment." *Id.* at 16 (quoting *O.A. Graybeal Co. v. Cook*, 111 Cal. App. 518, 530 (1931)). Even if the record contains sufficient evidence to show that Brower was an actual or ostensible agent of Coastal in some capacity, there has been little factual development regarding the issue of whether the authority to receive payment was within the scope of that agency. *See* Cal. Civ. Code § 2330 ("An agent represents his principal for all purposes within the *scope* of his actual or ostensible authority . . . .") (emphasis added). Consequently, the

Case: 17-05044   Doc# 184   Filed: 05/17/23   Entered: 05/17/23 09:46:46   Page 11 of 12

Court declines to consider Nobles' agency argument.

Finally, Nobles asserts that, regardless of Brower's authority as an agent, Coastal ratified Brower's actions, thereby giving effect to those acts as if Brower had actual authority. Nobles Reply Br. at 16. This argument is doubly untimely. Not only was it raised for the first time on appeal, it was raised for the first time in Nobles' reply brief. The Court does not consider this argument either. *In re Jan Weilert RV*, 315 F.3d at 1199 n.3.

In conclusion, the Court affirms the Bankruptcy Court's conclusion.

### C. Federal Rule of Civil Procedure 52

The last issue argued by Nobles is that the Bankruptcy Court failed to make findings of fact and conclusions of law explaining why Nobles' shares were deemed property of Brower's bankruptcy estate. Nobles Br. at 19. In so arguing, Nobles misreads the Bankruptcy Court's order as transferring his Coastal shares to Brower's bankruptcy estate. That mistake is somewhat understandable because the Bankruptcy Court's order noted that "[MUFG] bears the ultimate burden to establish that the 50,000 shares of Coastal that Nobles asserts he owns are property of Debtor's bankruptcy estate." Order After Trial at 3. Ultimately though, that is not the relief that the Bankruptcy Court granted. Rather, it explicitly declared that Nobles' Coastal shares were "void for lack of consideration," erasing Nobles' ownership interest instead of transferring it. *Id.* at 8; *see also* Judgment (same). Since the Bankruptcy Court never transferred ownership of Nobles' shares to Brower's bankruptcy estate, it was not required to make findings of fact or conclusions of law as to such transfer.

## IV. CONCLUSION

For the reasons stated above, the Bankruptcy Court's order and judgment are AFFIRMED.

**IT IS SO ORDERED.**

Dated: May 16, 2023

EDWARD J. DAVILA
United States District Judge

Case No.: 5:20-cv-06889-EJD
ORDER AFFIRMING BANKRUPTCY COURT'S ORDER AND JUDGMENT
12

Case: 17-05044  Doc# 184  Filed: 05/17/23  Entered: 05/17/23 09:46:46  Page 12 of 12